## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP; VOTERS OF TOMORROW
ACTION, INC.; DISABILITY RIGHTS
FLORIDA; ALIANZA FOR PROGRESS;
ALIANZA CENTER; UNIDOSUS;
FLORIDA ALLIANCE FOR RETIRED
AMERICANS; SANTIAGO MAYER
ARTASANCHEZ; and ESPERANZA
SÁNCHEZ,

     *Plaintiffs*,

v.

CORD BYRD, in his official capacity as
Secretary of State of Florida, et al.,

     *Defendants*.

Case No. 4:23-cv-00215-MW-MAF

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

    I.    The Court should not abstain or defer resolution of Plaintiffs' preliminary injunction motion........................................................... 2

    A.    *Burford* abstention is unwarranted. ...................................... 2

    B.    Deferral of Plaintiffs' preliminary injunction motion is otherwise unwarranted. ......................................................................... 5

    II.    Plaintiffs are substantially likely to succeed on the merits of their claims. ............................................................................................... 6

    A.    The Citizenship Requirement violates the Equal Protection Clause. ...... 6

        1.    Strict Scrutiny is the appropriate standard of review............................. 7

        2.    The Citizenship Requirement fails strict scrutiny.................................. 9

    B.    The Citizenship Requirement violates Plaintiffs' First Amendment rights................................................................................................. 12

        1.    Voter registration activities are protected core political speech, and the Citizenship Requirement cannot survive strict scrutiny. ..................... 12

        2.    The Citizenship Requirement severely restricts Plaintiffs' associational rights.................................................................................................. 16

    C.    The Citizenship Requirement is preempted by 42 U.S.C. § 1981........ 17

    D.    The Citizenship Provision and the Information Retention Ban are unconstitutionally vague, and the Information Retention Ban is unconstitutionally overbroad................................................................ 18

    III.    Plaintiffs will suffer irreparable harm absent a preliminary injunction now. .................................................................................................... 21

    IV.    The balance of the equities and public interest favor relief.................. 22

CONCLUSION .................................................................................................. 22

## INTRODUCTION

Defendants' principal response to Plaintiffs' motion for preliminary injunction is that the non-binding interpretive rules they proposed one day before filing their opposition obviate the need for emergency relief. Not so. Defendants do not hold the pen on SB 7050; only the Legislature can rewrite laws, and Defendants cannot remedy their unconstitutionality via rulemaking.

Indeed, Defendants scarcely address the merits of Plaintiffs' challenge to SB 7050's Citizenship Requirement, Fla. Stat. § 97.0575(1)(f), and Information Retention Ban, Fla. Stat. § 97.0575(7). They all but concede defeat under strict scrutiny, dance around the plain statutory text, and disregard large swaths of Plaintiffs' claims.

Defendants' attempts to delay and obfuscate cannot outweigh the significant harm that Plaintiffs are already suffering from SB 7050. Plaintiffs are planning for its impact and determining how, if at all, they will enter or sustain voter registration efforts in the face of the challenged provisions. Absent an immediate injunction, the Citizenship Requirement and Information Retention Ban will force organizational Plaintiffs to rebuild their voter registration efforts, reduce the scope and impact of Plaintiffs' constitutionally protected voter registration activities, and stop individual Plaintiffs from engaging in this work altogether.

## ARGUMENT

### I.  The Court should not abstain or defer resolution of Plaintiffs' preliminary injunction motion.

Defendants' request that the Court stay its hand on Plaintiffs' claims while the Secretary engages in rulemaking lacks any legal or practical basis.

#### A. *Burford* abstention is unwarranted.

*Burford* abstention is unwarranted because Plaintiffs bring facial constitutional and federal claims that cannot be resolved by the Secretary's rulemaking process.

The *Burford* abstention doctrine allows the Court discretion to abstain "in deference to complex state administrative procedures." *Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238, 1265 (N.D. Fla. 2021). But the Court's discretionary power to "[a]bstain[] from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976); *see Deal v. Tugalo Gas Co.*, 991 F.3d 1313, 1327 (11th Cir. 2021) (noting *Burford* abstention is "an extraordinary and narrow exception to a federal court's virtually unflagging obligation to exercise jurisdiction"). This Court should decline to exercise its discretionary authority to abstain here for at least four reasons.

