IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE
OF BRANCHES AND YOUTH UNITS
OF THE NAACP, et al.,

    *Plaintiffs*,

v.                                                               Case Nos.: 4:23cv215-MW/MAF

CORD BYRD, in his official capacity
as Florida Secretary of State, et al.,

    *Defendants*.

_____/

## ORDER DENYING MOTION TO DISMISS

This case involves multiple constitutional challenges to newly enacted changes to section 97.0575, Florida's statute regulating third-party voter registration organizations (3PVROs). Plaintiffs sue the Supervisors of Elections of each of Florida's sixty-seven counties (the "Supervisors"), Florida's Secretary of State (the "Secretary"), and Florida's Attorney General (the "Attorney General")—each in their official capacities. One challenged provision imposes fines on 3PVROs that file voter registration applications with Supervisors or the Division of Elections more than ten days after completion by the applicant (the "3PVRO Fines Provision"). § 97.0575(5), Fla. Stat. (2023). According to Plaintiffs, the Supervisors, like the Secretary and Attorney General, are "charged with enforcing the 3PVRO

Fines Provision." *See* ECF No. 184 ¶¶ 55–57, 60.[1] The Supervisors disagree and have moved to dismiss Plaintiffs' complaint as to them.[2] ECF No. 146. They argue that they lack authority to enforce the 3PVRO Fines Provision, meaning that Plaintiffs' alleged injuries are neither fairly traceable to their conduct nor redressable by a court order against them. Therefore, the Supervisors argue, this Court lacks jurisdiction over Plaintiffs' claims as to the Supervisors. This Court has considered, without hearing, the Supervisors' motion to dismiss, ECF No. 146, and Plaintiffs' response, ECF No. 154. For the reasons set out below, the motion, ECF No. 146, is due to be denied.

First, this Court makes clear what the pending motion is *not* about. This is not a case where Plaintiffs are attempting to sue a defendant based only on some "general enforcement authority" over a subject area, when another entity not before the court has exclusive authority to enforce the challenged law. In such a case, a

---

[1] With leave of court, ECF No. 182, Plaintiffs amended their complaint after the Supervisors moved to dismiss. ECF No. 184. In a prior order, this Court noted it would construe the Supervisors' motion to dismiss as pending against the operative complaint, but it gave the parties an opportunity to be heard on the matter if they objected. *See* ECF No. 183. Nobody has objected. Accordingly, this Court construes the motion to dismiss as pending against the operative complaint.

[2] The Supervisors do not specify whether they move to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The specific rule under which the Supervisors move, however, does not change the analysis or result here. As Plaintiffs point out, the Supervisors also do not specify whether their challenge to standing is a facial challenge or a factual one. ECF No. 154 at 3. Because this Court's decision does not turn on the facial or factual nature of the Supervisors' challenge to standing, this Court need not, and does not, resolve that issue.

plaintiff would lack standing to sue the defendant. *See, e.g.*, *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020) (citing *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1293, 1298–1301 (11th Cir. 2019)). This is also not a case where the challenged law provides *no* enforcement mechanism to any state actor. In such a case, a plaintiff would lack standing to sue a state actor. *See, e.g.*, *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198 (11th Cir. 2021).

Instead, the pending motion involves a different question—namely, whether a plaintiff has standing to sue a defendant who is not the ultimate enforcer of the challenged law (that is, not the one who brings an enforcement action in court or assesses fines for a violation) but who is nonetheless a necessary actor in the causal chain that leads from violation to enforcement. For the reasons that follow, this Court answers that question in the affirmative. The Supervisors' mandatory reporting role places them in the enforcement process for the 3PVRO Fines Provision, and enjoining them would reduce the threat of fines that Plaintiffs face. Plaintiffs have established, at least at this stage, standing to sue the Supervisors. Accordingly, the Supervisors' motion to dismiss, ECF No. 146, is **DENIED**.

