## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

     *Plaintiffs*,

     v.                     Case No. 4:23-cv-215-MW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

     *Defendants*.

_____/

## THE SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT ON COUNTS VII AND IV AND MEMORANDUM IN SUPPORT

Secretary of State Cord Byrd moves for summary judgment on Counts VII and IV of the NAACP Plaintiffs' Third Amended Complaint. *See* 4:23-cv-215, Doc.184 (NAACP Plaintiffs' Third Amended Complaint). Count VII is a challenge to SB 7050's Mail-In Ballot Request Restriction under § 208 of the Voting Right Act ("VRA"). Count IV is a challenge to SB 7050's Citizen Restriction under 42 U.S.C. § 1981. For the reasons discussed in the accompanying memorandum of law, material facts are not in dispute, making summary judgment for the Secretary appropriate.

# I.  Introduction

SB 7050's Mail-In Ballot Request Restriction and Citizen Restriction are two of the provisions at issue in this case. The former prevents non-family members and non-legal guardians from submitting requests for vote-by-mail ballots on behalf of voters. The latter prevents non-citizens from collecting or handling completed voter-registration forms for third-party voter registration organizations ("3PVROs").

Plaintiffs allege that the Mail-In Ballot Request Restriction violates the right of a voter who requires assistance to vote by reason of blindness, disability, or inability to read or write to be assisted by a person of the voter's choice under § 208 of the VRA. But the Mail-In Ballot Request Restriction does no such thing when properly read together with other provisions of the Florida law that expressly allow such assistance.

Plaintiffs further allege that the Citizen Restriction violates the right of non-citizen canvassers to contract under 42 U.S.C. § 1981. Section 1981, however, is an improper vehicle to invalidate an election law. The federal statute requires "[a]ll persons within the jurisdiction of the United States" to "have the same right[s]," such as the right to "make and enforce contracts," "as is enjoyed by white citizens." 42 U.S.C. § 1981(a). As far as the Secretary can tell, § 1981 has also never been used to invalidate federal, state, or local statutes, regulations, or ordinances—let alone an election law like SB 7050's Citizen Restriction. Instead, it's been applied to business-to-business negotiation cases, employment-discrimination cases, and union-related cases. Perhaps sensing this, Plaintiffs focus their arguments on federal preemption, contending that by

passing § 1981, Congress preempted states from passing laws that might affect a non-citizen's employment. This too is wrong. Section 1981 doesn't preempt the Citizen Restriction.

## II.  Undisputed Material Facts

### A.      The Mail-In Ballot Request Restriction

Under the Mail-In Ballot Request Restriction, a supervisor of elections "shall accept a request for a vote-by-mail ballot only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian." Ch. 2023-120, § 26, Laws of Fla. (codified at Fla. Stat. § 101.62(1)(a)), http://laws.flrules.org/2023/120.[1] A person making a request for a vote-by-mail ballot on behalf of a voter must disclose "[t]he requestor's relationship to the voter." Fla. Stat. § 101.62(1)(b). The term "immediate family" means "[t]he voter's spouse, parent, child, grandparent, grandchild, or sibling, or the parent, child, grandparent, grandchild, or sibling of the voter's spouse." *Id.* § 101.62(1)(d)(1). The Florida Department of State is required to "prescribe by rule . . . a uniform statewide application to make a written request for a vote-by-mail ballot." The Secretary has offered several important

---

[1] The Mail-In Ballot Request Restriction clarified what Florida law already required. *See* Fla. Stat. § 101.62(1)(a)-(b) (2022) (stating that a supervisor "shall" accept a request for a vote-by-mail ballot from an elector and that a supervisor "may" accept a request for a vote-by-mail ballot from a member of the elector's immediate family or the elector's legal guardian if directly instructed by the elector).

governmental interests in support of the Mail-In Ballot Request Restriction. Doc.200-1.[2]

The Mail-In Ballot Request Restriction was not enacted in a vacuum, however. Florida law required the Department of State to submit a report on or before February 1, 2023 to the President of the Senate, the Speaker of the House of Representatives, and the Governor of Florida regarding potential additional modifications to procedures governing the State's vote-by-mail balloting that would help to further ensure election integrity while also protecting voters from identify theft and preserving the public's right to participate in election processes. Doc.200-2; *see* ch. 2022-73, § 31, Laws of Fla., https://laws.flrules.org/2022/73.

