```
1                UNITED STATES DISTRICT COURT
2                NORTHERN DISTRICT OF FLORIDA
3                    TALLAHASSEE DIVISION
4      - - - - - - - - - - - - x
5     FLORIDA STATE              :
6     CONFERENCE OF              :
7     BRANCHES AND YOUTH         :
8     UNITS OF THE NAACP,        :
9     et al.,                    :
10        PLAINTIFFS,            :
11    V.                         :   CASE NO.
12    CORD BYRD, IN HIS          :   4:23-CV-215-MW/MAF
13    OFFICIAL CAPACITY          :   4:23-CV-216-MW/MAF
14    AS FLORIDA SECRETARY       :   4:23-CV-218-MW/MAF
15    OF STATE, ET AL.,          :
16        DEFENDANTS.            :
17    ---------------------      :
18    LEAGUE OF WOMEN            :
19    VOTERS OF FLORIDA,         :
20    INC., ET AL.               :
21        PLAINTIFFS,            :
22    V.                         :
23    ASHLEY MOODY, IN HER       :
24    OFFICIAL CAPACITY AS       :
25    ATTORNEY GENERAL OF        :
```

```
1    FLORIDA, ET AL.,          :
2       DEFENDANTS.            :
3    ---------------------     :
4    HISPANIC FEDERATION,      :
5    ET AL.,                   :
6       PLAINTIFFS,            :
7    V.                        :
8    CORD BYRD, IN HIS         :
9    OFFICIAL CAPACITY         :
10   AS THE SECRETARY OF       :
11   STATE OF FLORIDA, ET      :
12   AL.,                      :
13      DEFENDANTS.            :
14    - - - - - - - - - - - - X
15
16         DEPOSITION OF NICHOLAS BERNARD COX
17                 Conducted Virtually
18            Wednesday, December 20, 2023
19                    9:59 a.m. EST
20
21
22
23   Job No.: 518701
24   Pages: 1 - 233
25   Reported By: Paul Smakula
```

1  would be responsible for any criminal
2  prosecutions.
3        In terms of the civil side of this, I'm
4  really -- I'm not in the position -- I'm not here
5  appearing that way, and if I were to answer that,
6  I would answer that consistent with what the
7  statutes direct.
8      Q   Sure.  Just go ahead --
9      A   I hope that's a fair answer.
10     Q   Yeah.  That's helpful.  And we can explore
11 it a little bit.  Part of that answer you said it
12 would involve, I think you said, the things that
13 we're asking about but we haven't had any of that.
14       Can you tell me in a little bit more
15 detail of what you mean by that?
16     A   In relation to--
17       MS. MORSE:  Objection to form.
18       You can answer.
19     A   I'm sorry.
20       MS. MORSE:  I was just inserting an
21 objection to form.
22       You can answer.
23     A   In relation to 97.0575 of the Florida
24 statutes, as you know, there are criminal
25 provisions in there, and that's what I was

1   referring to.
2        Q   Okay.  So your office has not prosecuted
3   anyone criminally under 97.0575, is that
4   essentially what you mean?
5        A   That's correct.
6        Q   Okay.  Thanks.  So then let's talk about
7   -- we're going to talk about a little bit about
8   investigations or cases that have come up.  And I
9   know that -- let me see if I have a correct sense
10  of what entities in Florida are handling these.
11  So, there's the Office of Election Crimes and
12  Security that's within the Secretary of State's
13  office; is that correct --
14       A   Yes, sir.
15       Q   -- that you work with?  And then there's
16  FDLE, Florida Department of Law Enforcement, that
17  you also work with; is that correct?
18       A   Yes, sir.
19       Q   Okay.  And so if you are referred a case
20  involving election related matters, is it correct
21  to say that it could come from OECS, FDLE or a
22  direct citizen complaint?  Are those the three
23  ways that you might start investigating a matter?
24       A   I would say --
25           MS. MORSE:  Objection to form.  Objection

