```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF FLORIDA
 3                  TALLAHASSEE DIVISION
 4    ---------------------------x
 5    FLORIDA STATE CONFERENCE    :
 6    OF BRANCHES AND YOUTH       :
 7    UNITS OF THE NAACP, et al.,:
 8            Plaintiffs,         :
 9       v                        : Case Nos.:
10    CORD BYRD, in his official  : 4:23-cv-215-MW/MAF
11    capacity as Florida         : 4:23-cv-216-MW/MAF
12    Secretary of State, et al.,: 4:23-cv-218-MW/MAF
13            Defendants.         :
14    ---------------------------x
15    (Caption continued on next page)
16            Videoconference Deposition of
17         OFFICE OF FLORIDA ATTORNEY GENERAL,
18      By and through its Designated Representative,
19                    ELIZABETH GUZZO
20                  Conducted Virtually
21              Tuesday, December 19, 2023
22                     10:05 a.m. EST
23    Job No: 518700
24    Pages: 1- 151
25    Reported by: Suja Nair
```

1  I would say, that you would fill out a form in
2  its entirety.
3       Q.   Okay.  You would agree that this
4  form, at the bottom here, says, 9/26/2023; is
5  that right?
6       A.   Yes.  That's what it says.
7       Q.   Okay. Okay.  I think those are all
8  the questions I have about this document.
9            Now I want to go back to Exhibit 1,
10 again.  So now let's take a look at topic
11 number one.  It says -- actually, I realize
12 we're at the hour.  Is it a good time to take a
13 quick break before I start into this next
14 topic?
15      A.   I'm fine.
16      Q.   Okay. I'm -- I'm fine to keep going,
17 as well.  I just wanted to give you an
18 opportunity at the hour mark.  We can keep
19 going.
20           So the next topic is, Each state
21 interest, if any, that the office believes or
22 contends each of the challenged provisions
23 serves, promotes, or advance, and all facts and
24 evidence supporting a connection between the
25 challenged provisions and the state interests.

```
1              Have I read that correctly?
2         A.   That's what it says.
3         Q.   What, if any, state interest does the
4    AG's office believe is furthered by banning
5    noncitizens from handling or collecting voter
6    registration applications on behalf of 3PVROs?
7              MS. MORSE:  I'm going to object to
8    the extent the question implicates the work
9    product privilege, and instruct the witness not
10   to reveal any work product information.
11             But you can answer.
12        A.   Sure.
13             I would say that we don't have a
14   state interest in this; that we defer to the
15   legislature and other election officials to --
16   to relay what the state interest is, if there
17   is one, and that we defer to them because they
18   are the ones who write the laws.
19        Q.   Okay.  So the AG's office, itself, is
20   not supporting that there's any state interest
21   furthered by banning noncitizens from handling
22   or collecting voter registration applicants; is
23   that right?
24             MS. MORSE:  Objection to form.
25   That's a mischaracterization of her testimony.
```

1      Q.    I'm asking if it's right.  You can
2  tell me if it's not.
3      A.    No.  I said we -- you know, I
4  wouldn't say that we have a state interest;
5  that we defer to those who are in the
6  legislature and other election officials to let
7  us know what the state interest is, as they are
8  the ones who are crafting the legislation.
9      Q.    So the state interest that the AG's
10 office has identified is deference to the state
11 legislature; is that right?
12           MS. MORSE:  Objection to form.
13     A.    Yes.  Basically, we're not taking a
14 state interest; that they are the ones -- we
15 rely on the legislature and other elected
16 officials.  They are the ones who are writing
17 these laws.
18     Q.    Okay.  And so there's not any other
19 substantive interest that the AG believes this
20 law is furthered and necessary -- or sorry --
21 is necessary to further?
22           MS. MORSE:  Objection to the extent
23 it implicates work product.
24           Without -- if you can answer without
25 revealing the work product information, you can

1  answer.
2      A.   I would -- yes.  I would reference
3  back to my prior answer about not having a
4  state interest, and that we are deferring to
5  this legislator -- legislators and the
6  legislative process and elected officials.
7      Q.   And the AG's office --
8      A.   Elections --
9      Q.   Oh.  Go ahead.
10     A.   Sorry.  Elections officials.
11     Q.   Okay.  And the AG's office has not
12 identified any concerns about noncitizens
13 working for 3PVROs that it would put forward as
14 an independent state interest?
15          MS. MORSE:  Objection to the extent
16 it implicates work product privilege.
17     A.   I keep going back to my same answer
18 about the state interest.  I'm not aware of
19 anything else.
20     Q.   Okay.  I might come back to the state
21 interest question a little bit later, but for
22 now, I'm going to jump to -- to topic
23 number 12.  So I'm looking at Exhibit Number 1,
24 page 11.  And that topic says, The office's
25 tracking and/or awareness of the racial

```
 1   breakdown of voters registered via 3PVROs in
 2   Florida.
 3            Did I read that correctly?
 4       A.   Yes.  That's what it says.
 5       Q.   Okay.  What, if anything, did the
 6   AG's office do to track the racial breakdown of
 7   voters registered by 3PVROs in Florida?
 8       A.   I'm not aware of any tracking that
 9   our office maintains.
10       Q.   Okay.  Does the AG's office have any
11   awareness of the racial breakdown of voters
12   registered by 3PVROs in Florida?
13            MS. MORSE:  Objection to form.
14       A.   No.  As I stated, I'm not aware of
15   any tracking that our office maintains or that
16   has been participated in.
17       Q.   Okay.  And so you're not aware of any
18   sort of estimate or ballparking that the AG's
19   office has done relating to the racial
20   breakdown of voters registered by 3PVROs in
21   Florida, right?
22       A.   No.
23       Q.   Okay.  We've already discussed topic
24   13, so I'm going to jump to topic number 14
25   next.  This topic says, Any communications
```

