## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE
OF BRANCHES AND YOUTH
UNITS OF THE NAACP, et al.

        *Plaintiffs*,

v.

CORD BYRD, in his official capacity
as Secretary of State of Florida, et al.,

        *Defendants*.

Case No. 4:23-cv-00215-MW-MAF

## DECLARATION OF OLIVIA BABIS ON BEHALF OF DISABILITY RIGHTS FLORIDA

I, Olivia Babis, according to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am over the age of 18. I am fully competent to make this declaration. The following statements are based on my personal knowledge.

2.      I am the Senior Public Policy Analyst at Disability Rights Florida ("DRF"). DRF is a Protection and Advocacy system ("P&A"), as that term is defined under the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. § 15041 et seq., the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 et seq., and the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794 et seq. DRF is an independent, nonprofit corporation designated by law to be Florida's federally

1

funded P&A system for individuals with disabilities. DRF is authorized by federal law to pursue legal, administrative, and other appropriate remedies to ensure the protection of and advocacy for the rights of people with disabilities. DRF's constituents are all Floridians with disabilities.

3.      DRF engages in legal, legislative, and policy advocacy to protect the rights of adults and children with disabilities throughout Florida. DRF devotes significant efforts to increase the political participation of people with disabilities and to address the challenges they face when voting such as inaccessible polling sites and ballots and limited or non-existent supervised facility voting options for people with disabilities residing in residential facilities.

4.      In my role, I am familiar with DRF's current activities and involved in planning and executing its proposed future activities, including for voter registration and get-out-the-vote ("GOTV") efforts.

5.      DRF is a registered 3PVRO in Florida. We began our voter registration program four years ago. We currently retain voters' contact information from their voter registration forms after they register to vote with us. Prior to SB 7050, we planned to continue that practice.

6.      Currently, voter outreach systems are not accessible for many of our members and volunteers, such as blind people. This means that they cannot participate in many GOTV programs available to other Floridians, such as phone

2

and text banking.

7.     To combat this problem, prior to SB 7050's enactment, we planned to implement a GOTV program geared towards Floridians with disabilities. As part of that program, we would obtain contact information for Floridians with disabilities through their voter registration applications, with the intent to stay in contact with these voters to assist them in voting by mail or in getting to the polls on election day. We would also stay in touch with them to discuss our ongoing advocacy efforts.

8.     Specifically, we planned to create an accessible platform to allow our staff, members, and volunteers to reach out to registrants and help with GOTV efforts. If we cannot retain voters' information, which I understand SB 7050 prohibits, we will not be able to execute this program or directly contact registrants to encourage them to vote and assist them to do so.

9.     Our voter registration numbers are small. But that is because of the hands-on approach we take with new registrants, which is often necessary to effectuate the right to vote for Floridians with disabilities. For Floridians with disabilities, registration is just the first step. Some of our constituents require further assistance to actually effectuate their right to vote.

10.     This approach maps onto all of the work that we do at DRF. For example, my colleague and I—ourselves a part of the disabled community—are primarily responsible for operating DRF's voter registration program. When

3

disabled voters who did not have anyone to return their vote-by-mail ballots for them reached out to us, we had to work across three different organizations over the course of multiple days to find a volunteer who could go return vote-by-mail ballots by making calls and tracking down volunteers. That is the kind of hands-on, direct approach that we have to take at DRF to adequately represent each of our members' unique interests.

11.     In light of SB 7050's prohibition against retaining voter information, we are unsure if we should even continue with our voter registration efforts because much of the important follow-up work we do after a voter is registered is made impossible.

12.     When SB 90 passed in 2021, it changed voter registration requirements, including a provision that made third-party voter registration organizations provide a mandatory disclaimer when registering voters. In response to SB 90, we had to retool our voter registration process and training entirely. DRF spent, conservatively, about 20 staff hours building a new voter registration training. We spent additional resources on necessary materials in anticipation of ramping up the program, including a $600 iPad. If we do continue our voter registration efforts, we expect to spend similar resources to modify our trainings to ensure compliance with SB 7050.

13.     All of this would be coming from our Protection and Advocacy for Voting Access ("PAVA") grant. 52 U.S.C Section 21061 provides that the grant is

4

awarded "to ensure full participation in the electoral process for individuals with disabilities, including registering to vote, casting a vote and accessing polling places." Our PAVA grant is our smallest grant, and some of those funds are already earmarked for some larger, more costly projects, such as doing the second round of website accessibility audits for the Supervisor of Elections' websites, which we could potentially have to scale back or delay, if we decide to move forward with our voter registration program.

14.     We are stuck in a difficult position. We very much want to use our third-party voter registration status to help register voters, particularly disabled voters, and we want to run GOTV programs to help Floridians with disabilities to vote. But the cost and time of building out a new training program, in addition to the difficulties posed by the Information Retention Ban may prevent us from doing so.

I certify under penalty of perjury that the foregoing is true and correct. Executed on June 9, 2023.

> _/s/ Olivia Babis_
> Olivia Babis
> Senior Public Policy Analyst
> Disability Rights Florida