# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE
OF BRANCHES AND YOUTH
UNITS OF THE NAACP, et al.,

      Plaintiffs,

      v.

CORD BYRD, in his official capacity
as Florida Secretary of State, et al.,

      Defendants.

Case Nos.: 4:23-cv-215-MW/MAF

## MEMORANDUM OF LAW IN SUPPORT OF NAACP PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................2

STATEMENT OF FACTS ...............................................................................4

   I.     The passage of SB 7050 and initiation of this lawsuit ............................4

   II.    The Court preliminarily enjoins the Citizenship Requirement .................6

   III.   The Secretary proposes rulemaking on the Mail-In Ballot
         Restriction........................................................................................7

LEGAL STANDARD.........................................................................................8

ARGUMENT .....................................................................................................8

   IV.   The Court should grant summary judgment on Counts III and IV and
         permanently enjoin enforcement of the Citizenship Requirement.............9

      A.   Plaintiffs have standing to challenge the Citizenship
            Requirement .........................................................................................9

      B.   The Citizenship Requirement facially discriminates on
            the basis of alienage, in violation of the Equal Protection
            Clause ................................................................................................15

      C.   The Citizenship Requirement conflicts with 42 U.S.C. § 1981
            and is thus preempted under the Supremacy Clause..........................21

   V.    This Court should grant Plaintiffs summary judgment on
         Count VII and permanently enjoin enforcement of the Mail-In
         Ballot Request Restriction ........................................................................23

      A.   Plaintiffs have standing to challenge the Mail-In Ballot Request
            Restriction ..........................................................................................24

      B.   Section 208 preempts the Mail-In Ballot Request Restriction...........29

   VI.   Permanent injunctive relief is appropriate as to both the Mail-In
         Ballot Request Restriction and the Citizenship Requirement .................32

CONCLUSION ...............................................................................................35

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Arcia v. Fla. Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014) ........................................................13

*Ark. United v. Thurston*,
  517 F. Supp. 3d 777 (W.D. Ark. 2021) ............................................26

*Ark. United v. Thurston*,
  626 F. Supp. 3d 1064 (W.D. Ark. 2022) ..........................................32

*Barnett v. MacArthur*,
  No. 21-13201, 2023 WL 4635893 (11th Cir. July 20, 2023) ............32

*Barrett v. Walker Cty. Sch. Dist.*,
  872 F.3d 1209 (11th Cir. 2017) ........................................................33

*Bernal v. Fainter*,
  467 U.S. 216 (1984)...................................................16, 17, 18, 21

*Chang v. Glynn Cnty. Sch. Dist.*,
  457 F. Supp. 2d 1378 (S.D. Ga. 2006) .............................................33

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985).........................................................................19

*City of S. Miami v. Governor*,
  65 F.4th 631 (11th Cir. 2023) ..........................................................10

*Democratic Exec. Comm. of Fla. v. Lee*,
  915 F.3d 1312 (11th Cir. 2019) ........................................................34

*Disability Rts. N.C. v. N.C. State Bd. of Elections*,
  No. 5:21-CV-361-BO, 2022 WL 2678884 (E.D.N.C. July 11,
  2022) ...................................................................................31, 32, 33

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)...........................................................................32

*Espinoza v. Mont. Dep't of Revenue*,
  140 S. Ct. 2246 (2020)........................................................................18

*Estrada v. Becker*,
  917 F.3d 1298 (11th Cir. 2019) ...................................................16, 17

*Examining Bd. v. Flores de Otero*,
  426 U.S. 572 (1976)...................................................................16, 17

*Falls v. DeSantis*,
  609 F. Supp. 3d 1273 (N.D. Fla. 2022) .............................................10

*Fla. State Conf. of NAACP v. Lee*,
  566 F. Supp. 3d 1262 (N.D. Fla. 2021) ...................................9, 26, 27

*Fla. State Conf. of NAACP v. Lee*,
  576 F. Supp. 3d 974 (N.D. Fla. 2021) ................................................25

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021)......................................................................21

*Gary v. City of Warner Robins*,
  311 F.3d 1334 (11th Cir. 2002) .........................................................15

*Glenn v. Brumby*,
  663 F.3d 1312 (11th Cir. 2011) .........................................................19

*Graham v. Richardson*,
  403 U.S. 365 (1971)...................................................................16, 23

*Greater Birmingham Ministries v. Sec'y of State of Ala.*,
  992 F.3d 1299 (11th Cir. 2021) ...................................................25, 27

*In re Griffiths*,
  413 U.S. 717 (1973)..........................................................................16

*Int'l Ass'n of Firefighters, Loc. 2069 v. City of Sylacauga*,
  436 F. Supp. 482 (N.D. Ala. 1977)....................................................33

*League of Women Voters of Fla. v. Browning*,
  863 F. Supp. 2d 1155 (N.D. Fla. 2012) .............................................34

*Morse v. Republican Party of Va.*,
   517 U.S. 186 (1996)....................................................................25

*Nat'l Parks Conservation Ass'n v. Norton*,
   324 F.3d 1229 (11th Cir. 2003) ................................................27

*OCA-Greater Hous. v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ..............................................27, 31

*Piercy v. Maketa*,
   480 F.3d 1192 (10th Cir. 2007) ................................................10

*Rine v. Imagitas, Inc.*,
   590 F.3d 1215 (11th Cir. 2009) ...........................................22, 23

*Support Working Animals, Inc. v. Gov. of Fla.*,
   8 F.4th 1198 (11th Cir. 2021) .........................................14, 15, 28

*Takahashi v. Fish & Game Comm'n*,
   334 U.S. 410 (1948)....................................................................22

*Tedori v. United States*,
   211 F.3d 488 (9th Cir. 2000) ....................................................30

*Utah v. Evans*,
   536 U.S. 452 (2002)....................................................................29

*Walters v. Fast AC, LLC*,
   60 F.4th 642 (11th Cir. 2023) ..............................................14, 29

*Warth v. Seldin*,
   422 U.S. 490 (1975)....................................................................27

*Whitehead v. BBVA Compass Bank*,
   979 F.3d 1327 (11th Cir. 2020) ..................................................8

## Statutes

42 U.S.C. § 1981 ....................................................................2, 22

42 U.S.C. § 15043 ........................................................................26

52 U.S.C. § 10302 ........................................................................25

52 U.S.C. § 10508 ...................................................................................30

52 U.S.C. § 21061 ...................................................................................26

Fla. Stat. § 97.012 ..................................................................................28

Fla. Stat. § 97.022 ..................................................................................15

Fla. Stat. § 97.0575 ...........................................................................*passim*

Fla. Stat. § 101.62 .............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56(a)..................................................................................8

Fla. Const. art. V, § 21 ...........................................................................30

U.S. Const. amend. XIV ..........................................................................15

**INTRODUCTION**

Senate Bill 7050 (SB 7050) overhauled Florida's laws directed at third-party voter registration organizations (3PVROs) and the communities they serve. While the significant burdens SB 7050 imposes on the constitutional rights of 3PVROs and their members will be the subject of trial, at least two of the new law's provisions require no factual development for this Court to find in favor of Plaintiffs. Indeed, a plain reading of both the Citizenship Requirement (Fla. Stat. § 97.0575(1)(f)) and the Mail-In Ballot Request Restriction (Fla. Stat. § 101.62(1)(a)), alongside constitutional precedent and federal civil-rights law makes clear that these provisions cannot stand.

