# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE
OF BRANCHES AND YOUTH
UNITS OF THE NAACP, et al.,

       Plaintiffs,

       v.

CORD BYRD, in his official capacity
as Florida Secretary of State, et al.,

       Defendants.

Case Nos.: 4:23-cv-215-MW/MAF

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...............................................................................................2

RESPONSE TO SECRETARY'S STATEMENT OF FACTS...............................4

LEGAL STANDARD.........................................................................................6

ARGUMENT .....................................................................................................6

   I.     The Court should deny the Secretary's motion for summary judgment on
        Plaintiffs' Mail-In Ballot Request Restriction claim...................................6

       A.    Fla. Stat. § 101.051(3) does not save the Mail-In Ballot Request
             Restriction from federal preemption .....................................................7

       B.    The Secretary's proposed rule interpreting the Mail-In Ballot Request
             Restriction cannot avoid the conflict with Section 208 ......................13

   II.    The Court should deny the Secretary's motion for summary judgment on
        Plaintiffs' preemption claim against the Citizenship Requirement..........15

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. USAA Cas. Ins. Co.*,
  790 F.3d 1274 (11th Cir. 2015) ................................................................9

*In re AppleTree Markets, Inc.*,
  19 F.3d 969 (5th Cir. 1994) .................................................................13

*Arizona v. United States*,
  567 U.S. 387 (2012).........................................................................16

*Dobbs v. Sea Isle Hotel*,
  56 So. 2d 341 (Fla. 1952) .................................................................10

*Fid. Fed. Savs. & Loan Ass'n v. de la Cuesta*,
  458 U.S. 141 (1982).........................................................................16

*Fla. State Conf. of NAACP v. Lee*,
  576 F. Supp. 3d 974 (N.D. Fla. 2021) ..................................................6

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992)...........................................................................16

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) .........................................................14

*LeCroy Rsch. Sys. Corp. v. Comm'r*,
  751 F.2d 123 (2d Cir. 1984) ..............................................................13

*Major League Baseball v. Crist*,
  331 F.3d 1177 (11th Cir. 2003) ...........................................................8

*McFarland v. Folsom*,
  854 F. Supp. 862 (M.D. Ala. 1994).......................................................8

*Palm Beach Cnty. Canvassing Bd. v. Harris*,
  772 So. 2d 1273 (Fla. 2000) ................................................................9

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)...............................................................................8

*Rine v. Imagists, Inc.*,
    590 F.3d 1215 (11th Cir. 2009) ........................................................................16

*Robbins v. Garrison Prop. & Cas. Ins. Co.*,
    809 F.3d 583 (11th Cir. 2015) ...........................................................................9

*Samara Dev. Corp. v. Marlow*,
    556 So. 2d 1097 (Fla. 1990) .............................................................................11

*Takahashi v. Fish & Game Comm'n*,
    334 U.S. 410 (1948)..........................................................................16, 17, 18, 19

*Tedori v. United States*,
    211 F.3d 488 (9th Cir. 2000) ............................................................................13

*Toll v. Moreno*,
    458 U.S. 1 (1982).............................................................................................18

*Warren v. DeSantis*,
    90 F.4th 1115 (11th Cir. 2024) ..........................................................................8

*Whitehead v. BBVA Compass Bank*,
    979 F.3d 1327 (11th Cir. 2020) .........................................................................6

**Statutes**

42 U.S.C. § 1981 ...........................................................................2, 3, 15, 19

52 U.S.C. § 10508 ...........................................................................................6

Fla. Stat. § 97.0575(1)(f)...............................................................................4

Fla. Stat. § 101.62 ........................................................................4, 7, 10, 12

Fla. Stat. § 101.662 .......................................................................................10

**Other Authorities**

Fed. R. Civ. P. 56(a)......................................................................................6

Fla. Const. art. V, § 21 ................................................................................13

N.D. Fla. Loc. R. 56.1(c) ..............................................................................5

iii

Rule 1S-2.055 ............................................................................................. 14

S.B. 7050, 2023 Leg., Reg. Sess. (Fla. 2023) .......................................... 9

