Nos. 23-12308, 23-12313

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

*Florida State Conference of Branches and Youth Units of the NAACP et al.*,
Plaintiffs-Appellees,

v.

*Cord Byrd et al.*,
Defendants-Appellants.

U.S. District Court for the Northern District of Florida, 4:23-cv-215 (Walker, C.J.)

*Hispanic Federation et al.*,
Plaintiffs-Appellees,

v.

*Cord Byrd et al.*,
Defendants-Appellants.

U.S. District Court for the Northern District of Florida, 4:23-cv-218 (Walker, C.J.)

## DEFENDANTS-APPELLANTS' REPLY BRIEF

Henry C. Whitaker
  *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
(850) 414-3300

*Lead Counsel for Defendant-Appellant
Attorney General Moody*

Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690

*Lead Counsel for Defendant-Appellant
Secretary of State Byrd*

*Nos. 23-12308, 23-12313*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Defendants-Appellants certify that the CIPs

in their and the Plaintiffs' briefs are complete.

Dated: December 4, 2023

*/s/ Henry C. Whitaker*
Lead Counsel for Defendant-Appellant
Attorney General Moody

*/s/ Mohammad O. Jazil*
Lead Counsel for Defendant-Appellant
Secretary of State Byrd

# TABLE OF CONTENTS

Table of Contents ................................................................................. i

Table of Authorities ........................................................................... ii

Argument ............................................................................................ 1

    I. Rational basis applies to the citizenship provision, and the provision more than satisfies this level of scrutiny ................................................... 1

      A. Strict scrutiny can't apply to a provision that encompasses all aliens . 2

      B. At the very least, the public function exception applies ...................... 6

    II. The retention provision has an understandable core ................................. 8

Conclusion ....................................................................................... 10

Certificate of Compliance ................................................................ 12

Certificate of Service ....................................................................... 12

## TABLE OF AUTHORITIES

<u>Cases</u>

*Bernal v. Fainter,*
    467 U.S. 216 (1984) ...................................................................4, 6

*Berry v. Crestwood Healthcare LP,*
    22-11129 (11th Cir. Oct. 27, 2023) ................................................3

*Brnovich v. DNC,*
    141 S. Ct. 2321 (2021) ...................................................................7

*Cabell v. Chavez-Salido,*
    454 U.S. 432 (1982) .......................................................................7

*Cervantes v. Guerra,*
    651 F.2d 974 (5th Cir. 1981) .........................................................7

*Club Madonna v. City of Miami Beach,*
    42 F.4th 1231 (11th Cir. 2022) ...................................................4-5

*Estrada v. Becker,*
    917 F.3d 1298 (11th Cir. 2019) .....................................................2

*High Ol' Times, Inc. v. Busbee,*
    673 F.2d 1225 (11th Cir. 1982) .....................................................8

*In re Griffiths,*
    413 U.S. 717 (1973) .......................................................................4

*League of Women Voters of Florida v. Byrd,*
    66 F.4th 905 (11th Cir. 2023) ................................................. 1, 7-8

*LeClerc v. Webb,*
    419 F.3d 405 (5th Cir. 2005) .........................................................2

*McGuire v. Marshall,*
    50 F.4th 986 (11th Cir. 2022) .......................................................4

*New York Times v. Sullivan*,
 376 U.S. 254 (1964) ........................................................................... 3

*Sistersong Women of Color Reproductive Justice Collective v. Governor of Georgia*,
 40 F.4th 1320 (11th Cir. 2022) ........................................................... 1, 5, 10

*Sugarman v. Dougall*,
 413 U.S. 634 (1973) ........................................................................... 3

*United States v. Gruezo*,
 66 F.4th 1284 (11th Cir. 2023) ........................................................... 5

*United States v. Hansen*,
 143 S. Ct. 1932 (2023) ........................................................................ 5

*\*United States v. Salerno*,
 481 U.S. 739 (1987) .............................................................. *passim*

