**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | |
|---|---|
| FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CORD BYRD, in his official capacity as Florida Secretary of State, et al., <br><br> Defendants. | Case No.:   4:23-cv-215-MW/MAF |

**PLAINTIFFS' REPLY IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

ARGUMENT ....................................................................................................... 1

    I.     Defendants improperly attempt to cram five briefs into one .................... 1

    II.    Plaintiffs have standing to sue the Attorney General .............................. 3

    III.   The Citizenship Requirement facially violates the Equal
          Protection Clause .................................................................................... 4

          A.    The political-function exception is inapplicable to 3PVRO
                canvassers ................................................................................... 5

          B.    *Salerno* does not alter the Court's analysis of Plaintiffs' equal
                protection challenge ................................................................... 7

          C.    The Citizenship Requirement fails to satisfy strict scrutiny ........... 9

    IV.   The Court should grant summary judgment and enjoin the Citizenship
          Requirement on federal preemption grounds ........................................ 11

    V.    Section 208 of the Voting Rights Act preempts the Mail-In Ballot
          Request Restriction ............................................................................... 12

CONCLUSION .................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bernal v. Fainter*,
   467 U.S. 216 (1984) ................................................................................ 5, 6, 7, 9

*Cal. Democratic Party v. Jones*,
   530 U.S. 567 (2000) .......................................................................................... 10

*Club Madonna Inc. v. City of Miami Beach*,
   42 F.4th 1231 (11th Cir. 2022) ........................................................................... 7

*Conservit, Inc. v. Glob. Mill Supply, Inc.*,
   1:19-cv-00274-ELR, 2023 WL 8518232 (N.D. Ga. June 26, 2023) ................... 2

*Dobbs v. Sea Isle Hotel*,
   56 So. 2d 341 (Fla. 1952) ................................................................................ 13

*FNB Bank v. Park Nat'l Corp.*,
   No. 13-0064-WS-C, 2013 WL 6842778 (S.D. Ala. Dec. 27, 2013) ................... 2

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021) .......................................................................................... 11

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992) ............................................................................................ 12

*Graham v. Richardson*,
   403 U.S. 365 (1971) ............................................................................................ 8

*Green Party of Ga. v. Kemp*,
   171 F. Supp. 3d 1340 (N.D. Ga. 2016) ............................................................. 11

*In re Griffiths*,
   413 U.S. 717 (1973) ............................................................................................ 9

*Henry v. Abernathy*,
   No. 2:21-CV-797-RAH, 2022 WL 17816945 (M.D. Ala. Dec. 19,
   2022) ................................................................................................................... 8

*Jacobson v. Fla. Sec'y of State*,
 974 F.3d 1236 (11th Cir. 2020) ............................................................................. 14

*Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*,
 845 F. Supp. 2d 1241 (M.D. Fla. 2012) .................................................................. 2

*Nyquist v. Mauclet*,
 432 U.S. 1 (1977) .................................................................................................... 8

*Palm Beach Cnty. Canvassing Bd. v. Harris*,
 772 So. 2d 1273 (Fla. 2000) ................................................................................. 13

*Schultz v. Alabama*,
 42 F.4th 1298 (11th Cir. 2022) ............................................................................... 8

*Soltysik v. Padilla*,
 910 F.3d 438 (9th Cir. 2018) ................................................................................ 11

*Sugarman v. Dougall*,
 413 U.S. 634 (1973) ................................................................................................ 9

*Support Working Animals, Inc. v. Governor of Fla.*,
 8 F.4th 1198 (11th Cir. 2021) ................................................................................. 3

*Takahashi v. Fish & Game Comm'n*,
 334 U.S. 410 (1948) .............................................................................................. 12

*United States v. Salerno*,
 481 U.S. 739 (1987) ............................................................................................ 4, 7

*Veasey v. Abbott*,
 830 F.3d 216 (5th Cir. 2016) ................................................................................ 11

*Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*,
 89 F.4th 1337 (11th Cir. 2024) ............................................................................... 8

**Statutes**

52 U.S.C. § 10508 .................................................................................................... 13

