UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CORD BYRD, in his official capacity as Florida Secretary of State, et al.,<br><br>Defendants. | Case Nos.: 4:23-cv-215-MW/MAF<br>4:23-cv-216-MW-MAF<br>4:23-cv-218-MW-MAF |

**<u>PLAINTIFFS' MOTION IN LIMINE REGARDING EVIDENCE OF STATE INTERESTS FOR THE CHALLENGED PROVISIONS OF SB 7050</u>**

Because Plaintiffs' First Amendment and equal protection claims trigger strict scrutiny, consolidated Plaintiffs file this motion in limine to limit evidence related to the state's interests in enacting the challenged provisions of SB 7050 to the *actual* interests considered by the legislature, not post hoc justifications for those provisions.[1] SB 7050's legislative record and evidence that was available to the legislature at the time that it passed SB 7050 set the outer limits of those actual

---

[1] This motion is filed on behalf of *NAACP* Plaintiffs, Case No. 4:23-cv-215-MW/MAF *Hispanic Federation* Plaintiffs, Case No. 4:23-cv-218-MW-MAF, and *League of Women Voters of Florida ("LWVFL")* Plaintiffs, Case No. 4:23-cv-216-MW-MAF.

1

interests. In the alternative, if the Court considers evidence from after SB 7050's passage in assessing the state's interests, the Court should limit Defendants to presenting the interests adduced over the course of document and deposition discovery. Defendants cannot invent new justifications for SB 7050 for the first time at trial and leave Plaintiffs without any means to interrogate those justifications.

## ARGUMENT

### I. Evidence and argument about post hoc rationalizations concerning SB 7050 are not relevant to any claim subject to strict scrutiny.

The Court should not permit Defendants to present post hoc rationalizations for SB 7050's enactment, as only contemporaneous justifications are relevant in assessing whether a state's interests satisfy strict scrutiny. "[T]he State must show that the alleged objective was the legislature's '*actual* purpose'" of challenged legislation to be considered a "compelling interest." *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996) (emphasis added) (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 730 (1982)). "[T]he legislature must have had a strong basis in evidence to support that justification before it implements the classification." *Id.* What "may have motivated" the legislature is not relevant in a strict scrutiny analysis. *Id.*

Courts apply the "actual purpose" requirement to evaluate both First Amendment claims, *see, e.g.*, *Haight v. Thompson*, 763 F.3d 554, 562 (6th Cir. 2014) (noting "[o]nly the true explanations for the policy count" in case involving First

Amendment claim), and equal protection claims alleging discriminatory state action, *see, e.g.*, *Glenn v. Brumby*, 663 F.3d 1312, 1315–16 (11th Cir. 2011) ("[T]his test requires a 'genuine' justification, not one that is 'hypothesized or invented *post hoc* in response to litigation.'" (quoting *United States v. Virginia*, 473 U.S. 515, 533 (1996)); *see also McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177, 190 (D. Mass. 2015) (explaining that it is "firmly established" in both equal protection and First Amendment cases that "after-the-fact explanations cannot help a law survive strict scrutiny").

Plaintiffs bring both First Amendment challenges and equal protection challenges against the Citizenship Requirement, 3PVRO Fines Provision, and Information Retention Ban. *See NAACP* Pls.' Third Am. Compl. at 45–67, Case No. 4:23-cv-215, ECF No. 184; *LWVFL* Pls.' Compl. at 31-48, Case No. 4:23-cv-00216-RH-MAF, ECF No. 1; *Hispanic Fed.* Pls.' Revised Compl. at 28–43, Case No. 4:23-cv-00218, ECF No. 79. Strict scrutiny applies to Plaintiffs' First Amendment claims because the challenged provisions burden core political speech and severely burden associational rights. *See, e.g.*, ECF No. 55-1 (analyzing First Amendment claims). And strict scrutiny applies to Plaintiffs' equal protection claims against the challenged provisions because the provisions were enacted with a discriminatory intent. *Id.*; *see also* ECF No. 101 at 33 (Court finding facial classification on basis of alienage triggers strict scrutiny). The Court can therefore examine only the state's

3

*actual* interests—not post hoc justifications—for enacting the provisions in assessing Plaintiffs' First Amendment and equal protection claims.

