# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

      *Plaintiffs*,

      v.                         Case No. 4:23-cv-215-MW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

      *Defendants.*

_____/

## SECRETARY BYRD'S RESPONSES AND OBJECTIONS TO FLORIDA
## STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE
## NAACP, ET AL.'S FIRST SET OF INTERROGATORIES

Under Rules 26 and 33 of the Federal Rules of Civil Procedure, Secretary Byrd

responds to Plaintiffs' first set of interrogatories (the "Interrogatories").

## PRELIMINARY STATEMENT

1.    The Secretary expressly reserves the right to supplement, clarify, revise, or

correct any or all responses to the Interrogatories, and to assert additional objections

or privileges, in one or more supplemental response(s).

2.    The Secretary's investigation and development relating to this action is

ongoing. These responses and objections are made without prejudice to, and without

waiver of, the Secretary's right to rely on other facts or documents at trial.

1

3.      The Secretary objects to each instruction, definition, and Interrogatory to the extent it purports to impose any requirement or any discovery obligation greater than or different from those under the Federal Rules of Civil Procedure, applicable Local Rules, and Orders of the Court.

## DEFINITIONS AND INSTRUCTIONS

1.      The Secretary objects to the Definition of "Florida Attorney General" to the extent it includes "the former, current, and/or future Florida Attorney General, and their staff, employees, contractors, consultants, advisors, agents, and representatives" as it is vague, ambiguous, overbroad, and to the extent it renders responding to an Interrogatory unduly burdensome. The Secretary further objects that he does not possess sufficient information to determine the relevant universe of individuals within this Definition.[1] For example, the Secretary does not know who the "future Florida Attorney General" will be, nor is he aware of the identities of all "staff, employees, contractors, consultants, advisors, agents, and representatives" of the current or past Florida Attorneys General.

2.      The Secretary objects to the Definition of "Florida Governor" to the extent it includes "the former, current, and/or future Governor of Florida, and their staff, employees, contractors, consultants, advisors, agents, and representatives" as it is

---

[1] The Secretary asks that Plaintiffs provide lists of relevant individuals for each applicable Definition.

vague, ambiguous, overbroad, and to the extent it renders responding to an Interrogatory unduly burdensome. The Secretary further objects that he does not possess sufficient information to determine the relevant universe of individuals within this Definition. For example, the Secretary does not know who the "future Governor of Florida" will be, nor is he aware of the identities of all "staff, employees, contractors, consultants, advisors, agents, and representatives" of the current or past Florida Governors.

3.      The Secretary objects to the Definitions of "Florida Legislature" or "Legislature" to the extent they include the phrase "at any time relevant to these requests" as it vague and ambiguous, and to the extent it renders any Interrogatory overbroad or unduly burdensome. The Secretary further objects to those Definitions to the extent they include "any one or combination of staff, employees, contractors, advisors, agents, and representatives" as it is vague, ambiguous, overbroad, and to the extent it renders responding to an Interrogatory unduly burdensome. The Secretary does not possess sufficient information to determine the relevant universe of individuals within these Definitions.

4.      The Secretary objects to the Definitions of "Identify" to the extent that they seek to impose obligations that go beyond, or are otherwise inconsistent with, the Federal Rules of Civil Procedure, the Local Rules, and/or any other applicable law, rule, or order.

5.    The Secretary objects to the Definition of "Person" to the extent it includes "firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities; other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof" as it is vague, ambiguous, overbroad, and to the extent it renders responding to an Interrogatory unduly burdensome. The Secretary further objects to each Definition that incorporates by reference the Definition of "Person" to the extent it renders that Definition vague, ambiguous, overbroad, and/or unduly burdensome.

6.    The Secretary objects to the Definitions of "[r]elating to," "regarding," and "concerning" to the extent they include "are to be understood in their broadest sense" as it is vague, ambiguous, overbroad, and to the extent it renders responding to an Interrogatory unduly burdensome. The Secretary further objects to these Definitions to the extent they seek to impose obligations that go beyond, or are otherwise inconsistent with, the Federal Rules of Civil Procedure, the Local Rules, and/or any other applicable law, rule, or order.

7.    The Secretary objects to the Definition of "Supervisors of Elections" to the extent it includes "employees, staff, contractors, consultants, advisors, agents, and representatives" as it is vague, ambiguous, overbroad, and to the extent it renders responding to an Interrogatory unduly burdensome. The Secretary does not possess

sufficient information to determine the relevant universe of individuals within this Definition.

