UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CORD BYRD, in his official capacity as Florida Secretary of State, et al., <br><br> Defendants. | Case Nos.: 4:23-cv-215-MW/MAF |

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. ROBERT STEIN AND DR. JOHN ALFORD**

Florida NAACP Plaintiffs' experts' Dr. Allan Lichtman's and Dr. Michael Herron's reports contain verifiable quantitative calculations about the racial impacts of SB 7050, nuanced discussions of Florida's recent racial history, and careful review of the voluminous legislative and discovery records. The rebuttal report jointly submitted by Drs. Robert Stein and John Alford ("Stein-Alford Report"), in contrast, offers a single paragraph in response to a 114-page *Arlington Heights* analysis, a handful of hypotheticals with verifiably false figures, and a quantitative design that is impossible to conduct. Under the Federal Rules of Evidence and applicable case law, Drs. Stein's and Alford's testimony with respect to Dr.

1

Lichtman's and Dr. Herron's reports should be excluded under FRE 702.[1] The Court should grant Plaintiffs' motion *in limine* to exclude Drs. Stein's and Alford's opinions and testimony for the reasons that follow.

## BACKGROUND

The Florida NAACP Plaintiffs proffered two experts in this litigation. Dr. Allan Lichtman—an expert in political history, social science, and historical and statistical methodology—analyzes and opines on key information related to the *Arlington Heights* factors for determining intentional discrimination in violation of the Equal Protection Clause. *See generally* Exhibit 1 (Report of Dr. Allan Lichtman). Dr. Lichtman describes Florida's recent history of racial discrimination in voting, education, and immigration, the current political power structure in the state pursuing a racial ideology, the rushed and flawed legislative process leading to the adoption of SB 7050, and contemporaneous statements by legislators, among others, in assessing both the intent and impact of the bill. Ex. 1 at 22–109. Based on his analyses and expertise, Dr. Lichtman concludes that the challenged provisions of SB 7050 have a discriminatory impact on Black and Latino Floridians, which was

---

[1] In addition to responding to Dr. Lichtman's and Dr. Herron's reports, the Stein-Alford Report also addresses the report submitted by Dr. Daniel Smith on behalf of Hispanic Federation Plaintiffs.

foreseeable and known to the Legislature and Governor at the time of its passing. Ex. 1 at 1–2.

Dr. Michael Herron—an expert in quantitative social science and statistical analyses of election administration—analyzes voter registration data to evaluate the extent to which minority voters disproportionally use 3PVROs as their registration method. *See generally* Exhibit 2 (Report of Dr. Michael Herron). He assesses the increased costs of operations for 3PVROs alongside the decreased benefits to these organizations in light of SB 7050. *Id.* at 5–6, 9–25. Based on his quantitative analysis, Dr. Herron concludes that Black and Latino voters are disproportionately affected and burdened by SB 7050's restrictions on 3PVROs. *Id.* at 5–6.

In response to these reports, Defendants offer a single report co-authored by Dr. Robert Stein and Dr. John Alford. Exhibit 3 (Report of Dr. Robert Stein and Dr. John Alford). The Stein-Alford report is divided into subsections to address the three experts offered collectively by Plaintiffs in these consolidated cases. In total, the report devotes a single cursory paragraph to Dr. Lichtman's report, characterizing it as "speculative," "narrative," and "not helpful in assessing the impacts, if any, of SB 7050 on Florida voters." Ex. 3 at 2–3. With respect to Dr. Herron, Drs. Stein and Alford contend that Dr. Herron should have examined citizen voting age population (CVAP) data rather than voter registration data to evaluate the impact of SB 7050's provisions on minority voters. Ex. 3 at 4–8. Drs. Stein and Alford do not present or

3

examine CVAP data in their report, do not evaluate the voter registration data on which Dr. Herron's report is based, and include tables that reflect only "hypothetical" data that, in their estimation, would "provide support for the claim that SB 7050 is associated with a diminution in nonwhite voter registration over white voter registration." Ex. 3 at 6–7. Drs. Stein and Alford also criticize Dr. Herron for not reporting "comparable" periods preceding and following the adoption of SB 7050, notwithstanding the fact that the bill was not enacted until the end of May 2023, that the provisions related to 3PVROs took effect on July 1, 2023, and that the Citizenship Provision and Information Retention Ban were enjoined by this Court on July 3, 2023. *See* ECF No. 101.

