# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

     *Plaintiffs*,

v.

CORD BYRD, in his official capacity as
Secretary of State of Florida, et al.,

     *Defendants*.

Case Nos. 4:23-cv-215-MW-MAF
4:23-cv-216-MW-MAF
4:23-cv-218-MW-MAF

## JOINT PRETRIAL STIPULATION[1]

Plaintiffs Florida State Conference of Branches and Youth Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress, Alianza Center, UnidosUS, Florida Alliance for Retired Americans, Santiago Mayer Artasanchez, Esperanza Sánchez and Humberto Orjuela Prieto ("NAACP Plaintiffs"); League of Women Voters of Florida Inc. and League of Women Voters of Florida Education Fund Inc. ("LWVFL Plaintiffs"); and Hispanic Federation, Poder Latinx, Verónica Herrera-Lucha, Norka Martínez, and Elizabeth Pico ("Hispanic Federation Plaintiffs" and, with the foregoing Plaintiffs,

---

[1] This filing incorporates the disclosures pursuant to Rule 26(a)(3), Federal Rules of Civil Procedure, of Plaintiffs, the Secretary, and Attorney General.

collectively, "Plaintiffs"); and Defendant Cord Byrd, in his official capacity as the Florida Secretary of State ("Secretary"); Defendant Ashley Moody, in her official capacity as the Florida Attorney General ("Attorney General"); and the 67 Florida counties' Supervisors of Elections, in their official capacities as Supervisors of Elections ("Supervisors") (collectively, the "Parties"), pursuant to ECF No. 203, hereby submit this Joint Pretrial Stipulation:

## A.   BASIS OF FEDERAL JURISDICTION

NAACP Plaintiffs brought their action under 42 U.S.C. §§ 1981, 1983, and 1988; the Voting Rights Act ("VRA"), 52 U.S.C. § 10508; the Civil Rights Act of 1964, 42 U.S.C. § 1981; and the U.S. Constitution. LWVFL Plaintiffs brought their action under 42 U.S.C. §§ 1983 and 1988, and the U.S. Constitution. Hispanic Federation Plaintiffs brought their action under 42 U.S.C. §§ 1981, 1983, and 1988; the Civil Rights Act of 1964, 42 U.S.C. § 1981; and the U.S. Constitution.

This Court has original jurisdiction over the subject matter of these actions under 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 to grant the declaratory relief requested.

## B.   CONCISE STATEMENT OF THE NATURE OF THE ACTIONS

The NAACP Plaintiffs', LWVFL Plaintiffs', and Hispanic Federation

Plaintiffs' respective actions consist of constitutional and statutory challenges to certain provisions in Senate Bill 7050 ("SB 7050") (the "3PVRO Restrictions").

## C.   BRIEF GENERAL STATEMENT OF EACH PARTY'S CASE[2]

In the respective brief general statements of the case, the following terms are used for sake of consistent references:

"Citizenship Provision" refers to the provisions of Section 97.0575(1)(f), Florida Statutes (2023), as amended by Section 4 of SB 7050.

"Retention Provision" refers to the provisions of Section 97.0575(7), Florida Statutes (2023), as amended by Section 4 of SB 7050.

"Mail in Ballot Provision" refers to the provisions of Section 101.62, Florida Statutes (2023), as amended by Section 26 of SB 7050.

"Receipt Provision" refers to the provisions of Section 97.0575(4), Fla. Stat. (2023), as amended by Section 4 of SB 7050.

"Re-registration Provision" refers to the provisions of Section 97.0575(1)(d), (2) Fla. Stat. (2023), as amended by Section 4 of SB 7050.

### 1.   NAACP Plaintiffs' Brief General Statement of Case

NAACP Plaintiffs challenge the constitutionality of SB 7050 as it pertains to

---

[2] The Parties' respective brief general statements of case are their own and are not joined by the other Parties, except as reflected in each respective brief general statement of case.

(1) third-party voter registration organization ("3PVRO") restrictions engrafted into Section 97.0575, Florida Statutes, which (a) prohibit noncitizens from collecting or handling voter registration applications on behalf of 3PVROs, Section 97.0575(1)(f)(the "Citizenship Provision");[3] (b) dramatically increase fines for applications received more than 10 (decreased from 14) days after the application was received by the 3PVRO, applications received after the voter registration deadline, and applications submitted to the supervisor of elections in a different county from the registrant's county of residence, Section 97.0575(5)(a) (the "3PVRO Fines Provision"); (c) prohibit 3PVROs from retaining any identifying information of the voters it registers for any purpose other than registration itself, Section 97.0575(7) (the "Retention Provision")[4], and (2) the restriction set forth in Fla. Stat. § 101.62 which allows Supervisors to accept requests for vote-by-mail ballots "only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian" (the "Mail-In Ballot

---

[3] In previous filings, the NAACP Plaintiffs have used the short-form term "Citizenship Requirement," which is synonymous with the current short-form term "Citizenship Provision."

[4] In previous filings, the NAACP Plaintiffs have used the short-form term "Information Retention Ban," which is synonymous with the current short-form term "Retention Provision."

Provision")[5] (collectively, the "Challenged Provisions").  NAACP Plaintiffs seek to enjoin the Secretary, Attorney General, and the Supervisors from enforcing the Challenged Provisions in future elections.  NAACP Plaintiffs claim that there is no legitimate, much less compelling, state interest in targeting the voting process in these ways.

NAACP Plaintiffs assert that the 3PVRO Restrictions infringe on free speech and associational rights under the First and Fourteenth Amendments and the Equal Protection Clause under the Fourteenth Amendment and 42 U.S.C. § 1983; the Citizenship Provision violates the Equal Protection Clause under the Fourteenth Amendment and Equal Rights Under the Law under 42 U.S.C § 1981; the Citizenship Provision is preempted by Section 1981; the Citizenship Provision and Retention Provision are vague and overbroad under the First and Fourteenth Amendments and 42 U.S.C. § 1983; and the Mail-In Ballot Provision is preempted by Section 208 of the VRA.  Each claim is brought as both an as-applied challenge and facial challenge. In addition to this summary, the nature and bases of their claims are detailed in NAACP Plaintiffs' Third Amended Complaint (ECF No. 184 in Case No. 4:23-cv-215) ("Operative NAACP Complaint").

---

[5] In previous filings, the NAACP Plaintiffs have used the short-form term "Mail-In Ballot Request Restriction," which is synonymous with the current short-form term "Mail-In Ballot Provision."

2.     **LWVFL Plaintiffs' Brief General Statement of Case**

LWVFL Plaintiffs challenge the constitutionality of five provisions of SB 7050. LWVFL Plaintiffs challenge (1) a provision that requires third-party voter registration organizations ("3PVROs") like LWVFL to provide a "receipt" to every voter registration applicant, including, inter alia, the applicant's name, the applicant's political party affiliation, the name of the 3PVRO, and the name of the individual providing assistance (the "Receipt Provision"); and (2) a provision that requires 3PVROs to re-register with the Division of Elections for each specific general election cycle in which the 3PVRO plans to conduct voter registration activities, including the names and addresses of persons who will assist people with voter registration on behalf of the 3PVRO (the "Re-registration Provision").

In addition, LWVFL Plaintiffs join the other organizational Plaintiffs in challenging (3) the Citizenship Provision, as discussed above by NAACP Plaintiffs (referred to by LWFL Plaintiffs as the "Non-U.S. Citizen Volunteer Restriction"); (4) the 3PVRO Fines Provision, as discussed above by NAACP Plaintiffs (referred to by LWFL Plaintiffs as the "Delivery Penalties"); and (5) the Retention Provision, as discussed above by NAACP Plaintiffs (referred to by LWFL Plaintiffs as the "Voter Information Restriction"). Each claim is brought as both an as-applied challenge and facial challenge. LWVFL Plaintiffs seek to enjoin the Secretary of State and Attorney General from enforcing these provisions in future elections and

argue that these provisions do not serve and cannot be justified by any compelling or legitimate state interest.

LWVFL Plaintiffs bring claims under the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983, alleging that the provisions abridge their rights to free speech, expressive conduct, and free association; that the Citizenship Provision is unconstitutionally overbroad; and that the Receipt Provision, Retention Provision, and Citizenship Provision are unconstitutionally vague. In addition to this summary, the nature and bases of their claims are detailed in LWVFL Plaintiffs' Complaint (ECF No. 1 in Case No. 4:23-cv-00216-MW-MAF).

### 3.   Hispanic Federation Plaintiffs' Brief General Statement of Case

The Hispanic Federation Plaintiffs challenge the 3PVRO restrictions in Section 97.0575(1)(f) (the "Citizenship Provision"), which prohibit noncitizens from collecting or handling voter registration applications on behalf of 3PVROs.

