## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE
OF BRANCHES AND YOUTH
UNITS OF THE NAACP, et al.,

      Plaintiffs,

      v.

CORD BYRD, in his official capacity
as Florida Secretary of State, et al.,

      Defendants.

Case Nos.: 4:23-cv-215-MW/MAF
            4:23-cv-216-MW-MAF
            4:23-cv-218-MW-MAF

### NAACP PLAINTIFFS' MOTION TO COMPEL

Under Federal Rule of Civil Procedure 37, NAACP Plaintiffs[1] respectfully move to compel the Secretary to produce unredacted copies of email chains within his production, as well as related documents withheld in their entirety. *See* ECF Nos. 248-1, 248-2, 248-3. The emails are responsive to Plaintiffs' Request Number 19 in Plaintiffs' First Requests for Production to the Secretary, which sought "[a]ll documents and communications between You and consultants, lobbyists, staff,

---

[1] Florida State Conference of Branches of Youth Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress and Alianza Center, UnidosUS, Florida Alliance for Retired Americans, Santiago Mayer Artasanchez, Humberto Orjuela Prieto, and Esperanza Sánchez (collectively, "Plaintiffs").

researchers, scholars, members of the public, or any other Person relating to SB 7050, including specifically the Challenged Provisions." ECF No. 248-2 at 20. The Secretary lodged boilerplate objections to this request, but then stated that he would "produce all non-privileged documents that are responsive to this Request on a rolling basis." *Id.*

It has only recently become apparent—based on documents produced by the Secretary long after document discovery closed, a privilege log produced on February 16, 2024, and the deposition testimony of Maria Matthews on February 22, 2024—that the privilege claims the Secretary asserted as the basis for redacting and withholding certain communications are baseless. Plaintiffs now move to compel the Secretary to produce unredacted copies of the email chains at issue and certain documents withheld based on attorney-client privilege. Alternatively, Plaintiffs request an *in camera* inspection of the documents to discern the validity of the Secretary's privilege claims.

Specifically, Plaintiffs move to compel the Secretary to produce:

- Unredacted copies of emails bates numbered SB7050-SOS-00044313– 44314, 00044476–44477, 00073577, 00073676–73679, 00073778– 73781, 00079638–79641, 00081921–81922, 00081925–81926, 00111036, and 00111054.

2

- Documents identified by Doc Id numbers 55764, 56017, 56020, 56189, 56461, 56478, 56510, 56699, 56849, 56856, 57256, 57358, 58378, 58398, 58628, 58807, 58838, 58852, 58977, 59022, 59083, 59085, 59091, 59097, 59102, 59105, 59107, 59110, 59112, 59117, 59121, 59147, 59295, 59296, 59430, 59464, 59698, 59847, 60024, 60025, 60026, 60054, 60158, 60210, 60253, 60462, 60475, 60527, 60962, 61079, 61232, 61280, 61366, 61400, 61511, 61582, 61656, 61728, 62150, 62169, 62199, 62219, 62778, 63067, 63075, 63077, 70020, 70565, 70770, 72207, 72447, 72538, 72883, 77882, 77909, 78388, 78463, 78535, 78684, 83987, 84633, 84635, 92567, 92833, 97346, 97472, 97652, 97689, 98118, 98121, 98128, 98134, 98139, 98143, 98145, 98147, 98150, 98151, 98152, 98156, 98165, 101144, 101475, 103257, 103404, 103407,103846, 104078, 104087, 104098, 104106, 104114, 104117, 104120, 104125, 105699, 105910, 160171, 160194, 160209, 160219, 160229, 160281, 160287, 160288, 160365, 160370, 160381, 160412, 160443, 160509, 165945, and 166005.

- Documents identified by Bates Numbers SB7050-SOS-00044313–44314,   00044476–44477,   00073578–73675,   00073676–73679, 00073680–73777,   00073778–73781,   00073782–73879,   00079638– 79641, 00079642–79739, 00110888, 00110890, 00110892, 00110900,

00110901, 00110903, 00110905, 00110906, 00111027, 00111029, 00111031, 00111033, 00111035, 00111037, 00111041, 00111043, 00111045, 00111053, 00111055, 00111069, 00111073.

