## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**FLORIDA STATE CONFERENCE**
**OF BRANCHES AND YOUTH UNITS**
**OF THE NAACP, et al.,**

     *Plaintiffs*,

v.                        **Case Nos.: 4:23cv215-MW/MAF**

**CORD BYRD, in his official capacity**
**as Florida Secretary of State, et al.,**

     *Defendants*.
_____/

## <u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

This Court has considered, without hearing, Defendant Byrd's and Plaintiffs' cross-motions for partial summary judgment with respect to Plaintiffs' challenges to the "Citizenship Requirement," section 97.0575(1)(f), Florida Statutes (2023), and the "Mail-in Ballot Request Restriction," section 101.62, Florida Statutes (2023), ECF Nos. 201 (Defendant Byrd's motion) and 205 (Plaintiffs' motion), along with the parties' respective responses and replies, ECF Nos. 218, 221, 222, 223, and 226. For the reasons set out below, Defendant Byrd's cross-motion for summary judgment, ECF No. 201, is **GRANTED in part and DENIED in part**, and Plaintiffs' cross-motion for summary judgment, ECF No. 205, is **GRANTED in part and DENIED in part**.

I

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where material facts are not in dispute, this Court may "resolve purely legal questions" at this stage. *Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1314 (S.D. Fla. 2020) (citation omitted). On cross-motions, that standard remains the same. This Court evaluates the cross-motions separately, viewing the evidence in the light most favorable to the non-movant.

II

A summary of the parties' positions is necessary before proceeding further. Plaintiffs argue that the new "Citizenship Requirement" for individuals who collect or handle voter registration applications on behalf of 3PVROs violates the Equal Protection Clause of the Fourteenth Amendment and is preempted by 42 U.S.C. § 1981. Likewise, Plaintiffs argue that the "Mail-in Ballot Request Restriction" is preempted by Section 208 of the Voting Rights Act. They ask for summary judgment as to these claims.

Defendant Byrd, on the other hand, argues that, as a matter of law, he is entitled to summary judgment with respect to both of Plaintiffs' preemption claims.

For her part, Defendant Moody has not filed a motion for summary judgment, but she opposes Plaintiffs' motion primarily by disputing whether Plaintiffs have standing against her with respect to the preemption claim challenging the "Mail-in Ballot Request Restriction." Defendant Moody also argues that Plaintiffs lack standing to challenge her role with respect to the civil enforcement provisions under section 97.0575 as they relate to Plaintiffs' challenge to the Citizenship Requirement.

III

This Court will address the motions in turn, beginning with Plaintiffs' motion. First, as it must, this Court considers whether Plaintiffs have demonstrated standing against each Defendant with respect to their challenges to the Citizenship Requirement and the Mail-in Ballot Request Restriction.

A

First, this Court addresses Plaintiffs' standing, starting with Plaintiffs' challenges to the Citizenship Requirement. Plaintiffs bring their Equal Protection claim (Count III) and their Section 1981 preemption claim (Count IV) against Defendants Byrd and Moody. Inasmuch as this Court concludes that summary judgment is due in Defendant Byrd's favor with respect to the Section 1981 claim,

3

this Court's discussion of standing with respect to the Citizenship Requirement is limited only to whether Plaintiffs have demonstrated standing for purposes of summary judgment as to their Equal Protection claim against both Defendants.[1]

This Court previously concluded, at the preliminary-injunction stage, that Plaintiffs had demonstrated a substantial likelihood of success of proving standing for this claim with respect to both Defendants, based on the threat of civil enforcement of the Citizenship Requirement, financial penalties, and loss of registration as a 3PVRO. But this Court must consider standing anew at each stage in this litigation, taking into consideration the relevant burden of proof at each stage. Thus, Plaintiffs do not automatically establish standing with respect to their summary judgment motion simply because this Court previously ruled in their favor at the preliminary-injunction stage.