*First*, as this Court has recognized, "[a]bstention is improper when a party alleges that certain [federal constitutional] rights are threatened." *League of Women Voters of Fla., Inc. v. Detzner*, 354 F. Supp. 3d 1280, 1283 (N.D. Fla. 2018). In

*Detzner*, the Court declined to abstain from deciding whether the Secretary's prohibition of early voting site locations on college campuses violated the plaintiffs' constitutional rights because "the law is crystal clear" that "[f]ederal courts do not abstain" when federal constitutional rights are threatened. *Id.* In so doing, the Court noted that "[t]he Supreme Court has repeatedly held abstention is inappropriate when First Amendment rights [and] voting rights are alleged at issue." *Id.* So too here. The Court should reject Defendants' invitation to risk Plaintiffs fundamental constitutional rights.

*Second*, "[c]ourts have long recognized that abstention is particularly inappropriate in an overbreadth or vagueness case grounded upon the First Amendment." *Hobbs v. Thompson*, 448 F.2d 456, 462 (5th Cir. 1971). For example, in *Zwickler v. Koota*, the Supreme Court held it was error to abstain from deciding whether a statute criminalizing the distribution of handbills anonymously violated the First Amendment right to free expression as impermissibly overbroad. 389 U.S. 241, 252 (1967). In doing so, the Court noted that "forc[ing] the plaintiff who has commenced a federal action to suffer [] delay . . . might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Id.* The same is true here: Plaintiffs should not be forced to chill their constitutionally protected speech while the Secretary considers whether to adopt rules that may or may not bring some clarity to unconstitutionally vague and overbroad laws.

3

*Third*, Defendants' promised rulemaking will not inform judicial review of the statute. Florida law prohibits courts from "deferr[ing] to an administrative agency's interpretation of [a] statute"; they "must instead interpret such statute or rule de novo." Fla. Const. art. V, § 21; *see, e.g.*, *Orange Cnty. Fire Fighters Ass'n, I.A.F.F. Loc. 2057 v. Orange Cnty. Bd. of Cnty. Commissioners*, No. 1D22-1427, 2023 WL 3859343, at *1 (Fla. 1st DCA June 7, 2023) ("We no longer defer to an agency's interpretation of law."). Thus, the upcoming rulemaking process provides no basis for the Court to abstain under *Burford*.

*Finally,* even if the Secretary's final rule could clarify what "collecting or handling" means with respect to the Citizenship Requirement, Doc. 92-1 at 72, it will neither address nor alleviate the statute's facial discrimination against noncitizens (Count III) or its restriction on noncitizens' ability to make and enforce employment contracts (Count IV). Because Plaintiffs' equal protection and preemption claims would still require this Court's adjudication, the Court should decline to apply *Burford*. *See, e.g.*, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989) (determining that *Burford* was inapplicable where adjudication of preemption claim would not disrupt the state's administrative processes).

### B. Deferral of Plaintiffs' preliminary injunction motion is otherwise unwarranted.

Defendants ask the Court to "defer ruling" on Plaintiffs' emergency preliminary injunction motion until after September 30, 2023, when they claim enforcement of the challenged statutes will commence. Doc. 92 ("Opp.") at 16-17. This Court should decline Defendants' wait-and-see approach to preserve Plaintiffs' fundamental rights.

To begin, Defendants' suggestion that Plaintiffs need not trouble themselves with the challenged provisions until September 30 clashes with the statute's plain language. As Defendants recognize, SB 7050's requirements "are *retroactive* for any third-party voter registration organization registered with the department as of July 1, 2023, and must be complied with *within 90 days* after the department provides notice" of the statute's requirements." Opp. at 11 (quoting Fla. Stat. § 97.0575(12)) (emphasis added). Thus, the statute binds 3PVRO Plaintiffs on July 1. The statute's mandate of compliance "within 90 days" means that Plaintiffs must overhaul their operations well before September 30 to avoid the risk of a penalty. Where, even under Defendants' theory, Plaintiffs are vulnerable to crippling fines and felony charges as of September 30, they can hardly afford to wait for adjudication of their claims until *after* that date.