I

This Court proceeds by introducing the overarching rules on standing. The Supreme Court has long held that an actual controversy exists when the parties have "such a personal stake in the outcome of the controversy as to assure that concrete

adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (explaining that standing doctrine "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action"). "This is the gist of the question of standing." *Carr*, 369 U.S. at 204.

Ultimately, when it comes to standing, the inquiry is whether "concrete adverseness" exists between the parties. Over time, the Supreme Court has developed a three-part test for determining when such adverseness exists. Under that test, a plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) will likely be redressed by a favorable ruling. *See Lujan*, 504 U.S. at 560–61. "[E]ach element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.' " *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan*, 504 U.S. at 561).

II

Although the Supervisors move to dismiss based only on a failure to demonstrate traceability and redressability, this Court has an "independent obligation . . . to ensure a case or controversy exists . . . ." *CAMP Legal Def. Fund,*

4

*Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006). This Court takes that obligation seriously. Therefore, this Court will discuss the injury-in-fact requirement before moving to the Supervisors' arguments on traceability and redressability.

A

In terms of injury, Plaintiffs allege that the amended 3PVRO Fines Provision's increase in aggregate fines for untimely filed applications—from $50,000 to $250,000—deters 3PVROs, including the organizational Plaintiffs, "from engaging in registration efforts" and forces them to divert their "highly limited resources . . . to training and compliance." ECF No. 184 ¶¶ 76–77. This, according to Plaintiffs, chills their speech and associative activities. *Id.* Additionally, Plaintiffs allege that the increased fines will force the organizational Plaintiffs to change their get-out-the-vote efforts, including shifting from statewide voter registration events to county-specific ones, to avoid the risk of the higher fines. *Id.* ¶ 78. Finally, Plaintiffs allege that the organizational Plaintiffs "will have to divert multiple additional employees and canvassers to ensure no applications are returned late." *Id.*

These allegations—namely, that the 3PVRO Fines Provision has chilled the organizational Plaintiffs' speech and association and that they will have to divert resources to avoid the increased fines—suffice, at the motion to dismiss stage, to

5

establish that Plaintiffs have suffered an injury in fact.³ *See City of S. Miami*, 65 F.4th 631, 638 (11th Cir. 2023) ("An organization suffers actual harm 'if the defendant's illegal acts impair [the organization's] ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts.' ") (alteration in original) (quoting *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)); *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079 (N.D. Fla. 2004) ("An organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes.") (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

B

Having satisfied itself that Plaintiffs have alleged an injury-in-fact, this Court moves to the meat of the Supervisors' motion to dismiss—traceability and redressability. The Supervisors argue that "other governmental parties, not the Supervisors, have sole enforcement authority to enforce the 3PVRO Fines Provision." ECF No. 146 at 3. They concede that they have "power to report

---

³ Plaintiffs include both 3PVROs and individuals, but this Court need not analyze whether the individual Plaintiffs have suffered an injury-in-fact. "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Thus, if there is one plaintiff in each case who demonstrates standing "to assert these rights as his own," this Court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977). Here, because this Court concludes that the organizational Plaintiffs, at least for purposes of the motion-to-dismiss stage, have suffered an injury-in-fact as to the claims against the 3PVRO Fines Provision, it need not analyze whether the individual Plaintiffs have as well.

6

information regarding untimely filed voter registration forms" but assert that "a power to report is not the power to enforce." *Id.* at 2–3. Because they lack the "power to enforce" the Fines Provision, the Supervisors argue that Plaintiff's alleged injuries are not fairly traceable to them and that a court order against them would not redress Plaintiffs' alleged injuries. *Id.* at 3.

According to the Supervisors, this Court already held as much in *ACLU of Florida, Inc. v. Lee*, 546 F. Supp. 3d 1096 (N.D. Fla. 2021).[4] There, the plaintiffs— organizations that supported citizen-initiative efforts and particular initiatives— challenged a statutory cap on the amount an individual or a political committee could contribute in an election to a political committee that either sponsored or opposed a constitutional amendment proposed via initiative. *ACLU of Fla., Inc.*, 546 F. Supp. 3d at 1098–99. They sued the Secretary and the Florida Elections Commission ("FEC"). *Id.* at 1099. This Court held that the plaintiffs had shown an injury because the statute would limit how much they could donate or receive, diluting their freedom of association. *Id.* (citing *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 296 (1981)).