The Department submitted its report on February 1, 2023. Doc.200-3; *see* https://files.floridados.gov/media/706253/dept-of-state-report-vote-by-mail-system-20230201.pdf. Among other things, the report advised the Florida Legislature that, under federal law, "any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." Doc.200-3 at 18 (quoting 52 U.S.C. § 10508, also known as § 208 of the VRA). The report went on to acknowledge that this provision of federal law is "codified" in various provisions of Florida law. Doc.200-3 at 18.

---

[2] Doc.200 contains the exhibits to this motion; page citations are to the blue page number in the upper-right corner.

Indeed, various provisions of Florida law mandate accommodations for those who need assistance—including with respect to requests for vote-by-mail ballots. *See, e.g.*, Fla. Stat. §§ 97.061, 101.051, 101.62(6), 101.655, 101.661, 101.662. Of note, Florida law expressly provides that:

> Any elector applying to cast a vote-by-mail ballot in the office of the supervisor, in any election, who requires assistance to vote by reason of blindness, disability, or inability to read or write may request the assistance of some person of his or her own choice, other than the elector's employer, an agent of the employer, or an officer or agent of his or her union, in casting his or her vote-by-mail ballot.

Fla. Stat. § 101.051(3).

Florida law also provides the Secretary of State with rulemaking authority to implement this disability-related provision consistent with federal law. He is the "chief election officer" of the State of Florida, Fla. Stat. § 97.012, with the ability to "adopt by rule uniform standards for the proper and equitable interpretation and implementation . . . of the Election Code," and to "[p]rovide uniform standards for the proper and equitable implementation of the registration laws by administrative rule," *id.* § 97.012(1)-(2); *see also* Fla. Stat. § 120.54. In addition, the legislature has directed the Secretary to ensure that "all . . . forms prescribed or approved by the department are in compliance with the Voting Rights Act." Fla. Stat. § 97.012(9). Consistent with those and other grants of authority, the Department of State initiated rulemaking to implement SB 7050's changes to section 101.62's requests for vote-by-mail ballots. *See also* Fla. Stat. §§ 101.62(1)(a), 101.62(6), 101.662.

5

The Department of State published the notice of rule development for the vote-by-mail ballot request rule on June 23, 2023 and Plaintiffs (along with other stakeholders) were invited to the workshop scheduled for July 10, 2023 to participate in crafting the language and forms. *See* Fla. Admin. Code R. 1S-2.055 (Vote-by-mail Requests),       https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.055.       The Department also sought public comment, *see generally* Fla. Stat. § 120.54, before publishing on December 21, 2023 the version of the rule that the Department intends to expeditiously adopt and file after the sole administrative challenge pending against the rule is resolved.[3,4]

---

[3] On October 27, 2023, a pro se litigant filed a rule-challenge petition in the Florida Division of Administrative Hearings ("DOAH") asserting, among other things, that proposed rule 1S-2.055 is in invalid exercise of delegated legislative authority because section 101.62(1)(a) allegedly provides that a supervisor of elections can only send a vote-by-mail ballot to a family member or guardian of a voter if the *supervisor* is first "directly instructed by the voter" to accept a vote-by-mail ballot request made by a family member or guardian. *See Boydstun v. Department of State*, No. 23-4487RP (Fla. DOAH). Of course, that interpretation of section 101.62(1)(a) cannot be right because it is contrary to the statute's text; "if directly instructed by the voter" clearly references "a member of the voter's immediate family or the voter's legal guardian." It is also incorrect because it would render the statute superfluous; a voter would simply have no need for a family member or guardian to make a request for a vote-by-ballot on his or her behalf if the voter must first "directly instruct[]" his or her supervisor to accept such a request.