1  to form.
2          You can answer.
3      A   I would say no, only because we would get
4  them from OECS.
5      Q   Okay.
6      A   We would get them from FDLE.  If I were to
7  get anything from a citizen, I would forward that
8  to the law enforcement agency for them to handle,
9  not me.
10     Q   Okay.
11     A   And then we might -- I don't think it's
12 happened yet, but we could get any of these also
13 from any law enforcement agency in the state of
14 Florida.  I don't think that's happened, though.
15     Q   Okay.  So, the citizen complaint would go
16 somewhere else and then it might eventually make
17 its way to you; is that right?
18     A   Through a law enforcement agency, yes,
19 sir.
20     Q   Sure.  Okay.  That's very helpful.
21 Thanks.  Let's see.
22         So, how -- which cases would OECS or FDLE
23 bring to your office?  How do they decide that it
24 needs to go to OSP?
25         MS. MORSE:  Objection to form.

```
 1            You can answer.
 2         A  Honestly, you would have to ask OECS and
 3   FDLE that.  Because I'm not familiar with how they
 4   determine what they're going to send to us.  I
 5   know there is interaction between the two of them.
 6   So, you have to ask them.
 7         Q  Yeah.  Also, might refer a case to a local
 8   state attorney rather than your office; is that
 9   right?
10         A  I'm sorry, could you say that again?  I
11   didn't quite hear you.
12         Q  They also might refer a case to a local
13   state attorney instead of your office; right?
14         A  Yes, sir.
15         Q  Okay.
16         A  And just -- I'll add, too, they have.
17         Q  They have?
18         A  Yes, sir.
19         Q  Okay.  And then does the AG's office as a
20   whole ever initiate its own election-related
21   investigations?  And I'll limit it to criminal
22   here, if that's helpful.
23         A  It depends -- I'm not playing word games
24   -- depends on what you mean by initiate.  For
25   instance, what you said earlier, just to
```

1    illuminate for you?
2        Q   Yeah.
3        A   A citizen wrote a letter to me and said,
4    there's something going on and it needs to be
5    investigated.  You might call it initiating it
6    when I send it to law enforcement and say, hey,
7    here's for your consideration.  I do not direct
8    law enforcement, I don't have the authority to
9    tell them what to do; but I could send it to them
10   and say, take a look, see what you think.
11       Q   Okay.
12       A   If that's initiating, yes.  Other than
13   that, no, sir.
14       Q   Okay.  That's helpful.
15       A   And, by the way, just so I can clarify, we
16   are talking here specifically about elections?
17       Q   Yes.
18       A   Okay.
19       Q   What is the election crimes task force?
20       A   The elections crimes task force, I
21   believe, is really the -- getting into semantics
22   here, it's like the arm of the -- no, that's the
23   wrong way to put it -- the elections crimes task
24   force is us, FDLE, and the Department of State, if
25   that's what you're asking.

1  investigation, whatever you want to call it.
2      Q   Okay.
3      A   I don't know if -- we do not have
4  investigators in the Office of Statewide
5  Prosecution.
6      Q   That's actually the question I have a
7  little later down.  So thanks for -- we'll get
8  back to that in a minute.  There's a question I
9  had in between now and -- or one topic between now
10 and then.
11     A   Okay.
12     Q   This is topic five, which would be on the
13 screen in front of you.  This is the office's
14 process and procedures for investigating and
15 finding 3PVROs and their agents.  So it sounds
16 like there isn't a process for investigating
17 within OAG; is that right?
18     A   For 3PRVOs, and their agents, no, there's
19 not.
20     Q   Okay.  So OAG's role is just assessing the
21 fines; is that right?
22     A   No.  We don't assess the fines.  That
23 would be done civilly.  And it would probably --
24 again, I believe it would be referred if that
25 happened, if we ever had anything like that, would

```
 1   probably go to Jimmy Percival.
 2       Q  So, just to be clear, when you say we
 3   wouldn't have that, you mean OSP wouldn't assess
 4   the fines; right?
 5       A  I'm sorry.  Yes, ma'am.  Statewide
 6   Prosecutions, yes, ma'am.
 7       Q  But OAG, more broadly, would have the
 8   power to assess fines; right?  Just in the civil
 9   section?
10       A  I believe that that authority lies with
11   OECS -- excuse me, the Department of State,
12   primarily.  I am unaware of the AG's, to my
13   experience, to my knowledge, assessing fines on
14   the election based crimes.
15       Q  Okay.  So it's your -- -- you were
16   designated to talk about this issue, and your
17   understanding is this is not something that's
18   within the OAG's authority; is that right?
19       A  I'm not saying it's not within our
20   authority, it's not within our practice, as I
21   understand it right now, to do that.  It may be
22   within the OAG authority, and if it were, it would
23   go to Jimmy Percival.  But investigating it is not
24   anything that I do, because that goes, you know,
25   with law enforcement or OECS.  But fining is not
```