Transcript of Elizabeth Guzzo, Designated Representative
Conducted on December 19, 2023                    77


1  it implicates the work product privilege.
2       A.   It would be in the litigation, when
3  we were asked to keep any documents, whether
4  electronic or not, that was applicable to this.
5  So if someone had that, that would been
6  required to turn over for review of discovery.
7       Q.   And are you aware of any sources of
8  potentially responsive documents that the
9  Florida AG's office did not search?
10      A.   No.
11      Q.   Okay.  At this point, we are nearing
12 11:30.  I'm going to request a -- I'd request a
13 ten-minute break, because I think I'm nearing
14 the end of my questions.  I just want to go
15 through -- through my notes.
16           MS. KEENAN:  So can we go off the
17 record at 11:27 here and return at 11:37?
18           MS. MORSE:  Okay.  Returning at
19 11:37?  Okay.
20           MS. KEENAN:  Thanks.  Thanks, All.
21           (A recess was taken.)
22 BY MS. KEENAN:
23      Q.   I have a handful of follow-up
24 questions before I pass to my -- my co-counsel
25 in this case.

1                First, you explained earlier, as I
2    understood it, that the challenged provisions
3    of SB 7050 weren't a legislative priority for
4    the attorney general's office and that the
5    attorney general's office didn't communicate
6    with the offices of the governor, secretary of
7    state, or legislators about those challenged
8    provisions.  But I have a few follow-up
9    questions, just to make sure I understand what
10   you mean by that.
11               So, first, during the drafting of SB
12   7050, did OAG provide any of those offices with
13   examples of investigations or prosecutions of
14   noncitizens working with 3PVROs?
15               MS. MORSE:  Objection to the extent
16   it implicates the deliberative process
17   privilege.
18               But if you can answer without
19   divulging privileged information, please do.
20        A.     No.  I'm not aware of any guidance
21   that was provided.
22        Q.     And is the answer the same during the
23   legislators' consideration of SB 7050, that OAG
24   didn't provide any such examples during that
25   phase, either?

1           MS. MORSE:  Same objection.
2      A.   Same answer.
3      Q.   Okay.  Are you aware of any OAG
4  investigation or prosecution of noncitizens
5  working with 3PVROs that could support a state
6  interest that the citizenship requirement would
7  further?
8           MS. MORSE:  Objection to form.
9      A.   Am I aware of any OAG investigation
10 or -- please repeat the question.
11     Q.   Of noncitizens working with 3PVROs
12 that could support a state interest in a
13 citizenship requirement.
14          MS. MORSE:  Objection to form.
15     A.   No, I'm not, but that is also
16 something that the statewide prosecutor would
17 be able to address tomorrow.
18     Q.   Thanks.  I'll be sure to ask him more
19 about it tomorrow.
20          MS. KEENAN:  Nothing further for this
21 witness from me, but I'll pass the witness to
22 -- I can't remember which of my co-counsel is
23 going next.  So I'll just pass the witness for
24 the Hispanic Federation Plaintiffs.
25          MS. RUTAHINDURWA:  Brent, if you

1    don't mind, I think I'm going to jump in and
2    ask a couple questions.
3            MR. FERGUSON:  Yeah.  Go ahead.
4            MS. RUTAHINDURWA:  Okay.  Thanks.
5                    CROSS-EXAMINATION
6    BY MS. RUTAHINDURWA:
7        Q.   Hi.  My name is Makeba.  I represent
8    the NAACP Plaintiffs in this matter.  Thank you
9    so much for your time today.  I'm going to try
10   very hard not to repeat any of the questions
11   that has already been asked by counsel.
12           But I just want to circle back to the
13   beginning in terms of preparation for this
14   deposition.  You said you met with your
15   attorneys.
16           How many times did you meet with
17   them?
18       A.   We chat -- we met once, and we talked
19   twice.
20       Q.   And how long was the meeting?
21       A.   About an hour.
22       Q.   And, then, the talking two times
23   that you don't consider to be a meeting, how
24   long was that?
25       A.   To clarify, meeting in person.

```
 1   CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC
 2
 3          I, SUJA NAIR, the officer before whom
 4   the foregoing deposition was taken, do hereby
 5   certify that the foregoing transcript is a true
 6   and correct record of the testimony given; that
 7   said testimony was taken by me electronically
 8   and thereafter reduced to typewriting under my
 9   direction; that reading and signing was
10   requested; and that I am neither counsel for,
11   related to, nor employed by any of the parties
12   to this case and have no interest, financial or
13   otherwise, in its outcome.
14          IN WITNESS WHEREOF, I have hereunto
15   set my hand and affixed my notarial seal this
16   19th day of DECEMBER, 2023.
17   My commission expires:  April 21, 2027
18
19
20
21   _____Suja Nair_____
22
23
24
25
```