The Citizenship Requirement unreservedly bans all noncitizens from "handling" voter registration applications on behalf of 3PVROs. Fla. Stat. § 97.0575(1)(f). This unequivocal and express discrimination on the basis of alienage—for no apparent reason whatsoever, let alone a compelling state interest—is a paradigmatic Equal Protection violation. It also runs afoul of the Civil Rights Act of 1866's prohibition on state interference with Plaintiffs' rights to enter employment contracts under 42 U.S.C. § 1981. The Mail-In Ballot Request Restriction narrows the pool of people who can request a vote-by-mail ballot on another's behalf to only immediate family members and legal guardians. In so doing, it facially violates Section 208 of the Voting Rights Act, which requires states to

2

allow disabled and English-limited voters to seek assistance to vote from anyone they choose.

Plaintiffs include individual noncitizens expressly targeted by SB 7050 and 3PVROs who seek to vindicate their own rights and those of their members. Noncitizens' work is vital to the operations of Plaintiff 3PVROs, who rely on their noncitizen members, employees, and volunteers to further their mission of expanding access to the franchise among U.S. citizens in underserved minority populations. The Citizenship Requirement directly and severely hinders these efforts. Accessibility is also essential to protecting the right to vote, as Congress recognized in passing the Voting Rights Act. Yet the Mail-In Ballot Request Restriction all but ensures that certain of Plaintiffs' members will not be able to request a vote-by-mail ballot, meaning that—in some cases—they will not be able to vote at all. These provisions will irreparably harm Plaintiff 3PVROs and their members and noncitizen canvassers without any benefit to any state or public interest. Accordingly, Plaintiffs request that the Court grant this motion for summary judgment and permanently enjoin the Citizenship Requirement and Mail-In Ballot Request Restriction.

**STATEMENT OF FACTS**

I.     **The passage of SB 7050 and initiation of this lawsuit.**

Florida enacted SB 7050 into law on May 24, 2023. *See* Florida Senate, *CS/SB 7050: Elections*, https://www.flsenate.gov/Session/Bill/2023/7050. Despite hearing testimony from 3PVROs, constituents, and lawmakers vocally opposing SB 7050, *see, e.g.*, ECF No. 204-1, Excerpts from Florida House Session on SB 7050 at 35:10-36:10, 38:6-39:8, 40:7-22, 104:3-23, 110:12-25, 112:19-115:3, 115:11-120:19, 121:7-125:1, 125:11-128:10, 131:3-132:21, 136:12-139:9; ECF No. 204-2, Excerpt from Florida State House State Affairs Committee hearing at 56:10-67:3,[1] the Legislature pushed SB 7050 through each chamber along party lines without addressing these concerns.

Shortly after Governor DeSantis signed SB 7050, Plaintiffs Florida State Conference of Branches of Youth Units of the NAACP (Florida NAACP), Voters of Tomorrow Action, Inc. (VOT), Disability Rights Florida (DRF), Alianza for Progress and Alianza Center (collectively, Alianza), UnidosUS (Unidos), Florida Alliance for Retired Americans (FLARA), Santiago Mayer Artasanchez, and Esperanza Sánchez (collectively, Plaintiffs) filed suit, challenging four provisions of SB 7050: (1) the Citizenship Requirement, which prohibits noncitizens from

---

[1] All exhibits are attached to the Notice of Filing Exhibits to the Declaration of Abha Khanna, ECF No. 204.

handling voter registration forms on behalf of 3PVROs, Fla. Stat. § 97.0575(1)(f); (2) the Mail-In Ballot Request Restriction, which places strict limitations on who may assist a voter in requesting a vote-by-mail ballot, Fla. Stat. § 101.62(1); (3) the prohibition on retention of voter information by 3PVROs, Fla. Stat. § 97.0575(7) (the Information Retention Ban); and (4) the increased fines for submitting voter registration applications late or in the wrong county, Fla. Stat. § 97.0575(5)(a) (the 3PVRO Fines Provision). *See* Pls' First Am. Compl., ECF No. 52. Plaintiffs filed their operative complaint on December 6, 2023 to add Humberto Orjuela Prieto as a plaintiff. *See* Pls' Third Am. Compl., ECF No. 184.

As relevant to the present motion, the Citizenship Requirement requires each 3PVRO to provide an "affirmation that each person collecting or handling voter registration applications" on the 3PVRO's behalf "is a citizen of the United States of America." Fla. Stat. § 97.0575(1)(f). "[F]or each such person who is not a citizen and is collecting or handling voter registration applications on behalf of" a 3PVRO, the 3PVRO is subject to a $50,000 fine. *Id.* The Mail-In Ballot Request Restriction mandates that Supervisors of Elections "shall accept a request for a vote-by-mail ballot only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian." Fla. Stat. § 101.62(1)(a). SB 7050 defines immediate family as "[t]he voter's spouse, parent, child, grandparent,

grandchild, or sibling, or the parent, child, grandparent, grandchild, or sibling of the voter's spouse." Fla. Stat. § 101.62(1)(d)1.

## II.    The Court preliminarily enjoins the Citizenship Requirement.

On June 9, 2023, Plaintiffs moved for a preliminary injunction as to the Citizenship Requirement and Information Retention Ban. ECF No. 55. After briefing and oral argument, the Court granted Plaintiffs' motion for preliminary injunction as to both provisions. Mem. Op., ECF No. 101. Specifically with respect to the Citizenship Requirement, the Court found that noncitizen Plaintiffs had standing to challenge the Requirement because they would be unable to "collect or handle voter registration applications on behalf of the 3PVROs for which they currently work," "disrupting" their "employment, their livelihoods, and their mission to register voters on behalf of the organizations they work for[.]" *Id.* at 18-19.