## INTRODUCTION

There is no dispute that the Mail-In Ballot Request Restriction on its face prohibits voters—including disabled, blind, and limited-English voters—from receiving assistance in requesting vote-by-mail ballots from their assisters of choice, contrary to Section 208 of the Voting Rights Act. Nor is there a dispute that the Citizenship Requirement categorically prohibits 3PVROs from employing noncitizens for voter registration canvassing, despite 42 U.S.C. § 1981's proscription on alienage-based discrimination with respect to the right to "make and enforce contracts." The Secretary's motion for summary judgment asks the Court to look not at the plain language of the challenged provisions but somewhere else—anywhere else—to find some way to shoehorn these statutes into the confines of federal law. But try as he might, the Secretary cannot paper over these glaring legal violations.

The Mail-In Ballot Request Restriction narrows the pool of people who can assist a voter in casting a ballot to just immediate family and legal guardians. In so doing, it fails to account for Section 208 of the Voting Rights Act, which requires that disabled and English-limited voters be permitted to enlist the aid of anyone they choose in exercising their right to vote. The Secretary contends that the Legislature *must* have intended to allow a carve-out for these voters, particularly since another Florida statute expressly incorporates that federal protection into state law. But the Secretary offers no basis for this Court to be the arbiter of conflicting state statutes.

And notably, while the Restriction expressly carves out several other categories of voters covered by other Florida laws, it includes no such carve-out for voters protected under Section 208. Nor can the Secretary make up for the Legislature's failure through rulemaking—not only is the Secretary's "interpretation" of the law nonbinding on this Court, it is flatly inconsistent with the statutory command that compels Supervisors of Elections to reject vote-by-mail ballot requests that come from unauthorized helpers.

The Citizenship Requirement's facial discrimination on the basis of alienage not only contravenes the Equal Protection Clause, *see* ECF No. 205 at 15–21, it also infringes on noncitizens' right to "make and enforce contracts" guaranteed by federal law, 42 U.S.C. § 1981. The Secretary seeks summary judgment against Plaintiffs' Section 1981 claim on the theory that Section 1981 is inapplicable outside of the areas it is typically applied. But contrary to the Secretary's suggestion, this Court is fully empowered to apply straightforward preemption principles to the laws at issue here. To the extent there is a paucity of case law applying Section 1981 in these circumstances, that simply reflects how uniquely extreme—and uniquely injurious—the Citizenship Provision's blanket prohibition truly is.

This Court should deny the Secretary's motion and instead enjoin these provisions as preempted under the Supremacy Clause.

## **RESPONSE TO SECRETARY'S STATEMENT OF FACTS**

Shortly after SB 7050 was enacted in May 2023, Plaintiffs Florida State Conference of Branches of Youth Units of the NAACP (Florida NAACP), Voters of Tomorrow Action, Inc. (VOT), Disability Rights Florida (DRF), Alianza for Progress and Alianza Center (collectively, Alianza), UnidosUS (Unidos), Florida Alliance for Retired Americans (FLARA), Santiago Mayer Artasanchez, and Esperanza Sánchez (collectively, Plaintiffs) filed suit, challenging four provisions of SB 7050.[1]

Plaintiffs have moved for summary judgment on two of those provisions: (1) the Mail-In Ballot Request Restriction, which limits the people who can assist a voter in requesting a vote-by-mail ballot to only the voter's immediate family member or legal guardian, Fla. Stat. § 101.62, and (2) the Citizenship Requirement, which prohibits noncitizens from handling voter registration forms on behalf of 3PVROs, Fla. Stat. § 97.0575(1)(f). *See* ECF No. 205. Plaintiffs contend that the former is preempted under Section 208 of the Voting Rights Act and that the latter is preempted by 42 U.S.C. § 1981 and also violates the Equal Protection Clause. *See id.* These same provisions are the subject of the Secretary's motion for summary judgment, although only as to the preemption claims. *See* ECF No. 201.

---

[1] Plaintiffs later amended their complaint to add Plaintiff Humberto Orjuela Prieto. ECF No. 184.