*Winter v. Natural Resources Defense Council, Inc.*,
 555 U.S. 7 (2008) ............................................................................... 1

Constitutional Provisions, Statutes, and Regulations

U.S. Const. amend. XV, § 1 .................................................................. 1

Fla. Const. art. V, § 21 ......................................................................... 9

Fla. Const. art. VI, § 2 .......................................................................... 1

Fla. Stat. § 97.0575 ............................................................................ 1-9

Fla. Stat. § 102.031 ............................................................................ 8

Fla. Stat. § 104.41 .............................................................................. 8

49 C.F.R. § 1544.405 .......................................................................... 7

**ARGUMENT**

Facial challenges "to a legislative Act" are "the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Voting-related time, manner, and place restrictions need not be supported by specific evidence of fraud. *See League of Women Voters of Florida v. Byrd*, 66 F.4th 905, 925 (11th Cir. 2023). Voting itself is a solemn obligation reserved for citizens, only citizens. *See* U.S. Const. amend. XV, § 1; Fla. Const. art. VI, § 2. Vagueness challenges should seldom succeed, never when a statute has an understandable core. *See Sistersong Women of Color Reprod. Just. Collective v. Gov. of Ga.*, 40 F.4th 1320, 1327 (11th Cir. 2022). And preliminary injunctions are meant to be rare. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs ignore these fundamental precepts. They maintain that Florida's decision to allow only citizens to collect and handle the voter registration applications of other citizens is facially unconstitutional, Fla. Stat. § 97.0575(1)(f), as is Florida's restriction on the information third-party voter registration organizations ("3PVROs") can retain, *id.* § 97.0575(7).

## I.   Rational basis applies to the citizenship provision, and the provision more than satisfies this level of scrutiny.

For the citizenship provision, the Plaintiffs' argument is this: because permanent resident aliens fall within the citizenship provision's ambit, strict scrutiny applies and can't be satisfied because the State has no specific evidence of non-citizens failing to deliver voter registration applications, or of a non-citizen's collection and handling of voter registration applications undermining public confidence in elections. *See* NAACP

1

Br. at 12-25; His. Fed'n Br. at 18-34. Plaintiffs' argument hinges on two conditions. First, for Plaintiffs to succeed, strict scrutiny must apply to a provision that, on its face, encompasses all different categories of non-citizens—everyone from the illegal alien and the student visa holder to the permanent resident. Second, the public function exception cannot apply to a provision limiting who serves as an extension of the local election official. Neither of these conditions is met.

### A. Strict scrutiny can't apply to a provision that encompasses all aliens.

**1.** Unlike a race-based or sex-based distinction, no one level of scrutiny can apply when assessing a facial challenge to a provision that makes an alienage-based distinction. Why? The level of scrutiny depends on the kind of alien; the exclusion of permanent residents must overcome greater scrutiny than the exclusion of other aliens. *See* State Int. Br. at 13-15; *see also Estrada v. Becker*, 917 F.3d 1298, 1310 (11th Cir. 2019); *LeClerc v. Webb*, 419 F.3d 405, 415 (5th Cir. 2005). Because the level of scrutiny varies, Plaintiffs, in a "facial challenge to [this] legislative Act," must "establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. In other words, in a facial challenge, Plaintiffs must show that Florida's citizenship provision fails the rational basis test applicable to aliens other than the permanent resident alien. They can't do that here. At the very least, the citizenship provision satisfies rational basis review for the illegal alien, the asylum seeker, the student visa holder, and the ex-citizen. *See* State Int. Br. at 15.