Fla. Stat. § 97.0575(8) ................................................................................................ 3

**Other Authorities**

N.D. Fla. Loc. R. 56.1(C) ....................................................................................... 2

Rule 1S-2.055 ...................................................................................................... 14

The parties agree that Plaintiffs' facial challenges to the Citizenship Requirement and Mail-In Ballot Request Restriction are amenable to summary judgment. They disagree on the merits. Each of Defendants' arguments in defense of the Citizenship Requirement has already been rejected by this Court, the U.S. Supreme Court, or the Eleventh Circuit. And Defendants' attempt to save the Mail-in Ballot Request Restriction is similarly flawed as a matter of law. Simply put, the Florida Legislature acted in blatant disregard of federal law when it chose to facially discriminate on the basis of alienage and to prohibit assistance to which voters are entitled. Defendants provide no viable legal basis to find otherwise. The Court should grant summary judgment to Plaintiffs on these claims.

## ARGUMENT

### I.   Defendants improperly attempt to cram five briefs into one.

As an initial matter, this Court should disregard any arguments that Defendants do not actually articulate in their response briefs. Defendants attempt to incorporate three additional briefs and portions of a fourth brief into the Secretary's response to this motion. ECF 222 at 4 (incorporating *entire* response in opposition to Plaintiffs' preliminary injunction motion, ECF 92, and *all* appellate briefs, ECF 219-2, 219-3); *id.* at 11, 13 (incorporating portions of motion for summary judgment,

1

ECF 201 at 15-19, 9-14).[1] Together, the Secretary's response brief along with the additional briefs and arguments he purports to incorporate total more than *25,000* words, over three times the allotted amount, N.D. Fla. Loc. R. 56.1(C).

Adherence to prescribed word limits is no mere formality. Defendants' approach "foists upon the Court" and Plaintiffs "the burden of sifting through irrelevant materials" to piece together Defendants' arguments. *FNB Bank v. Park Nat'l Corp.*, No. 13-0064-WS-C, 2013 WL 6842778, at *1 n.1 (S.D. Ala. Dec. 27, 2013). But Defendants cannot abdicate their responsibility to clearly articulate their legal positions and rely on the Court to cobble them together instead. Nor should Plaintiffs have to run down rabbit holes or risk failing to respond to an argument buried in another brief. For this reason, courts routinely disregard wholesale arguments incorporated by reference. *See, e.g.*, *id.*; *Conservit, Inc. v. Glob. Mill Supply, Inc.*, 1:19-cv-00274-ELR, 2023 WL 8518232, at *6 (N.D. Ga. June 26, 2023); *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1253 (M.D. Fla. 2012). This Court should do the same and consider only those arguments Defendants expressly make in response to Plaintiffs' motion for partial summary judgment.

---

[1] The Secretary authored the primary response in opposition, ECF 222, which the Attorney General joined, ECF 221.

## II. Plaintiffs have standing to sue the Attorney General.

As to the Citizenship Requirement, this Court has already determined that Plaintiffs' injuries are fairly traceable to and redressable by both the Secretary and the Attorney General. ECF 101 at 19-20. There is no question that the Attorney General has the power to enforce the Citizenship Requirement upon referral from the Secretary and is specifically authorized to "institute a civil action for a violation" of the Requirement. Fla. Stat. § 97.0575(8). And "[r]emoving the threat of enforcement," including "further civil enforcement by the Attorney General," "would directly redress Plaintiffs' injuries" by allowing their noncitizen employees to "continue the voter registration work that they have been hired to do" without fear of compounding penalties. ECF 101 at 20.

The fact that the Attorney General is not *required* to prosecute violations of the Citizenship Requirement does not bar her *power* to enforce it. The Eleventh Circuit standard requires only that a government official "has the authority to enforce the particular [challenged] provision," not that they *must* exercise that authority in all circumstances. *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021).