Here, evidence of actual interests is limited to SB 7050's legislative record and the evidence available to the legislature at the time of SB 7050's passage.[2] The Court should not allow Defendants to stray from this narrow lane in introducing state-interest evidence.

II. **In the alternative, Defendants' arguments and evidence regarding the state's interests should be limited to what they disclosed in discovery.**

If the Court determines that strict scrutiny does not apply or otherwise allows Defendants to present post hoc rationalizations for the state's interests, the Court should limit Defendants' evidence only to information that Defendants produced over the course of discovery. Rule 26(a) requires a party to provide all documents and information it "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii); *see also* Rule 26(e)(1)(A) (obligation to supplement the same). Rule 37, in turn, provides that "[i]f a party fails to provide information" during discovery "the party is not allowed to use that information" for evidence at trial. Fed. R. Civ. P. 37(c)(1). Allowing Defendants to present new evidence regarding the state's

---

[2] Consistent with the developed record, the evidence at trial will confirm that evidence of contemporaneous justifications to justify the challenged provisions is exceedingly thin.

interests at trial would undermine these rules and prejudice Plaintiffs by precluding them from investigating that evidence over the course of discovery.

Plaintiffs propounded discovery requiring Defendants to identify the state's specific interests in SB 7050 over the course of written and deposition discovery—largely to no avail. For instance, Plaintiffs issued interrogatories asking the Secretary and Attorney General to "identify and describe each State interest, if any, that [they] contend is promoted, supported, or advanced by" the challenged provisions. Exhibit 1 (Sec'y Byrd's Resps. & Objs. to NAACP Pls.' First Set of Interrogatories) at 11–18; Exhibit 2 (Resps. to NAACP Pls.' First Set of Interrogatories to Att'y Gen.) at 2–5. From the Secretary, Plaintiffs received a regurgitation of the interests listed in legal briefing: "safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system as a whole." Ex. 1 at 11, 13, 16. The Attorney General added no further information, relying on the Secretary's articulation of the state's interests in his Eleventh Circuit brief. Ex. 2 at 2–5.

Plaintiffs also gave Defendants the opportunity to "[i]dentify and describe all incidents of alleged, suspected, or confirmed unlawful conduct relating to voter registration in Florida by noncitizens that were reported to or by, referred to or by, investigated by, or otherwise handled by" Defendants. Ex. 2 at 8; *see* Exhibit 3 (Sec'y of State's Resp. to Hispanic Fed. Pls.' Interrogatories) at 8–9; Exhibit 4 (Att'y

5

Gen.'s Resp. to Hispanic Fed. Pls.' Interrogatories) at 2–3. But Defendants did not identify any specific instance of misconduct relating to noncitizens collecting or handling of voter registration applications. Nor did they disclose any complaints lodged concerning noncitizens collecting or handling voter registration applications.

In response to Plaintiffs' requests for production of "[a]ll documents and communications demonstrating the State's interest" in the challenged provisions and for "[a]ll documents and communications relating to noncitizens' handling, distribution, possession, or other interaction with voter registration application forms," the Secretary produced only two declarations from Andrew Darlington. Exhibit 5 (NAACP Pls.' Requests for Production to Fla. Sec'y of State) at 14–16. Mr. Darlington's declarations are devoid of factual detail and reiterated the same abstract interests as those listed in Defendants' legal briefing: "safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting uniformity, efficiency, and confidence in the election system as a whole." ECF No. 92-1 at 94; *see also* ECF No. 200-1 at 1 (identifying nearly identical state interests). Both declarations failed to provide specific instances of misconduct that justify the Citizenship Requirement, Fines Provision, or Information Retention Ban.