8.      The Secretary objects to the Definitions of "You" and "Your" to the extent they include "employees, staff, contractors, consultants, advisors, agents, and representatives" as it is vague, ambiguous, overbroad, and to the extent it renders responding to an Interrogatory unduly burdensome.

9.      The Secretary objects to Instruction 14 to the extent it includes "current and former officers, directors, partners, members, staff, employees, contractors, consultants, advisors, agents, and representatives, or anyone acting on its behalf" as it is vague, ambiguous, overbroad, and to the extent it renders responding to an Interrogatory unduly burdensome. The Secretary objects to the extent that he does not possess sufficient information to determine the relevant universe of individuals under this Instruction.

10.     The Secretary objects to Instruction 15 to the extent it seeks to impose obligations that go beyond, or are otherwise inconsistent with, the Federal Rules of Civil Procedure, the Local rules, and/or any other applicable law, rule, or order.

## RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 1:** Identify all instances in which 3PVROs in Florida have been fined between January 1, 2018 and present day. For each instance, identify and provide:

(a) the 3PVRO's name,

(b) the amount of the fine,

(c) the date of the fine,

(d) the reason for the fine,

(e) how the conduct leading to the fine was discovered by Your office,

(f) whether the conduct was reported by a Supervisor of Elections and, if so, identify which Supervisor of Elections reported the conduct to Your office,

(g) whether the fine was contested,

(h) whether the fine was paid,

(i) any communications related to the fine, and

(j) any witnesses who have or are likely to have knowledge or information related to any of the above.

**ANSWER:** The Secretary objects to this Interrogatory to the extent that it contains multiple, separate interrogatories. Pursuant to Federal Rule of Civil Procedure 33(d), after a reasonable search and inquiry, the Secretary will produce all non-privileged documents in its possession, custody, or control that identify instances in which 3PVROs in Florida have been fined between January 1, 2018 and the present day.

**INTERROGATORY NO. 2:** Identify any voters who have contacted Your office to complain about a voter registration application submitted through a 3PVRO. For any such complaints, identify and provide:

6

(a) the identity of voter,

(b) the Voter ID number of the voter registration applicant,

(b) [sic] any information provided by the voter,

(c) whether Your office engaged in any investigation,

(d) whether the 3PVRO was notified,

(e) any resulting consequence or sanction imposed against the 3PVRO,

(f) any witnesses who have or are likely to have knowledge or information related to any of the above.

**ANSWER:** The Secretary objects to this Interrogatory to the extent that it contains multiple, separate interrogatories. Pursuant to Federal Rule of Civil Procedure 33(d), after a reasonable search and inquiry, the Secretary will produce all non-privileged documents in its possession, custody, or control that identify any voters who have contacted the Secretary's office to complain about a voter registration application submitted through a 3PVRO.

**INTERROGATORY NO. 3:** Describe what the date of registration and method of registration mean, refer to, or reflect in the voter file produced in response to Plaintiff's Request for Production No. 1. In your response, identify any witnesses who have or are likely to have knowledge or information related to the same.

**ANSWER:** In response to Plaintiffs' Request for Production No. 1, the Secretary will be producing the monthly voter extract disks that the Division of

7

Elections provides to those who request it via VoterExtract@dos.myflorida.com. The date of registration in those files indicates the date in which the voter last registered to vote. The method of registration in the file does not necessarily identify the method by which voters registered to vote.[2] Additionally, the method of registration is overwritten with the method used by the voter to register to vote or to update or change their registration (e.g. and address change or a party change).

The Secretary objects to this Interrogatory to the extent it seeks "any witnesses" as it is overbroad and unduly burdensome to identify any and all persons who may have knowledge about the date of registration and the method of registration in the voter file. The Secretary identifies Maria Matthews, the Director of the Division of Elections, as the person with the most direct knowledge or information regarding Florida's Voter Registration System generally and the voter file specifically.

**INTERROGATORY NO. 4:** Describe any processes and procedures You intend to use in carrying out Your responsibilities as they relate to the enforcement and implementation of each of the Challenged Provisions, including each action you intend to take or anticipate taking to enforce and implement the same, including but not limited to whether and how you intend to or anticipate issuing guidance to or exercising

---

[2] For example, whether a voter registered at a voter registration agency or submitted an application to a 3PVRO or the Florida Department of Highway Safety and Motor Vehicles is not included in the voter extract file as it is protected under section 97.0585, Florida Statutes.