On December 21, 2023, Dr. Herron submitted a rebuttal report explaining that the Stein-Alford report's concern about normalizing counts of 3PVRO voter registrations by CVAP is misguided given the nature of voter registration in Florida, and regardless, does not change Dr. Herron's findings or conclusions, and that the Stein-Alford report's hypotheticals also do not implicate any of his findings or conclusions. Exhibit 4 (Rebuttal Report of Dr. Michael Herron) at 22–36.

Plaintiffs deposed Dr. Stein on January 3, 2024 and Dr. Alford on January 4, 2024. During his deposition, Dr. Stein testified that he has never before been asked to opine on the impact of 3PVROs on voter registration or turnout, has never testified in Florida courts, and has not previously done election law work in Florida. Exhibit

4

5 (Dep. Tr. of Dr. Robert Stein) at 175:14–16, 187:19–188:1. He similarly testified that he has never provided an expert analysis regarding intentional discrimination, is unfamiliar with what evidence is relevant for intentional discrimination claims, and that the issues raised in Dr. Lichtman's report were "well-outside the scope of what" he could assess. Ex. 5 at 202:6–20, 202:25–203:23. Dr. Stein agreed that 3PVRO registrations are higher among nonwhites and that "it is possible . . . that as a consequence of SB 7050 and its implementation, that a higher proportion on non-white voter registration has declined." Ex. 5 at 221:10–222:2 Dr. Stein further conceded that his "preferred" design comparing registrations to overall CVAP is impossible given the data available and is not the only accepted design in the field for assessing the impact of election laws. Ex. 5 at 225:24–235:10.

Dr. Alford testified that he did not read the entirety of Dr. Lichtman's report, he is not a historian, and his area of expertise falls outside the scope of Dr. Lichtman's analysis. Exhibit 6 (Dep. Tr. of Dr. John Alford) at 37:6–16, 38:6–18, 59:10–60:1. Dr. Alford also testified that he has never published on issues related to voter registration, 3PVROs, or Florida election laws. Ex. 6 at 30:3–31:13, 32:4–8. He has never been asked to opine on the impact of 3PVROs on voter registration or turnout. Ex. 6 at 34:5–9. In fact, in the last decade, the cases Dr. Alford has consulted or worked on all related to racially polarized voting analysis in the redistricting context, not laws impacting voter registration. Ex. 6 at 33:14–34:4. Dr. Alford

agreed that according to the voter files provided by the State, Black voters used 3PVROs to register to vote roughly five to six times as often as white voters and Latino voters roughly four to five times as often. Ex. 6 at 102:3–11, 103:22–104:15. And Dr. Alford testified that it is "very difficult" to determine the impact of a law that has been enjoined. Ex. 6 at 184:20–186:22.

## LEGAL STANDARD

Under Rule 702, in order for expert testimony to be admissible, the expert must be "qualified . . . by knowledge, skill, experience, training or education," and the party proffering the testimony must establish that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. District courts play a "gatekeeping role" to ensure that any expert testimony admitted "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 589 (1993); *Kumho Tire*, 526 U.S. at 147. "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (citations omitted); *see also Frazier*, 387 F.3d at 1260. "*Daubert*'s requirements of reliability and relevancy continue to apply in a bench

trial." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010), and district courts throughout the Eleventh Circuit routinely and rigorously apply the *Daubert* test in bench trials to exclude unreliable expert testimony.[2]

In determining the admissibility of expert testimony under Rule 702, courts in the Eleventh Circuit must "engage in a rigorous three-part inquiry." *Frazier*, 387 F.3d at 1260. The Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010). Drs. Stein's and Alford's analysis of Dr. Lichtman's and Dr. Herron's reports fails each of these factors.