The Hispanic Federation Plaintiffs assert that (a) the Citizenship Provision violates Plaintiffs' free speech and associational rights under the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983; (b) the Citizenship Provision is unconstitutionally vague and overbroad under the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983; and (c) the Citizenship Provision unconstitutionally discriminates against noncitizens under the Fourteenth

Amendment's Equal Protection Clause and 42 U.S.C. § 1983.[6]  Each claim is

brought as both an as-applied challenge and facial challenge. In addition to this

summary, the nature and bases of their claims are detailed in the Hispanic Federation

Plaintiffs' Revised Complaint (ECF No. 79 in Case No. 4:23-cv-218) ("Operative

Hispanic Federation Complaint").

### 4.   State-level Defendants Brief General Statement of Case

Collectively, the operative complaints in these consolidated cases challenge

certain provisions of Florida's election code amended through SB 7050. For trial,

the validity of the following provisions remains at issue:

(1) section 97.0575(1)(f), Florida Statutes, the Citizenship Provision;

(2) section 97.0575(4), Florida Statutes, the Receipt Provision;

(3) section 97.0575(5)(a), Florida Statutes, the 3PVRO Fines Provision;

(4) section 97.0575(7), Florida Statutes, the Retention Provision;

(5) section 97.0575(1)(d), (2), Florida Statutes, the Re-Registration Provision;
and

---

[6] The Hispanic Federation Plaintiffs' claim that the Citizenship Provision unconstitutionally discriminates against noncitizens under the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. § 1983 was granted against the Secretary of State at summary judgment. The Hispanic Federation Plaintiffs' claim that the Citizenship Provision is preempted because it unlawfully interferes with noncitizens' right to contract under 42 U.S.C § 1981 was denied at summary judgment.

(6) section 101.62, Florida Statutes, the Mail-In Ballot Provision.

Assuming Plaintiffs carry their burden of establishing standing to challenge the provisions, the evidence will show that all six provisions are facially nondiscriminatory and that there is no circumstantial evidence of discriminatory intent that infects the provisions. The evidence will further show that none of the provisions impermissibly burden the right to vote, if they burden the right to vote at all; none violate the First Amendment or the Due Process Clause; none violate any other part of the U.S. Constitution; none violate the Voting Rights Act or the Civil Rights Act of 1964; and all further important state interests.

### 5.   **Supervisors' Brief General Statement of Case**

The Supervisors are named as defendants to assure the efficacy of any relief the Court might grant with respect to Counts I, II, V, and VII of the NAACP Plaintiffs' Third Amended Complaint (ECF No. 184). The Secretary is actively defending against each of those claims. In light of the Secretary's active defense, the Supervisors did not contribute to the Concise Statement of Issues of Fact Remaining to Be Litigated (Part H below) or the Concise Statement of Issues of Law Remaining for Determination (Part I below), do not take a position on the issues presented in those sections of this Joint Pretrial Stipulation, and do not intend to present a defense on the merits of Plaintiffs' claims. The Supervisors will, of course, comply with all court orders and judgments that are applicable to them and reserve the right to

present facts and argument regarding the timing and feasibility of specific remedies the Court might order and the impact of those remedies on the administration of elections. The Supervisors, moreover, continue to maintain—as in their Motion to Dismiss Counts I, II, and V (ECF No. 146)—that Plaintiffs have no standing to assert Counts I, II, and V against the Supervisors.

**D.    EXHIBIT LISTS[7]**

A copy of the Plaintiffs' Consolidated Exhibit List with objections thereto is attached as Exhibit 1. Within Exhibit 1, each Plaintiff group has set forth documents that it has identified, broken out by section. Each set of Plaintiffs may use any of the exhibits in any of the other Plaintiffs' sections and have endeavored to avoid overlap with documents identified by other Plaintiff groups. All Plaintiffs reserve their rights to introduce and/or use for any purpose consistent with the Federal Rules of Civil Procedure and the Federal Rules of Evidence any exhibit listed by any party in this litigation.

---

[7] Deposition transcripts can be used for any purpose identified in the Federal Rules of Civil Procedure and the Federal Rules of Evidence; however, the Parties recognize that live testimony is preferable to the use of deposition designations. If a party chooses to submit designations before the close of its case, the opposing parties must be provided at least 72 hours to provide counter designations. Designations will be highlighted yellow, counter-designations will be highlighted in gray, and overlapping designations will be highlighted in green for submission to the Court.

A copy of the Secretary's and Attorney General's Consolidated Exhibit List with objections thereto is attached as Exhibit 2.

The Supervisors do not intend to offer exhibits at trial and have not included exhibits on the other Parties' Exhibit Lists.

## E.    WITNESS LISTS

A copy of the Plaintiffs' Consolidated Witness List is attached as Exhibit 3.

A copy of the Secretary's Witness List is attached as Exhibit 4.

A copy of the Attorney General's Witness List is attached as Exhibit 5.

The Supervisors do not intend to offer witnesses at trial and have not included witnesses on the Parties' Witness Lists.

## F.    CONCISE STATEMENTS OF ADMITTED FACTS

<u>Facts Not Disputed by Any of the Parties and Accepted as Established in This Litigation[8]</u>

1.    On May 24, 2023, Governor DeSantis signed SB 7050 into law.

2.    With the exception of the provisions preliminarily enjoined by this Court, SB 7050 is now in effect.

## Background

3.    Section 4 of SB 7050, Chapter 2023-120, Laws of Florida, codified at §

---

[8] The Supervisors do not have personal knowledge of all facts set forth in this Part F of the Joint Pretrial Stipulation, but do not dispute them for purposes of this litigation.

97.0575(1)(f), Fla. Stat. (2023), provides:

> Before engaging in any voter registration activities, a third-party voter registration organization must register and provide to the division, in an electronic format, the following information:
> . . .
> An affirmation that each person collecting or handling voter registration applications on behalf of the third-party voter registration organization is a citizen of the United States of America. A third-party voter registration organization is liable for a fine in the amount of $50,000 for each such person who is not a citizen and is collecting or handling voter registration applications on behalf of the third-party voter registration organization.

4.    Section 4 of SB 7050, codified at § 97.0575(7), Fla. Stat. (2023), provides:

> If a person collecting voter registration applications on behalf of a third-party voter registration organization copies a voter's application or retains a voter's personal information, such as the voter's Florida driver license number, Florida identification card number, social security number, or signature, for any reason other than to provide such application or information to the third-party voter registration organization in compliance with this section, the person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

5.    Before SB 7050, § 101.62(1)(a), Fla. Stat. provided:

> The supervisor shall accept a request for a vote-by-mail ballot from an elector in person or in writing.

6.    Section 26 of SB 7050 amended § 101.62(1)(a), Fla. Stat. as follows (showing

additions in underlined text and deletions in strikeout text only for

12

identification):

> (a) The supervisor shall accept a request for a vote-by-mail ballot <u>only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian</u> ~~from an elector in person or in writing~~. <u>A request may be made in person, in writing, by telephone, or through the supervisor's website. The department shall prescribe by rule by October 1, 2023, a uniform statewide application to make a written request for a vote-by-mail ballot which includes fields for all information required in this subsection.</u>

7.   In 2022, section 7 of SB 524 amended § 97.0575(3)(a), Fla. Stat. to, among other things, increase the yearly aggregate fine allowable against 3PVROs from $1,000 to $50,000. *See* Ch. 2022-73, Laws of Fla.

8.   Section 4 of SB 7050, codified at § 97.0575(5)(a), Fla. Stat. (2023), (1) increased the fine for late applications from $50 per late application to "$50 per each day late, up to $2,500" and the fine for willfully late applications from $250 to $2,500; (2) reduced the number of days in which a 3PVRO may return a completed application from 14 days to 10; (3) increased the fine for applications submitted after the book-closing deadline from $100 to "$100 per each day late, up to $5,000" and the fine for willfully late applications from $500 to $5,000; (4) increased the fine for applications willfully submitted to a county other than the county in which the applicant resides from $1,000 per

violation to $5,000 per violation; and (5) increased the yearly aggregate fine allowable against 3PVROs from $50,000 to $250,000.

9.      Section 4 of SB 7050, codified at § 97.0575(4), Fla. Stat. (2023), provides:

> A third-party voter registration organization that collects voter registration applications shall provide a receipt to an applicant upon accepting possession of his or her application. The division shall adopt by rule a uniform format for the receipt by October 1, 2023. The format must include, but need not be limited to, the name of the applicant, the date the application is received, the name of the third-party voter registration organization, the name of the registration agent, the applicant's political party affiliation, and the county in which the applicant resides.