## BACKGROUND

Plaintiffs allege that the Florida Legislature passed SB 7050 with the intent to discriminate against noncitizens and Black and Hispanic Floridians. ECF No. 184 ¶¶ 136, 150. And they allege there are no legitimate, let alone compelling, state interests for the challenged provisions. *Id.* ¶¶ 117, 126, 135, 138–39, 154. On July 25, 2023, this Court set December 18, 2023 as the discovery deadline. ECF No. 117 at 2. In a series of orders, this Court extended the deadline for the parties to take depositions but did not extend the deadline for document discovery. ECF No. 192; ECF No. 198; ECF No. 216. Document production, therefore, closed December 18, 2023.

The Secretary nonetheless made rolling productions of around 30,939 pages of documents between December 8, 2023 and February 16, 2024. Like some of the Secretary's earlier productions, almost every production set contained at least some highly redacted documents. Relevant here, the Secretary produced several email chains largely internal to the Department of State (although a few involved other government agencies) with titles like "Legislation 2021: Strike All Amendment to SB 90," "HB 7041 Strike All Amendment," "Elections Bill," and "Elections Bill

4

2023." *See* ECF No. 248-1. Division of Elections Director Maria Matthews was included in many of these email chains.

The Secretary also produced several unredacted email chains discussing proposed legislation. ECF No. 248-5 at SB7050-SOS-00105791–105792, 00085134–85138; 00084605–84607; 00087419–87420; 00087514, 00087608; 00074622. These emails have subjects like "Proposed Legislation 2023 -Post Discussion," "SB 90 Spreadsheet," and "7050." Many also attach documents with proposed revisions to SB 7050, with names like "Spreadsheet Suggestions SB 7050." Matthews was also included in many of these emails.

The Secretary did not provide a privilege log or redaction log explaining any of his redactions or identifying withheld documents during the discovery period. Between January 30th and February 9th, counsel for Plaintiffs emailed counsel for the Secretary multiple times inquiring after the privilege log. ECF No. 248-6.

The Secretary produced a redaction log on February 14, 2024, identifying attorney-client privilege as the basis for his redactions of the above-referenced communications. ECF No. 248-4**.** Each entry described the redacted portions as "[c]ommunication with counsel regarding pending legislation," or some version of the phrase. *See, e.g.*, *id.* at 1. Two days later, on February 16, 2024, the Secretary also produced a privilege log. ECF No. 248-3. The log revealed, for the first time, that the Secretary had withheld over 100 email chains and attachments much like the

5

redacted chains based on attorney-client privilege and legislative privilege. As with the redacted emails, many—if not most—of these email chains involved Matthews and were described as essentially "[c]ommunication[s] with counsel regarding proposed legislation" or "analysis of proposed legislation."

The parties had originally agreed that Matthews's deposition would take place on January 5, 2024. ECF No. 248-12. But because of a family emergency on Matthews's behalf, Plaintiffs could not depose her until February 22, 2024.

During Matthews's deposition, Plaintiffs probed the Department's role in crafting SB 7050. Plaintiffs asked Matthews if she worked on "legislative language . . . that later found its way into SB 7050." ECF No. 248-7, February 22, 2024 Matthews Dep. at 68:8–10. Matthews responded in the affirmative. *Id.* Specifically, "in the fall of 2023 [sic],"[2] someone (likely the Legislature) asked the Department to "prepare a legislative package" regarding 3PVROs. *Id.* at 83:13–84:8. Responding to this request, Assistant Secretary Jennifer Kennedy directed Matthews and her team to prepare legislation. *Id.* at 85:16–86:8. As Matthews testified, "it is not uncommon" for Kennedy to reach out to her with legislation-related requests from the Governor's Office or Legislature. *Id.* at 86:9–18.

---

[2] Director Matthews clearly meant 2022, because the fall proceeding the legislative session in which SB 7050 was enacted was in 2022.

6

Matthews also testified that, in response to the Legislature's fall 2022 request, the Department's "leadership team" held internal discussions regarding potential changes to Florida law. *Id.* at 84:22–85:8. This group included "the Division [D]irector," (Matthews) the "Legislative Affairs Director," (Katherine Woodby) the "assistant secretary," (Kennedy) and "legal counsel." *Id.* Matthews later identified Deputy Secretary Brad McVay[3] and attorney Joseph Van de Bogart as the legal counsel members of the "team . . . responsible for putting the package together." *Id.* at 125:23–126:8.