In addition, even if Defendants do not contest standing at this stage, this Court has an independent obligation to assess Plaintiffs' standing as to the claim at issue against both Defendants. Here, this Court determines whether Plaintiffs have demonstrated standing, as a matter of law, with respect to both Defendants, considering whether the undisputed facts establish that at least one Plaintiff has

---

[1] As set out in more detail below, this Court granted summary judgment in Defendant's favor in a related case with respect to a similar preemption claim under Section 1981. *See* ECF No. 145 in Case No.: 4:23cv218-MW/MAF. Summary judgment is due in Defendant Byrd's favor in this case as well for similar reasons.

suffered a cognizable injury-in-fact that is traceable to each Defendant and can be redressed by an injunction against each Defendant.

Since this Court entered a preliminary injunction, the facts with respect to one Plaintiff have changed. Namely, Plaintiff Sánchez has now become a citizen of the United States and is no longer prohibited from collecting or handling voter registration applications. *See, e.g.*, ECF No. 180 (motion for leave to amend). Plaintiffs filed an amended complaint, adding Mr. Humberto Orjuela Prieto as a Plaintiff.

Plaintiffs' evidence demonstrates that Mr. Prieto has suffered a similar, concrete injury under the Citizenship Requirement like Ms. Sánchez did prior to her becoming a U.S. citizen. Plaintiffs' evidence shows that Mr. Prieto is a non-citizen who is legally authorized to work in the United States. ECF No. 204-3 at 3. He previously worked for Plaintiff Unidos during the 2022 election cycle by registering voters in Orange and Osceola County, and he hopes to continue working for Unidos beginning April of 2024. *Id*. at 6, 11. However, inasmuch as Mr. Prieto is not a U.S. citizen, he cannot collect or handle voter registration applications like he previously did when he worked for Unidos in 2022. *See* ECF No. 204-9 at 6 (explaining that Unidos has had to replace 70 to 75% of past canvassers who were non-citizens but had eligible work permits because of SB 7050's Citizenship Requirement). Accordingly, based on the record before this Court, for the same reasons this Court

found Ms. Sánchez was injured at the preliminary-injunction stage, this Court concludes that Mr. Prieto is similarly injured at this juncture. *See, e.g.*, ECF No. 101 at 18–19.

Moreover, neither Defendant has proffered evidence to dispute Plaintiffs' factual submissions with respect to their asserted injuries. Plaintiffs have demonstrated, as a matter of law, that individual Plaintiffs and the organizations they previously worked for, have suffered concrete and particularized injuries. Plaintiffs' evidence demonstrates that they can either no longer work as paid canvassers, they have had the terms of their employment substantially changed to avoid running afoul of the challenged provision, or they have had to rehire a majority of canvassers to comply with the challenged provision. Next, this Court considers whether these injuries are traceable to or redressable by an injunction against Defendants, starting with Defendant Byrd.

As to traceability, Defendant Byrd does not dispute that Plaintiffs' injuries are traceable to his authority to enforce the Citizenship Requirement. *See, e.g.*, §§ 97.0575(8), (12), Fla. Stat. (authorizing Secretary of State to refer suspected violations of registration restrictions to Attorney General for enforcement and allowing Secretary to cancel a 3PVRO's registration for continued failure to comply with Citizenship Requirement). Indeed, the record is clear that Defendant Byrd intends to enforce the civil penalty provisions that accompany violations of the

6

Citizenship Requirement. *See* ECF No. 204-18 at 72:4–14. Neither the facts, nor the law have changed with respect to Defendant Byrd's role in enforcing the challenged provision. This Court incorporates by reference its earlier analysis regarding traceability with respect to Defendant Byrd. *See* ECF No. 101 at 19–20. Accordingly, for the same reasons this Court previously found that Plaintiffs' injuries are traceable to Defendant Byrd at the preliminary-injunction stage, this Court finds that Plaintiffs have demonstrated, as a matter of law, that their injuries are fairly traceable to Defendant Byrd's threatened enforcement of the challenged provision.