More importantly, even assuming the rulemaking could resolve *every* issue before the Court (it cannot, *see supra* Section I.A), Plaintiffs' harm is immediate and

already accruing. *See* Doc. 55 ("Br.") at 42-46; *infra* Section III. Plaintiffs' declarations belie Defendants' assertion that "Plaintiffs are not yet affected" by the law. Opp. at 17. Plaintiffs have already invested significant time and resources preparing for SB 7050's impact, *see, e.g.*, Doc. 54-12 (FL NAACP) ¶ 28, and Plaintiffs are already chilled from engaging in protected activity, *see, e.g.*, Doc. 54-10 (Alianza) ¶¶ 21, 25. Only a preliminary injunction can relieve Plaintiffs' injuries by preserving the status quo.

Ultimately, Defendants' concerns that at some future date *some* of Plaintiffs' claims *might* become moot is no reason to delay adjudication, leaving Plaintiffs to hope for the best and prepare for the worst. The proper course here is to grant a preliminary injunction and rescind it should intervening circumstances remedy Plaintiffs' substantially likely constitutional harms. *See, e.g.*, *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) (preliminary injunction remained in effect until the law at issue was repealed).

## II. Plaintiffs are substantially likely to succeed on the merits of their claims.

### A. The Citizenship Requirement violates the Equal Protection Clause.

Plaintiffs are substantially likely to succeed on the merits of their equal protection challenge to the Citizenship Requirement because the provision falls far short of the applicable strict scrutiny standard. And, contrary to Defendants'

suggestion, forthcoming rulemaking cannot bring the Citizenship Requirement into constitutional compliance.

### 1. Strict Scrutiny is the appropriate standard of review.

Defendants wrongly urge the Court to parse the Citizenship Requirement—which bars *all* noncitizens from engaging in voter registration, Fla. Stat. § 97.0575(1)(f)—and apply different levels of scrutiny to different noncitizen subgroups. Opp. at 20-21. Defendants cite no authority supporting such approach. To the contrary, in *Bernal v. Fainter*, 467 U.S. 216 (1984), the Supreme Court struck down a law prohibiting all noncitizens from serving as notaries, holding that "a state law that discriminates on the basis of alienage can be sustained only if it can withstand strict judicial scrutiny." *Id.* at 218-20; *see Graham v. Richardson*, 403 U.S. 365, 372 (1971) (subjecting a classification based on "alienage" to strict scrutiny). Although the Legislature could have distinguished between different noncitizens, like legal permanent residents and undocumented immigrants, as Defendants urge this Court to do, courts do not apply different standards of review for different classifications when the text of the law itself fails to distinguish between subgroups. Like the Supreme Court in *Bernal*, this Court should apply strict scrutiny to the Citizenship Requirement's broad and undifferentiated ban on all noncitizens.

The political function exception does not save the Citizenship Requirement from strict scrutiny. The political function exception is "a narrow exception to the

rule that discrimination based on alienage triggers strict scrutiny." *Bernal*, 467 U.S. at 220. It applies only to "laws that exclude aliens from positions intimately related to the process of democratic self-government." *Id.* To determine whether a restriction fits within the narrow political function exception, courts employ a two-part test, analyzing (1) whether a classification is over or underinclusive and (2) if the classification is sufficiently tailored, whether the position at issue "necessarily exercise[s] broad discretionary power over the formulation or execution of public policies importantly affecting the citizen population." *Id.* at 224. Here, the Citizenship Requirement is overinclusive, and in any event does not implicate the type of discretionary power subject to the political-function exception.

The Requirement's broad classification prohibits *all* noncitizens from collecting or handling a voter registration form and engaging in core First Amendment protected activities. *Id.* 221-22. Because the Citizenship Requirement "indiscriminately sweep[s] within its ambit a wide range" of roles, it fails the first prong, and Defendants' invocation of the political-function exception fails. *Id.* at 222-23.