This Court also held that the plaintiffs' injuries were fairly traceable to, and redressable by a court order against, the FEC. *ACLU of Fla, Inc.*, 546 F. Supp. 3d at

---

[4] As the Supervisors observe, this Court also reached a similar conclusion in *Hetherington v. Lee*, Case No. 3:21cv671, 2021 WL 6882441 (N.D. Fla. Jul. 12, 2021). ECF No. 146 at 4.

7

1099–1100 (citations omitted). This was because the FEC would "enforce the new law"—that is, it was "vested" with "[j]urisdiction to investigate and determine violations"—and "impose penalties for violations." *Id.* In contrast, the Secretary had no such authority. Thus, applying *Jacobson* and *Lewis*, this Court held that the plaintiffs' injuries were neither fairly traceable to, nor redressable by a court order against, the Secretary. *Id.* at 1100–1101. This was so although the Secretary, as "head of the Department of State" and, within it, the Division of Elections, played a general role in the area of election law. *See id.* Additionally, this Court rejected the argument that the Division of Elections's ability to report "campaign-finance" violations (that is, any violation of chapters 104 and 106, Florida Statutes) to the FEC established traceability and redressability as to the Secretary. *See id.* at 1101. In rejecting that argument, this Court noted that, under the relevant statutes, "any person" also had the ability to report those violations. *See id.*

In relying on *ACLU of Florida, Inc.*, the Supervisors overstate its similarity to this case. For one, Plaintiffs' injury here boils down to chilled speech. Their harm comes not from the fines themselves, but from the threat of fines and their adaptation of their activities to avoid the fines. Thus, as actors who play a role (namely, reporting) in the process that results in the fines, the Supervisors are part of the reason Plaintiffs are changing their behavior. In *ACLU of Florida, Inc.*, in contrast, the plaintiffs' injury was the direct limit on speech that the contribution cap

8

presented. The Secretary, through the Division of Elections, may have reported violations, but the plaintiffs' injury came from the FEC's enforcement of the cap (that is, the FEC's determination that their contributions had exceeded the cap). Therefore, the Supervisors' link to Plaintiffs' injury here is stronger than the Secretary's link was in *ACLU of Florida, Inc.*

Additionally, the Supervisors' role in the process is both specific to the 3PVRO Fines Provision and mandatory. The Secretary has promulgated a regulation mandating that the Supervisors report every single untimely filed voter registration application they receive to the Office of Election Crimes and Security (which is part of the Florida Department of State, § 97.022(1), Fla. Stat.). Fla. Admin. Code R. 1S-2.042(8)(c) (Sep. 26, 2023) ("Supervisors of Elections shall . . . report any untimely filed voter registration application submitted by a 3PVRO [to the Office of Election Crimes and Security] . . . ."). That is no mere "power to report," as the Supervisors frame it, but an *obligation* to report.

The Supervisors' reporting obligation exists alongside the ability for "any person, organization, or entity (including a Supervisor of Elections) [to] report allegations of irregularities or fraud involving voter registration activities by filing an elections fraud complaint with the Division [of Elections]." Fla. Admin. Code R. 1S-2.042(8)(b) (referencing Fla. Admin. Code R. 1S-2.025(3) (Sep. 26, 2023) ("Any person alleging elections fraud may file a written complaint with the . . . Division of

9

Elections, . . . .")). Put another way, in addition to having a generally available power to file complaints alleging general "irregularities or fraud" in the general subject area of voter registration (thus, a power to report akin to "any person['s]" power to report "campaign-finance violations" in *ACLU of Florida, Inc.*), the Supervisors have an exclusive obligation to report a specific type of violation—namely, untimely filed voter registration applications.