[4] On January 18, 2024, the pro se litigant indicated at a telephonic status conference in DOAH that he intends to file an amended rule-challenge petition on January 23, 2024. During the status conference, the Department made an ore tenus motion requesting a non-evidentiary expedited final hearing. The administrative law judge, recognizing the need for an expedited resolution of the proceeding, suggested that a final hearing may be scheduled for the first week of February 2024. The parties agreed to another status conference on January 25, 2024, at which time several items

A copy of the rule language the Department intends to adopt and file is attached, Doc.200-4, as is the statewide vote-by-mail request form the Department intends to adopt and file, Doc.200-5. The final rule will become effective within twenty days after it is adopted and filed. *See* Fla. Stat. § 120.54(3)(e)6. ("The proposed rule shall be adopted on being filed with the Department of State and become effective 20 days after being filed . . . ."); *id.* at 120.54(3)(e)3. ("At the time the rule is filed, the agency shall certify . . . that there is no administrative determination pending on the rule.").

The rule language the Department intends to adopt and file concerning vote-by-mail ballots provides in relevant part:

> (3) Requests for Vote-by-Mail Ballots
> (a) Requests must be made by the voter or, if designated by the voter, a member of the voter's immediate family or the voter's legal guardian, notwithstanding (4)(a), (4)(b) and (4)(c) below.
>
> . . .
>
> (4) Vote-by-Mail Requests for Voters Who Require Assistance
> (a) A voter who requires assistance to request a vote-by-mail ballot because of his or her disability or inability to read or write may directly instruct a person of the voter's choice (other than the voter's employer or agent of that employer or officer or agent of the voter's union) to request a vote-by-mail ballot for the voter.
> (b) A supervisor of elections shall accept a request for a vote-by-mail ballot from a person (other than the voter's employer or agent of that employer or officer or agent of the voter's union) designated by a voter who is disabled or unable to read or write. A request may be made in person, in writing, by telephone, or through the supervisor's website.
> (c) For purposes of this rule, the term "disability" includes, but is not limited to, blindness.

---

including the date of the final hearing will be discussed. The Secretary will inform the Court as soon as DOAH rules on the amended petition.

. . .

*Rulemaking Authority: § 97.012(1)-(2), (9), Fla. Stat.; § 101.62(1)(a), Fla. Stat.; § 101.62(6), Fla. Stat.; § 101.662, Fla. Stat. Law Implemented: § 97.061, Fla. Stat; § 101.051(3), Fla. Stat.; § 101.62(1), Fla. Stat.; § 101.62(6), Fla. Stat.; § 101.662, Fla. Stat. History—New _-_-24.*

Doc.200-4 (Fla. Admin. Code R. 1S-2.055) (proposed).

## B.  **The Citizen Restriction**

Under the Citizen Restriction:

(1) Before engaging in any voter registration activities, a third-party voter registration organization must register and provide to the division, in an electronic format, the following information:

. . .

(f) An affirmation that each person collecting or handling voter registration applications on behalf of the third-party voter registration organization is a citizen of the United States of America. A third-party voter registration organization is liable for a fine in the amount of $50,000 for each such person who is not a citizen and is collecting or handling voter registration applications on behalf of the third-party voter registration organization.

Ch. 2023-120, § 4, Laws of Fla. (2023) (codified at Fla. Stat. § 97.0575(1)(f)), http://laws.flrules.org/2023/120. The Secretary has offered several important governmental interests in support of the Citizen Restriction. Doc.200-1.

After the law became effective, the Department of State initiated rulemaking to implement the 2023 Law's changes to § 97.0575 governing third-party voter registration organizations. The final version of the rule was filed and adopted by the Department on September 26, 2023. *See* Fla. Admin. Code R. 1S-2.042 (Vote-by-mail Requests),

https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.042. A copy of the final rule language is attached, Doc.200-6, together with a copy of the final 3PVRO-declaration form adopted as part of the rulemaking, Doc.200-7. The final rule became effective on October 16, 2023. *See* Fla. Stat. § 120.54(3)(e)6.

### III.   Legal Standard

Summary judgment is appropriate when, as here, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While inferences are viewed in favor of the non-moving party, the non-moving party can't rely on conclusory or unsubstantiated statements and discovery responses. *See, e.g., TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1265 (11th Cir. 2023); *McKenny v. United States*, 973 F.3d 1291, 1303 (11th Cir. 2020).