1    ==anything that falls within statewide prosecution.==
2    ==It may within the Attorney General's office.==
3         Q   Sure.  I want to scroll just back up to
4    the top of this deposition notice.
5              Do you understand that this notice was of
6    the Florida Attorney General's office; right?
7         A   Was what?  For the Attorney General's
8    office?
9         Q   Yeah.  It says plaintiff's notice of
10   taking deposition of office of Florida Attorney
11   General; right?  Just right here at the top?
12        A   Right.
13        Q   And so for topic five, when you realized
14   it wasn't within OSP's -- sorry, wrong page.
15             For topic five, when you flagged that
16   wasn't within OSP's bailiwick, did you speak to
17   anybody else to determine what authority OAG has
18   to fine 3PVROs and their agents?
19        A   Without discussing anything regarding any
20   conversations with counsel, no.
21        Q   Okay.  I'm going to move on then to topics
22   six to eight, all of which I believe you can see
23   on the screen here.  And these are about instances
24   of alleged, suspected, or confirmed unlawful
25   conduct in various situations.

1          Have you had a chance to review those on
2     the screen before I start asking about them?
3          A    I have and I -- yes, I have.
4          Q    Okay.  Earlier you talked about how OSP
5     worked on cases involving illegal voting and could
6     prosecute other election-related matters; do you
7     recall that?
8          A    That OSP worked on legal voting and other
9     pros -- election-related matters.  Yes.  That's
10    what we would do, yes.
11         Q    Okay.  In that conversation, you talked
12    about the election crimes task force.  And you
13    said OAG, FDLE, and SOS were members of that task
14    force; right?
15         A    I was asked about that, and yes, ma'am, I
16    did.
17         Q    Is OECS a part of that task force?  I'm
18    just trying to understand the structure.
19         A    The Office Of Elections Crimes and
20    Security is within the Department of State, and
21    it's the people that are a part of that office are
22    a part of the Department of State, and they are
23    the ones primarily that work with us and FDLE in
24    handling these cases.
25         Q    Okay.  That's helpful.  I know that OSP

```
 1      CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC
 2          I, PAUL P. SMAKULA, the officer before whom
 3   the foregoing deposition was taken, do hereby
 4   certify that the foregoing transcript is a true
 5   and correct record of the testimony given; that
 6   said testimony was taken by me stenographically
 7   and thereafter reduced to typewriting under my
 8   direction; that reading and signing was requested;
 9   and that I am neither counsel for, related to, nor
10   employed by any of the parties to this case and
11   have no interest, financial or otherwise, in its
12   outcome.
13
14   IN WITNESS WHEREOF, I have hereunto set my hand
15   and affixed my notarial seal this 20th day of
16   December, 2023.
17
18   My commission expires:  June 18, 2027.
19
20   [signature]  [notary seal]
21   _____
22   NOTARY PUBLIC IN AND FOR
23   THE STATE OF MARYLAND
24
25
```