On the merits, the Court concluded that SB 7050's facial classification based on alienage triggered strict scrutiny. *Id.* at 33. It noted that "Defendants do not dispute that the citizenship requirement, on its face discriminates against all noncitizens" and rejected Defendants' request to subject the Requirement to "varying levels of scrutiny based on subgroups that exist nowhere in the statute." *Id.* at 28. The Court also found that the political function exception to strict scrutiny did not apply because, "[w]ithout dispute, 3PVRO staff, members, and volunteers are not public employees . . . [and do not] participate directly in the formulation,

execution, or review of broad public policy." *Id.* at 32. Upon finding that the Citizenship Requirement failed to meet the demanding strict scrutiny standard, *id.* at 34-37, the Court concluded that Plaintiffs were "substantially likely to succeed on their claim that the citizenship requirement violates the Equal Protection Clause of the Fourteenth Amendment," *id.* at 37.

Defendants appealed. That appeal is currently pending before the Eleventh Circuit, with argument scheduled on January 25, 2024. In the meantime, the parties proceeded to discovery in preparation for the April 1 trial in this matter.

## III. The Secretary proposes rulemaking on the Mail-In Ballot Restriction.

On June 23, 2023, the Secretary initiated rulemaking applicable to SB 7050, seemingly in an attempt to rectify deficiencies in the Bill. One of those rulemakings, Rule 1S-2.055, applies to the Mail-In Request Restriction.[2]

In relevant part, the rulemaking provides:

- A voter who requires assistance to request a vote-by-mail ballot because of his or her disability or inability to read or write may directly instruct a person of the voter's choice (other than the voter's employer or agent of that employer or officer or agent of the voter's union) to request a vote-by-mail ballot for the voter.

- A supervisor of elections shall accept a request for a vote-by-mail ballot from a person directly instructed by the voter (other than the voter's

---

[2] The other, Rule 1S-2.042, pertains to the Citizenship Requirement but is not relevant to the facial equal protection challenge at issue in this motion. *See* Fla. Dep't of State, *Rule 1S-2.024*, https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.042 (last visited Jan. 23, 2024).

employer or agent of that employer or officer or agent of the voter's union) who is disabled or unable to read or write. A request may be made in person, in writing, by telephone, or through the supervisor's website.

- For purposes of this rule, the term "disability" includes blindness.

As of the date of this motion, Rule 1S-2.055 has not been adopted. *See* Fla. Dep't of State, *Rule 1S-2.055*, https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.055 (last visited Jan. 23, 2024).

## **LEGAL STANDARD**

Summary judgment is proper as to any "claim or defense" "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of proving the absence of a genuine issue of material fact." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020). The nonmoving party must then "'go beyond the pleadings' to establish that there is a 'genuine issue for trial'"—that is, that "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (first quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), then quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## **ARGUMENT**

The Court should grant Plaintiffs' motion for summary judgment as to both the Citizenship Requirement and the Mail-In Ballot Request Assistance Restriction.

8

The former is facially discriminatory without any compelling state interest, in violation of the Equal Protection Clause, and otherwise preempted by federal law. The latter directly conflicts with—and is therefore preempted by—Section 208 of the Voting Rights Act, which expressly authorizes certain voters to seek assistance from anyone they choose. Both provisions inflict irreparable harm on Plaintiff 3PVROs and their members without any countervailing state or public interest. This Court should thus permanently enjoin SB 7050's Citizenship Requirement and Mail-In Ballot Request Restriction.

## IV.   The Court should grant summary judgment on Counts III and IV and permanently enjoin enforcement of the Citizenship Requirement.

There is no genuine dispute that the Citizenship Requirement facially discriminates against noncitizens without a compelling state interest narrowly tailored to the law. Moreover, the Citizenship Requirement directly conflicts with and thus is preempted by Section 1981's guarantee of equal rights to enter employment contracts. Under either or both grounds, a summary judgment order enjoining enforcement of the Citizenship Requirement is warranted.

### A. Plaintiffs have standing to challenge the Citizenship Requirement.

To establish standing under Article III, "Plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling." *Fla. State Conf. of NAACP v. Lee*, 566 F.

Supp. 3d 1262, 1277 (N.D. Fla. 2021) (hereinafter "*NAACP II*"). All three elements are met here.

The Citizenship Requirement injures Plaintiffs in at least three ways. *First*, Plaintiffs Mayer and Prieto—neither of whom is a U.S. citizen—are expressly targeted by the provision and prohibited from engaging in voter registration on behalf of 3PVROs. *See, e.g.*, *Piercy v. Maketa*, 480 F.3d 1192, 1204 (10th Cir. 2007) ("Once facial discrimination has been established . . . we review only to see . . . if the affected person is a member of the discriminated class for purposes of standing."); ECF No. 204-3, H. Prieto Dep. Tr. at 9:3-10; ECF 204-4, VOT 30(b)(6) Dep. Tr. at 12:12-20, 78:10-21, 88:3-23. The Citizenship Requirement not only singles them out for disparate treatment—it also threatens their current and prospective employment with 3PVROs. *Id.*; *see also* ECF No. 204-3 at 15:12-16:25, 18:1-6, 19:2-7, 41:5-8, 44:22-45:10; ECF No. 204-4 at 12:12-20, 78:10-21, 88:3-23, 89:9-24, 93:11-94:4.

*Second*, Plaintiffs Alianza, Unidos, Florida NAACP, and VOT have associational standing to assert the injuries of their noncitizen members, employees, and volunteers. *See, e.g.*, *City of S. Miami v. Governor*, 65 F.4th 631, 637 (11th Cir. 2023) (associational standing is satisfied when its members would have standing to sue in their own right); *Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1285 (N.D. Fla. 2022) (employee standing satisfied when there is a close relationship with employee

who possesses the right and there is a hindrance to employee to protect own interest).