While Plaintiffs do not dispute the procedural facts as presented by the Secretary, they dispute that the "Secretary has offered several important governmental interests in support of" either the Mail-In Ballot Request Restriction or the Citizenship Requirement. ECF No. 201 at 4, 8 (citing ECF No. 200-1).[2] In fact, the Secretary has offered no evidence to support either the existence of these interests or the relationship between these purported interests and the two provisions at issue. *See* ECF No. 205-1 at 18–21 (explaining why Citizenship Requirement fails strict scrutiny). The Secretary relies on another declaration from Andrew Darlington, head of the Office of Election Crimes and Security. But as was true at the preliminary injunction stage of this case, Mr. Darlington's new declaration provides no evidence to support his bald assertions that "[n]on-citizens are more likely to leave the jurisdiction" or that "when non-family members or non-legal guardians submit requests for vote-by-mail ballots on behalf of voters, there is an increased risk that voter-by-mail [sic] ballots will be fraudulently requested." ECF No. 200-1 at 1–2. Nor has discovery adduced any evidence tying the state's purported interests to the provisions at issue. Accordingly, the Secretary has failed to "identify[] any

---

[2] While the state's purported interests have no bearing on either of the arguments raised in the Secretary's motion, Plaintiffs recognize their obligation to "respond to the moving party's statement of facts as would be appropriate in an appellate brief." N.D. Fla. Loc. R. 56.1(c).

connective tissue between the problem[s]" that he claims exists "and the state's proposed solution[s]" in enacting these provisions. ECF No. 101 at 35.

## **LEGAL STANDARD**

Summary judgment is proper as to any "claim or defense" only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, "the Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020).

## **ARGUMENT**

**I.    The Court should deny the Secretary's motion for summary judgment on Plaintiffs' Mail-In Ballot Request Restriction claim.**

The Mail-In Ballot Request Restriction of SB 7050 directly conflicts with—and is thus preempted by—Section 208 of the Voting Rights Act, 52 U.S.C. § 10508. *See* ECF No. 205-1 at 29–32.[3] While the Voting Rights Act allows those voters requiring assistance to obtain it from "a person of the voter's choice," 52 U.S.C.

---

[3] The Secretary notes he "isn't conceding" that private parties can bring claims under Section 208 without offering any argument on this issue. ECF No. 201 at 10. As noted in Plaintiffs' motion for summary judgment, ECF No. 205-1 at 24 n.4, this Court has already recognized a private right of action under Section 208, noting that every court to consider the issue has held that Section 208 allows for private enforcement. *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 990 (N.D. Fla. 2021) (collecting cases).

§ 10508, the Mail-In Ballot Request Restriction narrows the pool of people who can request a vote-by-mail ballot on another's behalf to only "the voter's immediate family or the voter's legal guardian," Fla. Stat. § 101.62. As such, the plain text of the Florida statute contradicts the plain text of federal law. *See* ECF 205-1 at 23–32.

The Secretary does not contend otherwise. Instead, he argues that the Court can reconcile this conflict by looking either to (1) a separate Florida statute, and/or (2) the Secretary's proposed rule interpreting the Mail-In Ballot Request Restriction. Both arguments fail. Contrary to the Secretary's suggestion, a federal court cannot reconcile two conflicting state statutes and tell state actors how to apply them, nor do canons of construction support the Secretary's preferred interpretation of Florida law. And the Secretary's proposed rule warrants no deference from this Court and is wholly inadequate to protect Plaintiffs from a violation of their federal voting rights. The Court should deny the Secretary's motion for summary judgment on the Mail-In Ballot Request Restriction.

## A. Fla. Stat. § 101.051(3) does not save the Mail-In Ballot Request Restriction from federal preemption.

The Secretary argues that the existence of a separate Florida statute setting forth a different requirement from the Mail-In Ballot Request Restriction somehow remedies the Restriction's facial conflict with the Voting Rights Act. But the Secretary has it backwards: far from saving the statute, Florida's conflicting statutes only exemplify why the Mail-In Ballot Request Restriction must fail. Not only does

a federal court lack authority to "harmonize" state statutes, but also the Secretary's preferred interpretation lacks any basis in the principles of statutory interpretation or common sense.