2

**2.** Plaintiffs attempt to sidestep the argument by saying the State waived it, NAACP Br. at 16, His. Fed'n Br. at 20, n.5, while simultaneously accusing the State of "recycle[ing] arguments" in defense of the citizenship provision "that the district court properly rejected." His. Fed'n Br. at 2. But "parties do not forfeit individual arguments." *Berry v. Crestwood Healthcare LP*, 22-11129, slip op. at 18 (11th Cir. Oct. 27, 2023) (citations omitted). "If a party presents an issue to the district court, she may make any argument in support of that issue on appeal." *Id.* And the State presented the issue (the applicable level of scrutiny) together with the argument (that it varies depending on the type of alien) to the district court. In its response to the Plaintiffs' motions for preliminary injunctions, the State said that "the category of alien matters" when assessing the "level of judicial scrutiny" and that rational basis applies to all categories of alien except the permanent resident alien. Case No. 4:23-cv-215, Doc.92 at 18; Case No. 4:23-cv-218, Doc.60 at 26. True, there was no citation to *Salerno* below. But to say that's a waiver would mean that someone waives an actual malice defense when failing to cite *New York Times v. Sullivan*, 376 U.S. 254 (1964). That's not the standard for waiver. The issue (and the argument) is thus properly before this Court.

**3.** Plaintiffs next argue that the Supreme Court has never applied different levels of scrutiny in its prior alienage cases. *See* NAACP Br. at 15-16. While true, the Supreme Court has never addressed the issue either. The prior alienage cases, all of which predate *Salerno*'s facial-as-applied distinction, are properly understood as as-applied challenges, not facial challenges: *Sugarman v. Dougall*, 413 U.S. 634 (1973), should be viewed as an

as-applied challenge by permanent resident civil servants; *In re Griffiths*, 413 U.S. 717 (1973), should be viewed as an as-applied challenge by a permanent resident lawyer; and *Bernal v. Fainter*, 467 U.S. 216 (1984), should be viewed as an as-applied challenge by a permanent resident notary. This view is bolstered by the fact that the Supreme Court would have likely reached a different decision had the challenger been an illegal alien, not a permanent resident.

In this case, however, Plaintiffs mount a facial challenge against a statute that applies to different classes of aliens, not just permanent resident aliens. So they must meet *Salerno*'s no-set-of-circumstances standard for all the classes of aliens. No one level of constitutional scrutiny can apply when making the assessment.

**4.** Yet Plaintiffs insist that they don't need to meet their "burden of proving that the law could never be applied in a constitutional manner." *McGuire v. Marshall*, 50 F.4th 986, 1003 (11th Cir. 2022). They say that *Salerno*'s no-set-of-circumstances standard doesn't mean what it says. NAACP Br. at 17-19; His. Fed'n Br. at 21-22. Quoting from this Court's decision in *Club Madonna v. City of Miami Beach*, 42 F.4th 1231, 1256 (11th Cir. 2022), they say that *Salerno* merely provides "a description of the outcome of a facial challenge in which a statute fails to satisfy the appropriate constitutional framework." The problems with this reading of *Salerno* are threefold.

First, such a reading turns "the most difficult challenge to mount successfully," *Salerno*, 481 U.S. at 745, into a tepid "outcome" "description," *Club Madonna*, 42 F.4th

4

at 1256. Under Plaintiffs' view, gone is the need to show that the statute is so blatantly unconstitutional that it can never be constitutionally applied.

Second, turning *Salerno* into a mere "description of the outcome" makes its facial-as-applied distinction meaningless. It relegates *Salerno* to a constitutional afterthought rather than the case cited by this Court both before and after *Club Madona* for the proposition that plaintiffs in a facial challenge "must establish that no set of circumstances exists under which the statute would be valid." *United States v. Gruezo*, 66 F.4th 1284, 1293 (11th Cir. 2023) (after); *Sistersong*, 40 F.4th at 1327-28 (before). It ignores that the Supreme Court, earlier this year, said that *Salerno* provides a general rule for "litigants mounting a facial challenge," and not just a description of the outcome of a case. *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023). And, under Plaintiffs' reading, litigants can simply sidestep *Salerno* by dismissing any application beyond the specific circumstances of the litigants as mere "hypotheticals," thus destroying the line between facial and as-applied challenges. His. Fed'n Br. at 22.