The Attorney General likewise has the power to enforce the Mail-In Ballot Request Restriction. Though she suggests that the provision falls outside SB 7050's procedures for enforcement, as enrolled, SB 7050 expressly encompasses the Mail-

3

In Ballot Request Restriction. *See* ECF 225-2, Enrolled Version of SB 7050, at 4 (identifying Section 101.62 as one of the provisions SB 7050 amends by "specifying that a supervisor must accept requests for vote-by-mail ballots only from specified persons"). The Attorney General, in turn, has stipulated that her office "can enforce the challenged civil provisions" of SB 7050 upon a "referral from the Secretary of State," ECF 225-1, which includes the Mail-in Ballot Request Restriction.

### III. The Citizenship Requirement facially violates the Equal Protection Clause.

The Court should find for Plaintiffs on Count III of their complaint for the same reasons it found they were likely to succeed on this claim when it granted the preliminary injunction. Defendants improperly seek to avoid strict scrutiny by recycling the same political-function exception argument this Court already rejected at the preliminary injunction stage. ECF 222 at 9-11. Their argument that the "no set of circumstances" language in *United States v. Salerno*, 481 U.S. 739, 745 (1987), defeats Plaintiffs' facial challenge, ECF 222 at 4-6, fares no better. As the Eleventh Circuit has made clear, that does not change the traditional equal-protection framework, under which alienage-based restrictions generally trigger strict scrutiny. And although Defendants try to walk back their previous concessions to argue—for the first time—that the Citizenship Requirement survives even strict scrutiny, they fail to identify a single state interest for the Requirement, let alone a compelling one

4

narrowly tailored to the law. The Court should grant Plaintiffs summary judgment and enjoin enforcement of the Citizenship Requirement.[2]

### A. The political-function exception is inapplicable to 3PVRO canvassers.

None of Defendants' arguments made in response to Plaintiffs' motion rebut the Court's initial finding that the political-function exception cannot save the Requirement from strict scrutiny.

The narrow exception applies only to those who "are invested either with policymaking responsibility or broad discretion in the execution of public policy that requires the routine exercise of authority over individuals." *Bernal v. Fainter*, 467 U.S. 216, 226 (1984). Defendants do not dispute that Plaintiffs' canvassers have *no* policymaking responsibility, exercise *no* discretion to enforce or influence policy, and wield *no* power or authority over anyone else. *See* ECF 101 at 33 (conceding that "those who collect and handle completed applications aren't vested with discretion or engage in policy making"). That is the end of the inquiry.

---

[2] Plaintiffs agree that the Court has discretion to wait until the Eleventh Circuit resolves the preliminary-injunction appeal before deciding the summary judgment motions on the equal-protection challenge to the Citizenship Requirement. ECF 222 at 3. But regardless of the decision's timing or whether the Court requires further briefing to address it, the decision should not delay trial on Plaintiffs' remaining claims, including their as-applied challenges to the Citizenship Provision and Information Retention Ban, ECF 184 ¶¶ 127-147, 156-171.

Instead of arguing that 3PVRO canvassers satisfy *Bernal*'s political-function exception test, Defendants contend that the *Bernal* test "isn't exhaustive." ECF 222 at 9. Defendants' reading is incomprehensible. *Bernal* plainly sets forth "a two-part test" "[t]o determine whether a restriction based on alienage fits within the narrow political-function exception." 467 U.S. at 221. The Court's repeated emphasis on the "narrow[ness]" of the exception, *see id.* at 220, 221, 222 n.7, 224, belies Defendants' suggestion that the exception applies more broadly to positions that fall outside the *Bernal* test. And the Court's reference to "the actual function of the position" as its "focus of . . . inquiry" only reinforces how the test has "always" been applied. *Id.* at 223-24. Defendants cannot backdoor 3PVRO canvassers into the political-function exception where the *Bernal* test is not satisfied.