Plaintiffs also listed the state's interests as a topic on their 30(b)(6) deposition notices for both the Secretary of State and the Attorney General. Exhibit 6 (Sec'y of

6

State Deposition Notice) at 7; Exhibit 7 (Att'y Gen. Deposition Notice) at 6. During Mr. Darlington's deposition on behalf of the Secretary, Plaintiffs asked him to provide a "comprehensive list" of the state's interests. Exhibit 8 (Darlington Deposition Tr.) at 82:23. He repeated the same list from Defendants' briefing and his declarations: "safeguarding election integrity, preventing voter fraud, ensuring the timely submission of voter registration applications, and then otherwise promoting uniformity, efficiency, and confidence in the election system." Ex. 8 at 63:17–24 (identifying state's interests in Citizenship Requirement and Information Retention Ban); *id.* at 83:4–10 (repeating nearly identical interests for Citizenship Requirement); *id.* at 97:13–15 (identifying state's interests in 3PVRO Fines Provision as "the interests I've continued to describe during this deposition"). When pressed on whether this was an exhaustive list, he restated the interest in voter confidence, explaining "we still want people to have confidence when they want to go vote." *Id.* at 84:2–15. Outside of this addition, Mr. Darlington could not identify any other interests during his deposition. *Id.* 8 at 84:17–21.

As for the interests that he did identify, Mr. Darlington failed to provide much by way of specific instances or evidence in support of those state interests. Specifically, when asked for concrete examples of instances of noncitizens mishandling voter registration materials, Mr. Darlington could not "point [] to one specific instance" of such misconduct. *Id.* at 74:8–76:3, 77:14–78:15, 104:14–18.

7

With regard to the Information Retention Ban, Mr. Darlington mentioned only that there were "ongoing and active investigations" into "information security breaches" for "probably five" 3PVROs, and he was aware of two investigations that the Office of Election Crimes and Security had referred to the Office of Statewide Prosecution, but he was "not going to comment on specific details of active investigations." *Id.* at 178:10–179:14, 180:22–183:11. Outside of this limited testimony, the Secretary has added no meat to the bare bones state interests identified in Mr. Darlington's declarations over the course of discovery.

The Attorney General had nothing to add. Her representative admitted during her deposition that the Attorney General "did not take a position" on any state interests in this case. Instead, she relied on the Secretary's Eleventh Circuit brief and "the legislative intent from the legislators and other elected officials" to articulate the state's interests in SB 7050. Exhibit 9 (Guzzo Deposition Tr.) at 90:21–91:3. Moreover, like Mr. Darlington, the Attorney General's representative could not articulate an instance of noncitizens' misconduct collecting or handling voter registration applications. Exhibit 10 (Cox Deposition Tr.) at 106:4–7, 149:21–25, 197:4–13.

The Court should not permit Defendants to introduce any new evidence concerning the state's interests during trial that was not disclosed during discovery. Allowing Defendants to introduce any purported state interests or specific instances

8

in support of state interests beyond those identified in Mr. Darlington's declarations and 30(b)(6) deposition would not be "substantially justified" or "harmless" because Plaintiffs will not have had the opportunity to interrogate that new evidence over the course of discovery. Fed. R. Civ. P. 37(c)(1). To the contrary, permitting Defendants to reverse course after the close of discovery would "sandbag[]" Plaintiffs with new, untested evidence at trial. *King v. Cessna Aircraft Co.*, No. 03-20482-CIV, 2010 WL 11505695, at *1 (S.D. Fla. May 7, 2010).

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion in limine and preclude Defendants from introducing state-interest evidence that is not indicative of *actual* state interests, meaning it is not part of the legislative record or did not exist when SB 7050 was passed. In the alternative, Plaintiffs request that the Court preclude Defendants from introducing evidence concerning state interests that they did not produce during discovery.

Dated: February 23, 2024                                  Respectfully submitted,

/s/ Frederick S. Wermuth

| | |
|---|---|
| Abha Khanna* | Frederick S. Wermuth |
| Makeba Rutahindurwa* | Florida Bar No. 0184111 |
| **ELIAS LAW GROUP LLP** | King, Blackwell, Zehnder & Wermuth, P.A. |
| 1700 Seventh Ave., Suite 2100 | P.O. Box 1631 |
| Seattle, Washington 98101 | Orlando, FL 32802-1631 |
| Telephone: (206) 656-0177 | Telephone: (407) 422-2472 |
| akhanna@elias.law | Facsimile: (407) 648-0161 |
| mrutahindurwa@elias.law | fwermuth@kbzwlaw.com |

9

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law

*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*

## LOCAL RULE 7.1(B) CERTIFICATION

Counsel for Plaintiffs conferred with counsel for State Defendants; State Defendants oppose this motion.

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this motion contains 1,896 words, excluding the case style and certifications.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111

*Counsel for Plaintiffs*