8

oversight over Supervisors of Elections or the Office of Election Crimes and Security in connection with the same. In your response, identify any witnesses who have or are likely to have knowledge or information related to Your enforcement and implementation of each of the Challenged Provisions.

**ANSWER:** The Secretary objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, and to the extent it seeks information protected under any other privilege, protection, or immunity. The processes and procedures by which the Secretary will carry out his responsibilities regarding the Challenged Provisions are evolving, and the Secretary has sought both internal and external legal advice to inform his understanding of the Challenged Provisions and how they may be implemented. The Secretary further objects to this Interrogatory to the extent it includes "intend to use" as it is vague, ambiguous, overbroad, and to the extent it renders the Interrogatory unduly burdensome. Discussions on how to best implement the Challenged Provisions are ongoing and change in response to feedback and additional information. The Secretary notes that the Department of State has initiated rulemaking to, among other things, implement each of the Challenged Provisions. *See* Fla. Admin. Code. R. 1S-2.042 (Third-Party Voter Registration Organizations); Fla.

Admin Code R. 1S-2.055 (Vote-by-Mail Requests); Fla. Admin. Reg. § 1, Vol. 49, No. 122.[3]

Consistent with Florida law, the Secretary will take appropriate steps to implement and enforce the Challenged Provisions. At this juncture, those steps include ensuring that the Office of Elections Crimes and Security continues, as appropriate, to: (a) receive and review complaints generated by concerned citizens, government officials, or other Florida agency partners regarding alleged occurrences of election law violations by 3PVROs or their agents; (b) initiate independent inquiries and conduct preliminary investigations into allegations of election law violations by 3PVROs; (c) assess fines for election law violations by 3PVROs; and (d) refer complaints regarding 3PVROs to other agencies for further criminal investigation or prosecution.

The Secretary objects to this Interrogatory as overbroad and unduly burdensome to the extent it requests any—i.e., any and all—witnesses who have or are likely to have knowledge or information related to the Interrogatory. Also, as discussed above, the Secretary notes that the Department of State has initiated rulemaking for implementation of the Challenged Provisions. Thus, investigation and development of additional facts is ongoing. At this juncture, the Secretary identifies Director Matthews and Andrew Darlington, the Director of the Office of Election Crimes and Security, as

---

[3] Available at: https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.042 (3PVRO); https://www.flrules.org/gateway/ruleNo.asp?id=1S-2.055 (Vote-by-Mail).

persons with direct knowledge or information regarding the processes and procedures as they relate to the enforcement and implementation of the Challenged Provisions.

**INTERROGATORY NO. 5:** Identify and describe each State interest, if any, that You contend is promoted, supported, or advanced by the 3PVRO Canvasser Restrictions' prohibition on noncitizens from collecting or handling voter registration materials. In providing Your response, state all facts that You contend demonstrate a connection between the prohibition and the State interest(s) and identify any witnesses who have or are likely to have knowledge or information related to the same.

**ANSWER:** Under the Non-U.S. Citizen Volunteer Restriction, 3PVROs must "affirm[] that each person collecting or handling voter registration applications on behalf of the [3PVRO] is a citizen of the United States of America." § 97.0575(1)(f), Fla. Stat. The State has compelling interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system as a whole. The Non-U.S. Citizen Volunteer Restriction safeguards election integrity and prevents voter fraud by prohibiting ineligible-to-vote non-citizens from collecting and handling voter registration applications for (and from serving as fiduciaries to) citizen-only applicants. It promotes voter confidence by reasonably ensuring that applicants' voter registration applications are not collected or handled by such persons. Prohibiting non-citizens

11

from collecting or handling voter registration applications is the least restrictive means to achieve those interests.

The State legitimately concluded that non-citizens should not be trusted with the responsibility of ensuring that voter registration applications are timely delivered to election officials. For example, the State has a compelling interest in ensuring that the voter registration applications of every voter are delivered in a timely manner. Putting the applications in the hands of those with illegal or temporary status, who may leave the country voluntarily or involuntarily any day and without warning, increases the odds of a registration application being delivered after the statutory deadlines—after the date by which a voter must get on the rolls to cast a ballot in the next election. Though all legal non-citizens are welcome in Florida, they can't vote, serve on a jury, or hold public office. These factors militate against them serving as fiduciaries for citizens seeking to register to vote.