---

[2]*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1029-30 (11th Cir. 2014) (affirming district court's exclusion of expert testimony from bench trial); *MDS (CANADA) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 848 n.2 (11th Cir. 2013) (similar); *Placida Pro. Ctr., LLC v. FDIC*, 512 F. App'x 938, 953 (11th Cir. 2013) (affirming district court's exclusion of portions of expert's testimony in bench trial); *Pinero v. 4800 W. Flager LLC*, 430 F. App'x 866, 869 (11th Cir. 2011) (similar); *Broberg v. Carnival Corp.*, No. 17-CV-21537-MORENO/LOUIS, 2018 WL 4778457, at *2–*3 (S.D. Fla. June 11, 2018) (excluding two experts from bench trial); *Goldberg v. Paris Hilton Ent., Inc.*, No. 08-22261-CIV, 2009 WL 1393416, at *4 (S.D. Fla. May 18, 2009) (excluding two experts from bench trial); *Hatt 65, LLC. v. Kreitzberg*, No. 3:06cv332/MCR, 2008 WL 11342487, at *2 (N.D. Fla. Mar. 24, 2008) (striking unreliable portions of experts' affidavits in bench trial).

## ARGUMENT

**I.     Defendants' experts should be precluded from offering any opinions about Dr. Lichtman.**

Drs. Stein and Alford provide a scant one paragraph opinion containing pejorative remarks about Dr. Lichtman's analysis and asserting that they "will not be commenting" on it further in their expert report. Ex. 3 at 2–3. This is not expert testimony as contemplated by the Federal Rules under even the most generous possible approach. The Court should preclude any expert testimony from Drs. Stein and Alford on Dr. Lichtman's report.

As an initial matter, Drs. Stein and Alford lack the "knowledge, skill, experience, training, or education" necessary to qualify them under Rule 702 with respect to Dr. Lichtman's report. In assessing whether an expert is qualified, "the trial judge should not rely on labels, but must investigate the competence of a particular proffered witness would bring to bear on the issues." *Mannio v. Int'l Mfg. Co.*, 650 F.2d 846, 850 (6th Cir. 1981). Here, by their own admissions, neither Dr. Stein nor Dr. Alford has expertise in evaluating legislative history or intent, has ever provided expert opinions on these topics, or has familiarity with what evidence is relevant to intentional discrimination claims. *See* Ex. 5 at 202:6–20, 202:25–203:23; Ex. 6 at 37:6–16, 38:6–18, 59:10–60:1. Because Defendants' experts bring no relevant expertise to the central inquiry in Dr. Lichtman's report, the opinions they

offer "are outside of [their] competence and must be excluded." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998).

Nor did either expert try to familiarize himself or otherwise engage with the substance of Dr. Lichtman's report. Dr. Alford admitted he did not even read all of Dr. Lichtman's report, Ex. 6 at 37:10–16, and neither Dr. Stein nor Dr. Alford reviewed the legislative record, case law, and history cited within Dr. Lichtman's report, Ex. 5 at 199:4–201:16; Ex. 6 at 37:21–38:24. Dr. Alford confirmed at his deposition that he does not have any specific rebuttals to Dr. Lichtman's report. Ex. 6 at 59:10–14. Dr. Stein similarly had no specific objections to Dr. Lichtman's report and could not coherently articulate what was purportedly improper about it. Ex. 5 at 189:24–190:22, 193:17–195:1. In Dr. Stein's own words, the issues Dr. Lichtman tackled in his report were "well-outside of the scope of what we could assess," *id.* at 203:16–18, and their report does not offer an opinion of whether any of Dr. Lichtman's content is methodologically flawed, historically accurate, or generally credible. (Indeed, Dr. Stein referred to Dr. Lichtman as an "eminent scholar in [the] field." *Id.* at 201:19–22). Any opinions about Dr. Lichtman's analysis in this case that Dr. Stein or Dr. Alford would offer at trial would necessarily be unreliable based upon these admissions and should thus be precluded under Rule 702.