10.     Section 4 of SB 7050, codified at § 97.0575(1)(d), (2) Fla. Stat. (2023), provides that beginning November 6, 2024, before engaging in any voter registration activities, 3PVROs must register and identify "the specific general election cycle for which the [3PVRO] is registering persons to vote" and that a 3PVRO's registration "automatically expires at the conclusion of the specific general election cycle for which the third-party voter registration organization is registered."

11.     Section 4 of SB 7050, codified at § 97.0575(8), Fla. Stat. (2023), provides:

> If the Secretary of State reasonably believes that a person has committed a violation of this section, the secretary may refer the matter to the Attorney General for enforcement. The Attorney General may institute a civil action for a violation of this section or to prevent a violation of this section. An action for relief may include

> a permanent or temporary injunction, a restraining order,
> or any other appropriate order.

12. The forgoing language codified at § 97.0575(8), Fla. Stat. (2023), has been the same since originally codified at § 97.0575(4), Fla. Stat. (2011). *See* Ch. 2011-40, Laws of Fla.

13. Regarding the OAG's authority to institute civil actions under § 97.0575(8), Fla. Stat., the OAG understands that, on referral from the Secretary of State, the OAG may seek "a permanent or temporary injunction, a restraining order, or any other appropriate order" to prevent a violation of § 97.0575, Fla. Stat., or institute a civil cause of action to collect a fine assessed by the Secretary of State, after the exhaustion of administrative remedies.

14. The Florida Legislature has amended § 97.0575, Fla. Stat.—governing 3PVROs—in each of the last three legislative sessions. *See* Ch. 2021-11, Laws of Fla.; Ch. 2022-73, Laws of Fla.; Ch. 2023-120, Laws of Fla.

15. Florida's voter registration form contains the following instruction:

> **Where to Register:** You can register to vote by completing this application and delivering it in person or by mail to any supervisor of elections' office, office that issues driver's licenses, or voter registration agency (public assistance office, center for independent living, office serving persons with disabilities, public library, or armed forces recruitment office) or the Division of

Elections. Mailing addresses are on page 2 of this form.[9]

16.    Florida's voter registration form states, "the downloadable/printable online form is available at registertovoteflorida.gov."[10]

17.    Florida's paper/downloadable(.pdf) version of the voter registration form, DS-DE 139, does not reference online voter registration or 3PVROs.[11]

18.    On the final day of voter registration for the 2020 General Election, Florida's online voter registration system malfunctioned.[12]

19.    In Florida, before engaging in voter registration activities, 3PVROs must register directly with the Division of Elections and provide specific information about their operations, officers, employees, and agents. Fla. Stat. § 97.0575(1); Fla. Admin Code R. 1S-2.042.[13]

20.    3PVROs are assigned an identification number. Fla. Admin. Code R. 1S-2.042(4)(b). "All blank voter registration applications provided by the

---

[9] *League of Women Voters of Fla., et al. v. Lee*, Case No. 4:21-cv-186-MW/MAF (N.D. Fla.) ("SB 90 Case"), ECF 402 at 31, ¶19 (citing ECF 212-22, at 2, Form DS-DE 39, *Florida Voter Registration Application*, FLA. DEP'T OF STATE (Oct. 2013) ("Fla. Voter Reg. Form") (Produced as HTFF00440-41), *available* at. https://files.floridados.gov/media/704795/dsde39-english-pre-7066-20200914.pdf)

[10] *Id.* at 31-32, ¶ 20.

[11] *Id.* at 32, ¶ 21.

[12] SB 90 Case, ECF 402 at 32, ¶ 25 https://dos.myflorida.com/communications/press-releases/2020/public-notice-secretary-of-state-laurel-m-lee-provides-update-about-voter-registration-in-florida/.

[13] SB 90 Case, ECF 402 at 32-33, ¶26.

Division [of Elections] and each Supervisor of Elections to a 3PVRO shall include the 3PVRO's identification number on the bottom portion of the front side of each voter registration application in a manner that does not obscure any other entry." Fla. Admin Code R. 1S-2.042(5)(a). If the applicant does not date the application form, then the registration agent or the 3PVRO must "record the date that the 3PVRO collected the application in a conspicuous space on the bottom portion of the front side of the voter registration application in a manner that does not obscure any other entry." Fla. Admin Code R. 1S-2.042(5)(b).[14]

21.   Each county Supervisor of Elections must provide to the Division of Elections information on voter registration forms assigned to and received from 3PVROs. Fla. Stat. § 97.0575(3).[15] Specifically, each Supervisor must report to the Division of Elections on Form DS-DE 124 "the number of voter registration applications provided to and received from all 3PVROs the previous business day." Fla. Admin. Code R. 1S-2.042(7)(c).

22.   Florida law provides that:

> A third-party voter registration organization that collects voter registration applications serves as a fiduciary to the applicant and shall ensure that any voter registration application entrusted to the

---

[14] SB 90 Case, ECF 402 at 33, ¶ 27.
[15] SB 90 Case, ECF 402 at 33, ¶ 28.

> organization, irrespective of party affiliation, race, ethnicity, or gender, is promptly delivered to the division or the supervisor of elections in the county in which the applicant resides within 10 days after the application is completed by the applicant, but not after registration closes for the next ensuing election.[16]

23.  To be eligible to vote in the next immediate election in Florida, a Floridian who is not previously registered to vote must complete a voter registration application prior to the date of book closing for that election.  Fla. Stat. § 97.053(2).

24.  "Book closing" occurs on the 29th day before an election, whether it is general, primary, special, or local election, § 97.055(1)(a), Fla. Stat. ("The registration books must be closed on the 29th day before each election and must remain closed until after that election."), unless the 29th day before the election falls on a Sunday or a legal holiday, in which book closing occurs on the next day that is not a Sunday or a legal holiday, § 97.055(2), Fla. Stat.

25.  § 97.055(1)(b)-(c), Fla. Stat. provides:

> (b) Except as provided in paragraph (c), when the registration books are closed for an election, updates to a voter's name, address, and signature pursuant to ss. 98.077 and 101.045 shall be the only changes permitted

---

[16] SB 90 Case, ECF 402 at 33, ¶ 29 (citing Fla. Stat. § 97.0575(5)(a)).

for purposes of the upcoming election. New voter registration applications must be accepted but only for the purpose of subsequent elections.

(c) When the registration books are closed for an upcoming election, an update or change to a voter's party affiliation made pursuant to s. 97.1031 shall be permitted for that upcoming election unless such election is for the purpose of nominating a political party nominee, in which case the update or change shall be permitted only for the purpose of subsequent elections.

### The Secretary

26.   Defendant, Cord Byrd, is the Secretary of State of Florida and is named as a Defendant in his official capacity. He is Florida's chief elections officer and, as such, is responsible for the administration and implementation of election laws in Florida as prescribed by section 97.012(1), Florida Statutes. The Secretary, personally and through the conduct of his employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.[17]

---

[17] *See* SB 90 Case, ECF 402 at 37, ¶ 51.

27.     The Secretary promulgates Florida's voter registration application pursuant to his regulatory authority. Fla. Admin. Code R. 1S-2.040.[18]

## **The Attorney General**

28.     The Attorney General's authority includes overseeing the Office of the Florida Statewide Prosecutor, which may "[i]nvestigate and prosecute any crime involving . . . [v]oting in an election in which a candidate for a federal or state office is on the ballot" or "voter registration" if "any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting, or has affected, two or more judicial circuits." Fla. Stat. § 16.56(1)(c). The Attorney General may "institute a civil action for a violation of [section 97.0575]". § 97.0575(8), Fla. Stat.

## **Supervisors**

29.     Each Supervisor, other than Supervisor White,[19] is a county-level constitutional officer responsible for the performance of certain functions outlined in the Florida Election Code. Art. VIII, § 1(d), Fla. Const. The

---

[18] SB 90 Case, ECF 402 at 37, ¶ 52.

[19] Under the Miami-Dade County Home Rule Charter and in accordance with Fla. Const., art. VII, the Office of Supervisor of Elections in Miami-Dade County was abolished on May 1, 1958 and the duties of such office was transferred to the Mayor of Miami-Dade County, who is authorized to delegate to a suitable person the powers and functions of such office. Supervisor White has been delegated such powers and functions, and she has the same responsibilities described herein.

Supervisors are the county-level officials responsible for the following functions at the county level: conducting elections for federal, state, and county offices; registering new voters; accepting and processing requests for vote-by-mail ballots; sending, receiving, and verifying signatures on vote-by-mail ballots; establishing polling places; and maintaining certain statistics on voting history and voter registration

30.    Each Supervisor's jurisdiction is limited to the county that the Supervisor serves. The Supervisors and Plaintiffs do not dispute that, compared with other Supervisors, each Supervisor has superior knowledge of and familiarity with the general conduct and administration of elections in the county that the Supervisor serves.