Matthews also testified at length about her and the Department's role in crafting SB 7050. *See, e.g.*, *id.* at 81:16–114:2. She testified that the idea to require 3PVROs "to affirm that no convicted felon or non-citizen is collecting applications . . . . came from the Department of State." *Id.* at 89:22–90:12. And she testified as to the purported reasoning behind the provision. *Id.* at 91:21–92:14 (explaining the Citizenship Requirement was "driven by the concern . . . to minimize opportunities for voter fraud . . . and instill confidence in the process that the person you are

_____

[3] At some point, McVay was promoted from General Counsel to Deputy Secretary. It is unclear exactly when McVay was promoted, but discovery shows that he was Deputy Secretary as early as March 21, 2023. ECF No. 248-8. Thus, the vast majority of communications at issue occurred after McVay was no longer General Counsel.

handing something to is someone that you can trust to be able to get the application to the Supervisor of Elections or Division of Elections").

To learn more about the Secretary's redactions, Plaintiffs asked about an exemplar email—an April 3, 2023 email chain between Matthews, Kennedy, the Secretary, Van de Bogart, and McVay, ECF No. 248-9, produced as part of a 14,223-page production on December 8, 2023, *see* ECF No. 248-10. Similar to many emails discussed above, the chain bears the subject line "Elections Bill 2023." During the deposition, counsel for Plaintiffs asked counsel for the Secretary about the asserted attorney-client privilege. Counsel for the Secretary responded, "I don't really know whether she is seeking legal advice through this redaction," and asserted instead that perhaps "legislative privilege would apply." ECF No. 248-7 at 118:16–119:9; *see also id.* ("So I stand by these redactions[.]").

Though the emails' substance is redacted, their sequence indicates they are relevant to the issues in this litigation. Woodby emailed Kennedy and the Secretary at 2:48 p.m. on April 3, 2023. Then, one minute later, Kennedy emailed Matthews, McVay, and Van de Bogart. Several hours later, Matthews sent Kennedy a lengthy response, which Kennedy then forwarded to the Secretary. As noted above, Matthews testified that McVay and Van Bogart were both involved in discussions, not of legal issues, but of proposed changes to Florida's 3PVRO law. *Id.* at 126:1–126:6. Matthews testified that, when she responded to Kennedy's inquiry, she was

not acting as "counsel for the state" but was acting "in [her] capacity as the Division director." *Id.* at 118:6–15.[4] Matthews also testified that, at the time SB 7050 was filed in the Legislature, she "did not anticipate" that it would lead to litigation. *Id.* at 36:3–8.

On February 29, 2024, Plaintiffs reached out to counsel to the Secretary to follow up about the email chain discussed in Matthews's deposition and confer about a motion to compel production of an unredacted copy of the communication. While the Secretary refused to withdraw his privilege objection and produce the unredacted email, he offered to show Plaintiffs—via Zoom—the unredacted email through "a non-waiver agreement whereby the Parties preserve all objections and arguments as to the document." ECF No. 248-11. Plaintiffs agreed. Plaintiffs' review of the unredacted email chain confirmed that the chain did not contain any privileged discussions, nor was its content materially different from the unredacted emails the Secretary had produced. Based on their snapshot review of this document, Plaintiffs had good reason to believe that the other communications and documents that bear the same general description and for which the same privilege objection was asserted were also not properly redacted or withheld.

---

[4] Director Matthews is a member of the Florida Bar, but confirmed she has not practiced for some time. ECF No. 248-7 at 179:5–9.

Plaintiffs reached back out to the Secretary's counsel on March 1, 2024, to confer on the present motion to compel. Counsel for the Secretary refused to provide a position on the document already conferred on because his "position on that document likely impacts [his] positions on each of the other 150+ documents" cited by Plaintiffs as being improperly redacted or withheld and he "can't address piecemeal questions while ignoring that broader context." ECF No. 248-11. As a measure of good faith, Plaintiffs gave the Secretary until the end of Monday to produce the documents, to restate their positions on why the documents are privileged, or to otherwise indicate that the issue could be resolved without motions practice, while again noting the urgency of resolving the matter. *Id.* Plaintiffs did not hear back from the Secretary by 9pm, despite following up by email and phone. *Id.*

Plaintiffs now move to compel production of all email strings redacted or withheld on the basis of attorney-client privilege (and possibly legislative privilege) that are described as communications regarding proposed legislation.