Plaintiffs' evidence similarly demonstrates that an injunction prohibiting Defendant Byrd from enforcing the Citizenship Requirement would redress Plaintiffs' injuries. Again, neither the facts, nor the law have changed with respect to Defendant Byrd's enforcement of the challenged provision. For the same reasons this Court found that removing the threat of enforcement by Defendant Byrd would redress Plaintiffs' injuries at the preliminary-injunction stage, ECF No. 101 at 20, this Court finds, as a matter of law, that such an injunction would redress their injuries here. Accordingly, this Court concludes, as a matter of law, that Plaintiffs have demonstrated standing to proceed against Defendant Byrd with respect to their Equal Protection claim.

But the same is not true for Defendant Moody. Defendant Moody now

disputes whether Plaintiffs' injuries are traceable to her role in enforcing section 97.0575 or redressable by an injunction against her. As to traceability, Defendant Moody asserts that her role, "as a practical matter," is "entirely and wholly contingent upon a permissive referral provision," ECF No. 221 at 3. Defendant Moody has also filed testimony explaining the division of labor between the Attorney General and the Secretary of State that, at this juncture, raises questions about Plaintiffs' theory of traceability based on the referral of violations under section 97.0575(8). *See, e.g.*, *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1174 (N.D. Fla 2022) (Walker, C.J.). This Court agrees that, based on these new facts concerning what role Defendant Moody plays in the enforcement of the challenged provision, Plaintiffs cannot demonstrate, as a matter of law, that their injuries are fairly traceable to Defendant Moody. This question must be answered with the benefit of a complete record after trial. Accordingly, Plaintiffs' motion, ECF No. 205, is **DENIED** with respect to Defendant Moody.

Next, this Court considers whether Plaintiffs have standing with respect to their challenge to the Mail-in Ballot Request Restriction as to each Defendant.

B

Plaintiffs allege that the Mail-in Ballot Request Restriction is preempted by Section 208 of the Voting Rights Act. They have sued to enjoin Defendant Byrd, Defendant Moody, and the sixty-seven Supervisors of Elections from enforcing this

8

provision. Accordingly, this Court must first determine whether Plaintiffs have standing to proceed against these Defendants to challenge this provision.

Before turning to Plaintiffs' evidence, this Court outlines the challenged provision at issue. Section 101.62 sets out the relevant requirements for Florida voters when requesting a vote-by-mail ballot. The Legislature amended this provision to now provide that the Supervisors of Elections "shall accept a request for a vote-by-mail ballot only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian." § 101.62(1)(a), Fla. Stat. A voter's "immediate family" includes only the voter's spouse, parent, child, grandparent, grandchild, sibling, or the voter's spouse's parent, child, grandparent, grandchild, or sibling. § 101.62(1)(d), Fla. Stat. In addition, the Secretary of State is responsible for prescribing "by rule by October 1, 2023, a uniform statewide application to make a written request for a vote-by-mail ballot which includes fields for all information required by this subsection." *Id*. Written requests for vote-by-mail ballots must include the requester's name, address, relationship to the voter, signature, and driver license number, identification card number, or the last four digits of the requester's social security number, if available. § 101.62(1)(b)5.–9., Fla. Stat.

The organizational Plaintiffs argue that certain eligible members and constituents have a federal right under Section 208 of the Voting Rights Act to

choose their preferred person to assist them in voting, but section 101.62 now limits that universe of assistance only to members of the voter's "immediate family" or legal guardian when it comes to requesting their vote-by-mail ballot. They assert Plaintiffs DRF, FLARA, Alianza, and Unidos have associational standing to bring their Section 208 preemption claim on behalf of their members and constituents, because the challenged provision injures their members, and these injuries are traceable to all Defendants and redressable by an injunction against their enforcement of the provision. Accordingly, this Court considers whether Plaintiffs have demonstrated associational standing to challenge section 101.62's restriction on who can request a vote-by-mail ballot on behalf of a voter.

Associational standing allows an organization to sue on its members' behalf "when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021) (*GBM*). To establish associational standing, Plaintiffs must "make specific allegations establishing that at least one identified member has suffered or will suffer harm." *Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1203 (11th Cir. 2018) (cleaned up).