In any event, the Requirement also fails the second prong, which exempts from strict scrutiny restrictions on limited positions that "go to the heart of representative government," like police officers, public school teachers, and parole officers. *See Foley v. Connelie*, 435 U.S. 291 (1978); *Ambach v. Norwick*, 441 U.S.

8

68 (1979); *Cabell v. Chavez-Salido*, 454 U.S. 432 (1982). This is because these individuals uniquely employ "discretionary powers" and often have unsupervised contact with others that influences perspectives on "the government and the political process." *Bernal*, 467 U.S. at 220. In contrast, Plaintiffs' canvassers are much more like the notaries in *Bernal*, a position the Supreme Court held could not constitutionally be limited to citizens. *Id.* at 227-28. Like notaries, canvassers do not wield government power or exercise discretion to enforce or influence policy. And although "considerable damage could result from the negligent or dishonest performance of" a notary or a canvasser's work, the same is true for "numerous other categories of personnel upon whom we depend for careful, honest service" that are not "invested either with policymaking responsibility or broad discretion in the execution of public policy that requires the routine exercise of authority over individuals." *Id.* at 225-26.

Accordingly, the Citizenship Requirement is subject to strict scrutiny.

## 2.     The Citizenship Requirement fails strict scrutiny.

Defendants hardly contend that the Citizenship Requirement satisfies strict scrutiny. *See* Opp. at 20 ("Rational basis is thus satisfied."); *id.* (arguing for political-function exception to strict scrutiny); *see also id.* at 28 (arguing that "[p]ost-hoc rationalizations can be enough" outside of strict scrutiny).

And for good reason: the Citizenship Requirement serves no compelling state interests. *Bernal*, 467 U.S. at 227. Each of Defendants' purported state interests hinges on one unsupported premise: noncitizen "aliens" cannot be trusted with voter registration applications, either because they "should not be in the country" or because they "might leave . . . before ensuring that a voter registration application they collected gets to the relevant election official." Opp. at 20; Doc. 92-1 at 95-96.[1] But nothing in the preliminary injunction or legislative record supports Defendants' brazen speculation. Instead, the record proves that noncitizens do impeccable voter registration work and serve as the backbone of many of Plaintiffs' canvassing efforts. Doc. 54-6 (VOT) ¶¶ 16-17; Alianza ¶¶ 14-15, 19; Doc. 54-5 (Unidos) ¶¶ 14, 26; FL NAACP ¶ 22. Indeed, the only legislative justification offered for the Citizenship Requirement was that "there are certain rights in our country that only citizens get to enjoy." Doc. 54-4 at 16:18-24.

Defendants invoke familiar catchphrases such as "safeguarding election integrity," "preventing voter fraud," and "promoting confidence in the election system," Opp. at 28, apparently hoping that these vague interests will save the day.

---

[1] The notion that noncitizens will be deported or choose to leave the country between the time that they receive a voter registration application and the time that they provide those applications to a 3PVRO or submit them to the state is a highly improbable speculation "[w]ithout a factual underpinning," such that "the State's asserted interest lacks the weight [courts] have required of interests properly denominated as compelling." *Bernal*, 467 U.S. at 227-28.

But their argument as to *how* the Citizenship Requirement serves these goals is wholly conclusory. *See id.* at 29. And while Defendants assert that "[p]rohibiting non-citizens from collecting or handling voter registration applications is the least restrictive means to achieve those interests," *id.*, they fail to explain why this is so or cite anything in support.

Moreover, because Defendants invented each of their unsupported "interests" post-hoc, they cannot save the Citizenship Requirement. Under strict or heightened scrutiny in the equal protection context, "[t]he [actor's] justification must be genuine, not hypothesized or invented post hoc in response to litigation." *United States v. Brennan*, 650 F.3d 65, 106 (2d Cir. 2011) (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996) (heightened scrutiny), and *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996) (strict scrutiny)). And contrary to Defendants' argument that *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), is inapplicable because it addressed sex-based discrimination, Opp. at 21, *Glenn* confirms that courts do not consider post hoc justifications in cases like this one, alleging equal protection violations triggering heightened scrutiny. 663 F.3d at 1315.