In short, because of their exclusive, specific reporting obligation, the Supervisors play a direct role in injuring Plaintiffs (through chilling their speech) and enforcing the provision Plaintiffs challenge. The Secretary in *ACLU of Florida, Inc.* did neither. These distinctions do not, in themselves, mean that Plaintiffs have standing to sue the Supervisors, but they do demonstrate the need for an analysis of traceability and redressability that goes beyond *ACLU of Florida, Inc.* This Court proceeds with that analysis below. Although traceability and redressability "often travel together" in their analyses, *Support Working Animals, Inc.*, 8 F.4th at 1201 (citation omitted), and although the parties handle them as a unit, this Court will discuss each element in turn, starting with traceability.

1

"Traceability is not an exacting standard." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023). Unlike the more "stringent . . . tort-law concept of proximate cause," *id.*, traceability "requires no more than *de facto* causality." *Dep't*

*of Comm. v. New York*, 139 S. Ct. 2551, 2566 (2019) (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)). Accordingly, "the defendant's challenged conduct need not be the very last step in the chain of causation for it to be fairly traceable to the plaintiff's injury." *Walters*, 60 F.4th at 650 (quotation omitted). On the other hand, traceability is lacking "if the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct." *See id.* (citations and internal quotation omitted).

Here, as mentioned *supra*, the Secretary has issued a regulation requiring the Supervisors to "report any untimely filed voter registration application submitted [to them] by a 3PVRO" to the Office of Election Crimes and Security. Fla. Admin. Code R.1S-2.042(8)(c). Under the Florida Election Code,[5] the Office of Election Crimes and Security "may review complaints and conduct preliminary investigations into alleged violations of the Florida Election Code . . . ." § 97.022(2), Fla. Stat. In doing so, the Office of Election Crimes and Security fulfills its purpose of "aid[ing] the Secretary of State in completion of his or her dut[y]" to "conduct preliminary investigations into any irregularities . . . involving voter registration . . . and report his or findings to the statewide prosecutor."[6] §§ 97.012(15), 97.022(1), Fla. Stat.

---

[5] The Florida Election Code comprises chapters ninety-seven through one hundred six of the Florida Statutes. § 97.011. This range includes the provisions challenged in this case, all of which amend section 97.0575.

[6] The Statewide Prosecutor is appointed by the Attorney General and part of the Office of the Attorney General. Fla. Const. Art. IV, § 4(b).

11

Finally, "[i]f the Secretary of State reasonably believes that a person" has violated the 3PVRO-specific sections of the Election Code, the Secretary "may refer the matter to the Attorney General for enforcement" via civil action. § 97.0575(8), Fla Stat. This causal chain—from violation, to mandatory report, to preliminary investigation, to civil action—includes mandatory action by the relevant Supervisor. Removing a Supervisor's mandatory report breaks the chain.

The Supervisors argue that "[n]othing in section 97.0575 grants the Supervisors any authority to initiate actions against 3PVROs for any violations of that section or to assess the fines that Plaintiffs challenge." ECF No. 146 at 6. That is correct. The Attorney General is the one who initiates civil actions for enforcement, and a fine resulting from such an action is presumably assessed by a court judgment. § 97.0575(8), Fla. Stat. Nonetheless, a Supervisor's required report is a "*de facto*" cause of the fines (and of the actions that seek their imposition). *See Dep't of Comm.*, 139 S. Ct. at 2566. A report is not "the very last step in the chain of causation," but it need not be to establish traceability. *Walters*, 60 F.4th at 650 (quotation omitted).