### IV.   Argument

The Secretary is entitled to judgment on Plaintiffs' § 208 claim because the Mail-In Ballot Request Provision—when properly read together with other provisions of Florida law and the Florida Administrative Code—comports with § 208 of the VRA. Plaintiffs' § 1981 claim fails as well because it is an improper vehicle to invalidate an election law, and Florida law doesn't otherwise conflict with § 1981.

**A.     Plaintiffs' § 208 Claim Fails.**

      **1.      The Mail-In Ballot Request Restriction is consistent with federal law—there's no conflict.**

Section 208 of the VRA provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. Assuming that private parties can enforce § 208, which the Secretary isn't conceding, and that Plaintiffs have standing to challenge a provision on behalf of their beneficiaries, which the Secretary isn't raising, Plaintiffs still can't show that Florida law is inconsistent with (and therefore preempted by) § 208. That's because other provisions of the Florida election code, when read together with the Mail-in Ballot Request Restriction, specifically allow the very thing that § 208 of the VRA guarantees to voters. Florida's rule concerning the request of vote-by-mail ballots does much the same.

> **a.   Fla. Stat. § 101.051(3) specifically allows a voter who requires assistance to vote by reason of blindness, disability, or inability to read or write to be given assistance by a person of his or her choice.**

According to Plaintiffs, the Mail-In Ballot Request Restriction "unlawfully prevents individuals covered by § 208 of the VRA . . . from choosing their preferred assister" to request their vote-by-mail ballots. Doc.184 at ¶ 177. In Plaintiffs' telling, Florida law thus expressly conflicts with federal law because "compliance with both federal and state regulations is a physical impossibility," and state law otherwise "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012). That simply isn't so.

Plaintiffs fail to acknowledge that another provision of Florida law—§ 101.051(3)—expressly authorizes voters who require assistance to choose their preferred helper. Section 101.051(3) states that "[a]*ny elector applying* to cast a vote-by-mail ballot . . . , in any election, *who requires assistance to vote by reason of blindness, disability, or inability to read or write may request the assistance of some person of his or her own choice, other than the elector's employer, an agent of the employer, or an officer or agent of his or her union*, in casting his or her vote-by-mail ballot." Fla. Stat. § 101.051(3) (emphasis added). To "apply" means "to make an appeal *or request* esp. in the form of a written application." *Merriam-Webster's Collegiate Dictionary* at 60 (11th ed. 2005). Common sense and context also makes clear that one must request and receive a ballot before casting it; requesting and receiving are necessary pre-requisites to casting a vote-by-mail ballot. *See id.* Section 101.051(3) thus allows a voter who needs assistance "in casting his or her vote-by-mail ballot" to get assistance in requesting that ballot, *see id.*; that's no different than § 208 of the VRA, which has nearly identical language, *see* 52 U.S.C. § 10508.

Nor can supervisors of election ignore § 101.051(3) when receiving vote-by-mail requests by citing the Mail-In Ballot Request Restriction. The rules of statutory construction require that:

- One reads statutes in pari materia and avoids constitutional issues. *See, e.g.*, *Porter v. Inv'rs Syndicate*, 286 U.S. 461, 470 (1932) ("[W]e are bound if fairly possible to construe the [state] law so as to avoid the conclusion of unconstitutionality."); *Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1126 n.12 (11th Cir. 2016) ("It is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole. Where possible, courts must give full effect

to *all* statutory provisions and construe related statutory provisions in harmony with one another." (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992)); *Cox Enters. v. Pension Benefit Guar. Corp.*, 666 F.3d 697, 706 (11th Cir. 2012) ("The doctrine of in pari materia requires the courts to construe related statutes together so that they illuminate each other and are harmonized." (quoting *McGhee v. Volusia Cty.*, 679 So. 2d 729, 730 n.1 (Fla. 1996)); *Coates v. R.J. Reynolds Tobacco Co.*, 48 Fla. L. Weekly S1, Fla. LEXIS 17, *3 (Fla. Jan. 5, 2023) ("[W]e have long subscribed to a principle of judicial restraint by which we avoid considering a constitutional question when the case can be decided on nonconstitutional grounds." (citation omitted)); *1944 Beach Boulevard, LLC v. Live Oak Banking Co.*, 346 So. 3d 587, 593 (Fla. 2022) ("The doctrine of in pari materia is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." (citation omitted)).