For instance, Alianza employee Johana Florez, who is a lawful permanent resident, described how her position as a canvassing manager is her main source of income. ECF No. 204-5, J. Florez Decl., ¶¶ 2-4, 7. She further testified that over 90% of her canvassing team are noncitizens who, like her, are passionate about democracy and voter registration and particularly well-suited to communicate with Spanish-speaking citizens Alianza seeks to help register to vote. *Id.* ¶¶ 9, 19. Indeed Ms. Florez is not alone. *See* ECF No. 204-3 at 9:3-10, 14:18-23, 15:12-19, 18:1-3, 41:5-8 (Plaintiff Prieto testifying that he is a green card holder who worked as a canvasser for Unidos in 2022 and hopes to do so again in 2024); ECF No. 204-4 at 12:12-20, 78:10-21, 88:3-23, 89:9-90:17 (Plaintiff Mayer testifying that the Citizenship Requirement froze VOT's process of registering as a 3PVRO and hindered his and other noncitizens' ability to volunteer with other 3PVROs to register voters); ECF No. 204-6, FL NAACP 30(b)(6) Dep. Tr. at 97:8-98:3 (describing that potentially thousands of canvassers and volunteers from different branches, college chapters, and/or youth councils would be unable to register voters on behalf of Florida NAACP, impacting the "whole civic engagement initiative"); ECF No. 204-7, M. Vilar June 8 Declaration ¶¶ 21-22, 25 (describing impact of law on canvassers and suspension of Alianza's voter registration program as a result of SB 7050). Indeed, Plaintiffs Alianza and Unidos's employees have "voiced their concerns about even

participating in voter registration activities" and "expressed real fear about participating in the lawsuit and worry that state officials will target them or find ways to jeopardize their legal status if they speak out against SB 7050," reinforcing that associational representation by Plaintiff 3PVROs is not only permissible but necessary. *Id*. ¶ 21; *see also* ECF No. 204-8, J. Nordlund June 8 Declaration ¶ 15.

*Third*, the Citizenship Requirement directly harms both the missions and means of Plaintiffs Alianza, VOT, Florida NAACP, and Unidos. The Requirement interferes with Alianza's and Unidos's ability to employ noncitizens for voter registration work, reducing the number of available and knowledgeable canvassers who may register voters on their behalf. ECF No. 204-9, Unidos 30(b)(6) Dep. Tr. at 114:18-115:11, 129:22-130:15; ECF No. 204-8 ¶¶ 14, 19, 25, 31, 40; ECF No. 204-7 ¶¶ 16, 19, 22. Alianza, which had between 60-100% noncitizen canvassers in 2022, has since suspended its voter registration program due to concerns about SB 7050, including the Citizenship Requirement. ECF No. 204-5 ¶ 9; ECF No. 204-7 ¶ 15; ECF No. 204-10, Alianza Center 30(b)(6) Dep. Tr. at 51:14-25; ECF No. 204-11, M. Vilar 1/23/24 Decl. ¶ 7. Unidos had between 66-75% noncitizen canvassers in 2022. ECF No. 204-8 ¶ 14; ECF No. 204-12, J. Nordlund 1/22/24 Decl. ¶ 13. In preparing for the 2024 election cycle, Unidos tried to hire more citizens to prepare for the possibility that the preliminary injunction is lifted, but immediately experienced problems: not only did the organization see higher turnover among

12

citizen canvassers, ECF No. 204-9 at 129:22-130:15, the new canvassers lack institutional knowledge and require more time and resources to get them up to speed. *Id.* at 114:18-115:11; *see also* ECF No. 204-8 ¶¶ 25, 31, 40. The Citizenship Requirement also impedes VOT's and Florida NAACP's relationships with noncitizen volunteers, limiting their volunteer base and thus their overall impact in the community. ECF No. 204-13, R. Joshi Declaration, ¶¶ 10,14, 17; ECF No. 204-4 at 88:3-23; ECF No. 204-6 at 97:8-98:3; ECF No. 204-14, A. Nweze Decl., ¶¶ 22-24.

These organizations will also have to divert their limited resources to combat the cascading harms imposed by the Citizenship Requirement. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (explaining diversion-of-resources theory of standing); ECF No. 204-10 at 103:14-104:16; ECF No. 204-4 at 89:9-24, 93:11-94:4; ECF No. 204-9 at 110:22-112:9, 114:8-115:11, 129:22-130:15; ECF No. 204-8 ¶¶ 7-10; ECF 204-13 at 6-7; ECF No. 204-7 ¶ 14; ECF No. 204-14 ¶¶ 6-7. For example, Unidos estimates that it will be forced to divert approximately $129,600 away from paying the wages of temporary canvassers and towards paying the wages of two full-time organizers dedicated solely to recruiting, interviewing, hiring, and training U.S. citizen canvassers and support staff. ECF No. 204-12 ¶ 14. And VOT and Florida NAACP, who do not monitor the citizenship status of their volunteers, will have to divert resources from other programming to determine

whether and how to confirm citizenship of their members and volunteers, including paying for background checks. ECF No. 204-13 ¶¶ 6-7, 17; ECF No. 204-14 ¶¶ 6, 19-20; ECF No. 204-6 at 42:23-25; ECF No. 204-4 at 22:12-23:19, 93:11-94:4.

Plaintiffs' injuries from the Citizenship Requirement are directly traceable to the Secretary and the Attorney General. To demonstrate traceability "where, as here, a plaintiff has sued to enjoin a government official from enforcing a law, he must show, at the very least, that the official has the authority to enforce the particular provision that he has challenged." *Support Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021). "Traceability is not an exacting standard" and is "less stringent than the tort-law concept of proximate cause[.]" *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (quotations marks and citation omitted). Pursuant to SB 7050, the Secretary is authorized to investigate alleged violations of the Citizenship Requirement and refer them to the Attorney General for prosecution. Fla Stat. § 97.0575(8). The Secretary also has authority to fine 3PVROs $50,000 for each noncitizen who collects or handles voter registration applications on their behalf. *Id.* § 97.0575(1)(f). And failure to comply with the Citizenship Requirement will "automatically result in the cancellation of the [3PVRO's] registration," *id.* § 97.0575(12), which is maintained with the Secretary of State's office. Additionally, the Secretary oversees the Office of Election Crimes and Security, which is further tasked with assisting in investigating allegations of election law

14

violations, referring findings to the Attorney General or state attorneys for prosecution, and imposing fines on 3PVROs for violating Florida's Election Code, including the Citizenship Requirement. Fla. Stat. § 97.022; ECF No. 204-17, Attorney General 30(b)(6) (Cox) Dep. Tr., 31:6-33:18, 146:7-147:2; ECF No. ECF 204-18, Secretary 30(b)(6) Dep. Tr., 17:23-18:8.

A permanent injunction removing the threat of enforcement—the risk of a $50,000 fine per noncitizen, automatic cancellation of the organizations as 3PVROs, and civil enforcement by the Secretary and the Attorney General—would redress Plaintiffs' injuries. *Support Working Animals*, 8 F.4th at 1201. Thus, Plaintiffs have standing to challenge the Citizenship Requirement.

### B. The Citizenship Requirement facially discriminates on the basis of alienage, in violation of the Equal Protection Clause.