As an initial matter, this Court does not have the authority to resolve state statutory conflicts and mandate that state actors abide by its interpretation of state law. The Secretary contends that the Mail-In Ballot Request Restriction should be "read in pari materia" with "another provision of Florida law—§ 101.051(3)," which "expressly authorizes voters who require assistance to choose their preferred helper." ECF No. 201 at 11–12. But the Secretary provides no basis for this Court to take it upon itself to resolve a conflict between state statutes, let alone to impose its interpretation of state law on state officials. *See Major League Baseball v. Crist*, 331 F.3d 1177, 1186 n.20 (11th Cir. 2003) ("[F]ederal courts may not enjoin state actors to comply with state law" (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984))); *Warren v. DeSantis*, 90 F.4th 1115, 1144 n.1 (11th Cir. 2024) (Newsom, J., concurring) (admonishing district court to "avoid such unnecessary (and impermissible) asides regarding the consistency of [a state actor's] conduct vis-à-vis Florida law" (citing *Pennhurst*, 465 U.S. at 106)); *McFarland v. Folsom*, 854 F. Supp. 862, 873 (M.D. Ala. 1994) ("[W]hether state statutes are in conflict with one another . . . are questions for state courts, not federal courts, to decide." (citing *Pennhurst*, 465 U.S. at 89)). Under established federalism principles, this Court has

no authority to harmonize conflicting state statutes or dictate how state actors ought to apply them.

Even setting aside this dispositive sovereign immunity issue, the Secretary's suggested harmonization of the two state statutes fails under Florida's rules of statutory interpretation. *See Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 586 (11th Cir. 2015) ("We construe a Florida statute according to Florida's rules of statutory interpretation, not federal rules, when those rules differ." (citing *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1279 (11th Cir. 2015))). For instance, it is "well settled" that "when two statutes are in conflict, the more recently enacted statute controls the older statute." *Palm Beach Cnty. Canvassing Bd. v. Harris*, 772 So. 2d 1273, 1287 (Fla. 2000). Here, the Legislature enacted the Mail-In Ballot Request Restriction in 2023, S.B. 7050, 2023 Leg., Reg. Sess. (Fla. 2023), seven years *after* last amending Section 101.051(3). Thus, the Mail-In Ballot Request Restriction "may be viewed as the clearest and most recent expression of legislative intent." *Palm Beach Cnty. Canvassing Bd.*, 772 So. 2d at 1287.

While the Secretary points to another canon—that the specific statute controls the general statute, ECF No. 201 at 12—the specifics of the Mail-In Ballot Request Restriction only further suggest a legislative intent to limit Plaintiffs' members to immediate family and legal guardians when requesting vote-by-mail ballots. The

Legislature included three very specific exceptions in the Mail-In Ballot Request Restriction:

> Except as expressly authorized for voters having a disability under § 101.662, for overseas voters under § 101.697, and for local referenda under §§ 101.6102 and 101.6103, a county, municipality, or state agency may not send a vote-by-mail ballot to a voter unless the voter has requested a vote-by-mail ballot in the manner authorized under this section.

Fla. Stat. § 101.62(6).[4] The statute thus expressly carves out three—and only three—statutory exceptions to its rule. Notably, the Mail-In Ballot Request Restriction does *not* include an express carve-out for voters covered under Section 101.051(3), the statute the Secretary now contends must be "read together" with the Restriction, ECF No. 201 at 10. Under the canon of expressio unius, when the Legislature drafts exceptions into a statute, those exceptions are considered exhaustive; if the Legislature intended to include other exceptions, it would have. *See Dobbs v. Sea*

---

[4] Fla. Stat. § 101.662 provides that:

> The Department of State shall work with the supervisors of elections and the disability community to develop and implement procedures and technologies, as possible, which will include procedures for providing vote-by-mail ballots, upon request, in alternative formats that will allow all voters to cast a secret, independent, and verifiable vote-by-mail ballot *without the assistance of another person*.

(emphasis added). As such, the Mail-In Ballot Request Restriction's reference to Section 101.662 does not protect disabled voters' rights to request a vote-by-mail ballot with the assister of their choosing as provided for in the Voting Rights Act. And it does not mention *any* exception for a voter who cannot read or write, which is the other protected class of voters under Section 208.