Third, even if *Salerno* merely reports the outcome of the proper application of "the appropriate constitutional framework," that still doesn't help Plaintiffs as much as they think it does. The appropriate constitutional framework is another way of saying the appropriate level of scrutiny. Again, the appropriate level of scrutiny varies when a statute makes a distinction between citizens and non-citizens because non-citizens include the rational-basis illegal aliens and the strict-scrutiny permanent residents. And if different levels of scrutiny must apply, as the State contends, even Plaintiffs' cramped

5

reading of *Salerno* requires that they prove that the citizenship provision's application to illegal aliens and other non-permanent resident aliens fails the rational basis test.

In sum, alienage is just different. The Equal Protection Clause prohibits distinctions based on race, regardless of whether the race is white or black, national origin, regardless of whether one is Irish or Italian, and sex, regardless of whether one is a male or female. That's not the case with alienage. Under the law, illegal aliens can and are treated differently than temporary residents, and temporary residents can and are treated differently than permanent residents. And unlike race, national origin, or sex, which can't change, an individual's alienage status can change in one exciting lifetime— from illegal alien to temporary resident to permanent resident, for example.

**B.   At the very least, the public function exception applies.**

Finally, even if one level of scrutiny does apply, and even if *Salerno* doesn't mean what it says, then the citizenship provision is still subjected to rational basis review because the public function exception is triggered. *See* State Int. Br. at 17-21. Plaintiffs disagree based on their application of the two-prong test for the exception. *See* NAACP Br. at 19-22; His. Fed'n Br. at 27-33. But Plaintiffs never address the State's point that the two-part test isn't exhaustive—that it simply "'focus[es]'" the "'inquiry.'" State Br. at 18 (quoting *Bernal*, 467 U.S. at 224).

Under the Plaintiffs' exacting application of the public function exception, any job that entails a ministerial task (as opposed to a discretionary, policymaking task) would automatically fall outside the public function exception. *See, e.g.*, NAACP Br. at

20. That would leave no room for the Department of Homeland Security to mandate that only citizens serve as TSA screeners, as it already does, 49 C.F.R. § 1544.405(c), or for the Department of Defense to decide that the military officer carrying the President's nuclear football must be a citizen. The exception would become so narrow that it would bar the government from passing laws to relegate certain important tasks to citizens even when doing so is critical to public confidence.

Election administration is just such a task. Every step in the process is tightly regulated because public confidence in the process demands just that. The "perceived legitimacy of the announced outcome" is critical. *Brnovich v. DNC*, 141 S. Ct. 2321, 2340 (2021). Many would, for example, question California-election results that were tallied by Texas residents, and vice versa, regardless of a Texan's ability to tally results.

It's for this reason that evidence of fraud isn't required before enacting reforms to tackle a problem visible only on the horizon. *League of Women Voters*, 66 F.4th at 925. And it's why the former Fifth Circuit applied the political function exception in *Cervantes v. Guerra*, 651 F.2d 974, 980-81 (5th Cir. 1981), to an elections-related context. Or as *Cervantes* put it: "voting in a public election is always within the political functions exception." *Id.* at 981.

Because voting is always within the political function exception, a critical step in the process, registering to vote, is too. Citizens vote. Florida can decide that it only wants other citizens to help register those citizen voters—Florida can "define its political community." *Cabell v. Chavez-Salido*, 454 U.S. 432, 439 (1982).

## II.  The retention provision has an understandable core.

For the retention provision, Plaintiffs, like the district court, continue to hold the retention provision to a higher standard than precedent requires. NAACP Br. at 27. They suggest that the understandable-core standard doesn't apply when the statute being challenged imposes criminal penalties. *Id.* And they say that the rules of statutory construction are somehow suspended in this circumstance—that an illustrative list of the kind of information being protected is insufficient. *Id.*

In *League of Women Voters*, this Court considered an election-related provision that prohibited people from "engaging in any activity with the intent to influence . . . a voter" and "engaging in any activity with the . . . effect of influencing a voter." 66 F.4th at 946 (quoting Fla. Stat. § 102.031(4)(b))(internal quotation marks omitted). Though violations of that statute also triggered criminal penalties, Fla. Stat. § 104.41, this Court still assessed the statute to see whether it was "'utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct.'" *League of Women Voters*, 44 F.4th at 946 (quoting *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982)). There was no separate test.