Defendants' emphasis on the "major consequence[s] of failing to" deliver voter registration forms on time," ECF 222 at 10, is also directly refuted by *Bernal*. There, the Court recognized the "considerable damage [that] could result from the negligent or dishonest performance" of a notary's "important" duties. 467 U.S. at 225. But the Court held that, regardless of its importance, the position fell outside the political-function exception because "these duties are essentially clerical and ministerial." *Id.*

Collecting and delivering voter registration forms, while "important," is no less "clerical and ministerial" than a notary's duties. Defendants' concerns about the

6

exception's applicability to TSA screeners or military officers "carrying the President's nuclear football," by contrast, are disingenuous. These positions clearly involve discretionary decision-making and authority over others. Ultimately, "[w]hat distinguishes" positions that fall within the political-function exception is not their importance but their "policymaking responsibility or broad discretion in the execution of public policy." *Id.* at 226. As Defendants concede, *see* ECF 101 at 33, "[n]either of these characteristics pertains to the functions performed by" 3PVRO canvassers. *Bernal*, 467 U.S. at 226.

### B. *Salerno* does not alter the Court's analysis of Plaintiffs' equal protection challenge.

The Eleventh Circuit has already made clear that *Salerno*'s "no set of circumstances" language, 481 U.S. at 745, does not alter or impose additional burdens on Plaintiffs in satisfying the relevant constitutional test for a facial challenge. In *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231 (11th Cir. 2022), the Court expressly rejected the argument that a plaintiff needs to "prove that there is no hypothetical situation in which the [challenged provision] could be validly applied." *Id.* at 1256; *see also id.* ("[T]he City's claim that the Club needs to show that the law is invalid in all circumstances misstates the law governing facial challenges."). As the court explained, "the question that *Salerno* requires us to answer is whether the statute fails the relevant constitutional test," which in *that* case was "the standard for federal conflict preemption," *id.*, and in *this* case is the equal-

7

protection standard for alienage-based classifications—strict scrutiny. *Graham v. Richardson*, 403 U.S. 365, 376 (1971); *cf. Nyquist v. Mauclet*, 432 U.S. 1, 8 (1977) (rejecting appellants' argument that only laws that "distinguish between citizens and aliens vel non" are subject to strict scrutiny and applying heightened standard to even subclass of noncitizens).

More recent Eleventh Circuit precedent confirms this approach. In *Schultz v. Alabama*, 42 F.4th 1298, 1306 (11th Cir. 2022), the Court did not reject the facial equal protection challenge on the grounds that it could be applied constitutionally in some scenarios, as Defendants propose here. Instead, after "discuss[ing] at length what level of scrutiny applied to the equal protection claim," the Court "determined and then applied 'the relevant constitutional test[]' to the challenged policy." *Henry v. Abernathy*, No. 2:21-CV-797-RAH, 2022 WL 17816945, at *8 (M.D. Ala. Dec. 19, 2022) (analyzing *Schultz*). Similarly, *Young Israel of Tampa, Inc. v. Hillsborough Area Regional Transit Authority*, 89 F.4th 1337 (11th Cir. 2024), applied the well-established constitutional vagueness framework to the plaintiffs' void-for-vagueness claim even though the court could "imagine" an application "which clearly falls within" the challenged ban, noting that "in its more recent cases the Supreme Court has cut back on the broad statement in *Salerno*" with respect to vagueness challenges. *Id.* at 1350.

### C. The Citizenship Requirement fails to satisfy strict scrutiny.

Defendants' newfound insistence that the Citizenship Requirement satisfies strict scrutiny beggars belief. ECF 222 at 6-9. First, Defendants disclaim any concession that the Requirement fails strict scrutiny, *id.* at 6, notwithstanding their previous assertion to this Court that applying the Citizenship Requirement against all noncitizens, including permanent resident aliens, "might well fail strict scrutiny," Defs.' Initial Appellate Br. at 17, *Fla. State. Conf. of NAACP v. Fla. Sec'y of State*, No. 23-12308 (11th Cir. Aug. 21, 2023), ECF 29 ("Defs.' App. Br."). Defendants repeated this statement before the Eleventh Circuit, likening the provision to the statutes at issue in *Sugarman v. Dougall*, 413 U.S. 634 (1973), *In re Griffiths*, 413 U.S. 717 (1973), and *Bernal*, 467 U.S. at 224—all of which applied strict scrutiny to facial challenges to laws that broadly targeted noncitizens. Defs.' App. Br. at 17. Moreover, as this Court already found, "Defendants conceded that banning all noncitizens from collecting or handling voter registration applications is not a perfect fit to alleviate the state's concern about 'voter integrity'" and argued instead that "this imperfect fit is 'good enough' because rational basis review should apply." ECF 101 at 36-37 (quoting PI Hr'g Tr. at 84-85). Even if Defendants have not forfeited this argument, the fact that it took them almost eight months and multiple rounds of trial court and appellate briefing to scrape together an argument that the provision survives strict scrutiny speaks volumes.