The Secretary objects to this Interrogatory as overbroad and unduly burdensome to the extent it requests any—i.e., any and all—witnesses who have or are likely to have knowledge or information related to the Interrogatory. The Secretary identifies Director Darlington as the person with the most direct knowledge or information regarding the State's interest in the Non-U.S. Citizen Volunteer Restriction. Specifically, the Secretary identifies the affidavit of Director Darlington and the attachments thereto in support of the State's interests in the Non-U.S. Citizen Volunteer Restriction. Investigation and

development of additional facts supporting the State's interests in the Non-U.S. Citizen Volunteer Restriction is ongoing.

**INTERROGATORY NO. 6:** Identify and describe each State interest, if any, that You contend is promoted, supported, or advanced by the 3PVRO Information Retention Ban. In providing Your response, state all facts that You contend demonstrate a connection between the prohibition and the State interest(s) and identify any witnesses who have or are likely to have knowledge or information related to the same.

      **ANSWER:** Under the 3PVRO Information Retention Ban, a 3PVRO agent is prohibited from "cop[ying] a voter application" or "retain[ing] a voter's personal information, such as the voter's Florida's driver license number, Florida identification card number, social security number, or signature" for a purpose "other than to provide such application or information to the third-party voter registration organization in compliance" with section 97.0575. § 97.0575(7), Fla. Stat. The State has compelling interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system as a whole. The 3PVRO Information Retention Ban protects applicants and their private information. The 3PVRO Information Retention Ban seeks to protect voters' applications (including the voter's personal information contained therein) from misuse by a 3PVRO agent.

The Secretary objects to this Interrogatory as overbroad and unduly burdensome to the extent it requests any—i.e., any and all—witnesses who have or are likely to have knowledge or information related to the Interrogatory. The Secretary identifies Director Darlington as the person with the most direct knowledge or information regarding the State's interest in the 3PVRO Information Retention Ban. Specifically, the Secretary identifies the affidavit of Director Darlington and the attachments thereto in support of the State's interests in the 3PVRO Information Retention Ban Investigation and development of additional facts supporting the State's interests in the 3PVRO Information Retention Ban is ongoing.

**INTERROGATORY NO. 7:** Identify and describe each State interest, if any, that You contend is promoted, supported, or advanced by the 3PVRO Canvasser Restrictions' prohibition on individuals with certain felony convictions from collecting or handling voter registration materials. In providing Your response, state all facts that You contend demonstrate a connection between the limitation and the State interest(s) and identify any witnesses who have or are likely to have knowledge or information related to the same.

**ANSWER:** The Secretary objects to this Interrogatory as irrelevant to Plaintiffs' Second Amended Complaint, which removed all claims and allegations regarding the Felon Volunteer Restriction.

Under the Felon Volunteer Restriction, 3PVROs must "affirm[] that each person collecting or handling voter registration applications on behalf of the [3PVRO] has not been convicted of a felony violation of the Election Code" or "a felony violation of an offense specified in" section "98.0751(2)(c)" (murder), section "98.0751(2)(b)" (sexual offenses), section "825.103" (exploitation of an elderly person or disabled adult), chapter "817" (fraudulent practices), chapter "831" (forgery and counterfeiting), or chapter "837" (perjury). § 97.0575(1)(e), Fla. Stat. An individual who collects and handles a completed voter-registration application acts as a fiduciary for the applicant. § 97.0575(3)(a), Fla. Stat. This is a position of trust, and the Florida Legislature has determined that that position of trust should only be occupied by those who have not committed Election-Code felonies or serious or trust-related felonies. *See* § 97.0575(1)(e), Fla. Stat. Applications entrusted to 3PVROs also include applicants' personal information that should be used only for purposes of registration but could easily be misused before submission to an election official. Keeping the above classes of convicted felons from collecting or handling completed voter-registration applications furthers the State's interests in safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system.

The Secretary objects to this Interrogatory as overbroad and unduly burdensome to the extent it requests any—i.e., any and all—witnesses who have or are likely to have knowledge or information related to the Interrogatory. The Secretary identifies Director

15

Darlington as the person with the most direct knowledge or information regarding the State's interest in the Felon Volunteer Restriction. Specifically, the Secretary identifies the affidavit of Director Darlington and the attachments thereto in support of the State's interests in the Felon Volunteer Restriction. Investigation and development of additional facts supporting the State's interests in the Felon Volunteer Restriction is ongoing.