Finally, Drs. Stein and Alford offer improper opinions about the legal relevance and helpfulness of Dr. Lichtman's expert report. Ex. 3 at 2–3. Experts are

9

not qualified to determine the legal relevancy of another expert's opinion; that is within the discretion of the trial court. *See, e.g.*, *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1113 (11th Cir. 2005) (applying abuse of discretion standard to review trial court decision on whether to admit expert testimony). Drs. Stein's and Alford's subjective commentary on the helpfulness of Dr. Lichtman's analysis to the Court lacks any basis in any "scientific, technical, or other specialized knowledge" and will not "help[] the trier of fact." Fed. R. Evid. 702.; *cf. Frazier*, 387 F.3d at 1262–63 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.").

Accordingly, Plaintiffs request that the Court exclude all testimony by Drs. Stein and Alford in response to Dr. Lichtman's report and corresponding testimony.

## II. The Court should exclude Drs. Stein's and Alford's opinions and expert testimony regarding Dr. Herron.

The Stein-Alford report's response to Dr. Herron's report is highly unreliable and should be excluded on that basis. Most notably, it purports to respond to Dr. Herron's quantitative analysis without any data or evidence in support of Drs. Stein's and Alford's contrary positions. The report also presents a hypothetical methodology that is impossible to perform, much less replicate. As such, their report fails all the prongs of Rule 702's requirements for admissibility, which requires that the testimony will help the Court to understand the evidence or determine a fact in issue,

10

that the testimony is based on sufficient facts or data, that it is the product of reliable principles and methods, and that it reliably applies those principles and methods to the facts of the case.

The Daubert inquiry into the question of whether an expert has used reliable principles and methods generally considers "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *McCorvey*, 298 F.3d at 1256. "[T]hese factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Frazier*, 387 F.3d at 1262. In assessing reliability, "the court must undertake an independent analysis of each step in the logic leading to the expert's conclusions; if the analysis is deemed unreliable at any step[,] the expert's entire opinion must be excluded." *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009), *aff'd,* 609 F.3d 1183 (11th Cir. 2010).

Drs. Stein's and Alford's analysis is unreliable at every step. To start, Drs. Stein and Alford provide *no* methodology for the Court to assess. The Eleventh Circuit has made clear that "it remains a basic foundation for admissibility that '[p]roposed [expert] testimony must be supported by appropriate validation.'"

11

*Frazier*, 387 F.3d at 1261 (quoting *Daubert*, 509 U.S. at 590). As such "a trial court may exclude expert testimony . . . whose factual basis is not adequately explained." *Sheriff of Monroe Cnty.*, 402 F.3d at 1111.

Here, Drs. Stein and Alford fail to explain why their preferred design method—comparing registrations to overall CVAP— is preferrable to Dr. Herron's method, let alone present a tangible theory based on peer review. In fact, they concede that there is no way to quantitatively assess the impact of SB 7050 under their preferred method and failed to confirm whether such data was available before criticizing Dr. Herron for not taking this approach. Ex. 3 at 4–7; *see also* Ex. 5 at 224:18–236:8 (discussing fact that CVAP data is unavailable and other methods are acceptable); Ex. 6 at 109:11–14, 110:14–22 (stating he is unaware of CVAP data availability in Florida for 2023 and did not look if the data was available before suggesting this methodology); Ex. 4 at 22–30 (Dr. Herron explaining the Stein-Alford report presents no evidence that his calculations to produce 3PVRO voter registration rates are "biased" or "misleading" or that his conclusions would change if he normalized for CVAP). Based on their testimony, therefore, the "empirical conditions" they contend "need to be shown" to ascertain the impact on different racial groups, Ex. 3 at 5, cannot be shown based on any available data. In short, their preferred methodology is to conduct no analysis at all.