31.    Each Supervisor is a member of the Florida Supervisor of Elections, Inc. ("FSE"), an association of Florida's Supervisors of Elections.

## G.    CONCISE STATEMENT OF AGREED ISSUES OF LAW

General Agreed Issues of Law[20]

1.    This action was brought under 42 U.S.C. §§ 1981, 1983, and 1988 and under the VRA, 52 U.S.C. § 10508.

---

[20] The Supervisors do not dispute the statements in this section for purposes of this litigation.

2.      Subject to challenges to Article III standing, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

3.      This Court has personal jurisdiction over the Secretary of State, who is sued in his official capacity only.

4.      This Court has personal jurisdiction over the Attorney General, who is sued in her official capacity only.

5.      This Court has personal jurisdiction over the Supervisor of Elections Defendants, who are sued in their official capacities only.

6.      Venue is proper in the Tallahassee Division of the U.S. District Court in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b).

7.      This Court has the authority to grant declaratory judgments and injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

8.      The Parties jointly ask for the inclusion of the legislative debates as part of the record, through certified transcripts. The Parties further ask that they be allowed to rely on portions of the legislative debates as available through the Florida Channel.

9.    The Parties ask that this Court take judicial notice of the following, as appropriate, during the course of the trial:

a. The Secretary's book closing reports, available at https://dos.fl.gov/elections/data-statistics/voter-registration-statistics/bookclosing/.

b. The Secretary's voter registration reports, available at https://dos.fl.gov/elections/data-statistics/voter-registration-statistics/voter-registration-reports/.

c. The Secretary's third-party voter registration organization database, https://tpvr.elections.myflorida.com/.

d. The Secretary's registration method and location archive, available at https://dos.fl.gov/elections/data-statistics/voter-registration-statistics/voter-registration-reports/voter-registration-method-and-location/method-and-location-archive/.

e. Election date information, available at

https://dos.fl.gov/elections/for-voters/election-dates/

https://dos.fl.gov/elections/for-voters/special-elections/

https://dos.elections.myflorida.com/calendar/

f. All copies of the Florida voter extract file provided to Plaintiffs by the Department of State in this action.

g.  The data contained on the confidential statewide voter extract files produced by the Department of State in this action.

h.  The data contained on the confidential statewide voter extract file produced in the SB90 litigation.

i.  The bill history records for SB 7050, available at https://www.flsenate.gov/Session/Bill/2023/7050.

j.  US Census Bureau American Community Survey Data.

k.  The U.S. Election Assistance Commission (EAC) 2022 Election Administration and Voting Survey (EVAS), available at https://www.eac.gov/sites/default/files/EAVS%202022/2022_EAVS_FINAL_508c.pdf.

10.  Defendant Cord Byrd is the Secretary of State of Florida. He is Florida's chief elections officer and, as such, is responsible for the administration and implementation of election laws in Florida as prescribed by section 97.012(1), Florida Statutes. The Secretary, personally and through the conduct of his employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

11.  Defendant Ashley Moody is the Attorney General of Florida. The Attorney General is the State of Florida's chief legal officer and is head

of the Florida Department of Legal Affairs. Under certain circumstances, the Attorney General is authorized to institute a civil action for enforcement of s. 97.0575, Fla. Stat. The Attorney General, personally and through the conduct of her employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

12.  Each Supervisor is responsible in the county she or he serves for the administration and implementation of certain election laws in Florida, including certain provisions of sections 97.0575 and 101.62 of the Florida Statutes. Each Supervisor, personally or through the conduct of employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

13.  The *Arlington Heights* test, as modified by the Eleventh Circuit in *Greater Birmingham Ministries*, applies to Fourteenth Amendment intentional-discrimination claims, namely Counts III and V of the Operative NAACP Complaint. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267–68 (1977); *Greater Birmingham Ministries v. Sec'y of State for the State of Ala.*, 992 F.3d 1299, 1321–22 (11th Cir. 2021).

Issues of Law on Which the Supervisors Agree

14.     The Supervisors do not dispute the admissibility of any Parties' exhibits into evidence. Each Supervisor certifies the authenticity of the documents the Supervisor produced in this litigation.

**H.    CONCISE STATEMENT OF ISSUES OF FACT REMAINING TO BE LITIGATED[21]**

i.   Standing

NAACP Plaintiffs

1.   Humberto Orjuela Prieto is a noncitizen, specifically a lawful permanent resident.

2.   Mr. Prieto is authorized to work in the United States, as demonstrated by his work authorization card produced in this litigation.

3.   Mr. Prieto was employed as a canvasser for the 2022 election cycle by UnidosUS and desires and intends to fill the same position in 2024 if he is lawfully able to.

4.   Prior to gaining her citizenship status in September 2023, Esperanza Sánchez was a noncitizen lawful permanent resident who was authorized to work in the United States.

---

[21] The Parties' respective statements about their standing are their own and are not joined by the other Parties.

5.    Ms. Sánchez worked as a canvasser and organizer for UnidosUS from 2016 through 2022.

6.    Voter registration canvassers including Mr. Prieto and Ms. Sánchez represent the 3PVROs they work on behalf of and speak to voters about the importance of registering to vote and why their vote matters.

7.    UnidosUS is a membership organization insofar as its affiliates are its members. Some of these affiliates have members who are noncitizens.

8.    UnidosUS is a registered 3PVRO in Florida.

9.    From 2008 to 2022, UnidosUS registered 406,005 Florida voters. Of those registrations, 370,781 were registered through community canvassing, meaning that our canvassers registered them. The other approximately 36,000 were registered online using UnidosUS's ads on Google and Facebook.

10.   To carry out our voter registration efforts, UnidosUS hires about 100 canvassers in Florida for each election cycle. The vast majority of these canvassers—75% or more each year—are noncitizens. In 2022, 66% of UnidosUS's temporary staff members were noncitizens who were permitted to work in the United States. UnidosUS calls returning canvassers, captains, and organizers first when launching a voter registration effort because of the skills required to collect voter registrations in our community. Many of these individuals work with UnidosUS during multiple cycles.

11. UnidosUS conducts background checks on its canvassers and only hires canvassers who are U.S. citizens or legal permanent residents in the United States.

12. Most of these noncitizen canvassers have helped with UnidosUS's voter registration efforts for multiple election cycles. Some have worked with UnidosUS for as many as six cycles.

13. UnidosUS has diverted resources in response to SB 7050. Specifically, two of its full-time staff will now work to recruit, train, and retain new canvassers.

14. UnidosUS has attempted to hire more citizen canvassers following SB 7050's passage.

15. Two UnidosUS full-time employee salaries will be diverted from paying the wages of additional temporary canvassers to register more voters to recruiting, training, and hiring new canvassers.

16. UnidosUS has diverted tens of thousands of dollars in response to SB 7050.

17. UnidosUS will divert staff time away from its advocacy projects in order to rework and conduct new trainings and implement new workflows related to SB 7050.

18. UnidosUS will not be able to employ as many canvassers and, as a direct consequence, register as many voters if it may only hire U.S. citizens.

19.    UnidosUS will also have to divert resources away from advocacy projects to retooling their get-out-the-vote strategies if they are prohibited from retaining voters' personal information.

20.    Alianza organizes Hispanic communities and has members who reside throughout Florida.

21.    Alianza is a registered 3PVRO in Florida. But Alianza has suspended its voter registration program entirely after the passage and because of increased financial penalties under SB 7050, specifically the increased fines for late applications and the $50,000 fine for any noncitizen canvasser.

22.    Noncitizen canvassers for UnidosUS and Alianza have expressed concerns about participating in voter registration activities after SB 7050's passage and this litigation for fear of the consequences to themselves or their organizations.

23.    Voters of Tomorrow, Inc. intended to register as a 3PVRO in Florida but has decided not to because of the increased financial and criminal penalties under SB 7050.

24.    VOT will have to divert resources away from volunteering with partner organizations to register voters to retooling its get-out-the-vote strategies and retraining volunteers if they are prohibited from retaining voters' personal information.

25.   VOT will lose canvasser volunteers who do not want to risk a felony charge resulting from even innocuous retention of a voters' personal information.

26.   VOT's Executive Director, Plaintiff Santiago Mayer, is a noncitizen and a lawful permanent resident authorized to work and reside in the United States, as demonstrated by his work authorization card produced in this litigation.

27.   Mr. Mayer has decided not to engage in any voter registration work in Florida alongside his Florida chapter after the passage of SB 7050 because of the risks of financial penalties to VOT's registered-3PVRO partner organizations.