## ARGUMENT

This Court should grant Plaintiffs' motion to compel. "A motion to compel discovery is committed to the discretion of the trial court." *Com. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). A motion filed after the discovery deadlines imposed by the Court may be granted "upon a showing of good cause." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R.

Civ. P. 16(b)). The "good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Id.* (quotation marks omitted).

Here, there is good cause to consider Plaintiffs' motion. Despite their diligence, Plaintiffs lacked the information necessary to bring this motion until late last week. Plaintiffs then promptly attempted to obtain agreement from the Secretary's counsel to produce these materials without motions practice. When those negotiations failed, Plaintiffs filed this motion. On the merits, the Secretary cannot meet his burden to show that the attorney-client privilege protects the emails at issue because the emails were plainly not sent for the purpose of obtaining legal advice and because the Secretary's selective disclosure has waived any privilege. Further, the Secretary's assertion of legislative privilege cannot avoid disclosure both because the privilege has been waived and because, even if it were not, legislative privilege does not apply. In the alternative, if this Court decides it cannot determine from the information available whether a privilege applies, the evidence warrants an *in camera* review of the documents Plaintiffs seek.

## I.   Plaintiffs have shown good cause to consider their motion to compel.

Because the documents at issue go to the heart of Plaintiffs' claims, and because Plaintiffs could not have brought this motion earlier given the late disclosure

of the Secretary's documents and privilege log and the necessary delay of Matthews's deposition, Plaintiffs have good cause to seek to compel production now.

The email strings at issue appear to be highly relevant to Plaintiffs' claims. The documents may contain critical insight into the drafters of the Citizenship Requirement's thought processes and reasoning behind its inclusion in SB 7050, directly relevant to Plaintiffs' intentional discrimination claims. And the emails and their attachments may contain information about what state interests, if any, drove the legislation, which goes to the heart of Plaintiffs' First and Fourteenth Amendment claims. The Secretary's redactions and withholdings thus deny Plaintiffs potentially critical evidence.

Plaintiffs lacked the information necessary to file this motion until just recently. This Court's initial scheduling order requires the parties to file any motion to compel "no later than 30 days before the close of discovery." ECF No. 23 at 2. But the Secretary produced many of the redacted emails at issue in document dumps between December 8, 2023 and January 17, 2024—at which point, even if Plaintiffs could have instantly discerned the documents' significance, it was already too late to move to compel because the parties were well past or just days away from the discovery deadline. ECF No. 117 at 2.

More importantly, Plaintiffs could not have known the basis for the Secretary's redactions until the Secretary identified his asserted privilege in an initial

redaction log served on February 14, 2024. Nor could they have known that the 100-plus documents the Secretary withheld in their entirety even existed until the Secretary produced his privilege log on February 16th.[5] Matthews's deposition, through which Plaintiffs learned the various emails' context and confirmed that Matthews was not acting in her capacity as a lawyer, occurred just over a week ago. Days ago, after Plaintiffs reached out to the Secretary to confer on a motion to compel production of the email chain at Exhibit H, the Secretary allowed Plaintiffs' counsel to view the document over Zoom, presumably in an effort to avoid motions practice. But that review only revealed that there was no basis for the Secretary's privilege objections, calling into question the basis for withholding or redacting other communications. And the Secretary himself admits that the communications identified above are connected, so the privilege claims may very well rise and fall together. ECF No. 248-11.

In short, Plaintiffs filed this motion as soon as they had the evidence to support it. To the extent any party is at fault for the delay, it is the Secretary, who has produced documents and a privilege log months after they were due. In light of Plaintiffs' diligence and the importance of the documents at issue, there is good cause to consider their motion despite this Court's Initial Scheduling Order.

---

[5] Indeed, most of the withheld documents are not Bates numbered, so Plaintiffs could not even have surmised their existence.

## II.    This Court should compel the Secretary to produce unredacted copies of the emails at issue and produce documents discussing the crafting of SB 7050 withheld in their entirety.