With these principles in mind, this Court first considers whether at least one

Plaintiff has standing to challenge section 101.62's request restriction, beginning with whether their members have suffered or will suffer harm as a result of the challenged provision. Plaintiffs point to evidence demonstrating that DRF's constituents, for example, suffer from disabilities that can impact their ability to read or write. *See* ECF No. 204-24 ¶ 4. For these constituents, voting by mail is much easier for them due to their disabilities. *Id.* ¶ 7. But some of these constituents rely on people other than their legal guardians or immediate family members to request vote-by-mail ballots for them. *Id.* ¶ 6. And some of these constituents "do not have a legal guardian or immediate family member" to assist them in requesting a vote-by-mail ballot. *Id.* ¶ 4. But DRF's evidence relies entirely upon generalizations. In other words, DRF's evidence fails to establish that "an identified member has suffered or will suffer harm," as a result of the challenged provision. *Ga. Republican Party*, 888 F.3d at 1203.

Nonetheless, Plaintiffs have also included the declaration of Marcos Vilar on behalf of Plaintiffs Alianza for Progress and Alianza Center. *See* ECF No. 204-11. Mr. Vilar attests that Alianza for Progress is a nonpartisan and membership-based political organization dedicated to uniting the Puerto Rican and Hispanic population in the State of Florida. *Id.* ¶ 2. According to Mr. Vilar, Alianza for Progress organizes Hispanic communities in Florida through voter education, civic engagement, and issue advocacy. *Id.* ¶ 3. The organization's "members reside throughout Florida." *Id.*

11

¶ 4. Mr. Vilar further attests that he knows "of a member who has relied on and would like to again rely on the help of a friend, neighbor, or other person outside of a legal guardian or immediate family member to request a vote-by-mail ballot because of the person's limited English proficiency." *Id*. at ¶ 9. According to Plaintiffs, but for the challenged provision, this individual member would be able to use the person of their choice, consistent with Section 208 of the Voting Rights Act, to request their vote-by-mail ballot.[2] Defendants have not proffered evidence to dispute Plaintiffs' factual submissions with respect to this asserted injury. Accordingly, for purposes of establishing associational standing, Plaintiffs have demonstrated that an identified member of one of the organizational Plaintiffs will suffer harm because of the challenged provision—namely, Plaintiff Alianza for Progress's identified member who is now unable to use the person of their choice to assist them in requesting a vote-by-mail ballot under the challenged provision.

Plaintiffs have also submitted evidence demonstrating that the interests they

---

[2] Plaintiffs point out that several courts, including the Fifth Circuit, have interpreted Section 208 of the Voting Rights Act to cover voters who have limited English proficiency, and thus, require assistance with reading or writing to vote. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (holding that organizational plaintiff had standing under Section 208 of the Voting Rights Act and noting that "[b]ecause a substantial portion of OCA's membership consists of people with limited English proficiency, Texas's voter interpreter restriction has deterred some of them from voting"); *see also Arkansas United v. Thurston*, 517 F. Supp. 3d 777, 788 (W.D. Ark. 2021) (explaining that Section 208 covers voters with limited English proficiency, that this is not a novel interpretation of Section 208, and listing several cases that have similarly concluded that Section 208 covers voters who require assistance to vote due to limited English proficiency). Defendants have not argued to the contrary. This Court finds the Fifth Circuit's analysis and other courts adopting this interpretation to be persuasive and agrees with this application of Section 208.

seek to protect through this litigation—assistance with voting for their members and constituents consistent with the Voting Rights Act—are germane to their organizations' purposes. For example, Mr. Vilar attests that Alianza for Progress "organizes Hispanic communities in Florida through voter education, civic engagement, and issue advocacy." ECF No. 204-11 ¶ 3. Further, neither the claim asserted, nor the relief requested requires participation of the individual members in this lawsuit. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003); *GBM*, 992 F.3d at 1316 n.29 ("[P]rospective relief weigh[s] in favor of finding that associational standing exists."). Here, Plaintiffs seek a declaration that the challenged provision violates Section 208 of the Voting Rights Act and an injunction prohibiting Defendants from enforcing the challenged provision. Accordingly, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975).

Next, this Court considers whether Plaintiffs' members' injuries are traceable to each Defendant, starting with the Supervisors of Elections.