Because Defendants cannot identify any actual compelling state interest that justifies the Citizenship Requirement—much less one that satisfies strict scrutiny—the Citizenship Requirement is unconstitutional and cannot stand.

11

## B. The Citizenship Requirement violates Plaintiffs' First Amendment rights.

The Citizenship Requirement violates Plaintiffs' First Amendment rights because voter registration activities are protected political speech, Defendants do not dispute that the Requirement restricts Plaintiffs' associational rights, and the Requirement cannot survive strict scrutiny.

### 1.     Voter registration activities are protected core political speech.

Defendants concede that "[a]t the heart" of the First Amendment "is the freedom to engage in 'political discourse' and 'direct one-on-one communication' about politics" and the "related right" of "the freedom to politically associate." Opp. at 24 (quoting *Meyer v. Grant*, 486 U.S. 414, 424 (1988), and citing *NAACP v. Button*, 371 U.S. 415, 417 (1961)). These are the protected First Amendment activities the Citizenship Requirement tramples. To argue otherwise, Defendants mischaracterize the Citizenship Requirement as a purely ministerial regulation without expressive components, contravening binding authority and relevant facts.[2]

---

[2] Defendants miscite *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), for the proposition that the Court must assess the Secretary's interpretation of the Citizenship Requirement. Opp. at 25. *Pennhurst* is inapposite to the question of controlling interpretations, and, following Defendants' urged reading of the Citizenship Requirement, would require the Court to impermissibly modify state law. *See Boos v. Barry*, 485 U.S. 312, 330 (1988).

Defendants attempt to distinguish *Meyer* because it involved petition circulation not voter registration, but both the challenged law in *Meyer* and the Citizenship Requirement "'limit the number of voices' that could convey the proponents' 'message.'" Opp. at 26 (citing *Meyer*, 486 U.S. at 422-23). By barring noncitizens from engaging in core voter registration activities—collecting and handling voter registration applications—the Citizenship Requirement "reduc[es] the total quantum of speech on a public issue." *Meyer*, 486 U.S. at 422-23.

Moreover, courts have already rejected Defendants' argument that voter registration is not protected First Amendment expression. For example, in *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314 (S.D. Fla. 2006), the court rejected Defendants' argument that "the collection and submission of voter registration applications" implicated only "conduct . . . and not the speech accompanying such conduct." *Id*. at 1333. In doing so, the court relied on the Supreme Court's decision in *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620 (1980), which rejected another of Defendants' arguments—that laws purporting to regulate only conduct accompanying protected speech did not infringe on protected speech. The *Schaumberg* Court declined to separate solicitation of political donations from the accompanying speech because the "reality [is] that solicitation is characteristically intertwined with informative and perhaps persuasive speech," and because "the reality [is] that without solicitation the

13

flow of such information and advocacy would likely cease." 444 U.S. at 632. Following *Schaumberg*, the *Cobb* court rejected the argument that a law burdening voter registration activities did not infringe on protected speech "because [p]laintiffs could, hypothetically, communicate the same messages to potential voters." *Cobb*, 447 F. Supp. 2d at 1333. Just as Defendants do here, the *Cobb* court found that the Secretary "ignore[d] the reality" that "the collection and submission of voter registration [applications] is intertwined with speech and association." *Id*. at 1334.[3]

This Court should likewise reject Defendants' argument that integral voter registration activities are not expressive conduct. The "reality" is that Plaintiffs' conduct—the collection and handling of applications—"is characteristically intertwined with information and [] persuasive speech," and because of the Citizenship Requirement, "the flow of such information and advocacy would likely cease," or at a minimum, be severely reduced. *Cobb*, 447 F. Supp. 2d at 1333; *Village of Schaumburg*, 444 U.S. at 632; Alianza ¶¶ 19, 22, 25; Unidos ¶¶ 26-41; Doc. 54-7 (Mayer) ¶¶ 11-12; Doc. 54-11 (Florez) ¶ 20; Doc. 54-8 (Sánchez) ¶ 19; VOT ¶ 7.