Granted, this is not the only conceivable causal chain by which Plaintiffs might be injured. As mentioned *supra*, the Secretary has also issued a regulation allowing "[a]ny person, organization, or entity (including a Supervisor of Elections) [to] report allegations of irregularities or fraud involving voter registration activities

12

by filing an elections fraud complaint with the Division [of Elections]." Fla. Admin. Code R. 1S-2.042(8)(b). Had Plaintiffs relied on this permissive, generally available reporting channel, which encompasses violations of more than just untimely filing of registration applications by 3PVROs, Plaintiffs would not have established traceability. *See ACLU of Fla., Inc.*, 546 F. Supp. 3d. Additionally, rather than submit voter registration applications to a Supervisor, 3PVROs may instead submit them directly to the Division of Elections. *See* Fla. Admin. Code R. 1S-2.042(5)(d). In this channel, the Supervisors play no role at all—an injury from an application's untimely filing directly with the Division of Elections would not be fairly traceable to the Supervisors.

But neither the permissive, generally available reporting route nor the Division of Elections direct-submission route is the causal chain Plaintiffs present. Instead, Plaintiffs present a causal chain where the Supervisors' role in injuring them stems from the Supervisors' obligation to report violations of section 95.0575. *See* ECF No. 184 ¶ 60 ("The Supervisors are *charged with* reporting violations of Fla. Stat. § 97.0575 to the Secretary and Attorney General, and may issue warnings to 3PVROs.") (emphasis added). In that causal chain, Plaintiffs would suffer no injury but for the Supervisors' mandatory report. The mere availability of other potential causal chains does not change that conclusion. In sum, Plaintiffs' alleged injuries implicating the 3PVRO Fines Provision are fairly traceable to the Supervisors.

13

2

Next, redressability. The redressability component of standing deals with "whether a decision in a plaintiff's favor would significantly increase . . . the likelihood that she would obtain relief . . . , whether directly or indirectly." *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301–02 (11th Cir. 2019) (en banc) (citations omitted) (cleaned up). "Significantly, for standing purposes the relief sought need not be complete." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023) (citing *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021); *Made in the U.S.A. Found. v. United States*, 242 F.3d 1300, 1310 (11th Cir. 2001)).

Here, enjoining the Supervisors from taking any action to enforce the 3PVRO Fines Provision—thus prohibiting them from reporting untimely filed voter registration applications pursuant to the Secretary's regulation implementing the 3PVRO Fines Provision—would increase the likelihood that Plaintiffs obtain relief. Given that the Supervisors' reports are both mandatory and specific to untimely filing of voter registration applications, they represent a significant channel (perhaps the primary channel) through which the Secretary learns of violations of section 97.0575(5). Without them, 3PVROs would face a reduced threat of fines for untimely filed applications. That reduction in threat affords at least partial relief, which is all the redressability inquiry requires. *See Garcia-Bengochea*, 57 F.4th at 927 (citations omitted). Consequently, it is no answer that other means of reporting,

14

discussed *supra*, also exist. Nor does it matter that holding the current 3PVRO Fines Provision unconstitutional would reinstate the (lesser) fines in place before S.B. 7050's passage, as the Supervisors suggest. *See* ECF No. 146 at 6. A lesser fine, too, affords partial relief. In sum, Plaintiffs have met the redressability requirement as their challenges pertain to the Supervisors' role in enforcing the 3PVRO Fines Provision.

### III

In challenging the 3PVRO Fines Provision, Plaintiffs allege injuries that are fairly traceable to, and redressable by a court order against, the Supervisors. Therefore, they have standing to sue the Supervisors.[7] The Supervisors' motion to dismiss, ECF No. 146, is **DENIED**.

**SO ORDERED on January 12, 2024.**

s/Mark E. Walker<br>
**Chief United States District Judge**

---

[7] Of course, that Plaintiffs have demonstrated standing at this stage does not mean that they will have standing at a later stage of these proceedings. *See Church*, 30 F.3d at 1336 (citation omitted). Facts undermining or bolstering standing may develop over the course of discovery, and Plaintiffs' theory of the case may change. The Supervisors are free to argue at a later stage that, based on such developments, Plaintiffs lack standing to sue them. Additionally, this Court remains aware of its independent obligation to ensure the existence of a case or controversy at each stage of the proceeding. *See CAMP Legal Def. Fund, Inc.*, 451 F.3d at 1273.