- A general prohibition can't displace a specific authorization. *See, e.g.*, *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017) ("The general prohibition on acting service by nominees yields to the more specific authorization allowing officers up for reappointment to remain at their posts."); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (noting that "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission" but that it may also be applied to avoid "the superfluity of a specific provision that is swallowed by the general one"); *State v. J.M.*, 824 So. 2d 105, 112 n.9 (Fla. 2002) (noting "the statutory canon of construction that requires courts to find that a more specific statute would control over a general statute"); *State v. Putnam Cty. Dev. Auth.*, 249 So. 2d 6, 10 (Fla. 1971) ("Language elsewhere in the statute to the effect that bonds may be issued only if they are payable solely from revenue derived from the sale, operation or leasing of the project will not defeat this specific authorization to mortgage.").

Here, the Mail-In Ballot Request Restriction and section 101.051(3) both concern the vote-by-mail ballots—the same subject—and can be read in pari materia

to avoid a conflict: the former imposes a general restriction on who can request vote-by-mail ballots and the latter carves an exception for those with disabilities, allowing them to choose anyone other than their employer (or union official) to help. In this way, the more general provision concerning vote-by-mail ballot requests also does not swallow the more specific provision related to disabled voters. Such a reading avoids a constitutional issue as well, namely preemption. And it's consistent with the Florida Legislature's longstanding record of making voting-related accommodations for the disabled, *see, e.g.*, Fla. Stat. §§ 97.061, 101.051, 101.62(6), 101.655, 101.661, 101.662, and decision *not* to repeal or amend section 101.051(3) during the most recent legislative session, *see* Doc.200-3 at 18 (discussing § 101.051(3) before the legislative session).

## 2. The proposed rule interpreting the Mail-In Ballot Request Restriction avoids a conflict as well.

In any event, Plaintiffs' conflict preemption claim fails for an additional reason: pending changes to the Florida Administrative Code are poised to harmoniously and lawfully interpret Florida law to accomplish the very result that Plaintiffs seek. Rule 1S-2.055 is clear as to what a voter who requires assistance may do:

> A voter who requires assistance to request a vote-by-mail ballot because of his or her disability or inability to read or write *may* directly instruct a person of the voter's choice (other than the voter's employer or agent of that employer or officer or agent of the voter's union) to request a vote-by-mail ballot for the voter.

Doc.200-4 (Fla. Admin. Code R. 1S-2.055) (proposed) (emphasis added).

Rule 1S-2.055 is also clear as to what a supervisor of election must do:

> A supervisor of elections *shall* accept a request for a vote-by-mail ballot from a person (other than the voter's employer or agent of that employer or officer or agent of the voter's union) designated by a voter who is disabled or unable to read or write. A request may be made in person, in writing, by telephone, or through the supervisor's website.

Doc.200-4 (Fla. Admin. Code R. 1S-2.055) (proposed) (emphasis added).

Rule 1S-2.055 thus ensures that Florida's vote-by-mail-request framework is consistent with federal and state law. It expressly allows a voter who requires assistance to vote by reason of blindness, disability, or inability to read or write to be given assistance by a person of his or her choice to request a vote-by-mail ballot consistent with § 208 of the VRA. *See* 52 U.S.C. § 10508. And it expressly requires a supervisor of elections to accept such a request.

Plaintiffs assert, however, that rule 1S-2.055 "does not inform judicial review of the statute" because Florida courts must interpret statutes and rules "de novo." Doc.184 at ¶ 180 (citing art. V, § 21, Fla. Const.). That's true, but it misses the point. The Department intends to expeditiously promulgate a rule consistent with its statutory authority. Once the rule is promulgated, and if a "county supervisor of elections" fails to follow that "rule," then the Secretary may "[b]ring and maintain" an action to "enforce compliance." Fla. Stat. § 97.012(14). Voters may do the same to protect their right to request a ballot. The rule is the State's definitive interpretation on the issue, one that gives effect to other statutory provisions.