#### 1.  The Citizenship Requirement is subject to strict scrutiny.

Laws that classify individuals on the basis of alienage trigger strict scrutiny, and no exception to that exacting standard applies here. The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "When legislation classifies [similarly situated] persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002). As the Supreme Court has recognized, "aliens as a class are

a prime example of a 'discrete and insular' minority for whom . . . heightened judicial solicitude is appropriate." *Graham v. Richardson*, 403 U.S. 365, 376 (1971) (applying "strict judicial scrutiny" to strike down a state law denying resident aliens disability benefits). Accordingly, when the basis of a challenged classification is alienage, the degree of scrutiny applied has generally been strict. *Bernal v. Fainter*, 467 U.S. 216, 219 (1984); *see also Examining Bd. v. Flores de Otero*, 426 U.S. 572, 601-02 (1976) (applying "strict judicial scrutiny" for limitations on state civil engineering licenses based on alienage); *In re Griffiths*, 413 U.S. 717, 721-22 (1973) (applying strict scrutiny to state law that excluded aliens from being licensed as attorneys).

While the Eleventh Circuit has carved out two narrow exceptions to strict scrutiny when evaluating alienage classifications—(1) laws that differently classify "illegal aliens" and (2) laws that are unrelated to resident noncitizens' "ability to exist in the community," *Estrada v. Becker*, 917 F.3d 1298, 1309-10 (11th Cir. 2019)—neither applies here. A plain reading of the statute—which Defendants do not dispute, ECF No. 101 at 29-30—demonstrates that the Citizenship Requirement applies to *all noncitizens*, not just "illegal aliens." *See Bernal*, 467 U.S. at 227-28 (applying strict scrutiny to Texas statutory requirement that prevented *all* noncitizens from becoming notaries public). And the Requirement directly impacts noncitizens' "ability to exist in the community" by preventing them from engaging

in the democratic process and, in many instances, doing their jobs. *See Estrada*, 917 F.3d at 1309-10; *see also, e.g., Examining Bd*., 426 U.S. at 604 ("It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure.").

Nor does the political function exception save the Citizenship Requirement from strict scrutiny, as this Court already recognized. ECF No. 101 at 30-33. "To determine whether a restriction based on alienage fits within the narrow political-function exception," this Court must first examine "the specificity of the classification." *Bernal*, 467 U.S. at 221 (citation omitted). "[A] classification that is substantially overinclusive or underinclusive tends to undercut the governmental claim that the classification serves legitimate political ends." *Id.* (citation omitted). "Second, even if the classification is sufficiently tailored," the political-function exception may be properly applied "only to persons . . . [who] perform functions that go to the heart of representative government." *Id.* at 221-22 (cleaned up).

Even assuming the first prong is satisfied (as the Court did during the preliminary injunction stage, ECF No. 101 at 32), Defendants cannot satisfy the second prong of the test. There is no dispute that 3PVROs and their members, employees, and volunteers are not public employees, and Defendants have expressly conceded that "those who collect and handle completed applications aren't vested

with discretion or engage in policy making." *Id*. at 33. Nor have Defendants adduced any evidence to suggest noncitizen canvassers are effectively policymakers. To the contrary, 3PVROs and their canvassers have consistently been described as community-based private entities who are able to reach potential voters the Supervisors cannot precisely because they "are more of the trusted folks from that community" by being "neighbors . . . or members of the church or what have you." ECF No. 204-20, Earley Dep. Tr., 53:13-55:12. Accordingly, the political function exception does not apply.

### 2. The Citizenship Requirement fails strict scrutiny.

The Citizenship Requirement cannot withstand strict scrutiny. "To satisfy [strict scrutiny], government action must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2260 (2020) (cleaned up). Defendants must show that the challenged provision furthers a compelling state interest "by the least restrictive means practically available." *Bernal*, 467 U.S. at 217. The Citizenship Requirement falls far short.

To start, Defendants have effectively conceded that enforcing the Citizenship Requirement against *all* noncitizens, including legal permanent residents, would fail strict scrutiny. *See* Defs.' Initial Appellate Brief ("App. Br."), *Fla. State Conf. of NAACP v. Fla. Sec'y of State*, No. 23-12308 (11th Cir. Aug. 21, 2023), ECF No. 29

at 17 ("Applied to permanent resident aliens, such a statute might well fail strict scrutiny."); *see also* ECF No. 204-27, PI Hearing Tr., 84:22-85:6 (Secretary's counsel admitting at oral argument that the Citizenship Requirement is not "a perfect fit" in addressing "concerns with people who are not U.S. citizens voting"). Defendants thus cannot contend that the Requirement *as written*—which applies to *all* noncitizens—is narrowly tailored to a compelling state interest.

Notably, the Legislature could not come up with *any* state interest in support of the Citizenship Requirement, let alone a compelling interest. When asked what purpose the Requirement serves, SB 7050's sponsor replied simply, "There are certain rights in our country that only citizens get to enjoy." ECF No. 204-15, Florida State Senate Committee on Fiscal Policy Hearing, 112:9-10; ECF No. 204-16, Florida State Senate Legislative Session, 16:18-24. But, as the Supreme Court has admonished, "some objectives—such as a bare desire to harm a politically unpopular group—are not legitimate state interests." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446-47 (1985) (citation omitted). Seeking to exclude an entire class of persons, without more, cannot satisfy the rigorous strict scrutiny standard.

The utter lack of any "factual underpinning" in the legislative record to justify facial discrimination against a suspect class dooms the Citizenship Requirement. ECF No. 101 at 37; *see Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (holding that justifications for suspect classifications must be "genuine," not

"hypothesized or invented *post hoc* in response to litigation" (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). But even if the Court were to consider *post hoc* rationales for the Citizenship Requirement, none withstands scrutiny.

The Attorney General, for her part, admitted that she "do[es]n't have a state interest" in the Citizenship Requirement and instead "defer[s] to the legislature and other election officials to relay what the state interest is, if there is one[.]" ECF No. 204-19, Attorney General 30(b)(6) (Guzzo) Dep. Tr., 60:3-62:6. Nor is the Attorney General aware of anything independently that would justify the Citizenship Requirement. *Id*. at 62:11-62:19. Indeed, she could not identify any investigations into noncitizens working on behalf of 3PVROs before, during, or after SB 7050's passage. *Id*. at 78:1-79:17.[3]

While the Secretary identified "safeguarding election integrity, preventing voter fraud, ensuring a timely submission of voter registration applications, and then otherwise promoting uniformity, efficiency, and confidence in the election system" as state interests, he could not explain how the Citizenship Provision furthered those interests at all, let alone by the least restrictive means. ECF No. 204-18 at 63:11-69:23, 73:5-17, 74:8-78:15, 81:22-82:6, 104:4-18. The Secretary could not point to

---

[3] Similarly, Supervisor Mark Earley testified in his deposition that he "did not know that there was a problem [with noncitizens] that [the Citizenship Requirement] solves." ECF No. 204-20 at 73:23-74:7.

any evidence of a noncitizen mishandling or failing to timely deliver voter registration applications on behalf of 3PVROs. *Id.* at 74:8-76:3, 104:4-13. Nor did he provide any basis to believe that a noncitizen is more likely than a citizen to leave the country, either by choice or by force, before submitting voter registration applications. *Id.* at 66:12-21, 67:11-69:23, 73:5-17, 104:14-18; *see* ECF No. 101 at 34 ("Defendants point to no record evidence indicating that noncitizens, as a class, have such a fleeting presence in this country as to justify a wholesale ban on their collecting or handling voter registration applications." (citing *Bernal*, 467 U.S. at 2319)). In fact, the January 15, 2023 report issued by the Office of Election Crimes and Security, which the Secretary oversees, fails to cite a single incident pertaining to noncitizens working for 3PVROs. ECF No. 204-21, M. Herron Report, ¶ 89.