*Isle Hotel*, 56 So. 2d 341, 342 (Fla. 1952) (applying statutory construction canon that "express mention of one thing is the exclusion of another"). For this reason, "it is a well-recognized rule of statutory construction that exceptions or provisos should be narrowly and strictly construed." *Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990). The Legislature's specific references to voters covered by some Florida statutes thus indicates its intent that all other voters, including voters covered under Section 101.051(3), would be subject to the new limitations in the Mail-In Ballot Request Restriction.[5]

Finally, the Secretary's suggestion that Supervisors can and will harmonize the conflicting statutes lacks any legal or practical grounding. *See* ECF No. 201 at 11–12. All of the cases that the Secretary cites to support this proposition involve *courts* invoking canons of statutory construction; they do not purport to require local election officials to do the same. Indeed, where the most recently enacted statute instructs Supervisors that they "*may not* send a vote-by-mail ballot to a voter unless

---

[5] The Secretary points to the Department of State's 2023 report on vote-by-mail balloting to the Florida Governor, House, and Senate to contend that the Restriction "was not enacted in a vacuum," ECF No. 201 at 4, but this only underscores that the Legislature was aware of Section 101.051(3) yet chose not to account for it in the Mail-In Ballot Request Restriction. While the 2023 report reminded the Legislature about the assistance certain voters could receive under Section 101.051(3), members of the Legislature never mentioned Section 101.051(3) during the hearings for SB 7050, and the Legislature decided *not* to include Section 101.051(3) as an exception to the Mail-In Ballot Request Restriction when it passed SB 7050 less than four months later.

the voter has requested a vote-by-mail ballot in the manner authorized in this section," *except* as "expressly authorized" in three different statutes, Fla. Stat. § 101.62 (emphasis added), it would be unreasonable to expect any Supervisor to understand that she should read in a separate exception based on another Florida statute not referenced in the new law. Indeed, the parties need not speculate about how election officials are likely to interpret the Mail-In Ballot Request Restriction: The evidence adduced in this case indicates that Supervisors of Elections understand that they cannot provide a vote-by-mail ballot to anyone who relies on assistance from a person outside of an immediate family member or legal guardian. *See* ECF No. 217-1, Earley Tr. at 111:2–6.[6] Notably, even the Secretary's representative is under the same impression. *See* ECF No. 204-18 at 196:8–197:20 (testifying to his understanding that a disabled voter without a family member or legal guardian would need to vote in person).

In short, the Mail-in Ballot Request Restriction's conflict with other provisions of Florida law only mirrors—rather than abates—its conflict with Section 208 of the Voting Rights Act, and further demonstrates that the provision deviates from established law and changes the ground rules for requesting vote-by-mail ballots.

---

[6] This exhibit is attached to the Notice of Filing Exhibits to the Declaration of Abha Khanna, ECF No. 217.

**B. The Secretary's proposed rule interpreting the Mail-In Ballot Request Restriction cannot avoid the conflict with Section 208.**

The Secretary next points to his proposed rulemaking purporting to bring the Mail-In Ballot Request Restriction in line with Section 208, but because the rule is not binding as a matter of law, it is not a proper basis for summary judgment dismissal.

While the Secretary contends that Rule 1S-2.055 "ensures that Florida's vote-by-mail-request framework is consistent with federal and state law," ECF No. 201 at 14, this Court cannot rely on the Secretary's making to remedy the Mail-In Ballot Request Restriction's conflict with federal law. For one, the rule is only proposed, not final. *Cf. Tedori v. United States*, 211 F.3d 488, 492 n.13 (9th Cir. 2000) ("[P]roposed regulations are entitled to no deference until final." (first citing *In re AppleTree Markets, Inc.*, 19 F.3d 969, 973 (5th Cir. 1994); and then citing *LeCroy Rsch. Sys. Corp. v. Comm'r*, 751 F.2d 123, 127 (2d Cir. 1984))). But even if the rule were final, Florida law prohibits courts from "defer[ring] to an administrative agency's interpretation of [a] statute"; they "must instead interpret such statute or rule de novo." Fla. Const. art. V, § 21. Further, this Court has already rejected the proposition that the Secretary can patch together a fix for an otherwise unlawful statute through rulemaking because "[r]ewriting the laws it enforces is not within the purview of the executive branch." ECF No. 101 at 41.