Ultimately, in *League of Women Voters*, this Court concluded that only the prohibition on engaging in activity with the "effect of influencing a voter" was unconstitutionally vague. That's because there was no way for "an individual seeking to comply with the law to anticipate whether his or her actions will have the subjective effect of influencing a voter." *Id.* at 947. As this Court explained, "[i]f the best—or perhaps

8

only—way to determine what activity has the 'effect of influencing' a voter is to ask the voter, then the question of what activity has that effect is a *wholly subjective* judgment without statutory definition, narrowing context, or settled legal meaning." *Id.* (cleaned up, emphasis added).

But, unlike the unconstitutional clause in *League of Women Voters*, the retention provision isn't "wholly subjective." *Id.* It includes the following exemplars:

- "the voter's Florida driver license number," Fla. Stat. § 97.0575(7),

- "Florida identification card number," *id.*,

- "social security number," *id.*, and

- "signature," *id.*

There's also a narrowing context and a settled meaning in the elections context. More specifically, this information is the type of voter-specific, personal information that is excluded from Florida's otherwise broad public records laws, *see* State Br. at 26, and for good reason because it's the type of information that election officials have used in the past to detect fraud, *see* State Br. at 4-5, 24. The Secretary of State's rules concerning the provision, though not dispositive, *see* Fla. Const. art. V, § 21, provide additional guideposts for the reasonable person attempting to comply.

In this way, Florida's retention provision is closer to the provision upheld in *Sistersong*. There, the challengers mounted a facial challenge to an abortion-related pro-vision, which carried possible criminal penalties, and defined "natural person" as "any

human being including an unborn child" with an "unborn child" being "a member of the species Homo sapiens at any stage of development who is carried in the womb." *Sistersong*, 40 F.4th at 1326 (citing H.B. 481 § 3(b), (e)(2)) (internal quotations marks omitted). In assessing the challenge, this Court neither divorced the provision from its context nor required the State to account for every possible application (which could "properly be [challenged] in an as-applied manner"). *Id.* at 1328. Instead, this Court held that there was an understandable core: "[a] person of reasonable intelligence is capable of understanding that 'the core meaning of' the provision is to expand the definition of person to include unborn humans who are carried in the womb of their mother at any stage of development." *Id.*

The same is true here for Florida's retention provision. The ordinary person knows that a voter's personal information, like the driver's license number, identification number, social security number, and signature can no longer be retained.

## CONCLUSION

For the foregoing reasons, and those in the State's initial brief, this Court should reverse the district court's order granting a preliminary injunction.

10

Dated: December 4, 2023

Ashley Moody
  *Attorney General*

*/s/ Henry C. Whitaker*
Henry C. Whitaker (FBN 1031175)
  *Solicitor General*
Daniel W. Bell (FBN 1008587)
  *Chief Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Henry.whitaker@myfloridalegal.com
Daniel.bell@myfloridalegal.com

*Counsel for Defendant-Appellant Attorney General Moody*

Respectfully Submitted,

Bradley R. McVay (FBN 79034)
  *Deputy Secretary of State*
brad.mcvay@dos.myflorida.com
Joseph S. Van de Bogart (FBN 84764)
  *General Counsel*
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 84764)
  *Chief Deputy General Counsel*
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
Phone: (850) 245-6536

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
Phone: (850) 391-0503
Facsimile: (850) 741-1023
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
jpratt@holtzmanvogel.com

*Counsel for Defendant-Appellant Secretary of State Cord Byrd*

11

## CERTIFICATE OF COMPLIANCE

This brief contains 2,590 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: December 4, 2023          */s/ Mohammad O. Jazil*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing certificate was filed on ECF.

Dated: December 4, 2023          */s/ Mohammad O. Jazil*