9

Second, Defendants provide a laundry list of generalized state interests in support of SB 7050 as a whole—including "safeguarding election integrity, preventing fraud, ensuring timely submissions of voter-registration forms, and promoting uniformity and fairness, promoting voter confidence, and protecting sensitive information"—and insist that "[t]hose are compelling governmental interests." ECF 222 at 6-7. But these interests were not even offered in support of the Citizenship Requirement specifically—but rather SB 7050 writ large—so they have no bearing on this Court's strict scrutiny analysis of the challenged provision. Whether a state interest is compelling "is not [] made in the abstract," by asking whether election integrity, fairness, and voter confidence "are highly significant values; but rather by asking whether the *aspect*" of these principles "addressed by the law at issue is highly significant." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 584 (2000). Defendants have failed to explain how the Citizenship Requirement addresses any aspect of these abstract state interests, and thus, "*in the circumstances of this case*," they are not compelling. *Id.*

Even assuming these interests were compelling in the context of this challenge, the Citizenship Requirement is not tailored at all—let alone narrowly—to support them. Defendants' strict scrutiny argument rests on the State's ability to discriminate against a suspect class who "*may* not have ties to communities and *may* pose a flight risk," notwithstanding the admitted "dearth of evidence involving

10

noncitizens and 3PVROs." ECF 222 at 7-8 (emphases added). But it is blackletter law that state interests must be grounded in concrete justifications—not speculative and unfounded fears—to satisfy strict scrutiny. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 542 (2021) ("[S]peculation is insufficient to satisfy strict scrutiny."); *see also Soltysik v. Padilla*, 910 F.3d 438, 445, 449 (9th Cir. 2018) (holding that "speculative concern of voter confusion" is insufficient to justify voting regulation even where court "decline[s] to apply strict scrutiny").

As this Court has already found, Defendants have failed to identify "any connective tissue between the problem and the state's proposed solution—namely, banning *all* noncitizens from collecting or handling voter registration applications on behalf of 3PVROs." ECF 101 at 35; *see also Veasey v. Abbott*, 830 F.3d 216, 263 (5th Cir. 2016) (finding state's interest was "misplaced" because there was "no credible evidence" connecting state interest to challenged law); *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1366 (N.D. Ga. 2016), *aff'd*, 674 F. App'x 974 (11th Cir. 2017) (finding challenged law failed strict scrutiny where "nothing in the record allows the Court to conclude that Georgia actually faces a danger of voter confusion or ballot over-crowding").

### IV. The Court should grant summary judgment and enjoin the Citizenship Requirement on federal preemption grounds.

Contrary to Defendants' suggestion, ECF 222 at 11-12, the U.S. Supreme Court expressly foreclosed any argument that Section 1981 *does not* apply to

11

noncitizens over 70 years ago. *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) (Section 1981's protection "has been held to extend to aliens as well as to citizens"). The cases Defendants cite to support a purported open question do not contradict *Takahashi*'s clear determination, as neither of them discuss alienage-based classifications.

Defendants' response does little to dispute the legal theory or logic of Plaintiffs' preemption claim. Defendants argue that Section 1981 does not apply in this context because it has not before, ECF 222 at 12, but this Court must apply the same well-established preemption standard regardless of the law at issue, *see Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) ("Our ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the [preemptive] statute as a whole.").