**INTERROGATORY NO. 8:** Identify and describe each State interest, if any, that You contend is promoted, supported, or advanced by the 3PVRO Fines Provision. In providing Your response, state all facts that You contend demonstrate a connection between the increase and the State interest(s) and identify any witnesses who have or are likely to have knowledge or information related to the same.

**ANSWER:** The State has compelling interests in safeguarding the right to vote (and thus safeguarding election integrity), preventing voter fraud, and promoting confidence in the election system as a whole. It also has compelling interests in ensuring voter registration applications are timely processed, promoting orderly election administration, and improving and modernizing election procedures. A 3PVRO that collects voter registration applications "serves as a fiduciary to the applicant" and is thus required to "ensure that any voter registration application entrusted to the [3PVRO] is promptly delivered to the division or the supervisor of elections in the county in which the applicant resides within 10 days after the application is completed by the applicant,

16

but not after registration closes for the next ensuing election." § 97.0575(3)(a), Fla. Stat. The 3PVRO Fines Provisions protect voters from being deprived of their right to vote by requiring 3PVROs to deliver voter registration applications prior to book closing. Whenever a 3PVRO fails to deliver a new applicant's voter registration application prior to the book closing deadline, that voter is deprived of the right to vote in the next election. Similarly, whenever a 3PVRO fails to deliver an application changing the voter's party prior to the book closing deadline for a Primary Election, those voters are deprived of the right to vote for their party's nominees.

The 3PVRO Fines Provisions further protect voters from being deprived of their right to vote (and promote orderly election administration) by requiring 3PVROs to deliver voter registration applications within 10 days of receipt of such applications from voters and requiring 3PVROs to deliver voter registration applications. Without the 10-day deadline, 3PVROs might neglect to deliver voter registration applications in a timely fashion, misplace or overlook previously collected applications, or submit large batches of applications close to the book closing deadline. This has occurred in past elections.

The Florida Legislature has, over the years, improved and modernized its comprehensive scheme regulating 3PVROs as fiduciaries. *See* § 97.0575 (history from 2005 to present). Section 97.0575 has long contained a graduated scale with lesser and greater fines depending on the level of violation. In present form, the 3PVRO Fines Provisions continue that trend.

The Secretary objects to this Interrogatory as overbroad and unduly burdensome to the extent it requests any—i.e., any and all—witnesses who have or are likely to have knowledge or information related to the Interrogatory. The Secretary identifies Director Darlington as the person with the most direct knowledge or information regarding the State's interest in the 3PVRO Fines Provisions. Specifically, the Secretary identifies the affidavit of Director Darlington and the attachments thereto in support of the State's interests in the 3PVRO Fines Provisions. Investigation and development of additional facts supporting the State's interests in the 3PVRO Fines Provisions is ongoing.

**INTERROGATORY NO. 9:** Identify and describe each State interest, if any, that You contend is promoted, supported, or advanced by the Mail-In Ballot Request Assistance Restriction. In providing Your response, state all facts that You contend demonstrate a connection between the limitation and the State interest(s) and identify any witnesses who have or are likely to have knowledge or information related to the same.

**ANSWER:** Under the Mail-In Ballot Request Assistance Restriction, a Supervisor of Elections "shall accept a request for a vote-by-mail ballot only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian." § 101.62, Fla. Stat.[4] The State has compelling interests in

---

[4] The Mail-In Ballot Request Assistance Restriction clarified what Florida law already required. *See* § 101.62(a)-(b), Fla. Stat. (2022) (stating that a supervisor "shall" accept a

safeguarding election integrity, preventing voter fraud, ensuring voter registration applications are timely processed, and promoting confidence in the election system as a whole. A voter's immediate family and a voter's legal guardian are reasonably expected to have the best interest of the voter in mind. The familial and legal bonds between a voter and his or her immediate family or legal guardian tend to promote trust and communication. They are the persons whom a voter presumably has the most trust in—especially those who are directly instructed by the voter to make a request for a vote-by-mail ballot on behalf of the voter—and regular communication with.

In general, a voter's immediate family and a voter's legal guardian are persons who are more trustworthy and responsive to the voter's needs than other persons serving in non-familial, non-guardianship roles. Limiting the categories of persons eligible to request a vote-by-mail ballot to a voter's immediate family and a voter's legal guardian furthers the states interests by reducing the risk that bad actors will make fraudulent vote-by-mail requests on behalf of voters, and reducing the risk that persons who may be less trustworthy and responsive to the voter's needs make vote-by-mail requests on behalf of voters.