Drs. Stein and Alford also do not conduct any of their own analyses, do not present any of the data they contend are "central" to the inquiry, and do not even attempt to replicate Dr. Herron's calculations, despite the fact the same data was available to them. Ex. 5 at 282:14–284:12; Ex. 6 at 92:18–25, 94:20–22, 96:14. Instead, in response to Dr. Herron's quantitative findings, Drs. Stein and Alford offer a series of hypotheticals that they present as "findings" but are entirely made up. Ex. 3 at 6–7 (providing "hypothetical ratios of white and nonwhite registrations to the citizen voting age populations of white and nonwhite persons for the years immediately preceding and following adoption of SB 7050"). "Testimony premised upon hypothetical facts" may "flunk the 'helpfulness' requirement of Rule 702 if the facts the expert assumed were so far afield as to be irrelevant." *Hudgens v. Durrence*, No. CV 207-110, 2008 WL 6839019, at *5 (S.D. Ga. Dec. 30, 2008) (citing *Daubert*, 509 U.S. at 591–92.). As articulated in Dr. Herron's rebuttal report, the invented figures posed by Drs. Stein and Alford are verifiably false based on 2019 data. Ex. 4 at 33–34.

Finally, Drs. Stein's and Alford's evaluation of Dr. Herron's quantitative analysis is based on a misunderstanding of the basic procedural facts of the challenged bill. For instance, their hypothetical analysis suggests Dr. Herron should have compared the entire year of 2019 with the entire year of 2023. Ex. 3 at 6–7. But this analysis fails to recognize that SB 7050 was not enacted until May 2023, the

13

provisions of the law related to 3PVROs did not take effect until July 1, 2023, and two of the challenged provisions were enjoined by this Court on July 3, 2023. Ex. 4 at 21, 35–36; Ex. 5 at 90:2–10; 255:3–256:19; Ex. 6 at 83:22–84:7, 124:11–125:6, 183:13–185:14. These facts are not only expressly mentioned in Dr. Herron's and Dr. Lichtman's reports, Ex. 1 at 14, Ex. 2 at 17, they are relevant to analyzing the impact of SB 7050 on voters, Ex. 4 at 35–36. Because enforcement of two of the provisions of SB 7050 has been enjoined since enactment, any analyses of the bill's impact will likely underestimate the impacts of the bill were the injunction lifted. And Drs. Stein's and Alford's critique of Dr. Herron for not assessing the impact of the law since its enactment is nonsensical given that several provisions have yet to be implemented. Drs. Stein's and Alford's drive-by understanding of the basic facts at issue in this case should alone be disqualifying under Rule 702, as their analysis fails to reflect the type of "intellectual rigor that characterizes the practice of an expert in the relevant field" required to render their opinions reliable. *Frazier*, 387 F.3d at 1260.

Because Drs. Stein and Alford's opinions regarding Dr. Herron's report are unreliable, the Court should exclude them at trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude Dr. Stein's and Dr. Alford's opinions and expert testimony related to Florida NAACP Plaintiffs' experts.

Dated: February 23, 2024

Abha Khanna*
Makeba Rutahindurwa*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law
mrutahindurwa@elias.law

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law

*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*

Respectfully submitted,

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111
King, Blackwell, Zehnder & Wermuth, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

## LOCAL RULE 7.1(B) CERTIFICATION

Counsel for Plaintiffs conferred with counsel for State Defendants; State Defendants oppose this motion.

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this motion contains 3,506 words, excluding the case style and certifications.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111

*Counsel for Plaintiffs*