28.   Registering voters and working on the ground alongside members is a core part of Mr. Mayer's work as Executive Director of a civic engagement organization.

29.   Florida NAACP is a membership organization. Its 12,000 members are predominantly Black and other minority individuals who reside in all 67 of Florida's counties. Its mission is to ensure the political, social, educational, and economic equality of all persons and to eliminate race-based discrimination.

30.   Florida NAACP engages in other voting related advocacy as well, such as facilitating trainings to help our members understand election related bills, amendments, and other issues affecting the voting process. Florida NAACP also holds get-out-the vote ("GOTV") events, such as "souls to the polls,"

where Florida NAACP offers transportation from local churches to polling places.

31.   Florida NAACP is a registered 3PVRO in Florida.

32.   SB 7050 has frustrated Florida NAACP's mission to register more voters because thousands of their volunteer canvassers will be prohibited or chilled from registering voters as a result of SB 7050, impacting the organization's entire civic engagement initiative.

33.   Florida NAACP has diverted resources away from registering voters and its other advocacy projects to restructuring its get-out-the-vote strategies and understanding how to comply with the law.

34.   Florida NAACP will have to divert resources away from registering voters and its other advocacy projects towards retraining volunteers if they are prohibited from retaining voters' personal information.

35.   Florida NAACP will lose canvasser volunteers who do not want to risk a felony charge resulting from even innocuous retention of a voters' personal information.

36.   Florida NAACP will lose canvasser volunteers who disagree with SB 7050's discriminatory messaging against noncitizens and FL NAACP's forced compliance with the law.

37.   Disability Rights Florida is a registered 3PVRO in Florida.

38.    DRF is a Protection and Advocacy system ("P&A"), as that term is defined under the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. § 15041 et seq., the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 et seq., and the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794 et seq. DRF is an independent, nonprofit corporation designated by law to be Florida's federally funded P&A system for individuals with disabilities. DRF is authorized by federal law to pursue legal, administrative, and other appropriate remedies to ensure the protection of and advocacy for the rights of people with disabilities. DRF's constituents are all Floridians with disabilities.

39.    DRF engages in legal, legislative, and policy advocacy to protect the rights of adults and children with disabilities throughout Florida. DRF devotes significant efforts to increase the political participation of people with disabilities and to address the challenges they face when voting such as inaccessible polling sites and ballots and limited or non-existent supervised facility voting options for people with disabilities residing in residential facilities.

40.    There are an estimated 2.6 million eligible voters with disabilities in Florida. Each of these people would be considered a constituent of DRF.

41.   DRF has members who have disabilities that affect their ability to read or write, and assisting them in accessing their right to vote is germane to the organization's purpose.

42.   DRF will have to divert resources away from other staff advocacy projects to retooling its get-out-the-vote strategies and retraining volunteers if they are prohibited from retaining voters' personal information.

43.   DRF may not continue as a 3PVRO because of SB 7050's ban on retaining voters' personal information.

44.   DRF members have and would like to again rely on people other than legal guardians or immediate family members to assist them in requesting a vote-by-mail ballot.

45.   Florida Alliance for Retired Americans has members who have disabilities that affect their ability to read or write, and assisting them in accessing their right to vote is germane to the organization's purpose.

46.   FLARA members have and would like to again rely on people other than legal guardians or immediate family members to assist them in requesting a vote-by-mail ballot.

47.   Alianza has members with limited-English proficiency, and assisting them in accessing their right to vote is germane to the organization's purpose.

48.   Alianza members have and would like to again rely on the help of non-family members to assist them in requesting a vote-by-mail ballot

49.   UnidosUS has members with limited-English proficiency, and assisting them in accessing their right to vote is germane to the organization's purpose.

50.   UnidosUS members have and would like to again rely on the help of non-family members to assist them in requesting a vote-by-mail ballot.

<u>Hispanic Federation Plaintiffs</u>

51.   Plaintiff Verónica Herrera-Lucha is a non-citizen who is a lawful permanent resident of the United States.

52.   Ms. Herrera-Lucha is authorized to work in the United States, as demonstrated by her legal permanent resident card produced in this litigation.

53.   Plaintiff Norka Martínez is a non-citizen who has applied for asylum in the United States and has been granted temporary protected status.

54.   Ms. Martínez is authorized to work in the United States, as demonstrated by her work authorization card produced in this litigation.

55.   Plaintiff Elizabeth Pico is a non-citizen who has applied for asylum in the United States and has been granted temporary protected status.

56.   Ms. Martínez is authorized to work in the United States, as demonstrated by her work authorization card produced in this litigation.

57.   Ms. Herrera-Lucha, Ms. Martínez, and Ms. Pico are all Florida residents.

58.  Ms. Herrera-Lucha, Ms. Martinez, and Ms. Pico all helped to register eligible Floridians to vote on behalf of 3PVROs before the non-citizen ban was passed.

59.  Ms. Herrera-Lucha has canvassed for 3PVROs since 2016. In her role as state field director for Mi Vecino, a registered 3PVRO, she conducted direct canvassing work to register eligible voters and planned and coordinated Mi Vecino's Florida voter registration campaigns.

60.  Ms. Martínez and Ms. Pico worked in paid staff positions as canvassers for 3PVROs.

61.  After the passage of the non-citizen ban, the 3PVRO that employed Ms. Herrera-Lucha, Ms. Martínez, and Ms. Pico stopped conducting voter registration work in Florida.

62.  Ms. Herrera-Lucha, Ms. Martínez, and Ms. Pico all desire and intend to return to conducting voter registration work if doing so is lawful.

63.  Hispanic Federation is a non-profit organization that is registered to operate as a 3PVRO in Florida.

64.  Poder Latinx is a non-profit organization fiscally sponsored by Tides Advocacy that is registered to operate as a 3PVRO in Florida.

65.  Hispanic Federation has registered more than 90,000 voters since the 2016 election cycle, including eligible voters in each of Florida's 67 counties.

66.     Poder Latinx has registered over 48,000 eligible Florida voters.

67.     Both Hispanic Federation and Poder Latinx operate locally and statewide, and they help to reach voters who might not otherwise register to vote, including voters with limited access to technology or limited English-language proficiency.

68.     Non-citizens comprise the majority of Hispanic Federation's canvassers.

69.     Non-citizens comprise a majority of Poder Latinx's permanent staff and canvassers.

70.     The Citizenship Provision would prohibit Hispanic Federation's canvassers from collecting or handling voter registration applications on behalf of Hispanic federation.

71.     The Citizenship Provision would prohibit Poder Latinx's staff and canvassers from collecting or handling voter registration applications.

72.     Hispanic Federation will not be able to employ as many canvassers and, as a direct consequence, register as many voters if it may only hire U.S. citizens.

73.     Poder Latinx will not be able to employ as many canvassers and, as a direct consequence, register as many voters if it may only hire U.S. citizens.

74.     Poder Latinx will not be able to retain permanent staff in the current positions that they hold and, as a direct consequence, register as many voters if it may only hire U.S. citizens.

75.   The Citizenship Provison would frustrate Hispanic Federation's and Poder Latinx's missions to register more voters, because the Citizenship Requirement would prohibit or chill a majority of their canvassers and staff from registering voters.

76.   The Citizenship Provision would force Hispanic Federation and Poder Latinx to redirect funding that would have gone to community programming towards hiring, vetting, and training new staff and volunteers, as well as rebuilding institutional knowledge and relationships.

77.   To comply with the Citizenship Provision, Hispanic Federation would be required to divert resources, such as staff time, away from other activities to advance their mission, such as capacity-building efforts to strengthen other Latino non-profits or making health care services more accessible to the communities they serve.

78.   To comply with the Citizenship Provision, Poder Latinx would be required to divert resources from its other civic engagement programs and public health initiatives, such as Poder Latinx's organizing surrounding immigrant justice, climate justice, and economic justice.

79.   In preparing for compliance with the Citizenship Provision in the weeks before it was scheduled to take effect, Hispanic Federation and Poder Latinx had *already* begun to divert resources and suffer concrete harms.

80.   After the passage of the Citizenship Provision (and before the Citizenship Provision was enjoined), Hispanic Federation redirected staff time toward developing policies to comply with the citizenship requirement and altered its planning for registering voters in the 2023 election cycle.

81.   After the passage of the citizenship requirement (and before the citizenship requirement was enjoined), Poder Latinx experienced difficulty recruiting new staff or volunteers, and it turned down otherwise qualified candidates who applied for open positions based solely on their citizenship.

<u>LWVFL Plaintiffs</u>

82.   League of Women Voters of Florida, Inc. and League of Women Voters of Florida Education Fund (collectively, "LWVFL" or the "League") formed under Section 501(c)(4) and Section 501(c)(3) of the Internal Revenue Code, respectively, are nonpartisan political organizations whose mission is to facilitate informed and active participation in government by all Americans, increase understanding of major policy issues, and advocate for legislative changes and policies for the public good.