As the party opposing this motion to compel, the Secretary must "show[] why it should not be granted." *Saltwater Sol Hosp., LLC v. Westchester Surplus Lines Ins.*, No. 4:19cv513-MW/CAS, 2020 WL 7629308, at *1 (N.D. Fla. Mar. 11, 2020). Likewise, as "the party invoking the attorney-client privilege" the Secretary "has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). That is no easy task; the attorney-client privilege "must be narrowly construed" because its "application . . . obstructs the truth-seeking process." *MapleWood Partners, L.P. v. Indian Harbor Ins.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013). Notably, just because an attorney is included in an email chain does not mean that the attorney-client privilege applies. *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1236 (S.D. Fla. 2018). The "touchstone" inquiry "is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion." *United States v. Davita, Inc.*, 301 F.R.D. 676, 682 (N.D. Ga. 2014). Under this standard, the documents at issue are not privileged.

### A. The attorney-client privilege does not apply.

This Court should reject the Secretary's assertion that attorney-client privilege protects the documents at issue for at least two reasons: (1) the attorney-client

privilege does not apply to the emails at issue and (2), even if it did, the Secretary has waived the privilege several times over.

*First*, the attorney-client privilege does not apply. Many emails the Secretary has withheld do not even include practicing lawyers in the chain. For example, Doc. 56189 is an email from Matthews to herself, Doc. 57256 is an email from Kennedy to Matthews, Doc. 58398 is from Kennedy to the Secretary, Doc. 78463 is from an aide to the Governor, and Doc. 101144 is between Matthews and Woodby. ECF No. 248-3 at 1–2, 8–9.

And even those email chains that do include practicing lawyers largely include only McVay and Van de Bogart. While the two are lawyers by trade, Matthews testified that they were part of the team responsible for putting what would eventually become SB 7050 together. ECF No. 248-7 at 125:23–126:8. In that regard, emails titled "Elections Bill 2023" and "Proposed Legislation 2023 -Post discussion" almost certainly pertain to the process of drafting SB 7050 and not to legal advice, especially since Matthews testified that she did not expect SB 7050 to result in litigation. *Id.* at 36:3–8. As a result, the documents and deposition testimony show there is nothing about the documents in question that would qualify them for protection under the attorney-client privilege.

*Second*, even if this Court were inclined to find that the attorney-client privilege protects the documents at issue—it does not—the Secretary has waived the

privilege several times over. He has waived the privilege by failing to timely produce a privilege log; he has waived the privilege by selectively disclosing some documents and not others; and he has waived the privilege because he did not object when Matthews testified at length about the Department's involvement in crafting SB 7050. Consider these issues in sequence.

The Secretary's failure to produce a timely privilege log has waived any attorney-client privilege he might have otherwise been able to claim over the documents at issue. Though Plaintiffs demanded a privilege log, the Secretary was obligated to provide one even if they had not: Plaintiffs "should not have to ask for the privilege log at all." *Covington v. Sailormen Inc.*, 274 F.R.D. 692, 694 (N.D. Fla. 2011). Failure to timely produce a privilege log may result in waiver of a privilege depending on the circumstances. *See MapleWood Partners, L.P. v. Indian Harbor Ins.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013) (explaining that "failure to assert the privilege in a timely manner constituted waiver of the privilege"). In addition, the Secretary's descriptions of the withheld documents are wanting. Most of the documents carry a nearly identical description—some variation of "discussion of legislation"—which provides little detail. This Court should find the Secretary's privilege log untimely and his privilege objections waived.

But even if this Court were to find the Secretary's log timely, he has still waived his ability to assert attorney-client privilege through selective disclosure. The