As to the Supervisors of Elections, these officials are directly tasked with processing vote-by-mail requests as limited by the challenged provision. *See* § 101.62(1)(a), Fla. Stat. Plaintiffs have sued all sixty-seven Supervisors for each of the sixty-seven counties in Florida. Ordinarily, "[a] person is not permitted to vote

in any election precinct or district other than the one in which the person has his or her legal residence and in which the person is registered." § 101.045(1), Fla. Stat. With respect to vote-by-mail ballots, the Supervisors of Elections are required to instruct voters to return their vote-by-mail ballots to the Supervisor of Elections of the county in which their precinct is located. *See* § 101.65, Fla. Stat. However, Plaintiffs' evidence does not demonstrate where their affected members reside. This means Plaintiffs' evidence fails to demonstrate which Supervisors of Elections their asserted injuries are arguably traceable to because the affected members must request their ballots from and return them to the Supervisor of Elections elected for their county of residence. Presumably, Plaintiffs' members' injuries are traceable to *one* of the sixty-seven Supervisors, but Plaintiffs' evidence does not provide this information, and this Court cannot fill in the gaps for them. Plaintiffs' evidence therefore does not establish standing against the Supervisors of Elections for summary-judgment purposes.

As to the Secretary of State, Defendant Byrd plays a role in enforcing this provision by virtue of the fact that the Department of State must prescribe by rule "a uniform statewide application to make a written request for a vote-by-mail ballot which includes fields for all information required in [the challenged provision]." § 101.62(1)(a), Fla. Stat. But requests for vote-by-mail ballots "may be made in person, in writing, by telephone, or through the supervisor's website." *Id*. Here,

Plaintiffs' evidence fails to demonstrate whether their members' asserted injuries are the result of the inability to make *written* requests to vote-by-mail under the Secretary's standardized form, as opposed to in person, telephonic, or online requests. Again, this Court cannot fill in the gaps for Plaintiffs at the summary-judgment stage when their evidence is lacking.

However, even if Plaintiffs had demonstrated that their members depended on assistance in making *written* requests to vote-by-mail, Plaintiffs' reliance upon the Secretary's separate enforcement authority with respect to 3PVROs to establish traceability is misplaced. Plaintiffs assert their members' injuries are traceable to the Secretary because he is authorized to refer suspected violations of "any portion of SB 7050" to the Attorney General for enforcement. ECF No. 205-1 at 33. But Plaintiffs' source for this assertion is section 97.0575(8), a provision of law authorizing the Secretary to enforce the requirements of section 97.0575 by referring suspected violations to the Attorney General. Section 97.0575(8) says nothing about enforcing section 101.62's requirements for requesting a vote-by-mail ballot and is not a proper basis upon which to stake Plaintiffs' traceability argument. Accordingly, Plaintiffs have not demonstrated standing against the Secretary of State for summary-judgment purposes.

The same is true with respect to the Attorney General. Plaintiffs again point to the Attorney General's enforcement authority under section 97.0575 to

demonstrate traceability to their members' asserted injuries pursuant to section 101.62. But Plaintiffs are incorrect. Again, section 97.0575 grants the Attorney General authority to enforce the requirements of section 97.0575 relating to 3PVROs. The statute says nothing about vote-by-mail requests or the restriction on who can assist a voter in requesting a vote-by-mail ballot pursuant to section 101.62. Plaintiffs have therefore also failed to demonstrate standing against the Attorney General for summary-judgment purposes.

Having failed to demonstrate standing as to any Defendant with respect to Plaintiffs' Section 208 preemption claim as to the Mail-in Ballot Request Restriction, Plaintiffs are not entitled to summary judgment on this claim.

In sum, as to standing for summary-judgment purposes, this Court finds that Plaintiffs have demonstrated standing against Defendant Byrd as to their claim challenging the Citizenship Requirement under the Equal Protection Clause. However, this Court finds that Plaintiffs have not demonstrated standing for summary-purposes as to any Defendant with respect to their Section 208 preemption claim or as to Defendant Moody with respect to their challenges to the Citizenship Requirement. Accordingly, this Court turns to the merits of Plaintiffs' motion as it relates to the Equal Protection claim against Defendant Byrd.