---

[3] *See also, e.g.*, *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 700 (N.D. Ohio 2006) ("[V]oter registration implicates a number of both expressive and associational rights which are protected by the First Amendment."); *Am. Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1216 (D.N.M. 2010) (voter registration "may have a ministerial component, and yet acquire First-Amendment protection when done in a setting or manner in which the message becomes apparent"); *Project Vote v. Kelly*, 805 F. Supp. 2d 152, 176 (W.D. Pa. 2011) (recognizing voter registration canvassing falls within "the ambit of First Amendment protection").

None of the cases Defendants rely on compel a contrary conclusion. Defendants' selective quotation of *League of Women Voters of Fla. v. Browning*, 575 F. Supp. 2d 1298 (S.D. Fla. 2008), Opp. at 26, is misplaced because the court found that "[u]ndoubtedly, Plaintiffs' interactions with prospective voters in connection with their solicitation of voter registration applications constitutes constitutionally protected activity." *Id.* at 1321. Defendants also misleadingly quote *Feldman v. Reagan*, 843 F.3d 366 (9th Cir. 2016), which involved ballot collection, not voter registration.

Defendants also rely on an outlier opinion declining to recognize certain parts of voter registration activities as protected expression, *Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013). *Steen* was wrongly decided; cases decided after *Steen* have distinguished and departed from it, and this Court should do the same. *See, e.g.*, *VoteAmerica v. Schwab*, No. CV 21-2253-KHV, 2023 WL 3251009, at *13 (D. Kan. May 4, 2023).

For example, in *Tennessee State Conference of N.A.A.C.P. v. Hargett* rejected *Steen* and applied *Meyer*, finding that plaintiffs were likely to succeed in their First Amendment challenges to new voter registration drive regulations. 420 F. Supp. 3d 683, 704, 707 (M.D. Tenn. 2019). Distinguishing *Steen*, the *Hargett* court was "skeptical that the First Amendment would countenance 'slic[ing] and dic[ing] the activities involved in the plaintiffs' voter registration drives" because doing so

15

would "allow the government to burden the protected aspects of the drive indirectly and because the 'entire voter registration activity'" implicates First Amendment associational freedoms. *Id.* at 699 (quoting *Steen*, 732 F.3d at 401, 404 (Davis, J., dissenting)). And, as the *Hargett* court explained, even if *Steen*'s "disjointed analysis were permissible," the Citizenship Requirement "is likely to have a chilling effect on the entirety of the drive, including its communicative aspects." *Id.*; Alianza ¶ 22; Florez ¶¶ 19, 20; NAACP ¶ 20; Doc. 54-13 (Volusia NAACP) ¶ 10; VOT ¶ 7; Sánchez ¶ 19.

### 2. The Citizenship Requirement severely restricts Plaintiffs' associational rights.

Defendants fail to address Plaintiffs' arguments regarding the Citizenship Requirement's burden on their associational rights. Defendants offer no counter to Plaintiffs' arguments, for instance, that the Requirement severely burdens Plaintiffs' associational activities and that strict scrutiny applies. *See* Br. at 37-38; *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1299 (S.D. Fla. 2020) (noting defendants' failure to respond to an argument in a preliminary injunction motion normally "result[s] in a waiver of any opposition"); *Kramer v. Gwinnett Cnty.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga.), *aff'd*, 116 Fed. Appx. 253 (11th Cir. 2004) (table decision) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."). There is thus no dispute

that Plaintiffs have demonstrated a substantial likelihood of success on their right of association challenge to the Citizenship Requirement.

## C. The Citizenship Requirement is preempted by 42 U.S.C. § 1981.

Defendants do not dispute that the Citizenship Requirement is preempted by § 1981 because it "stands as an obstacle to the objective of the federal law." *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1253 (11th Cir. 2022). Indeed, they provide no analysis of federal preemption at all.