**B.    Plaintiffs' § 1981 Claim Fails.**

Plaintiffs' 42 U.S.C. § 1981 claim against the Citizen Restriction must fail as well.

That provision states in full:

> (1) Before engaging in any voter registration activities, a third-party voter registration organization must register and provide to the division, in an electronic format, the following information:
>
> . . .
>
> (f) An affirmation that each person collecting or handling voter registration applications on behalf of the third-party voter registration organization is a citizen of the United States of America. A third-party voter registration organization is liable for a fine in the amount of $50,000 for each such person who is not a citizen and is collecting or handling voter registration applications on behalf of the third-party voter registration organization.

Fla. Stat. § 97.0575(1)(f). Relevant to Plaintiffs claim, § 1981 states:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981. Plaintiffs seek to enjoin the Secretary from violating what they allege

are the § 1981 contractual rights of non-citizen employees of 3PVROs.

15

Section 1981 is a post-Civil War statute that prohibits "racial discrimination" "with respect to the rights enumerated therein," *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 387 (1982), including the right to "make and enforce contracts," 42 U.S.C. § 1981(a). While § 1981's text and legislative history reflects its race-based aims, *e.g.*, *Gen. Bldg. Contractors*, 458 U.S. at 384-88; *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1015 (2020), the old Fifth Circuit and the Eleventh Circuit have held that it also prohibits discrimination based on alienage, *see, e.g.*, *Ramirez v. Sloss*, 615 F.2d 163, 167-68 (5th Cir. 1980); *see also Wright v. Southland Corp.*, 187 F.3d 1287, 1297 n.12 (11th Cir. 1999).

Even so, § 1981 itself is an improper means to invalidate election laws. As far as the Secretary can tell, § 1981 has never been used to invalidate federal, state, or local statutes, regulations, or ordinances. Courts have applied the provision in business-to-business negotiation cases, employment-discrimination cases, and union-related cases.

16

Cases from the Supreme Court[5] and the en banc Eleventh Circuit,[6] and the five most recent Eleventh Circuit § 1981 cases,[7] confirm this understanding.

Plaintiffs may point to *Takahashi v. Fish & Game Commission*, 334 U.S. 410 (1948), *Graham v. Richardson*, 403 U.S. 365 (1971), or *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), to bolster their position that § 1981 applies here; however, these cases are inapt. While they mention § 1981, the cases were decided on Equal Protection Clause grounds, not § 1981 grounds. *Takahashi*, 334 U.S. at 414-15 & n.4; *Graham*, 403 U.S. at 366; *Yick Wo*, 118 U.S. at 374. Section 1981, moreover, was generally invoked in these cases when discussing background federalism principles. *Takahashi*, 334 U.S. at 418-19; *Graham*, 403 U.S. at 376-78. So these cases don't help Plaintiffs.

Plaintiffs' preemption arguments also miss the mark. Preemption can be express or implied. *Kansas v. Garcia*, 140 S. Ct. 791, 797 (2020). Express preemption occurs when

---

[5] *Comcast Corp.*, 140 S. Ct. 1013 (business-to-business negotiation case); *St. Francis Coll.*, 481 U.S. at 608 (employment-discrimination case); *Gen. Bldg. Contractors*, 458 U.S. at 378 (union-related case).

[6] *Lewis v. City of Union City*, 918 F.3d 1213, 1219 (2019) (en banc) (employment-discrimination case).

[7] *Tynes v. Fla. Dep't of Juv. Just.*, 2023 U.S. App. LEXIS 32836, at *2 (11th Cir. Dec. 12, 2023) (employment-discrimination case); *Phillips v. Legacy Cabinets*, 2023 U.S. App. LEXIS 32550, at *1 (11th Cir. Dec. 8, 2023) (employment-discrimination case); *Hubbard v. Best in Town, Inc.*, 2023 U.S. App. LEXIS 31665, at *1 (11th Cir. Nov. 30, 2023) (employment-discrimination case); *Tolley v. Mercer Univ.*, 2023 U.S. App. LEXIS 31488, at *1 (11th Cir. Nov. 29, 2023) (employment-discrimination case); *Miller v. Ali*, 2023 U.S. App. LEXIS 30547, at *2 (11th Cir. Nov. 16, 2023) (employment-discrimination case).

a federal statute expressly states that it preempts State action. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Implied preemption occurs either (a) when Congress has "legislated so comprehensively in a particular field that it left no room for supplementary state legislation," or (b) when it's impossible to comply with both federal and state law. *Garcia*, 140 S. Ct. at 804-06 (cleaned up). Preemption is not, however, a means to "elevate abstract and unenacted legislative desires above state law." *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2018).