In short, the only interests Defendants could assert for the Citizenship Requirement were based on sheer hypothesis. Their vague "speculation" on these points is plainly "insufficient to satisfy strict scrutiny[.]" *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882 (2021). Because there is no genuine dispute that the Citizenship Requirement fails strict scrutiny, Plaintiffs are entitled to summary judgment on their Equal Protection claim.

### C. The Citizenship Requirement conflicts with 42 U.S.C. § 1981 and is thus preempted under the Supremacy Clause.

Plaintiffs are also entitled to summary judgment and a permanent injunction of the Citizenship Requirement because it interferes with Plaintiffs' right "to make

and enforce contracts," in direct conflict with 42 U.S.C. § 1981. As a result, it is preempted and must be invalidated.

Under the Constitution's "Supremacy Clause, any state law that conflicts with federal law is preempted." *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1224 (11th Cir. 2009) (citing *Gibbons v. Ogden*, 22 U.S. 1 (1824)). Conflict preemption applies where compliance with both federal and state law is not possible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Gade v. Nat'l. Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal quotation marks and citations omitted)).

Section 1981 provides that, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens" and "shall be subject to like punishment, pains, penalties, . . . and to no other." 42 U.S.C. § 1981(a). "The protection of this section has been held to extend to aliens as well as to citizens." *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948). Thus, in *Takahashi*, the Court invalidated a California statute that precluded certain noncitizens from obtaining commercial fishing licenses. *Id.* Later, in *Graham*, the Court held that "state laws that restrict the eligibility of aliens for welfare benefits merely because of their alienage conflict with . . . federal policy that lawfully admitted resident aliens . . . are entitled to the full and equal benefit of all state laws[.]" 403 U.S. at 378.

22

The Citizenship Requirement conflicts with the guarantees provided by Section 1981. By cutting off noncitizens from the ability to collect and handle voter registration applications on behalf of 3PVROs, the Requirement interferes with 3PVROs' and noncitizens' right to "make and enforce" contracts with one another. This includes Plaintiff Prieto, a legal permanent resident who worked as a canvasser captain for Unidos during the 2022 election cycle and, but for the Citizenship Requirement, would have been reemployed by Unidos for the 2024 election cycle. ECF No. 204-3 at 9:3-10, 15:12-16:25, 18:1-6, 19:2-7, 41:5-8, 44:22-45:10. And Plaintiff Mayer, who intended to return to Florida during the 2024 election cycle to volunteer to assist with voter registration activities on behalf 3PVROs, but as a noncitizen he cannot do so. ECF No. 204-4 at 12:12-20, 78:10-21, 88:3-23, 89:9-24, 93:11-94:4. As a result, the Citizenship Requirement directly conflicts with, and stands as an obstacle to, the purpose of Section 1981 because it denies noncitizens the same rights enjoyed by other Floridians, including the right to enter into contracts with 3PVROs to engage in voter registration. *See Rine*, 590 F.3d at 1224.

## V.   This Court should grant Plaintiffs summary judgment on Count VII and permanently enjoin enforcement of the Mail-In Ballot Request Restriction.

Plaintiffs are also entitled to summary judgment on their claim challenging the Mail-In Ballot Request Restriction, which violates Section 208 of the Voting Rights Act because it prohibits voters with disabilities or limited-English

proficiency—including Plaintiffs' members—from turning to their friends, organizers, neighbors, or social workers for assistance in requesting vote-by-mail ballots. Before the Restriction, such voters could and did rely on people outside of their family and legal guardians for assistance. ECF No. 204-28, Compilation of Vote-by-Mail Requests.

For some voters, particularly those without local family ties, the Restriction will make it impossible for them to request a vote-by-mail ballot. But the Court need not analyze, as a factual matter, the extent of the burdens imposed by the Restriction, because *on its face* it conflicts with—and is thus preempted by—Section 208, which guarantees that voters who need assistance to vote may seek that assistance from anyone they choose. Because the Mail-In Ballot Request Restriction fails as a matter of law, summary judgment is warranted in favor of Plaintiffs.

### A. Plaintiffs have standing to challenge the Mail-In Ballot Request Restriction.

Plaintiffs DRF, FLARA, Alianza, and Unidos have standing to bring this claim because the Mail-In Ballot Request Restriction inflicts an injury on their members that is traceable to Defendants and is likely to be redressed by a favorable ruling.[4]

---

[4] As an initial matter, it is beyond dispute that the Voting Rights Act confers a private right of action to enforce its provisions, including Section 208. The plain text of the Voting Rights Act provides that "the Attorney General *or an aggrieved person*" may

*First*, the Mail-In Ballot Request Restriction injures Plaintiffs' members by depriving them access to necessary assistance in requesting a vote-by-mail ballot, and Plaintiffs DRF, FLARA, Alianza, and Unidos are well-positioned to seek redress on behalf of their members. An organization has associational standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021).

Here, Plaintiffs' members would have standing to challenge the Mail-In Ballot Request Restriction. DRF and FLARA have members who suffer from disabilities that can impact their abilities to read or write. *See, e.g.*, ECF No. 204-22, FLARA

---

institute a proceeding "under any statute to enforce the voting guarantees of" the Fourteenth or Fifteenth Amendments. 52 U.S.C. § 10302 (emphasis added); *see also Morse v. Republican Party of Va.*, 517 U.S. 186, 233-34 (1996) (citation omitted); *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 990 (N.D. Fla. 2021) (hereinafter *NAACP I*) ("[T]he VRA's plain text provides that private parties may enforce section 208."). As this Court recently noted, each court to consider the issue has held that Section 208 allows for private enforcement. *NAACP I*, 576 F. Supp. 3d at 990-91 (granting in part and denying in part defendants' motion for summary judgment) (collecting cases).

30(b)(6) Dep. Tr., 24:14-24; ECF No. 204-23, O. Babis 6/9/23 Decl., ¶ 10.[5] Both DRF and FLARA members regularly rely on people other than legal guardians or immediate family members in requesting a vote-by-mail ballot. ECF No. 204-24, O. Babis 1/22/24 Decl., ¶ 6; ECF No. 204-25, FLARA Decl., ¶ 6; ECF No. 204-22 at 20:23-21:5. Indeed, DRF itself has previously assisted people with disabilities in requesting vote-by-mail ballots and would be prohibited from doing so under the Restriction. ECF No. 204-26, DRF 30(b)(6) Dep. Tr., 69:3-12. And Alianza and Unidos have members with limited-English proficiency, who rely on the help of friends, neighbors, or the organizations themselves for help in requesting a vote-by-mail ballot. ECF No. 204-11 ¶ 10; ECF No. 204-12 ¶ 18; *see also Ark. United v. Thurston*, 517 F. Supp. 3d 777, 787 (W.D. Ark. 2021) (citing *Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 816 (E.D. Mich 2020) (noting that Section 208's protections "extends to voters with limited English proficiency")); *OCA-Greater*

---

[5] This Court has already concluded that DRF's constituents are the same as members for the purpose of associational standing, relying on a decision in which "Judge Winsor held that DRF had associational claims to pursue its ADA claims on behalf of its deaf constituents." *NAACP II*, 566 F. Supp. 3d at 1278 n.2 (citing *Yelapi v. DeSantis*, 525 F. Supp. 3d 1371, 1377 n.4 (N.D. Fla. 2021)). Further, DRF is designated as Florida's protection and advocacy agency "to ensure full participation in the electoral process for individuals with disabilities." 52 U.S.C. § 21061(a); ECF No. 204-26 at 20:18-21:19. As such, DRF "ha[s] the authority to [] pursue legal, administrative, and other appropriate remedies . . . to ensure the protection of, and advocacy for, the rights of [disabled] individuals within the State." 42 U.S.C. § 15043(a)(2)(A)(i).

*Hous. v. Texas*, 867 F.3d 604 (5th Cir. 2017) (same). Under the Mail-In Ballot Request Restriction, Plaintiffs' members who need assistance but lack access to immediate family members must find a way to request a vote-by-mail ballot on their own, vote in person, or, if they cannot do either, forego the right to vote. ECF 204-25 ¶ 7; ECF No. 204-18 at 196:8-197:20.

Plaintiffs satisfy the second and third requirements for associational standing as well. The Mail-In Ballot Request Restriction is germane to Plaintiffs' missions of civic engagement and participation. ECF No. 204-23 ¶¶ 2-3, 6-7; ECF No. 204-7 ¶¶ 2-7; ECF No. 204-8 ¶ 8; ECF No. 204-25 ¶¶ 3-4; *see NAACP II*, 566 F. Supp. 3d at 1277-78 (holding that lawsuit was germane to organizations "whose core purposes involve registering voters, voter education, encouraging electoral participation, and advocating for accessibility for Florida voters" (quoting *Greater Birmingham Ministries*, 992 F.3d at 1316)). And neither the claim asserted nor the relief requested requires the participation of the individual members in this lawsuit. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003) (holding that individuals did not need to be party to case "to fashion the sort of prospective injunctive relief sought"); *see also Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.").

*Second*, Plaintiffs' injury is traceable to Defendants. *See Support Working Animals*, 8 F.4th at 1201. Under the Mail-In Ballot Request Restriction, Florida's Supervisors of Elections may issue a vote-by-mail ballot "only" when they receive a request "from a voter . . . , a member of the voter's immediate family or the voter's legal guardian." Fla. Stat. § 101.62(1)(a). SB 7050 thus tasks Supervisors with discerning whether the person requesting a vote-by-mail ballot is statutorily authorized to do so and rejecting those requests that come from anyone who is not. The same provision provides that "[t]he department [of State] shall prescribe by rule by October 1, 2023, a uniform statewide application to make a written request for a vote-by-mail ballot which includes fields for all information required in this subsection." Fla. Stat. § 101.62(1)(a); *see also id.* § 97.012(1), (2). And if the Secretary "reasonably believes that a person has committed a violation of" any portion of SB 7050, including the Mail-In Ballot Request Restriction, "the secretary may refer the matter to the Attorney General for enforcement." *Id*. § 97.0575(8). The Attorney General may then "institute a civil action for a violation of this section" to seek "a permanent or temporary injunction, a restraining order, or any other appropriate order." *Id.* The Supervisors, Secretary, and Attorney General are thus all "necessary actor[s] in the causal chain that leads from violation to enforcement" of the Mail-In Ballot Request Restriction in a manner that renders Plaintiffs' injury traceable to all of them. ECF No. 199 at 3; *see also Walters*, 60 F.4th at 650 ("[T]he

defendant's challenged conduct need not be the very last step in the chain of causation for it to be fairly traceable to the plaintiff's injury.").

Finally, a favorable decision from this Court would redress Plaintiffs' injury. Redressability requires that "the practical consequence" of an order against the defendants results in "a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002). If this Court enjoined the Mail-In Ballot Request Restriction, disabled Florida voters and Florida voters who are not proficient in English, including Plaintiffs' members, could use the assisters of their choice in requesting a vote-by-mail ballot.

## B. Section 208 preempts the Mail-In Ballot Request Restriction.

Because the Mail-In Ballot Request Restriction's limitation on who can help a voter request a vote-by-mail ballot contravenes Section 208 of the Voting Rights Act, it is preempted by federal law and cannot stand. *See supra* Section IV(c) (discussing preemption standard).

Here, the Mail-In Ballot Request Restriction plainly conflicts with Section 208 of the Voting Rights Act. While the Restriction deprives *all* voters from using the assisters of their choice in requesting a vote-by-mail ballot, Fla. Stat. § 101.62(1)(a), Section 208 provides that *any* voter "who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given

29

assistance by a person of the voter's choice," 52 U.S.C. § 10508. Because simultaneous compliance with the state law and federal law is not possible, the latter takes precedence, and the former must be enjoined.

The Secretary's proposed rulemaking—which purports to allow Supervisors of Elections to accept requests for vote-by-mail ballots from any anyone of a voter's choosing for certain voters—does not resolve this conflict. For one, the rule is only proposed, not final. *Cf. Tedori v. United States*, 211 F.3d 488, 492 n.13 (9th Cir. 2000) ("[P]roposed regulations are entitled to no deference until final." (citing *LeCroy Rsch. Sys. Corp. v. Comm'r*, 751 F.2d 123, 127 (2d Cir. 1984)). And even if the rule were final, Florida law prohibits courts from "deferr[ing] to an administrative agency's interpretation of [a] statute"; they "must instead interpret such statute or rule de novo." Fla. Const. art. V, § 21. Further, this Court has already rejected the proposition that the Secretary can cure an otherwise unlawful statute through rulemaking because "[r]ewriting the laws it enforces is not within the purview of the executive branch." ECF No. 101 at 41.

Federal courts have granted summary judgment relief on laws nearly identical to the Mail-In Ballot Request Restriction on Section 208 preemption grounds. In *Disability Rights North Carolina v. North Carolina State Board of Elections*, for instance, the plaintiff challenged a law that prohibited voters from relying on anyone but a legal guardian or "near relative" for assistance with the steps required to vote

absentee, including requesting a ballot. No. 5:21-CV-361-BO, 2022 WL 2678884, at *1 (E.D.N.C. July 11, 2022). The district court held that the law's limitation "impermissibly narrows a Section 208 voter's choice of assistant" in requesting a ballot "from the federally authorized right to 'a person of the voter's choice' to 'the voter's near relative or verifiable legal guardian.'" *Id.* at *5. Because the provision conflicted with Section 208 of the Voting Rights Act, the court granted the plaintiff's motion for summary judgment on preemption grounds and enjoined the provision. *Id.* at *6.

Similarly, in *OCA-Greater Houston v. Texas*, a nonprofit organization challenged a law that prevented English-limited voters from using an interpreter to cast their vote if the interpreter was not a registered voter of the same county. 867 F.3d at 608. After finding that the organization had standing to challenge the law, the Fifth Circuit concluded "that the limitation on voter choice . . . impermissibly narrows the right guaranteed by Section 208 of the VRA." *Id.* at 615. More recently, in *Arkansas United v. Thurston*, a district court struck down a law restricting the number of voters any one person can assist in casting a ballot, holding that the provision is "more restrictive than § 208 and makes 'compliance with both . . . impossible.'" 626 F. Supp. 3d 1064, 1085 (W.D. Ark. 2022) (quoting *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 780 (8th Cir. 2009)).

The Mail-In Ballot Request Restriction likewise "impermissibly narrows" Section 208 by preventing disabled and English-limited voters from receiving assistance from the person of their choosing. *Disability Rts. N.C.*, 2022 WL 2678884, at *5. And like the laws at issue in *Disability Rights North Carolina*, *OCA-Greater Houston*, and *Arkansas United*, the Restriction facially conflicts with Section 208 as a matter of law, warranting summary judgment in favor of Plaintiffs.

## VI.   Permanent injunctive relief is appropriate as to both the Mail-In Ballot Request Restriction and the Citizenship Requirement.

To obtain a permanent injunction, Plaintiffs must show (1) that they have suffered an irreparable injury; (2) that their remedies at law are inadequate; (3) that the balance of hardships weighs in their favor, and (4) that a permanent injunction would not disserve the public interest. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Barnett v. MacArthur*, No. 21-13201, 2023 WL 4635893, at *2 (11th Cir. July 20, 2023) ("An injunction should issue . . . only after the court determines that the traditional four-factor test is satisfied."). All of these elements are satisfied here.

Plaintiffs are irreparably harmed for the same reasons they have suffered injury-in-fact, discussed *supra*. *See* Sections VI.A. & V.A. The violation of Plaintiffs' right to equal protection under the law constitutes irreparable harm in this context. *See Chang v. Glynn Cnty. Sch. Dist.*, 457 F. Supp. 2d 1378, 1382 (S.D. Ga. 2006) (finding that the plaintiffs—lawful residents who "will not be able to continue

to work in their chosen professions, for a reason that is at odds with their federally-protected constitutional rights"—demonstrated irreparable harm from a law prohibiting noncitizens from being teachers); *see also Int'l Ass'n of Firefighters, Loc. 2069 v. City of Sylacauga*, 436 F. Supp. 482, 492 (N.D. Ala. 1977) ("Deprivations of constitutional rights are usually held to constitute irreparable injury as a matter of law."). And as the Court correctly observed, Plaintiffs' "voter registration operations will be substantially interrupted once the challenged provisions take effect," "thus extinguishing their opportunities to directly register new voters." ECF No. 101 at 51. And without injunctive relief, Plaintiffs' members who require assistance will be unable to use the assisters of their choice to request vote-by-mail ballots, despite their right to do so under federal law, resulting in irreparable harm. *See Disability Rts. N.C.*, 2022 WL 2678884, at *7 ("For [organizational] plaintiff's constituents, the irreparable harm is the continued deprivation of their rights under Section 208." (citing *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)). Because Plaintiffs will suffer irreparable harm, any remedies at law are inadequate. *See Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).

The balance of hardships weighs decidedly in favor of granting injunctive relief. The Citizenship Requirement has been enjoined since it went into effect; extending the preliminary injunction into a permanent injunction would require no

additional expenditure of resources or change in procedures on behalf of Defendants. Similarly, the Mail-In Ballot Request Restriction will be in effect for the first time in the 2024 elections; enjoining its enforcement before the time period for issuing vote-by-mail ballots would mean that Supervisors and Defendants can issue such ballots the same way and under the same rules they have for decades. *See* Fla. Stat. § 101.62(3). Indeed, the lack of hardship to Defendants from enjoining enforcement of the Citizenship Requirement and Mail-In Ballot Request Restriction only underscores how these provisions served no legitimate purpose to begin with. Where the State has enacted a solution in search of a problem, it is not harmed by an injunction returning to the status quo.

Finally, an injunction against both provisions is squarely within the public interest. As a doctrinal matter, "the public interest is served when constitutional rights are protected," *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019); *see also League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012) (The "vindication of constitutional rights . . . serve[s] the public interest almost by definition.")." As a practical matter, facially discriminatory laws and blatant restrictions on federal voting rights only undermine the public interest and confidence in our elections system. A permanent injunction against the Citizenship Requirement and Mail-In Ballot Request Restriction would serve and preserve the public interest in fair and lawful election laws.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be granted, and the Court should enter summary judgment for Plaintiffs on Counts III, IV, and VII of the Third Amended Complaint.

## LOCAL RULES CERTIFICATION

Undersigned counsel certifies that this response contains 7,998 words, excluding the case style and certifications.

Dated: January 23, 2024

Abha Khanna*
Makeba Rutahindurwa*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law
mrutahindurwa@elias.law

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law

*Counsel for Plaintiffs*

*\* Admitted Pro Hac Vice*

Respectfully submitted,

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111
**KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

35

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 23, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111

*Counsel for Plaintiffs*