The Secretary concedes that this Court "must interpret statutes and rules *de novo*," but argues that this "misses the point" because "[o]nce the rule is promulgated," the Secretary may choose to bring an action to enforce compliance against any Supervisor of Elections who fails to follow the new rule. ECF No. 201 at 14. This argument fails on multiple levels. First, the Secretary's authority to enforce his own rule against a county election official is dubious at best. In *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1256 (11th Cir. 2020), the Eleventh Circuit credited the Secretary's position that "the Secretary has highly limited authority over county election officials, including the Supervisors."

Second, the Secretary offers no basis to believe that a Supervisor would be found liable for abiding by the dictates of the Mail-In Ballot Request Restriction over the dictates of Rule 1S-2.055. After all, "Florida law is clear that when a regulation and a statute conflict, the statute prevails." *Jacobson*, 974 F.3d at 1257. The evidence adduced in this case confirms that Supervisors of Elections share this understanding of their duties under Florida law. *See* ECF No. 217-1 at 94:7–10 (Q: "[I]f a rulemaking and a statute conflict, which does the supervisor's office abide by? A: Statute.").

Third, even if the Secretary could successfully enforce his rule against a Supervisor who elects to follow the plain language of the statute, this solution is cold comfort to Plaintiffs because it is wholly discretionary, *see* ECF No. 201 at 14

14

(noting "the Secretary *may* '[b]ring and maintain' an action to 'enforce compliance'") (quoting Fla. Stat. § 97.012(14) (emphasis added)), and then too is unlikely to be resolved in time to address the injury to a voter unlawfully deprived of her ability to rely upon the person of her choosing in requesting a vote-by-mail ballot. The Secretary cannot undo the Mail-In Ballot Request Restriction's facial violation of federal law with a rulemaking that he *may* choose to enforce in an action that *might* ultimately be successful, and Plaintiffs should not be forced to rely on the *Defendant* in this case to protect them from a constitutional violation on the eve of an election.

*     *     *

Ultimately, the Secretary's motion all but concedes that the Mail-In Ballot Request Restriction conflicts with—and is thus preempted by—Section 208 of the Voting Rights Act. The Legislature's failure to account for federal law (or even its own previous enactments) in drafting this statute cannot be remedied through reference to conflicting state laws or the Secretary's rulemaking. The Court should enjoin Defendants' enforcement of the law as it is written.

## II.   The Court should deny the Secretary's motion for summary judgment on Plaintiffs' preemption claim against the Citizenship Requirement.

As described in Plaintiffs' motion for summary judgment, the Citizenship Requirement interferes with Plaintiffs' right "to make and enforce contracts" under 42 U.S.C. § 1981, and therefore must be enjoined on federal preemption grounds.

15

ECF No. 205-1 at 21–23. This is no theoretical conflict: compliance with the Citizenship Requirement requires Plaintiff 3PVROs to forgo engaging noncitizens, such as Plaintiff Humberto Orjuela Prieto, as employees and volunteers for canvassing work based solely on their alienage, in violation of Section 1981. *See Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) ("The protection of this section has been held to extend to aliens as well as to citizens."). Because the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Rine v. Imagists, Inc.*, 590 F.3d 1215, 1224 (11th Cir. 2009) (cleaned up), "federal law must prevail," *Fid. Fed. Savs. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982), and the Citizenship Requirement cannot stand.

The Secretary's motion does little to dispute the legal theory or logic of Plaintiffs' preemption claim. Instead, the Secretary contends that because the statute has not generally been used to invalidate election laws, it categorically does not apply in this context. *See* ECF No. 201 at 16. But the Secretary can point to nothing hamstringing this Court's authority to apply the well-established preemption standard simply for lack of a predecessor case applying it the same way based on the same federal law. *See Arizona v. United States*, 567 U.S. 387, 399 (2012) (reaffirming the general principle that "state laws are preempted when they conflict with federal law" without a limitation as to the types of state laws); *cf. Gade v. Nat'l*

*Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) ("Our ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the [preemptive] statute as a whole.").

As the Secretary acknowledges, ECF No. 201 at 17, the Supreme Court has expressly recognized the potential conflict between Section 1981 and state laws that restrict employment opportunities for noncitizens. In *Takahashi*, for instance, the Court was tasked with determining whether a California statute that precluded certain noncitizens from obtaining commercial fishing licenses was unlawful. *Takahashi*, 334 U.S. at 412–13. In assessing the "federal-state relationships" at issue, the Court noted that Section 1981 was enacted as part of Congress's "comprehensive legislative plan for the nation-wide control and regulation of immigration and naturalization" and is part and parcel of the federal policy—grounded in the Fourteenth Amendment and reflected in "the laws adopted under its authority"—that "all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under non-discriminatory laws." *Id.* at 419–20. The Court found that the statute was "inconsistent with federal law, which is constitutionally declared to be the 'supreme Law of the Land,'" noting that "an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the state would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work."

*Id.* at 416. Although the Court ultimately decided the case on equal protection grounds, *Takahashi* stands for the unwavering principle that state laws restricting employment opportunities on the basis of alienage must not undermine or erode protections provided by federal law. *See Toll v. Moreno*, 458 U.S. 1, 12–13 (1982) ("Read together, *Takahashi* and *Graham* stand for the broad principle that state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress." (citation omitted)); *see also id.* at 11 n.16 (recognizing that "pre-emption played a significant role in the Court's analysis in *Takahashi*" and that commentators "have noted . . . that many of the Court's decisions concerning alienage classifications, such as *Takahashi*, are better explained in pre-emption than in equal protection terms").[7]

Similarly, the Secretary's questions as to why plaintiffs in previous cases did not bring Section 1981 claims have no bearing on the legal standard for preemption or its application here. *See* ECF No. 201 at 16. It is no more proper for this Court to speculate as to the motivation of plaintiffs in other cases than it would be for those courts to provide advisory opinions on claims the parties never raised.

---

[7] Notably, as in *Takahashi*, this Court may also choose to decide this case on equal protection grounds. *See* ECF No. 184 at 51–55; ECF No. 205-1 at 15–21.

Finally, the Secretary's single paragraph engaging with the Citizenship Requirement itself is as unpersuasive as it is dismissive. The Secretary insists "there's no conflict" between the Citizenship Requirement and Section 1981 because a "3PVRO that prevents an illegal alien from collecting and handling completed voter-registration forms doesn't deny the illegal alien the right 'to make and enforce contracts' 'as enjoyed by white citizens.'" ECF No. 201 at 18 (quoting 42 U.S.C. § 1981(a)). This conclusory assertion is made no more compelling by the Secretary's observation that "[s]ome white citizens," such as convicted felons, are also prohibited from engaging in voter registration work under state law. *Id.* To the extent the Secretary is arguing that Section 1981's use of the term "white citizens" indicates it protects only against race-based discrimination, he is mistaken. As the Secretary elsewhere concedes, binding precedent holds that the federal law "also prohibits discrimination based on alienage." *Id.* at 16; *see also Takahashi*, 334 U.S. at 419 (noting Section 1981's protection "has been held to extend to aliens as well as to citizens"). To the extent the Secretary suggests that the Florida law cannot be deemed to discriminate on the basis of alienage so long as some citizens are also barred from voter registration employment, that argument defies all reason. By the Secretary's logic, a state law barring Black citizens from state employment would be entirely consistent with Section 1981, so long as "some white citizens" would also be barred on some other basis. Whatever other conditions states may impose on

19

employment opportunities, they may not make employment contingent upon race or alienage without running afoul of Section 1981.

In enacting the Citizenship Requirement, the Florida Legislature created a categorial rule against a suspect class that flatly violates both the Equal Protection Clause and conflicts with federal protections under Section 1981. While neither the Legislature nor the Secretary may have contemplated that the broad sweep of the Citizenship Requirement would implicate noncitizens' ability to contract for employment with 3PVROs, the undisputed facts make clear that the provision invades this right for Plaintiffs and many others. The Court should deny the Secretary's motion for summary judgment and instead invalidate the Citizenship Requirement as preempted by federal law.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Secretary's Motion for Summary Judgment.

## **LOCAL RULE 7.1(F) CERTIFICATION**

The undersigned certifies that this motion contains 4,611 words, excluding the case style and certifications.

Dated: February 8, 2024

Abha Khanna*
Makeba Rutahindurwa*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law
mrutahindurwa@elias.law

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law

*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*

Respectfully submitted,

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111
**KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111

*Counsel for Plaintiffs*

21