The remainder of Defendants' arguments related to this claim require the Court to find that the political-function exception applies to the Citizenship Requirement under Section 1981. ECF 222 at 12-13. Even if Defendants were right on the legal standard, the political-function exception does not save the Citizenship Requirement in any context. *Supra* Section III(B).

## V. Section 208 of the Voting Rights Act preempts the Mail-In Ballot Request Restriction.

Federal law preempts the Mail-In Ballot Request Restriction because it directly conflicts with Section 208 of the Voting Rights Act, which allows voters

requiring assistance to obtain it from "a person of the voter's choice," 52 U.S.C. § 10508. *See* ECF 205-1 at 29-32. Defendants try to obscure this conflict, grasping at another Florida statute and the Secretary's proposed rulemaking, but neither can save the Restriction.

Defendants shrug off Plaintiffs' federalism argument regarding the construction of state statutes as a "red herring," insisting that "[a]ll the Secretary is asking the Court to do" is consider whether the Mail-In Ballot Request Restriction "actually conflicts with federal law (§ 208) in light of another provision of state law (section 101.051(3))." ECF 223 at 2. But this argument only demonstrates that the Mail-In Ballot Request Restriction "actually conflicts" with *both* federal law *and* another provision of state law. In enacting the provision in 2023, the Legislature either forgot or disregarded the overriding requirements of Section 208 of the Voting Rights Act and the incorporation of those requirements in its own statute last amended seven years earlier. *See Palm Beach Cnty. Canvassing Bd. v. Harris*, 772 So. 2d 1273, 1287 (Fla. 2000) (applying statutory construction canon that later-enacted statute controls). The fact that the Legislature saw fit to expressly carve out exceptions for other categories of voters and other statutory provisions in drafting the Mail-In Ballot Request Restriction undermines Defendants' suggestion that the Court should read in an implicit carve-out for Section 101.051(3). *See Dobbs v. Sea Isle Hotel*, 56 So. 2d 341, 342 (Fla. 1952) (applying statutory construction canon

13

that "express mention of one thing is the exclusion of another"). Far from saving the statute, the Restriction's failure to account for a previously enacted state law in *addition* to its failure to account for federal law only underscores that it was lawless the minute it was enacted.

Rule 1S-2.055 fares no better in protecting the Restriction from preemption because Rule 1S-2.055 conflicts with the plain language of the Restriction. "Florida law is clear that when a regulation and a statute conflict, the statute prevails." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1257 (11th Cir. 2020). The Secretary's assurance that he "remains free to bring mandamus action against" supervisors who choose to follow the plain language of the statute rather than the Secretary's conflicting regulation provides no assurance at all.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' partial motion for summary judgment and permanently enjoin enforcement of the Citizenship Requirement and Mail-In Ballot Request Restriction.

| | |
|---|---|
| Dated: February 20, 2024 | Respectfully submitted, |
| Abha Khanna* <br> Makeba Rutahindurwa* <br> **ELIAS LAW GROUP LLP** <br> 1700 Seventh Ave., Suite 2100 <br> Seattle, Washington 98101 <br> Telephone: (206) 656-0177 <br> akhanna@elias.law | /s/ Frederick S. Wermuth <br> Frederick S. Wermuth <br> Florida Bar No. 0184111 <br> King, Blackwell, Zehnder <br>  & Wermuth, P.A. <br> P.O. Box 1631 <br> Orlando, FL 32802-1631 |

14

| | |
|---|---|
| mrutahindurwa@elias.law | Telephone: (407) 422-2472 |
| | Facsimile: (407) 648-0161 |
| Lalitha D. Madduri* | fwermuth@kbzwlaw.com |
| Melinda Johnson* | |
| Renata O'Donnell* | |
| **ELIAS LAW GROUP LLP** | |
| 250 Massachusetts Ave NW, Suite 400 | |
| Washington, D.C. 20001 | |
| Telephone: (202) 968-4490 | |
| lmadduri@elias.law | |
| mjohnson@elias.law | |
| rodonnell@elias.law | |

*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this motion contains 3,181 words, excluding the case style and certifications.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 20, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111

*Counsel for Plaintiffs*

15