The Secretary objects to this Interrogatory as overbroad and unduly burdensome to the extent it requests any—i.e., any and all—witnesses who have or are likely to have

---

request for a vote-by-mail ballot from an elector and that a supervisor "may" accept a request for a vote-by-mail ballot from a member of the elector's immediate family or the elector's legal guardian if directly instructed by the elector).

knowledge or information related to the Interrogatory. The Secretary identifies Director Darlington as the person with the most direct knowledge or information regarding the State's interest in the Mail-In Ballot Request Assistance Restriction. Specifically, the Secretary identifies the affidavit of Director Darlington and the attachments thereto in support of the State's interests in the Mail-In Ballot Request Assistance Restriction. The Secretary further identifies the Supervisors of Elections as persons with knowledge or information about, among other things, any accommodations made by them regarding the Mail-In Ballot Request Assistance Restriction. Investigation and development of additional facts supporting the State's interests in the Mail-In Ballot Request Assistance Restriction is ongoing.

**INTERROGATORY NO. 10:** Identify all voters who were assisted by someone else in requesting a vote-by-mail ballot from Your office. For each such voter, indicate:

    (a) the voter's identity,

    (b) the voter's Voter ID number,

    (c) the reason the voter requested assistance, and

    (d) identity of the Person that provided assistance.

**ANSWER:** The Secretary objects to this Interrogatory to the extent that it contains multiple, separate interrogatories. Pursuant to Federal Rule of Civil Procedure 33(d), after a reasonable search and inquiry, the Secretary will produce all non-privileged documents and communications within its possession, custody, or control identifying

voters who were assisted by someone else in requesting a vote-by-mail ballot from the Secretary's office.

**INTERROGATORY NO. 11:** Identify all documents and communications related to any evaluation, compilation, or collection of data, estimates, reports, studies, or analyses 3PVRO activity in Florida including, but not limited to, racial, ethnic, geographic, or age-related analyses of canvassers employed and voters served by 3PVROs. For each document:

    (a) identify the document's author(s),

    (b) explain the rationale for drafting the document, and

    (c) identify all Persons to whom each document was distributed.

**ANSWER:** The Secretary objects to this Interrogatory to the extent that it contains multiple, separate interrogatories. The Secretary further objects to this Interrogatory to the extent it includes "related to" and "including, but not limited to" as they are vague, ambiguous, overbroad, and to the extent they render responding to the Interrogatory unduly burdensome. Pursuant to Federal Rule of Civil Procedure 33(d), after a reasonable search and inquiry, the Secretary will produce all non-privileged documents and communications within its possession, custody, or control that contain information about evaluations, compilations, collections of data, estimates, reports, studies or analyses of 3PVRO activity in Florida. The Secretary will update his response

21

to this Interrogatory if, after a reasonable search and inquiry, the Secretary does not find non-privileged, responsive documents or communications.

**INTERROGATORY NO. 12:** Describe how the State of Florida tracks which voters register to vote through a 3PVRO, including by identifying which state or local entity(ies) track such information, and by describing in detail the policies and procedures for tracking such information. In your response, identify any witnesses who have or are likely to have knowledge or information related to how this tracking is done.

    **ANSWER:** The State of Florida is responsible for maintaining the Florida Voter Registration System (FVRS), which contains registration information for all registered voters. This information is entered by the Supervisors of Elections. Any application collected by a 3PVRO should contain the 3PVRo's identification number on the back of the application. Only if the Supervisor scanned an image of the application's back, however, would the State be able to determine which 3PVRO helped to register that voter. Moreover, this information can only be obtained by opening a particular voter's file. Additionally, the general method of registration field in FVRS is overwritten for each change to the registration. For example, if a voter initially registered online and then subsequently changed their address on an application collected by a 3PVRO, then the method of registration shown for that voter would be by a 3PVRO.

    Pursuant to Federal Rule of Civil Procedure 33(d), after a reasonable search and inquiry, the Secretary will produce all non-privileged documents within its possession,

custody, or control pertaining to its policies and procedures for tracking such information.

The Secretary objects to this Interrogatory to the extent it seeks "any witnesses" as it is overbroad and unduly burdensome to identify any and all persons who may have knowledge about the date of registration and the method of registration in the voter file. The Secretary identifies Director Matthews as the person with the most direct knowledge or information regarding Florida's Voter Registration System generally and 3PVRO tracking specifically.

**INTERROGATORY NO. 13:** Identify each Person, other than a natural person intended to be called as an expert witness at trial, that You have reason to believe may have communications, documents, or other information relevant to Plaintiffs' claims as set forth in the Amended Complaint. If You have reason to believe that a particular Person has documents specifically responsive to any of the requests for production set forth in Plaintiffs' First Set of Requests for Production to You, identify the relevant number or numbers of each request for production when You identify that Person.

**ANSWER:** The Secretary objects to this Interrogatory to the extent it seeks "each person" as it is overbroad and unduly burdensome to identify each person who may have communications, documents, or other information relevant to Plaintiffs' claims as set forth in the Amended Complaint or responsive to Plaintiffs' requests for production. Pursuant to Federal Rule of Civil Procedure 33(d), after a reasonable search

and inquiry, the Secretary will produce all non-privileged, responsive documents in its possession, custody, or control that it produces in response to Plaintiffs' requests for production.

**INTERROGATORY NO. 14:** Identify and describe any communications between You and consultants, lobbyists (including but not limited to the Heritage Foundation and Ramba Consulting Group LLC), staff, researchers, scholars, members of the public, or any other Person relating to SB 7050. In your response, identify any witnesses who have or are likely to have knowledge or information related to the same.

**ANSWER:** The Secretary objects to this Interrogatory to the extent it includes "members of the public, or any other person" as it is overbroad, and to the extent it renders responding to the Interrogatory unduly burdensome. The Secretary further objects to this Interrogatory to the extent it includes "relating to" as it is vague, ambiguous, overbroad, and to the extent it renders responding to the Interrogatory unduly burdensome. Pursuant to Federal Rule of Civil Procedure 33(d), after a reasonable search and inquiry, the Secretary will produce all such non-privileged communications within its possession, custody, or control.

**INTERROGATORY NO. 15:** State and explain your definition of the terms "collecting" and "handling" as used in the 3PVRO Canvasser Restriction.

**ANSWER:** The 3PVRO Canvasser Restriction is currently undergoing rulemaking. A Notice of Rule Development regarding the Rules governing 3PVROs was published on June 23, 2023 and a workshop took place on July 10, 2023. *See* Fla. Admin. Code R. 1S-2.042; Fla. Admin. Reg. § 1, Vol. 49, No. 122[5]. A Notice of Proposed Rule was published on July 31, 2023, and a Rule Hearing will be held on August 22, 2023. *See* Fla. Admin. Code R. 1S-2.042; Fla. Admin. Reg. § 1, Vol. 49, No. 147[6]. Under Florida law, stakeholders and members of the public provided—and continue to provide—comments to the Division about the proposed rules, including any proposed changes thereto. *See generally* § 120.54, Fla. Stat. The proposed rule elucidates the meaning of the phrase "collecting or handling" as used in the 3PVRO Canvasser Restriction, but it is effective until finalized. The Secretary's definition of the terms "collecting" and "handling" therefore will be synonymous with how those terms are defined and used in the final rules.

**INTERROGATORY NO. 16:** State and explain your definition of the term "voter registration application" as used in the 3PVRO Canvasser Restrictions and whether You believe this term encompasses (1) blank voter registration applications forms, (2) voter registration application forms with voter information filled in, or (3) both.

---

[5] *Available at* http://www.FLRules.org/gateway/View_Notice.asp?id=27257308.
[6] *Available at* http://www.FLRules.org/gateway/View_Notice.asp?id=27227432; http://www.FLRules.org/gateway/View_Notice.asp?id=27388258.

**ANSWER:** The Secretary objects to this Interrogatory as partially irrelevant to Plaintiffs' Second Amended Complaint, which removed all claims and allegations regarding the Felon Volunteer Restriction, to the extent the Interrogatory seeks information regarding the Felon Volunteer Restriction.

The 3PVRO Canvasser Restrictions are currently undergoing rulemaking. A Notice of Rule Development regarding the Rules governing 3PVROs was published on June 23, 2023 and a workshop took place on July 10, 2023. *See* Fla. Admin. Code R. 1S-2.042; Fla. Admin. Reg. § 1, Vol. 49, No. 122[7]. A Notice of Proposed Rule was published on July 31, 2023, and a Rule Hearing will be held on August 22, 2023. *See* Fla. Admin. Code R. 1S-2.042; Fla. Admin. Reg. § 1, Vol. 49, No. 147[8]. Under Florida law, stakeholders and members of the public provided—and continue to provide—comments to the Division about the proposed rules, including any proposed changes thereto. *See generally* § 120.54, Fla. Stat. The proposed rule elucidates the meaning of the phrase "voter registration application" as used in the 3PVRO Canvasser Restrictions, but it is not effective until finalized. The Secretary's definition of the phrase "voter registration application" therefore will be synonymous with how it is defined and used in the final rules.

---

[7] *Available at* http://www.FLRules.org/gateway/View_Notice.asp?id=27257308.
[8] *Available at* http://www.FLRules.org/gateway/View_Notice.asp?id=27227432; http://www.FLRules.org/gateway/View_Notice.asp?id=27388258.

**INTERROGATORY NO. 17:** State and explain your definition of the phrases "personal information" and "in compliance with this section" as used in the 3PVRO Information Retention Ban.

    **ANSWER:** The Voter Information Retention Restriction is currently undergoing rulemaking. A Notice of Rule Development regarding the Rules governing 3PVROs was published on June 23, 2023 and a workshop took place on July 10, 2023. *See* Fla. Admin. Code R. 1S-2.042; Fla. Admin. Reg. § 1, Vol. 49, No. 122[9]. A Notice of Proposed Rule was published on July 31, 2023, and a Rule Hearing will be held on August 22, 2023. *See* Fla. Admin. Code R. 1S-2.042; Fla. Admin. Reg. § 1, Vol. 49, No. 147[10]. Under Florida law, stakeholders and members of the public provided—and continue to provide—comments to the Division about the proposed rules, including any proposed changes thereto. *See generally* § 120.54, Fla. Stat. The proposed rule clarifies the meaning of the "personal information" as it used in the Voter Information Retention Restriction, but it is not effective until finalized. Similarly, "in compliance with this section" cannot be understood until the rule is finalized. The Secretary's definition of the phrases "personal information" and "in compliance with this section" therefore will be synonymous with how those terms are defined and used in the final rule.

---

[9] *Available at* http://www.FLRules.org/gateway/View_Notice.asp?id=27257308.

[10] *Available at* http://www.FLRules.org/gateway/View_Notice.asp?id=27227432; http://www.FLRules.org/gateway/View_Notice.asp?id=27388258.

**INTERROGATORY NO. 18:** Identify and describe any communications between You and any Person, including but not limited to the Florida Governor, the Florida Legislature, and the Florida Attorney General regarding characteristics of voters who register to vote with the assistance of 3PVROs.

      **ANSWER:** The Secretary objects to this Interrogatory to the extent it includes "and any person" as it is overbroad, and to the extent it renders responding to the Interrogatory unduly burdensome. The Secretary further objects to this Interrogatory to the extent it includes "including but not limited to" as it is vague, ambiguous, overbroad, and to the extent it renders responding to the Interrogatory unduly burdensome. Pursuant to Federal Rule of Civil Procedure 33(d), after a reasonable search and inquiry, the Secretary will produce all such non-privileged communications within its possession, custody, or control.

**INTERROGATORY NO. 19:** Identify all Persons who were consulted for the information upon which Your answers to these interrogatories are based.

      **ANSWER:** Director Mathews and Director Darlington.

## **Verification**

Pursuant to 28 U.S.C. § 1746, I, Andrew Darlington of the Department of State, declare under penalty of perjury that the foregoing answers to the first set of interrogatories are true and correct.

Executed on August 21, 2023

*/s/ Andrew Darlington*
Andrew Darlington

Dated: August 21, 2023

As to objections,

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Joshua E. Pratt (FBN 119347)
jpratt@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, the forgoing document was served via email on the following counsel:

Abha Khanna*
Makeba Rutahindurwa*
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law
mrutahindurwa@elias.law

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law
*Admitted Pro Hac Vice

Frederick S. Wermuth
Florida Bar No. 0184111
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

*Counsel for Plaintiffs Florida State
Conference of Branches of Youth Units
of the NAACP, Voters of Tomorrow
Action, Inc., Disability Rights Florida,
Alianza for Progress, Alianza Center,
UnidosUS, Florida Alliance for Retired
Americans, Santiago Mayer, and
Esperanza Sánchez*

/s/ Mohammad O. Jazil
Mohammad O. Jazil

31