83.   The League accomplishes this mission, in part, by encouraging eligible Florida citizens to register to vote, including by assisting them with the process, and promoting robust civic participation through voter education and assistance to facilitate their participation in the electoral process.

84. The League has two full-time and three part-time paid staff members and one contract bookkeeper.

85. Its annual program budget in 2022 was approximately $268,425, and it anticipates the budget for upcoming years to be similar.

86. Among its activities, the League, along with its local chapters, devotes significant time and resources to encouraging voter participation by regularly conducting voter registration drives at a variety of public locations, including local high school, college, and university campuses, libraries, grocery stores, malls, public assistance offices, naturalization ceremonies, and community events such as fairs and festivals.

87. The League conducts hundreds and sometimes thousands of voter registration events per year across the state, registering tens of thousands of eligible Floridians each year.

88. The League has diverted significant effort, staff time, and resources from its other activities in response to SB 7050.

89. The League has decided to, at least temporarily, cease its regular voter registration activity altogether, instead confining its activities to assistance with online registration and distributing blank paper applications, because of the challenged restrictions in SB 7050. The League's voter registration rate and activity has been significantly diminished by those restrictions.

### ii. First Amendment Issues

1. Whether the Challenged Provisions implicate First Amendment rights.

2. Whether Florida has an interest in enforcing the 3PVRO Restrictions, and (if so) the strength of that interest.

3. Whether the 3PVRO Restrictions prohibit more protected speech than is necessary to achieve Florida's interests, if any.

4. Whether and to what degree the 3PVRO Restrictions burden Plaintiffs' expressive association.

### iii. Fourteenth Amendment Issues (Equal Protection)

*Discriminatory Intent* (*Arlington Heights*)

5. Whether the 3PVRO Restrictions violate the Fourteenth Amendment to the United States Constitution because they were purposefully enacted, at least in part, with a racially discriminatory intent to discriminate against Black and Hispanic voters and, in fact, has discriminatory effects.

6. Whether the Citizenship Provision violates the Fourteenth Amendment to the United States Constitution because it was purposefully enacted, at least in part, with an intent to discriminate against noncitizens and, in fact, has a discriminatory effect.

*Facial Alienage Classification*

40

7.      Whether Florida has an interest in enforcing the Citizenship Provision, and (if so) the strength of that interest.[22]

    iv.   Burdens on Voting Rights (*Anderson-Burdick*)

8.      Whether Plaintiffs' alleged burdens implicate the right to vote.

9.      What level of scrutiny to apply when assessing Plaintiffs' claims.

10.     Whether and to what degree the Citizenship Provision (SB 7050's amendment to Section 97.0575(1)(f)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

11.     Whether and to what degree the Receipt Provision (SB 7050's amendment to Section 97.0575(4)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

12.     Whether and to what degree the 3PVRO Fines Provision (SB 7050's amendment to Section 97.0575(5)(a)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

---

[22] The Hispanic Federation Plaintiffs maintain that this issue has been decided on summary judgment.

13.     Whether and to what degree the Retention Provision (SB 7050's amendment to Section 97.0575(7)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

14.     Whether and to what degree the Re-Registration Provision (SB 7050's amendment to Section 97.0575(1)(d), (2)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

15.     Whether and to what degree the Mail-In Ballot Request Provision (SB 7050's amendment to Section 101.62) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

16.     Whether the State's interests outweigh any alleged burdens on the right to vote.

I.     CONCISE STATEMENT OF ISSUES OF LAW REMAINING FOR DETERMINATION

1.     Whether one or more of Plaintiffs have standing to assert each of the claims in this Case.

        Reservation: The Hispanic Federation Plaintiffs' position is that their standing, standard of review, and strict scrutiny for suspect classification has already been decided as to the equal protection

42

claim in the Court's summary judgment decision.

2.    What standard of review applies to the facts of this case.

> Reservation: The Hispanic Federation Plaintiffs' position is that the Court's summary judgment decision determined that the appropriate standard of review for the equal protection claim is strict scrutiny.

3.    Whether Plaintiffs have proven that one or any combination of the Challenged Provisions of SB 7050 unconstitutionally reflects intentional discrimination in violation of the Fourteenth Amendment.

4.    Whether the 3PVRO Restrictions are subject to exacting scrutiny as restrictions on election-related speech and association and, if so, whether Defendants have proven that they are narrowly tailored to serve a compelling state interest.

5.    Whether Plaintiffs have proven that the 3PVRO Restrictions violate the First Amendment.

6.    Whether the Citizenship Provision is impermissibly vague because it allegedly leaves unclear what it means to "handle" "voter registration applications."

7.    Whether the Retention Provision is impermissibly vague because it allegedly leaves unclear what "personal information" and "in

compliance with this section" mean.

8.     Whether the Receipt Provision is impermissibly vague because it allegedly cannot be properly implemented without contradicting the Retention Provision.

9.     Whether the 3PVRO Restrictions punish a substantial amount of protected free speech, if any, judged in relation to their plainly legitimate sweep and are thus overbroad.

10.    Whether the Citizenship Provision is subject to strict scrutiny as facially discriminatory based on a suspect classification (i.e., alienage) or exempt from strict scrutiny under the political function exception.

       Reservation: The Hispanic Federation Plaintiffs' position is that the Court's summary judgment decision determined that the Citizenship Provision is subject to strict scrutiny as facially discriminatory based on a suspect classification.

11.    Whether the Citizenship Provision interferes with noncitizens' rights "to make and enforce contracts," in direct conflict with 42 U.S.C. § 1981 and is thus preempted under the Constitution's Supremacy Clause.

12.    Whether Section 208 of the VRA, 52 U.S.C. § 10508, preempts the Mail-In Ballot Provision.

**J.     CONCISE STATEMENT OF ANY DISAGREEMENT AS TO THE APPLICATION OF RULES OF EVIDENCE OR OF THE FEDERAL RULES OF CIVIL PROCEDURE**

None known at this time. Plaintiffs reserve all rights to make their objections to the admission and use of exhibits and other evidence at trial in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

**K.     LIST OF ALL MOTIONS OR OTHER MATTERS REQUIRING COURT ACTION**

**NAACP Plaintiffs' Action (Case No. 4:23-cv-215)**

| Filing Date | Title/Matter |
| --- | --- |
| | |
| 2/29/24 | Plaintiffs' Motion In Limine to Bar Defendants From Calling William "Bill" Gladson, Katherine Fernandez-Rundle, and Amira Fox as Trial Witnesses |
| 2/23/24 | Defendants' Motion In Limine as to Dr. Lichtman's expert testimony |
| 1/23/24 | Plaintiffs' Motion for Partial Summary Judgment |
| 1/18/24 | Defendant Byrd's Motion for Summary Judgment on Counts VII and IV |

**LWVFL Plaintiffs' Action (Case No. 4:23-cv-216)**

| Filing Date | Title/Matter |
| --- | --- |
| | |
| | None |
| | |

**Hispanic Federation Plaintiffs' Action (Case No. 4:23-cv-218)**

| Filing Date | Title/Matter |
| --- | --- |
| | |
| | None |
| | |

**Supervisors' Separate Statement of Matters for the Court's Action**

The Supervisors request that the attendance of their counsel at trial be optional. The Supervisors do not intend to offer exhibits or witnesses or otherwise

45

to present a defense on the merits of Plaintiffs' claims. The mandatory attendance of their counsel at a two-week trial would therefore impose undue financial burdens on the Supervisors and their limited resources. The Supervisors respectfully request, however, that, if feasible, the Court establish a conference line that would provide the Supervisors' counsel with the option to monitor all or part of the proceedings remotely.

The Supervisors also request that, if any Supervisor is called to testify at trial, the Supervisor be permitted to testify by video connection or other remote means. Rule 43(a) permits the Court, for "good cause in compelling circumstances and with appropriate safeguards," to "permit testimony in open court by contemporaneous transmission from a different location." The Supervisors are already immersed in the time-intensive demands of the present election cycle. *See Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay) (explaining that "running a statewide election" requires "a massive coordinated effort"). Florida's presidential preference primary election will take place on March 19, 2024. The period for candidates to qualify for certain offices, including federal offices, will begin on April 22, 2024, and close on April 26, 2024. Florida's primary and general elections are scheduled for August 20 and November 5, 2024, respectively. An accommodation that permits the Supervisors to testify by remote means would minimize the risk of disruption to the administration

of elections and promote the public interest in a smooth and orderly election process.

Neither Plaintiffs nor the other Defendants object to the requests presented by the Supervisors in the two preceding paragraphs.

**L.    STATEMENT WHETHER THIS IS A JURY OR NON-JURY CASE**

This is a non-jury case.

**M.    COUNSEL'S RESPECTIVE ESTIMATES OF THE LENGTH OF THE TRIAL**

10 days.

**N.    SIGNATURE OF COUNSEL FOR ALL PARTIES**

Signatures follow below.

WHEREFORE, the Parties hereby respectfully submit the foregoing Joint Pretrial Stipulation in accordance with the Court's Order Granting Joint Motion to Set Agreed Pretrial Schedule, ECF No. 203.

Respectfully submitted by:

| /s/ *Frederick S. Wermuth* | /s/ *Joshua Pratt* |
|---|---|
| Frederick S. Wermuth | Mohammad Jazil |
| Florida Bar No. 0184111 | Florida Bar No. 72556 |
| **KING, BLACKWELL, ZEHNDER** | Michael Beato |
| **& WERMUTH, P.A.** | Florida Bar No. 1017715 |
| P.O. Box 1631 | Joshua Pratt |
| Orlando, FL 32802-1631 | Florida Bar No. 119347 |
| Telephone: (407) 422-2472 | John Cycon* |
| fwermuth@kbzwlaw.com | **HOLTZMAN VOGEL BARAN** |
| | **TORCHINSKY & JOSEFIAK** |
| Abha Khanna* | 119 S. Monroe Street, Ste. 500 |
| Makeba Rutahindurwa* | Tallahassee, FL 32301 |
| **ELIAS LAW GROUP LLP** | Telephone: (850) 274-1690 |
| 1700 Seventh Ave., Suite 2100 | mjazil@holtzmanvogel.com |

Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law
mrutahindurwa@elias.law

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law
*Admitted Pro Hac Vice*

*Counsel for Plaintiffs Florida State Conference of Branches of Youth Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress, Alianza Center, UnidosUS, Florida Alliance for Retired Americans, Santiago Mayer Artasanchez, and Esperanza Sánchez*

/s/ Megan Keenan
Julie A. Ebenstein (FBN 91033)
Adriel I. Cepeda Derieux*
Megan C. Keenan*

mbeato@hotlmanvogel.com
jpratt@holtzmanvogel.com
*Admitted Pro Hac Vice*

Bradley R. McVay
Florida Bar No. 79034
Joseph Van de Bogart
Florida Bar No. 84764
Ashely E. Davis
Florida Bar No. 48302
**FLORIDA DEPARTMENT OF STATE**
500 S. Bronough Street
Tallahassee, Florida 32399
Phone: (850) 245-6519
Joseph.Vandebogart@dos.myflorida.com
Ashley.Davis@dos.myflorida.com

*Counsel for Secretary Cord Byrd*

/s/ Stephanie A. Morse
Stephanie A. Morse
Fla. Bar No. 0068713
Noah Sjostrom
Fla. Bar No. 1039142

**Office of the Attorney General**
Complex Litigation Bureau
PL 01 The Capitol
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
Stephanie.Morse@myfloridalegal.com
Noah.Sjostrom@myfloridalegal.com

*Counsel for Ashley Moody*

/s/ Brent Ferguson
Brent Ferguson*
Danielle Lang*
Jonathan Diaz*

48

Dayton Campbell-Harris*
Sophia Lin Lakin*
**American Civil Liberties
Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
jebenstein@aclu.org
acepedaderieux@aclu.org
mkeenan@aclu.org
dcampbell-harris@aclu.org
slakin@aclu.org

Nicholas L.V. Warren (FBN
1019018)
**ACLU Foundation of Florida**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN
1038312)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

Roberto Cruz (FBN 18436)
**LatinoJustice PRLDEF**
523 West Colonial Drive
Orlando, FL 32804
(321) 754-1935
rcruz@latinojustice.org

Delmarie Alicea (FBN 1024650)

Ellen Boettcher*
Michael Ortega*
Christopher Lapinig*
Simone Leeper (FBN 1020511)
**Campaign Legal Center**
1101 14th Street NW, Ste. 400
Washington, DC 20005
Telephone: (202) 736-2200
bferguson@campaignlegal.org
dlang@campaignlegal.org
jdiaz@campaignlegal.org
eboettcher@campaignlegal.org
mortega@campaignlegal.org
sleeper@campaignlegal.org

Chad W. Dunn
Florida Bar No. 0119137
BRAZIL & DUNN
1200 Brickell Avenue
Suite 1950
Miami, FL 33131
Telephone: (305) 783-2190
Facsimile: (305) 783-2268
chad@brazilanddunn.com

*Admitted *Pro Hac Vice*
*Counsel for Plaintiffs League of Women
Voters of Florida, Inc. and League of
Women Voters of Florida Education
Fund*

**LatinoJustice PRLDEF**
523 West Colonial Drive
Orlando, FL 32804
(321) 418-6354
dalicea@latinojustice.org

Cesar Z. Ruiz*
Fulvia Vargas De-Leon[†]
Ghita Schwarz[†]
**LatinoJustice PRLDEF**
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
cruiz@latinojustice.org
fvargasdeleon@latinojustice.org
gschwarz@latinojustice.org

Estee M. Konor*
**Dēmos**
80 Broad Street, 4th Floor
New York, NY 10004
(212) 485-6065
ekonor@demos.org

John A. Freedman[†]
Jeremy Karpatkin[†]
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 942-5316
john.freedman@arnoldporter.com
jeremy.karpatkin@arnoldporter.com
*Admitted Pro Hac Vice*
[†] *Motion for leave to appear pro hac vice forthcoming*

*Counsel for Plaintiffs Hispanic Federation, Poder Latinx, Verónica Herrera-Lucha, Norka Martínez, and*

*Elizabeth Pico*

/s/ *Andy Bardos*

Andy Bardos
Florida Bar No. 822671
**GRAYROBINSON, P.A.**
301 S. Bronough Street, Suite 600
Tallahassee, Florida 32301
Telephone: (850)577-9090
andy.bardos@gray-robinson.com

*Counsel for Leah Valenti, Charlotte
County Supervisor of Elections;
Melissa Blazier, Collier County
Supervisor of Elections; Leslie Swan,
Indian River County Supervisor of
Elections; Alan Hays, Lake County
Supervisor of Elections; Tommy Doyle,
Lee County Supervisor of Elections;
Michael Bennett, Manatee County
Supervisor of Elections; Wesley
Wilcox, Marion County Supervisor of
Elections; Joyce Griffin, Monroe
County Supervisor of Elections; Brian
Corley, Pasco County Supervisor of
Elections; Chris Anderson, Seminole
County Supervisor of Elections*

/s/ *Frank Mari*

Frank M. Mari
Florida Bar No. 93243
**ROPER, P.A.**
2707 E. Jefferson St.
Orlando, Florida 32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
fmari@roperpa.com

*Counsel for Mark Negley, DeSoto
County Supervisor of Elections; Connie
Sanchez, Gilchrist County Supervisor of
Elections; Kaiti Lenhart, Flagler
County Supervisor of Elections; Karen
Healy, Highlands County Supervisor of
Elections; Tim Bobanic, Brevard
County Supervisor of Elections; Heath
Driggers, Madison County Supervisor
of Elections; Michelle Milligan,
Jefferson County Supervisor of
Elections*

/s/ *Geraldo Olivo*

Geraldo F. Olivo, III
Florida Bar No. 0060905
William Boltrek
Florida Bar No. 100901
**HENDERSON, FRANKLIN, STARNES
& HOLT, P.A.**
P.O. Box 280
Fort Myers, Florida 33902
Telephone: (239) 344-1168
jerry.olivo@henlaw.com

/s/ *Susan Erdelyi*

Susan S. Erdelyi
Florida Bar No. 0648965
**MARKS GRAY, P.A.**
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207
Telephone: (904) 398-0900
Facsimile: (904) 399-8440
serdelyi@marksgray.com
jfavale@marksgray.com

*Counsel for Diane Smith, Hardee County Supervisor of Elections; Brenda Hoots, Hendry County Supervisor of Elections; Melissa Arnold, Okeechobee County Supervisor of Elections; Tammy Jones, Levy County Supervisor of Elections; Therisa Meadows, Holmes County Supervisor of Elections; Aletris Farnam, Glades County Supervisor of Elections*

*Counsel for Christopher Milton, Baker County Supervisor of Elections; Mark Andersen, Bay County Supervisor of Elections; Amanda Seyfang, Bradford County Supervisor of Elections; Sharon Chason, Calhoun County Supervisor of Elections; Tomi Stinson Brown, Columbia County Supervisor of Elections; Starlet Cannon, Dixie County Supervisor of Elections; Heather Riley, Franklin County Supervisor of Elections; Shirley Knight, Gadsden County Supervisor of Elections; John Hanlon, Gulf County Supervisor of Elections; Laura Hutto, Hamilton County Supervisor of Elections;  Carol A. Dunaway, Jackson County Supervisor of Elections; Travis Hart, Lafayette County Supervisor of Elections; Grant Conyers, Liberty County Supervisor of Elections; Janet H. Adkins, Nassau County Supervisor of Elections; Charles Overturf, Putnam County Supervisor of Elections; Tappie A. Villane, Santa Rosa County Supervisor of Elections; Vicky Oakes, St. Johns County Supervisor of Elections; William Keen, Sumter County Supervisor of Elections; Jennifer Kinsey, Suwannee County Supervisor of Elections; Dana Southerland, Taylor County Supervisor of Elections; Deborah K. Osborne, Union County Supervisor of Elections; Joseph Morgan, Wakulla County Supervisor of Elections; Ryan Messer, Walton County Supervisor of Elections; Carol F. Rudd, Washington County Supervisor of Elections*

52

/s/ *John LaVia*
Ronald A. Labasky
Florida Bar No. 206326
**BREWTON PLANTE, P.A.**
P.O. Box 350
Tallahassee, Florida 32302
Telephone: (850) 566-2396
rlabasky@icloud.com

John T. LaVia, III
Florida Bar No. 0853666
**GARDNER, BIST, BOWDEN, DEE,
LAVIA, WRIGHT, PERRY &
HARPER, P.A.**
1300 Thomaswood Drive
Tallahassee, Florida 32308
Telephone: (850) 385-0070
Facsimile: (850) 385-5416
jlavia@gbwlegal.com

*Counsel for Chris Chambless, Clay
County Supervisor of Elections; Vicki
Davis, Martin County Supervisor of
Elections; Mary Jane Arrington,
Osceola County Supervisor of
Elections; Lori Edwards, Polk County
Supervisor of Elections; Gertrude
Walker, St. Lucie County Supervisor of
Elections*

/s/ *Nathaniel Klitsberg*
Nathaniel A. Klitsberg
Florida Bar No. 307520
Joseph K. Jarone
Florida Bar No. 117768
Devona A. Reynolds Perez
Florida Bar No. 70409
**BROWARD COUNTY ATTORNEY**

/s/ *Bob Swain*
Robert C. Swain
Florida Bar No. 366961
Diana M. Johnson
Florida Bar No. 69160
**ALACHUA COUNTY ATTORNEY'S
OFFICE**
12 Southeast 1st Street
Gainesville, Florida 32601
Telephone: (352) 374-5218
Facsimile: (352) 374-5216
bswain@alachuacounty.us
dmjohnson@alachuacounty.us

*Counsel for Kim A. Barton, Alachua
County Supervisor of Elections*

/s/ *Craig Feiser*
Craig D. Feiser
Florida Bar No. 164593
**OFFICE OF THE GENERAL COUNSEL**
117 W. Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: (904) 255-5100
Facsimile: (904) 255-5120

115 South Andrews Avenue, Suite 423
Fort Lauderdale, Florida 33301
Telephone: (954)357-7600
nklitsberg@broward.org
jkjarone@broward.org
dreynoldsperez@broward.org

*Counsel for Joe Scott, Broward County*
*Supervisor of Elections*

CFeiser@coj.net

*Counsel for Jerry Holland, Duval*
*County Supervisor of Elections*

/s/ *Dale A. Scott*
Dale A. Scott
Florida Bar No. 0568821
**ROPER, P.A.**
2707 E. Jefferson Street
Orlando, Florida 32803
Telephone: (407)897-5150
Facsimile: (407)897-3332
dscott@roperpa.com

*Counsel for Maureen "Mo" Baird,*
*Citrus County Supervisor of Elections*

s/ *Christi Hankins*
Christi Hankins
Florida Bar No. 483321
**ESCAMBIA COUNTY ATTORNEY'S**
**OFFICE**
221 Palafox Place, Suite 430
Pensacola, Florida 32502
Telephone: (850) 595-4970
cjhankins@myescambia.com

*Counsel for Robert Bender, Escambia*
*County Supervisor of Elections*

/s/ *Kyle Benda*
Jon A. Jouben
Florida Bar No. 149561
Kyle Benda
Florida Bar No. 113525
**HERNANDO COUNTY ATTORNEY'S**
**OFFICE**
20 N. Main Street, Suite 462
Brooksville, Florida 34601
Telephone: (352) 754-4122
Facsimile: (352) 754-4001
Jjouben@co.hernando.fl.us
kbenda@co.hernando.fl.us

*Counsel for Shirley Anderson,*
*Hernando County Supervisor of*

/s/ *Stephen M. Todd*
Stephen M. Todd
Florida Bar No. 0886203
**OFFICE OF THE COUNTY ATTORNEY**
Post Office Box 1110
Tampa, Florida 33601-1110
Telephone: (813) 272-5670
Facsimile: (813) 272-5758
ToddS@hillsboroughcounty.org

Colleen E. O'Brien
Florida Bar No. 76578
Hillsborough County Supervisor of
Elections Office
601 E. Kennedy Blvd., 16th Floor
Tampa, FL. 33602

*Elections*

Telephone: (813) 574-1285
cobrien@votehillsborough.gov

*Counsel for Craig Latimer,*
*Hillsborough County Supervisor of*
*Elections*

/s/ *Mark Herron*
Mark Herron
Florida Bar No. 199737
**MESSER CAPARELLO, P.A.**
Post Office Box 15579
Tallahassee, Florida 32317
Telephone: (850) 222-0720
Facsimile: (850) 558-0659
mherron@lawfla.com

*Counsel for Mark Earley, Leon County*
*Supervisor of Elections*

/s/ *Michael B. Valdes*
Michael B. Valdes
Florida Bar No. 93129
Sophia Guzzo
Florida Bar No. 1039644
**MIAMI-DADE COUNTY ATTORNEY'S**
**OFFICE**
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Facsimile: (305) 375-5634
Michael.valdes@miamidade.gov
Sophia.guzzo@miamidade.gove

*Counsel for Christina White,*
*Supervisor of Elections for Miami-*
*Dade County*

/s/ *Matthew Shaud*
Gregory T. Stewart
Florida Bar No. 203718
Matthew R. Shaud
Florida Bar No. 122252
**NABORS, GIBLIN & NICKERSON, P.A.**
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
Telephone: (850) 224-4070
Facsimile: (850) 224-4073
gstewart@ngnlaw.com
mshaud@ngnlaw.com

*Counsel for Paul Lux, Okaloosa County*

/s/ *Nicholas Shannin*
Nicholas Shannin
Florida Bar No. 9570
**SHANNIN LAW FIRM**
214 S. Lucerne Circle East
Orlando, Florida 32801
Telephone: (407) 985-2222
nshannin@shanninlaw.com

*Counsel for Bill Cowles, Orange*
*County Supervisor of Elections*

*Supervisor of Elections*

/s/ *David Markarian*

Jessica Glickman
Florida Bar No. 118586
David Markarian
Florida Bar No. 480691
**THE MARKARIAN GROUP**
2925 PGA Blvd., Ste. 204
Palm Beach Gardens, FL 33410
jessica@forbusinessandlife.com
dave@forbusinessandlife.com

*Counsel For Wendy Sartory Link, Palm
Beach County Supervisor of Elections*

/s/ *Morgan Bentley*

Morgan Bentley
Florida Bar No. 0962287
**BENTLEY GOODRICH KISON, P.A.**
783 S. Orange Ave., Third Floor
Sarasota, Florida 34236
Telephone: 941-556-9030
mbentley@bgk.law

*Counsel for Ron Turner, Sarasota
County Supervisor of Elections*

/s/ *Jared Kahn*

Jared Kahn
Florida Bar No. 105276
**PINELLAS COUNTY ATTORNEY'S
OFFICE**
315 Court Street, Sixth Floor
Clearwater, Florida 33756
Telephone: (727) 464-3354
Facsimile: (727) 464-4147
jkahn@pinellas.gov

*Counsel for Julie Marcus, Pinellas
County Supervisor of Elections*

/s/ *Kevin Bledsoe*

W. Kevin Bledsoe
Florida Bar No. 029769
Sarah Jonas
Florida Bar No. 115989
123 W. Indiana Avenue
Deland, Florida 32720
Telephone: 386-736-5950
kbledsoe@volusia.org
sjonas@volusia.org

*Counsel for Lisa Lewis, Volusia County
Supervisor of Elections*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2024 I filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such

filing to all counsel of record.

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111
*Counsel for NAACP Plaintiffs*