attorney-client privilege is "intended as a shield, not a sword[,]" so selective disclosure of some privileged documents but not others waives the privilege. *Cavanaugh v. Sprint/United Mgmt. Co.*, No. 1:04-CV-3418-BBM, 2006 WL 8431797, at *8 (N.D. Ga. Mar. 20, 2006) (quotations omitted). Consider one example. Doc. 56856 is an Excel spreadsheet labeled "Copy of Spreadsheet Suggestions SB 7050 brm & mmedits.xlsx." Although the Secretary withheld this spreadsheet, he produced others similarly titled "Spreadsheet Suggestions SB 7050 Apr 7" and "2021 Election Reform Bill." ECF No. 248-5 at 00087514–87608, 00087320–87321. In addition, the unredacted 2023 spreadsheet was transmitted to Stephanie Kopelousos and Peter Cuderman, who work in the Governor's office. Yet the Secretary claims privilege over similar transmissions to Kopelousos and Cuderman. *Compare id. with* ECF No. 248-3 at 8, Doc. 78463. The same is true of a 2022 transmission to Pierce Schuessler. *See* ECF No. 248-3 at 13, Doc. 00044313–00044314. The Secretary cannot disclose only those documents he likes and keep the rest. For this reason, too, he has waived the privilege.

Additionally, because Matthews testified at length about the Department's role in crafting SB 7050, the Secretary cannot now claim privilege over documents showing the same. *Mohawk Indus., Inc. v. Interface, Inc.*, No. 4:07-CV-0212-HLM, 2008 WL 5210386, at *9 (N.D. Ga. Sept. 29, 2008) ("A waiver of the attorney-client privilege also may occur when a party . . . testifies as to . . . communications.").

Here, Matthews, without objection from the Secretary's counsel, testified at length as to how the Department crafted certain provisions of SB 7050, the internal discussions that led to those provisions, and the purported justifications for those provisions. ECF No. 248-7 at 81:16–114:2. The Secretary cannot provide testimony regarding the Department's role in creating SB 7050 and then withhold documents showing the same. The privilege is therefore waived.

Finally, lest there remained any doubt over the continued validity of the Secretary's attorney-client privilege objection, the statement by the Secretary's counsel during Matthews's deposition that he "do[esn't] really know" whether the exemplar email had anything to do with legal advice—and his subsequent attempt to replace the attorney-client privilege objection with a legislative privilege objection—all but withdraws the attorney-client privilege objection altogether. *Id.* at 118:16–119:9.

### B. The legislative privilege does not apply.

During Matthews's deposition, the Secretary asserted for the first time that the legislative privilege protects the exemplar email chain from disclosure. *See id.* at 118:18–119:6. As to that chain, and all others, this is wrong for two reasons.

*First*, the Secretary's argument fails because the legislative privilege could not apply to an internal Department of State discussion. As its name suggests, the privilege "protects *state legislators*." *Pernell v. Fla. Bd. of Governors of State Univ.*,

84 F.4th 1339, 1343 (11th Cir. 2023) (emphasis added). And it does so as an outgrowth of "a state legislator's immunity from civil suit for acts related to legislative proceedings." *Id.* That the governor might also enjoy legislative privilege in some circumstances, *see In re Hubbard*, 803 F.3d 1298, 1307–08 (11th Cir. 2015), does not change the calculus. Governors, like legislators, play a role in enacting legislation, and just as a legislature cannot be sued for passing a law, a governor cannot be sued for signing one. *See Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003) (holding that Florida's governor was protected by legislative immunity when signing a bill into law).

The Department of State and its employees, however, do not enact legislation; they enforce it. It follows that the considerations that motivate extending the legislative privilege to governors do not carry over to subordinate cabinet officials and certainly not to such officials' staff. For these reasons, the legislative privilege cannot apply.

*Second*, to the extent legislative privilege could apply to internal Department discussions, the Secretary has again waived his objection several times over. As discussed above, the Secretary has waived the privilege through his late production of his privilege log. The Secretary has further waived legislative privilege by failing to identify it as a ground for his redactions in his redactions log. *Cf. Fletcher v. Great Am. Ins.,* No. 3:09-CV-324-J-25JRK, 2010 WL 11507484, at *5 (M.D. Fla. June 17,

2010) ("Because Defendant has not asserted attorney-client privilege in the privilege logs, it is waived to the extent Defendant is attempting to assert the privilege now."). And just as with attorney-client privilege, even if he had timely asserted legislative privilege as to all the documents at issue, the Secretary's disclosure of *other* emails, including those cited above, containing internal discussions regarding the crafting of SB 7050 waives any newfound attempt to shield these communications under the legislative privilege. *See supra* Section II.A. The same is true of Matthews's testimony. The Secretary cannot use the privilege as a sword and shield, disclosing only those communications he finds helpful. *See Singleton v. Merrill*, 576 F. Supp. 3d 931, 940–41 (N.D. Ala. 2021). For these reasons, the Secretary has waived any legislative privilege argument he might otherwise have a right to make.

*       *       *

In sum, neither the attorney-client privilege nor the legislative privilege can shield the documents at issue from disclosure. Accordingly, the Court should compel production of the documents identified in this motion, *supra*.

### III.   In the alternative, this Court should review the emails at issue *in camera* to determine whether any privilege applies.

If this Court determines it cannot tell from the papers whether a privilege applies, Plaintiffs alternatively request that this Court review the documents Plaintiffs seek *in camera* to determine whether any privilege applies. "Where there is a sufficient evidentiary showing that an issue exists regarding the application of a

privilege, the court must utilize its own discretion and determine whether in camera review is appropriate under the circumstances presented." *United States v. Fairbank*, No. 4:20cv132-MW/MJF, 2021 WL 11680433, at *1 (N.D. Fla. Mar. 1, 2021) (quoting *Anheuser-Busch, Inc. v. A-B Distribs., Inc.*, No. 95-241-CIV-J-20, 1996 WL 34718746, at *1 (M.D. Fla. Mar. 28, 1996)). At the very least, Plaintiffs have shown that genuine issues exist regarding whether a privilege protects the documents at issue. For that reason, if this Court is not inclined to compel the Secretary to provide documents based on this motion alone, it should review the documents *in camera* to determine whether they are, in fact, privileged.

## IV.     This Court should award Plaintiffs their fees incurred in bringing this motion.

If this Court grants Plaintiffs' motion, Federal Rule of Civil Procedure 37(a)(5)(A) requires it to also grant Plaintiffs' "reasonable expenses incurred in making the motion, including attorney's fees." The exception is when the defending parties' objections are "substantially justified." *Murphy v. Cooper Tire & Rubber Co.*, No. 5:08CV40/RS/EMT, 2008 WL 5273548, at *6 (N.D. Fla. Dec. 18, 2008). A substantially justified objection "raises an issue about which there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

21

Reasonable people cannot differ as to the propriety of either the Secretary's late disclosure of documents and a privilege log or the Secretary's attempts to shield the most relevant documents under the guise of privilege. This Court should therefore award Plaintiffs their fees.

## CONCLUSION

For these reasons, this Court should grant Plaintiffs' motion to compel.

## <u>LOCAL RULE 7.1(B) CERTIFICATION</u>

Plaintiffs' counsel conferred with counsel for the Defendants on February 29, 2024 regarding Document 00079638–79641 in ECF No. 248-1. On March 1, 2024, Plaintiffs' counsel sent a follow-up conferral email requesting the aforementioned document and the additional documents referenced herein. Plaintiffs' counsel has since sent multiple follow-up emails on March 2 and today requesting that Secretary's counsel confirm his position or provide the documents voluntarily, and Plaintiffs' counsel has offered multiple times to confer by telephone. As discussed above, the Secretary's counsel refused to turn over Document 00079638–79641, noted the connectedness of the additional documents, indicated that he will stand by his privilege claims, and failed to agree to the relief requested herein. Plaintiffs are left to presume the Secretary opposes this motion but will continue to confer in good faith and provide any update to the Court.

## LOCAL RULE 7.1(F) CERTIFICATION

Undersigned counsel, Frederick Wermuth, certifies that this motion contains 4,761 words, excluding the case style and certifications.

Dated: March 4, 2024

Respectfully submitted,

Abha Khanna*
Makeba Rutahindurwa*
**ELIAS LAW GROUP, LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law
mrutahindurwa@elias.law

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
**ELIAS LAW GROUP, LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law

*Admitted pro hac vice*

*Counsel for Plaintiffs Florida State Conference of Branches of Youth Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress, Alianza Center, UnidosUS, Florida Alliance for Retired*

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111
**KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

*Americans, Santiago Mayer*
*Artasanchez, and Esperanza Sánchez*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th  day of March 2024, I electronically

filed the foregoing with the Clerk of the Court by using the CM/ECF system, which

will send a notice of electronic filing to all counsel of record.

<u>/s/ Frederick S. Wermuth</u>
Frederick S. Wermuth
Florida Bar No. 0184111