## C

As to the merits, Plaintiffs' and Defendant Byrd's arguments regarding

16

Plaintiffs' motion for summary judgment on their Equal Protection claim challenging the Citizenship Requirement largely mirror the arguments this Court reviewed in Case No.: 4:23cv218-MW/MAF. In that case, this Court rejected Defendant Byrd's arguments and granted partial summary judgment on the Hispanic Federation Plaintiffs' identical claim. *See* ECF No. 149 in Case No.: 4:23cv218-MWMAF. For the same reasons this Court previously articulated, Plaintiffs are entitled to summary judgment with respect to this claim in this case. This Court incorporates by reference its analysis set out in Case No.: 4:23cv218-MW/MAF as if fully set forth herein. *See id*. at 7–14. Accordingly, Plaintiffs' motion, ECF No. 205, is **GRANTED in part** with respect to Plaintiffs' Equal Protection claim against Defendant Byrd challenging the Citizenship Requirement. The balance of Plaintiffs' motion, ECF No. 205, is **DENIED** for failure to demonstrate, as a matter of law, that Plaintiffs' have standing against the other Defendants with respect to the claims at issue. Next, this Court considers Defendant Byrd's motion for summary judgment, ECF No. 201.

IV

Defendant Byrd moves for summary judgment on both of Plaintiffs' preemption claims. Specifically, Defendant Byrd argues that (1) Section 1981 is not the proper vehicle to preempt the Citizenship Requirement and (2) the Mail-in Ballot Request Restriction does not conflict with the Voting Rights Act. This Court will

address both arguments in turn, starting with the Section 1981 preemption claim.

A

As this Court noted earlier, Defendant Byrd is entitled to summary judgment as to the Section 1981 preemption claim. This Court has already ruled on a similar motion in Case No.: 4:23cv218-MW/MAF as it pertains to Plaintiffs' Section 1981 preemption claim. *See* ECF No. 145 in Case No.: 4:23cv218-MW/MAF. Neither the law, nor the facts with respect to this claim differ in a material way from what this Court addressed in Case No.: 4:23cv218-MW/MAF. Nor are there any disputed material facts with respect to the parties' cross-motions on this claim. Accordingly, for the reasons this Court has already explained in Case No.: 4:23cv218-MW/MAF, Defendant Byrd is entitled to summary judgment as to the Section 1981 preemption claim. *See* ECF No. 145 in Case No.: 4:23cv218-MW/MAF. This Court incorporates by reference its analysis from that prior Order here. *See id*. at 3–8. In short, this Court concludes that Plaintiffs' preemption claim under Section 1981 is not a proper application of preemption principles, and thus, Defendant Byrd is entitled to summary judgment on this claim.

Next, this Court considers Defendant Byrd's second argument—namely, whether he is entitled to summary judgment on Plaintiffs' preemption claim under Section 208 of the Voting Rights Act.

B

With respect to Plaintiffs' Section 208 preemption claim, this Court concludes that Defendant Byrd is not entitled to summary judgment. This claim involves Plaintiffs' challenge to section 101.62's restriction on who can assist voters in requesting a vote-by-mail ballot. As explained in more detail above, Plaintiffs allege that section 101.62 limits voters from choosing among only immediate family members or their legal guardians to assist them in requesting vote-by-mail ballots. According to Plaintiffs, this limitation conflicts with Section 208 of the Voting Rights Act, which states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

As set out above, Plaintiffs are not entitled to summary judgment on this claim because their motion lacks the necessary factual support to demonstrate standing with respect to each Defendant. But that does not mean Defendant Byrd is necessarily entitled to summary judgment on this claim with respect to his motion. Indeed, this Court is unpersuaded by Defendant Byrd's attempt to explain why, as a matter of law, the challenged provision does not conflict with Section 208 of the Voting Rights Act. For example, Defendant Byrd argues that the Secretary's proposed rulemaking will fix the apparent discrepancy between the challenged

provision and Section 208 of the Voting Rights Act. *See* ECF No. 201 at 5–8. But Defendant Byrd offers no authority for the proposition that he, an executive branch official, can "fix" a statute enacted by the Florida Legislature, by creating an exception to the statutory language through proposed rulemaking.

Defendant Byrd also points to other provisions of state law that provide accommodations to voters and argues that this Court must construe the challenged provision together with these other statutes to determine that it does not conflict with federal law. *Id*. at 5 (citing §§ 97.061, 101.051, 101.62(6), 101.655, 101.661, and 101.662, Fla. Stat.). Defendant Byrd specifically points to section 101.051(3), which provides that voters who cast vote-by-mail ballots and who require assistance to vote consistent with Section 208 of the Voting Rights Act "may request the assistance of some person of his or her own choice, other than the elector's employer, an agent of the employer, or an officer or agent of his or her union, in casting his or her vote-by-mail ballot." But this provision only contemplates "cast[ing] a vote-by-mail ballot in the office of the supervisor." *Id*. Its plain language does not extend to requesting assistance in submitting a vote-by-mail request. Nonetheless Defendant Byrd asks this Court to engage in rank judicial activism and add its own judicial gloss to this state statute to avoid the preemption issue. That this Court will not do.

Likewise, the other provisions of Florida law that Defendant Byrd cites do not appear to limit the application of section 101.62 in the way he says they do. For

example, section 97.061 provides for special registration rules for voters who require assistance, but it says nothing about entitling such voters to assistance with respect to requesting vote-by-mail ballots. Section 101.655 sets out the requirements for "supervised voting by absent electors in certain facilities," essentially creating another modality of voting for certain voters who reside in qualifying assisted living facilities or nursing home facilities. Section 101.661 permits voters who require assistance with voting consistent with Section 208 to have the person of their choice "mark the elector's choices or assist the elector in marking his or her choices" on their vote-by-mail ballot. § 101.661(1), Fla. Stat. Section 101.662 provides that the Department of State must work with the Supervisors and the disability community to develop "procedures for providing vote-by-mail ballots, upon request, *in alternative formats* that will allow all voters to cast a secret, independent, and verifiable vote-by-mail ballot *without the assistance of another person.*" § 101.662, Fla. Stat. (emphasis added). But this misses the point—Section 208 of the Voting Rights Act grants eligible voters the right to have the person of their choice provide the assistance necessary to vote. And, finally, section 101.62(6) expressly prohibits counties, municipalities, or state agencies from sending "a vote-by-mail ballot to a voter unless the voter has requested a vote-by-mail ballot in the manner authorized under this section," except as expressly authorized under section 101.662. But,

again, section 101.662 concerns procedures and formatting for vote-by-mail ballots that can be cast "without the assistance of another person."

As Plaintiffs point out, this Court lacks authority to harmonize conflicting state statutes or dictate how state actors ought to apply conflicting state statutes. ECF No. 218 at 12–13. This Court agrees with Plaintiffs' argument that these provisions of Florida law cannot save the challenged provision from Plaintiffs' preemption claim. Accordingly, Defendant Byrd has failed to demonstrate, as a matter of law, that section 101.62 does not conflict with federal law. His motion, ECF No. 201, is **DENIED** with respect to this argument.

\*       \*       \*

Accordingly, for the reasons set out above, Plaintiffs' motion for summary judgment, ECF No. 205, is **GRANTED** as to their Equal Protection claim in Count III, against Defendant Byrd. The balance of the motion, ECF No. 205, is **DENIED** as to the Equal Protection claim in Count III against Defendant Moody, as to the Section 1981 preemption claim against both Defendants Byrd and Moody, and as to the Section 208 preemption claim against all Defendants.

Defendant Byrd's motion for summary judgment, ECF No. 201, is **GRANTED** as to the Section 1981 preemption claim but **DENIED** as to the Section 208 preemption claim. This Court does *not* direct entry of partial judgment pursuant to Rule 54(b), but instead, this Court will dismiss the Section 1981 preemption claim

when this Court enters final judgment at the conclusion of this case.

**SO ORDERED on March 5, 2024.**

**s/Mark E. Walker      **
**Chief United States District Judge**