Instead, they blatantly ignore binding precedent and the nature of Plaintiffs' claim. First, Defendants attempt to dismiss *Takahashi v. Fish & Game Commission*, 334 U.S. 410 (1948), and *Graham v. Richardson*, 403 U.S. 365 (1971), because the laws at issue in those cases were ultimately invalidated on bases other than preemption. Opp. at 30. But both cases stand for the fundamental principle that state laws that conflict with federal law are preempted. Second, Defendants attempt to import the legal standard for individual employment discrimination claims, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to Plaintiffs' facial challenge to the Requirement under § 1981 , Doc. 52 at 55-57 (Count IV). *Cf. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (noting "[t]he *McDonnell Douglas* test is inapplicable" where the challenged policy is "discriminatory on its face"). But because the Citizenship Requirement is facially discriminatory, *McDonnell Douglas* does not apply.

17

### D. The Citizenship Provision and the Information Retention Ban are unconstitutionally vague, and the Information Retention Ban is unconstitutionally overbroad.[4]

Plaintiffs are substantially likely to succeed on the merits of their claim that the Citizenship Requirement is unconstitutionally vague because it criminalizes "handling" "voter registration applications," without defining either term. Fla. Stat. § 97.0575(1). While Defendants offer their subjective interpretation of each term, their constructions (1) are atextual and (2) arbitrarily exclude ordinary definitions, and thus "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," and "authorize[] or even encourage[] arbitrary and discriminatory enforcement." *Wollschlaeger v. Governor*, 848 F.3d 1293, 1319 (11th Cir. 2017) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

Ignoring the statute's plain text, Defendants argue that "voter registration application" actually means "completed voter registration application." Opp. at 23. But the statute itself includes no such limitation. Defendants also claim that the ordinary meaning of "handling" is limited to only some dictionary definitions of the term, specifically those involving physically touching an application. *Id.* at 22. But

---

[4] Defendants' response to Plaintiffs' First Amendment challenges to the Information Retention Ban relies solely on "the Secretary's interpretation" of the term "personal information." Opp. at 32-33. Plaintiffs respond to that argument here and otherwise rely on the unanswered arguments in their opening brief, Br. at 35-39, in support of their First Amendment claims. Defendants have waived all other arguments in opposition. *Fla. Atl. Univ. Bd. of Trs.*, 465 F. Supp. 3d at 1299; *see Kramer*, 306 F. Supp. 2d at 122.

18

"handle" encompasses conduct that Defendants selectively ignore—for example, "to have overall responsibility for supervising." Handle, *Merriam-Webster's New Collegiate Dictionary* (7th ed.). Florida statutes typically define "handle" differently depending on the conduct being regulated. *See* Br. at 33. Here, it remains unclear whether noncitizens may "supervise" voter registration, including for example by reviewing voter registration applications for completeness. Indeed, Defendants' own example contradicts their limiting construction; while they claim it is obvious that a noncitizen cannot have a "stack full of completed applications in his car," Opp. at 23, it is unclear if a supervising noncitizen would be "handling" voter registration applications if they ride in a car with a citizen and voter registration applications. Plaintiffs are left to guess—and one wrong guess can decimate a 3PVRO.

The Information Retention Ban is also unconstitutionally vague because it fails to define both the phrases "personal information" and "in compliance with this section."[5] Defendants again ignore the statute's plain language, swapping in narrower terms of their choosing. The Secretary claims that "personal information" actually means "private, non-public information," or "personal sensitive information." Opp. at 31-33. But the statute does not limit "personal information" to any of those categories. And a voter's home address and cell phone number are just as "personal" as their driver's license number—all are unique to and identifying of

---

[5] For similar reasons, the Ban is also unconstitutionally overbroad. Br. at 39-40.

a particular person. Instead, the statute provides only examples of personal information, but the Supreme Court has declined "to apply limiting principles" where a statute "includes a specific example along with a general phrase," like here. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008). If the Legislature intended to limit "personal information" to only the examples enumerated, it could have listed only those terms as it has in other laws. *See, e.g.*, Fla. Stat. § 97.0585(1)(c) (defining specific personal information exempt from public records request).

Even worse, Defendants' proposed definition remains vague. What constitutes "non-public information" or "sensitive" information? Most email addresses, home addresses, and even phone numbers—which Defendants claim are not covered—are not public. Perhaps because of the inherent vagueness of the term "personal information," numerous other Florida statutes define it explicitly and differently depending on the conduct being regulated. *See* Br. at 41; *See, e.g.,* Fla. Stat. § 322.143 ("'Personal information' means an individual's name, address, date of birth, driver license number, or identification card number."). And Defendants do not contest that the second phrase Plaintiffs argue is unconstitutionally vague, "in compliance with this section," could have myriad meanings.

Defendants' argument that "rulemaking will confirm" their proposed definitions, Opp. at 32, does not bring either challenged provision into constitutional compliance because neither the Secretary nor the Court has authority to modify state

20

law. A rule "is an invalid exercise of delegated legislative authority if [it] enlarges, modifies, or contravenes the specific provisions of law implemented." Fla. Stat. § 120.52(8)(c). Rules that narrow the scope of a statutory provision are also impermissible. *Fla. DBPR v. Walmart Inc.*, 323 So. 3d 786, 788-89 (Fla. 1st DCA May 19, 2021), *reh'g denied* (Aug. 19, 2021). Because it is beyond the rulemaking authority of the Secretary or any agency to modify or narrow statutes enacted by the Legislature, the Secretary's proposed rules, even if adopted, are not binding. *See Milner v. State*, 50 So. 3d 711, 714 (Fla. 4th DCA 2010). Nor is the Court at liberty to narrow the plain text of the statute. *See Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1194-95 (10th Cir. 2000) (court may not adopt "a construction more restrictive than that provided by [its] plain language").

### III. Plaintiffs will suffer irreparable harm absent a preliminary injunction now.

Plaintiffs will suffer irreparable harm if the Citizenship Requirement and Information Retention Ban go into effect on July 1, 2023. Individual Plaintiffs will be unable to engage in their work, and Alianza, UnidosUS, Florida NAACP, and VOT will immediately lose many of their employees and canvassers who execute their voter registration programs. VOT ¶¶ 16-17; Alianza ¶¶ 14-15, 19; Unidos ¶¶ 14, 26; FL NAACP ¶ 22. Even if the Citizenship Requirement and Information Retention Ban do not take effect until September 30, 2023 (a statement Plaintiffs cannot rely on, *see supra* Section I.B), Plaintiffs will still immediately begin

completely reworking their voter registration programs, recruiting and vetting new canvassers, and devising new voter outreach programs—diverting resources long before September, and suffering irreparable harm.

### IV.   The balance of the equities and public interest favor relief.

Defendants claim the public is served when the state enforces its laws, and the state is harmed when it cannot enforce the laws, Opp. at 34, but this is not the case when the challenged laws impede constitutional rights. *See Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 870 (11th Cir. 2020) ("[I]t is clear that neither the government nor the public has any legitimate interest in enforcing an unconstitutional [law]."). Thus, the balance of equities and public interest favor granting the preliminary injunction.

### CONCLUSION

Plaintiffs respectfully request that the Court issue the requested preliminary injunction.

### LOCAL RULE 7.1(F) CERTIFICATION

The undersigned, Frederick Wermuth, certifies that this motion contains 4,940 words, excluding the case style and certifications.

Dated: June 26, 2023                Respectfully submitted,

Abha Khanna*                        /s/ *Fritz S. Wermuth*
Makeba Rutahindurwa*                Frederick S. Wermuth
**ELIAS LAW GROUP LLP**             Florida Bar No. 0184111

22

1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law
mrutahindurwa@elias.law

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law

**King, Blackwell, Zehnder & Wermuth, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
*Counsel for Plaintiffs Florida State
Conference of Branches of Youth Units
of the NAACP, Voters of Tomorrow
Action, Inc., Disability Rights Florida,
Alianza for Progress, Alianza Center,
UnidosUS, Florida Alliance for Retired
Americans, Santiago Mayer Artasanchez,
and Esperanza Sánchez*

*Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023 I filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such

filing to all counsel of record.

/s/ *Fritz S. Wermuth*
Frederick S. Wermuth
Florida Bar No.: 0184111
*Counsel for Plaintiffs*