Plaintiffs here only contend that it's impossible to comply with both federal and state law. Doc.184 at ¶ 146 ("The Citizenship Requirement directly conflicts with, and stands as an obstacle to, the purpose of Section 1981"). In other words, they're arguing conflict preemption, not  express preemption or implied field preemption.

But there's no conflict between § 1981 and SB 7050's Citizen Restriction. Complying with one doesn't violate the other. *Garcia*, 140 S. Ct. at 806. A 3PVRO that prevents an illegal alien from collecting and handling completed voter-registration forms doesn't deny the illegal alien the right "to make and enforce contracts" "as enjoyed by white citizens." 42 U.S.C. § 1981(a). Some white citizens don't even have a right to collect and handle completed voter-registration forms: like the Citizen Restriction, SB 7050 also prevents certain felons from collecting and handling forms, be they white or otherwise. Fla. Stat. § 97.0575(1)(f).

To a larger point, Plaintiffs seem to suggest that § 1981 prevents States from passing laws that touch on alienage and employment. That too is wrong. States can

constitutionally pass such laws, and have done so regarding police-officer employment, *Foley v. Connelie*, 435 U.S. 291 (1978), and public-school-teacher employment, *Ambach v. Norwick*, 441 U.S. 68 (1979), for example. Granted, *Foley* and *Ambach* are equal-protection cases, not § 1981 cases, but these cases still raise the same questions: if § 1981 can prohibit States from touching alienage and employment, as Plaintiffs say, why wasn't § 1981 invoked? Why wasn't it raised in cases like *Bernal v. Fainter*, 467 U.S. 216 (1984), or *In re Griffiths*, 413 U.S. 717 (1973)? Wouldn't § 1981—an ostensibly straightforward and longstanding statutory remedy—have been a viable alternative to the Equal Protection Clause in these cases?

The better answer is that § 1981 doesn't sweep that far. It applies only to business-to-business negotiation cases, employment-discrimination cases, and union-related cases, and not cases involving State election laws. Plaintiffs would get no further if they argued that Title VII preempts or somehow conflicts with the Citizen Restriction. *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.5 (2019) (en banc) (§ 1981 employment-discrimination claims are analyzed like Title VII employment-discrimination claims).

Plaintiffs are left to argue that § 1981 invokes a general anti-discrimination principle, which, they say, SB 7050's Citizen Restriction violates. But this is insufficient. "Efforts to ascribe" "objectives to a federal statute" simply aren't good enough. *Va. Uranium*, 139 S. Ct. at 1907. As such, the Secretary is entitled to summary judgment on the § 1981 claim.

19

## V. Conclusion

For the foregoing reasons, this Court should enter summary judgment as to the NAACP Plaintiffs' § 208 claim against the Mail-In Ballot Request Restriction (Count VII), and the NAACP Plaintiffs' § 1981 Claim against the Citizen Restriction (Count IV).

Dated: January 18, 2024

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

Respectfully submitted,

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Joshua E. Pratt (FB 119347)
jpratt@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

John J. Cycon (NYBN 5261912)*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
15405 John Marshall Hwy
Haymarket, VA 20169
Telephone: (212) 701-3402
jcycon@holtzmanvogel.com

*Counsel for Secretary Byrd*

*\*Admitted pro hac vice*

21

**<u>Certificate of Compliance</u>**

I certify that the summary-judgment memorandum is 4,604 words, which is under the 8,000-word limit in Local Rule 56.1(B). I also certify that this document complies with the typeface and formatting requirements in Local Rule 5.1.

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil

**<u>Certificate of Service</u>**

I certify that on January 18, 2024, this document was uploaded to CM/ECF, which sends the document to all counsel of record.

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil
