## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

     *Plaintiffs*,

     v.                           4:23-cv-215-MW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

     *Defendants*.

_____/

## SECRETARY'S RESPONSE TO NAACP PLAINTIFFS'
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS

This Court should deny NAACP Plaintiffs' motion to compel. The motion is untimely. Plaintiffs failed to confer in good faith before filing the motion. And the motion seeks the production of documents protected by the attorney-client and legislative privileges. Plaintiffs' attempts to rehabilitate their motion through their good-cause and waiver arguments fail as well.

## BACKGROUND

On February 29, Plaintiffs emailed counsel for the Secretary that they intended to file a motion to compel production of a redacted exhibit from the deposition of Maria Matthews, which took place on February 22. Doc. 248-7 at 1; 248-11 at 10. Within

hours, the Secretary's counsel responded with a proposal whereby Plaintiffs could view the unredacted document pursuant to a non-waiver and clawback agreement. Doc. 248-11 at 9. Counsel made this proposal "[i]n an effort to resolve the issue without having to resort to unnecessary motion practice." *Id.* Plaintiffs accepted, and the Parties held a Zoom call later that evening.

The Secretary's good deed did not go unpunished. At 6:20 PM on Friday, March 1, Plaintiffs requested, for the first time, that the Secretary produce 161 documents identified on the Secretary's privilege log. *Id.* at 7–8. Plaintiffs wrote that "[i]n light of the short time we have to resolve this matter before trial, we request your response ***this evening***" and that they "plan to file the motion [to compel] ***no later than tomorrow***, unless [the Secretary] agree[s] to produce the noted documents." *Id.* at 8 (emphasis added). "[T]his evening" was the same evening that the Secretary's counsel worked to finalize a pre-trial stipulation with the three Plaintiffs groups and others. Doc. 244. The Secretary's counsel thus responded that Plaintiffs were "not giving us a meaningful, good faith opportunity to confer about the privilege calls," but said that they "will work as expeditiously as possible to evaluate each of the documents." Doc. 248-11 at 6.

At 1:17 PM on Saturday, March 2, Plaintiffs again stressed their "need to resolve this matter as quickly as possible" and their likely "need to seek relief from the Court." *Id.* at 5. Plaintiffs offered to meet and confer over the weekend, and "to wait until Monday to file any necessary motions." *Id.* The Secretary's counsel reiterated that Plaintiffs had not given them a sufficient opportunity to review the identified

documents with their client, and that they were working diligently to assess the documents and Plaintiffs' arguments. *Id.* at 4–5.

On Monday, March 4, Plaintiffs identified 26 additional documents "that, for the same reasons [they] previously articulated, [they] believe have been improperly withheld." *Id.* at 2–3. The Secretary's counsel responded with questions about Plaintiff's apparent misidentification of several documents and a technical suggestion that could alleviate some confusion. *Id.* at 1–2. At 3:57 PM, Plaintiffs replied that they intended to file a motion to compel if the Secretary did not voluntarily agree to produce the 168 documents[1] or "otherwise indicate that a conferral could reasonably move this issue forward without motions practice." *Id.* at 1. Plaintiffs requested a response by 5 PM, *id.*, and filed their motion that evening, Doc. 249.

## ARGUMENT

Plaintiffs ask this Court to compel Defendant Secretary Byrd to produce 173[2] documents that are protected by the attorney-client and legislative privileges. They do so late. They do so without conferring in good faith. And they do so inappropriately; the attorney-client and legislative privileges protect the documents, most of which are

---

[1] Plaintiffs mistakenly listed the same documents multiple times in their lists, and also misidentified documents, which is why the final number was 168 and not 187 documents.

[2] The actual number is 168 documents. Plaintiffs list bates numbers SB7050-SOS-00044313–44314, 00044476–44477, 00073676–73679, 00073778–73781, and 00079638–79641 twice.

communications of Florida Department of State employees with their in-house counsel about proposed or pending legislation.

## I.    The Court Should Deny Plaintiffs' Motion as Untimely.

Plaintiffs' motion is untimely and should be denied for that reason alone. On June 1, 2023, this Court issued an Initial Scheduling Order that set a September 29, 2023 deadline to complete discovery. In that order, this Court also said:

> [t]his Court's intent is to encourage early discovery and discourage discovery at the eleventh hour unless it is truly necessary. The parties are advised to make discovery requests no later than 75 days before the end of the discovery period. *Unless otherwise ordered by the Court, motions to compel discovery are due no later than 30 days before the close of discovery.* The Court will ordinarily entertain a motion to compel brought during the last 30 days of discovery only on a showing of reasonable diligence during the discovery period and the discovery dispute in question arose during the last 30 days of discovery.

Doc. 23 at 2 (emphasis added). Although the discovery deadline was later extended to January 2, 2024, Doc. 174 at 3, the deadline for motions to compel remained unchanged, *id.* ("All other deadlines in the operative scheduling and mediation order, Doc. No. 117 . . . remain in effect."), Doc. 117 ("On matters not addressed in this order or the joint scheduling report, the Initial Scheduling Orders remain in effect.").

December 4, 2023 was thus the deadline any motions to compel.[3] Plaintiffs' March 5, 2024 filing comes 92 days after that deadline, 62 days after the close of discovery, and only 28 days before trial. This is the kind "eleventh hour" request that

---

[3] As December 3, 2023 was a Sunday, we consider December 4, 2023 to be the operative deadline.

this Court sought to discourage in its earlier order. Doc. 23 at 2. Denying the motion as untimely is appropriate. *See, e.g.*, *HVLPO2, LLC v. Oxygen Frog, LLC*, 2017 U.S. Dist. LEXIS 162401, at *2 (N.D. Fla. June 27, 2017) (denying motion to extend discovery that was filed nine days after the end of the specified discovery period).

## II.   The Court Should Deny Plaintiffs' Motion Based on Their Failure To Comply with the Federal and Local Rules.

This Court can also deny Plaintiffs' motion for their failure to confer about the discovery dispute in good faith. Federal Rule of Civil Procedure 37(a)(1) requires that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Local Rule 7.1(B) similarly mandates that "[b]efore filing a motion raising an issue, an attorney for the moving party must attempt in good faith to resolve the issue through a meaningful conference with an attorney for the adverse party." Such good faith conferrals did not happen here.

At 6:20 PM on Friday, March 1, Plaintiffs requested that Defendant Byrd produce 161 documents identified on his privilege log, asked for a response that evening, and stated that they "plan to file the motion [to compel] *no later than tomorrow*, unless [the Secretary agree[d] to produce the noted documents." Doc. 248-11 at 7–8 (emphasis added). Such a demand falls woefully short of the good-faith requirements in the Federal and Local Rules.

Nor was the form of the communication appropriate. Local Rule 7.1(B) instructs that "[a]n email or other writing sent at or near the time of filing the motion is not a meaningful conference." The rule further provides that "[w]hen a conference is conducted in writing or electronically, an attorney ordinarily should be afforded at least 24 hours—as calculated under Federal Rule of Civil Procedure 6—to respond to a communication." *Id.* The timing rules say that when a period is stated in hours, "if the period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday." FED. R. CIV. P. 6(a)(2)(C). So, taken together, Plaintiffs failed to comply with these rules when they emailed counsel at 6:20 PM on a Friday and requested a response "this evening" or they "plan to file the motion no later than tomorrow."

Their subsequent communications haven't remedied their deficiency either. With the threat made on a Friday night, and their actions a foregone conclusion, there simply couldn't be a good faith conferral. Regardless, under the Federal and Local Rules, Plaintiffs should have given the Secretary until 6:20 PM on March 4, at the very least, to confer about the 161 documents at issue. *See* Doc. 248-11 at 7–8. Plaintiffs didn't do that; in fact, they identified another 26 documents on Monday, March 4, and still filed their motion to compel that evening. *See id.* at 3; Doc. 249.

Importantly, the Friday-night rush to confer was problematic for other reasons as well. The Secretary submitted his privilege log to Plaintiffs on February 16, which was in line with when other Plaintiffs in the Consolidated Cases submitted their

privilege logs. *See* Doc. 253-1, 253-2 (Hispanic Federation and Poder Latinx's February 15 privilege logs). The Secretary simultaneously made a small production of documents that he no longer believed were privileged. Doc. 253-3, 253-4. That production reflected efforts to limit the assertion of the attorney-client and legislative privileges, and was indicative of the relatively harmonious discovery that occurred in the Consolidated Cases. Indeed, the Parties met and conferred many times throughout the summer and fall of 2023 to resolve disagreements. But the afterhours email on Friday at 6:20 pm was the first indication that Plaintiffs now wanted something more.

In sum, Plaintiffs have not complied with the rules. These rules "are not suggestions, and they are not perfunctory hoops to jump through." *Killian Constr. Co. v. Pier Park Resort Hotel LLC*, 2023 U.S. Dist. LEXIS 22143, at *3–4 (N.D. Fla. Oct. 30, 2023). "Noncompliance" "wastes the resources of the judiciary" and "there are consequences for not following them." *Id.* at *4. The consequence here should be denial of Plaintiffs' motion.[4]

### III.    Plaintiffs' Motion Fails on the Merits.

Plaintiffs' motion fails on the merits as well. Plaintiffs move to compel the Secretary to produce numerous communications between employees at the Department

---

[4] Plaintiffs' failure to confer in good faith also means that, even if their motion succeeds, they are not entitled to fees. *See Robinson v. United States*, 2016 U.S. Dist. LEXIS 189734, at *3 (N.D. Fla. June 10, 2016). Additionally, fees are inappropriate as the Secretary's positions were substantially justified, and awarding expenses would be unjust given the complexity of discovery in this case. *See Stevens v. Keystone Auto. Indus.*, 2015 U.S. Dist. LEXIS, at *1–2 (N.D. Fla. Dec. 23, 2015).

of State and their General Counsel's Office. The Federal Rules of Civil Procedure permit "discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1) & (b)(2)(c) (emphasis added). The material at issue is protected by the attorney-client privilege and the legislative privilege, as noted on the Secretary's privilege log.[5]

### A. The Secretary Properly Asserted the Attorney-Client Privilege.

First, the attorney-client privilege. "The purpose of the attorney-client privilege is to encourage the client to communicate freely with the attorney." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 48461, at *9 (N.D. Fla. Mar. 20, 2020) (citing *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990)). While "there is little question that where a client (or agent of the client) submits information to an attorney for legal advice the attorney-client privilege protects the communication from disclosure," it "applies as well to information gathered by non-attorneys for transmission to an attorney for the attorney to provide legal advice on an issue or to provide legal advice regarding the document or information gathered by the non-attorney employee of the client." *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 213493, at *19–20 (N.D. Fla. Dec. 29, 2017) (citations omitted). As such,

---

[5] Plaintiffs correctly note that the Secretary produced a redaction log on February 14 and a privilege log on February 16. Doc. 249 at 5. There appears to be some confusion, however, as the privilege log subsumed and replaced the redaction log. *See, e.g., id.* at 2–3 (Plaintiffs listing SB7050-SOS-0044313–44314 and 4 other documents twice). The Secretary's privilege log controls, and it has a column that specifically identifies whether a document was redacted or withheld. *See* Doc. 248-3.

"'information communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege.'" *Id.* (citations omitted). And those in larger organizations "may discuss legal advice sought and given without losing the privilege, even when an attorney is not an author or recipient of the communication." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 48461, at *14 (citation omitted).

Here, the analysis is straightforward. Most of the withheld documents are communications between Department of State Employees and their General Counsel's Office about proposed or pending legislation. For example, Doc. 248-3, Entry 40 is an email from Jennifer Kennedy to Secretary Byrd, Katherine Woodby, Joseph Van de Bogart (current General Counsel), Maria Matthews, and Brad McVay (Deputy Secretary of State of Legal Affairs and Election Integrity)[6] with the Subject "RE: for review" and the Privilege Description "[c]ommunication with counsel regarding proposed legislation." Attached is a document with the File Name "Proposed language for SB 7050 spreadsheet.docx." *Id.*, Entry 58. When viewed together, it is evident that the Chief of Staff to the Secretary was asking the current and former General Counsels, among

---

[6] As part of his responsibilities as Deputy Secretary of State, Mr. McVay supervises legal affairs and the General Counsel's Office. He continues to represent the Department and appears in most cases pending against the Department, including this one.

others, to review proposed legislation that would impact the Department.[7] These communications are protected. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 48461, at *14; *see also A&R Body Specialty & Collison Works, Inc. v. Progressive Cas. Ins. Co.*, 2013 U.S. Dist. LEXIS 162330, at *11 (D. Conn. Nov. 14, 2013) ("If a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect." (citation and internal quotation marks omitted)); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 662 (D. Or. 2019) ("The fact that a document may be prepared for a business purpose does not preclude it from being privileged if it is sent to an attorney for the purpose of receiving legal advice relating to that document.").

Yet Plaintiffs go so far as to claim that communications solely between in-house counsel are discoverable. Entry 90, for example, is an April 7, 2023 email from Assistant General Counsel David Chappell to General Counsel Joseph Van de Bogart. Doc. 248-3. Its subject is "Statute" and the Privilege Description is "[c]ommunication between counsel regarding proposed legislation." Attached is a document with the File Name "DOS Proposed Draft 2023-0407 10AM.docx." Doc. 248-3, Entry 91. Taken together,

---

[7] Plaintiffs also erroneously cite several documents for their contention that "[m]any emails the Secretary has withheld do not even include practicing lawyers in the chain." Doc. 249 at 15. For example, Doc. 56189 may be an email that Maria Matthews forwards to herself, but the Privilege Description makes clear that it was a "[f]orward of communication with counsel regarding proposed legislation." Doc. 248-3, Entry 14.

it's apparent that the Assistant General Counsel and General Counsel were communicating about the legal ramifications of SB 7050. *See also* Doc. 248-3, Entries, 223 & 225,[8] 284 & 296, 285 & 290, 289 & 292 (similar communications solely between in-house counsel regarding proposed legislation). Such communications are protected "because they reflect 'not only client confidences, but also the legal advice and opinions of attorneys.'" *Burgos-Stefanelli v. Napolitano*, 2009 U.S. Dist. LEXIS 136772, at *6–7 (S.D. Fla. Dec. 17, 2009) (finding that plaintiff was only entitled to final draft of letters reviewed by in-house counsel but not preliminary drafts prepared by the in-house counsel); *see also Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) ("Indeed, most courts have found that even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains in tact.").

Put another way, there is nothing in the privilege log suggesting that lawyers were simply copied as an "FYI" on emails. The entries show that in-house counsel actively evaluated SB 7050 amongst themselves, sharing their thoughts with others in the Department, and then reevaluated their position as part of a broader, iterative process. For instance, most of the documents at issue are communications between combinations of Jennifer Kennedy, Maria Matthews, Katherine Woodby, Brad McVay, and Joseph Van de Bogart about proposed or pending legislation in early 2023. And many of the emails have Subjects along the lines of "Elections Bill 2023," "Proposal

---

[8] Denoting the "parent" email & attachment.

Legislation for 2023," and "Proposed Legislation 2023-Post-discussion." This back and forth makes clear that legal advice was sought, information gathered, and then assessed with counsel. *See Barfield v. Sho-Me Power Elec. Coop.*, 2014 U.S. Dist. LEXIS 77793, at *13 (W.D. Mo. June 9, 2014) ("The communications at issue in this case rise above a mere regurgitation of recent legislative actions or lobbying efforts and proposals and more closely resemble legal advice and analysis. The emails contain drafts of amendments to proposed legislation, why certain amendments were made, how the amendments might legally affect electric cooperatives, and interpretation of the meaning of the proposed legislation and who it would affect.")

Simply put: the attorney-client privilege applies.

### B. The Secretary Properly Asserted the Legislative Privilege.

Second, and separately, the legislative privilege protects the communications. That privilege is absolute in civil cases. *Pernell v. Fla. Bd. of Govs. of the State Univ.*, 84 F.4th 1339, 1344 (11th Cir. 2023). It applies to the executive branch. *In re Hubbard*, 803 F.3d 1298, 1307-08 (11th Cir. 2015). And just as the legislative privilege applies to legislative staff, it applies to those working for the executive branch when that branch is at work formulating legislative policy, as the Secretary's office was doing. *See, e.g., Florida v. United States*, 886 F. Supp. 2d 1301, 1302 (N.D. Fla. 2012) (holding that the legislative privilege extends to legislative staff); *see also Gravel v. United States*, 408 U.S. 606, 618 (1972) (holding that the Speech or Debate Clause applies to the Senator's "aides insofar as the conduct of the latter would be a protective legislative act if performed by the Member

himself"); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298–99 (D. Md. 1992) (holding that the "function" not the "title" determines whether an official is entitled to legislative immunity and privilege and that even "the judiciary can act in a legislative capacity"); *Common Cause Fla. v. Byrd*, 2023 U.S. Dist. LEXIS 94625, at *14–15 (N.D. Fla. May 25, 2023) (three-judge panel) ("Importantly, the privilege's principal purpose is not to protect legislators, but to protect the legislative process itself. Therefore, the privilege is not limited to legislators. Executive officials and staff may invoke legislative privilege as to their motives or actions in the proposal, formulation, and passage of legislation." (citations and quotation marks omitted)); Fla. Stat. § 20.10(1) ("The head of the Department of State is the Secretary of State. The Secretary of State shall be appointed by the Governor, subject to confirmation by the Senate, and shall serve at the pleasure of the Governor."); *see also* Office of Program Policy Analysis and Government Accountability, State of Florida Organizational Chart, https://oppaga.fl.gov/ProgramSummary/OrgChart (last visited Mar. 12, 2024).

Here, Plaintiffs have moved to compel Secretary Byrd to produce internal documents, communications between Department of State employees, and communications between the Department of State and the Executive Office of the Governor regarding proposed or pending legislation (that would directly affect the Secretary and his office). Those documents were properly identified on the Secretary's privilege log, which demonstrates that legislative privilege applies. *See, e.g.*, Doc. 248-3, Entry 20 (April 20, 2023 internal email from Katherine Woodby (Legislative Affairs

Director) to Secretary Cord Byrd, Jennifer Kennedy (Assistant Secretary of State and Chief of Staff), Joseph Van de Bogart (General Counsel), and Maria Matthews (Director, Division of Elections) with the Subject "Bill comparison" and the Privilege Description "[c]ommunication with counsel regarding proposed Legislation").

Plaintiffs minimize the strength and scope of the legislative privilege while simultaneously undercutting their own arguments. For example, Plaintiffs argue that "[t]he Department of State and its employees . . . do no enact legislation . . . [therefore] [i]t follows that the considerations that motivate extending the legislative privilege to governors do not carry over to subordinate cabinet officials and certainly not to such officials' staff." Doc. 249 at 19. Earlier in their motion, however, Plaintiffs describe in detail how Maria Matthews "responded in the affirmative" that "she worked on 'legislative language . . . that later found its way into SB 7050'" and how "someone (likely the Legislature) asked the Department to 'prepare a legislative package' regarding 3PVROs." *Id.* at 6 (citations omitted). Additionally, "[a]s Matthews testified, 'it is not uncommon' for Kennedy to reach out to her with legislation-related requests from the Governor's Office or the Legislature." *Id.* (citations omitted). Plaintiffs themselves admit that they are seeking these materials because "[t]he documents may contain critical insight into the drafters of the Citizenship Requirement's thought processes and reasoning behind its inclusion in SB 7050." *Id.* at 12.

Each of the documents cited by Plaintiffs concern the proposal, formulation, or passage of legislation that directly affected the Department of State. *See, e.g.*, Doc. 249

at 12 ("the emails and their attachments may contain information about what state interests, if any, drove the legislation"). The legislative privilege is therefore triggered, and it protects the disclosure of these documents.

## IV.    Plaintiffs Have Not Shown Good Cause for their Untimely Motion.

Plaintiffs attempt to evade the untimely filing of their motion by arguing that there was good cause for the delay. There wasn't.

The relevant context is this: Plaintiffs, as is apparent in their motion, submitted overbroad requests for production. Doc. 249 at 1–2. Request Number 19, for example, "sought '[a]ll documents and communications between You and consultants, lobbyists, staff, researchers, scholars, members of the public, or *any other Person* relating to SB 7050, including specifically the Challenged Provisions.'" (emphasis added).[9] Despite the many problems with this and other requests, counsel for the Secretary met and conferred as needed and resolved issues without resorting to court intervention. Notably, the Secretary offered to conduct any searches that the NAACP Plaintiffs requested (together with the other two Plaintiff groups) to streamline discovery and

---

[9] In his Responses and Objections, the Secretary objected that Plaintiffs' definition of "Person" included "firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities; other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof." Doc. 248-2 at 4.

enable faster productions. But Plaintiffs never narrowed their requests and did not provide potential search terms.

As a result, the Secretary ran broad searches across numerous custodians, and generally made weekly productions to Plaintiffs. In total, the Secretary produced 9,417 documents totaling 111,349 pages. Also, as noted by Plaintiffs, "almost every production set contained at least some highly redacted documents." Doc. 249 at 4.

From the earliest productions, therefore, Plaintiffs knew that the Secretary was using best efforts to address their overbroad requests, and that documents were being redacted and likely withheld based on privilege. Still, not once prior to the close of discovery did Plaintiffs ever object to the Secretary's approach or request a privilege log. Only on January 30, 2024—long after the motion-to-compel and discovery deadlines—did Plaintiffs request a privilege log from the Secretary. Plaintiffs were aware of "highly redacted" documents in "almost every production" throughout 2023, yet they did not question the redactions until after the close of discovery in 2024.

Stated another way, the Secretary produced 9,417 documents versus the NAACP Plaintiffs' 95 documents. *See* Doc. 212 at 2–3, 15. The Secretary's privilege log lists 542 documents, or more than five times the number of documents produced by the nine NAACP Plaintiffs combined. *See* Doc. 248-3 at 20. On January 2, 2024, NAACP Plaintiffs submitted their amended privilege logs. Doc. 253-5. It is understandable that it took the Secretary a bit longer to submit his.

Plaintiffs knew that the Secretary was redacting and likely withholding documents. They chose not to press the issue. *See* Doc. 249 at 4.

To be sure, the Secretary chose to do the same. At no point has the Secretary believed that the nine NAACP Plaintiffs only had 95 responsive documents, combined, over a five-year period. Both sides made tactical decisions not to attack each other—with full knowledge of applicable deadlines and obligations.

In sum, each side kept their guns holstered. It's now too late to cry foul. Second guessing one's litigation tactics is not good cause for extending deadlines to file motions to compel. *See, e.g.*, *PB Legacy, Inc. v. Am. Penaeid, Inc.*, 2021 U.S. Dist. LEXIS 203929, at *11 (M.D. Fla. Oct. 22, 2021) (denying a motion to compel in part as untimely where, among other things, the plaintiff was "aware" of the purported shortcomings in the defendants' document production that it complained of, yet it let the discovery deadline pass without raising the issue to the court); *Hurry Fam. Revocable Tr. v. Frankel*, 2020 U.S. Dist. LEXIS 5959, at *4 (M.D. Fla. Jan. 14, 2020) ("The Court cannot discern good cause here for reopening and extending discovery. . . . As for the documents that Plaintiffs claim Defendant has failed to produce, Plaintiffs were [previously] aware of those missing documents . . . and failed to file a motion to compel prior to the discovery deadline." (citation omitted)); *cf. Lennen v. Marriot Ownership Resorts*, 2019 U.S. Dist. LEXIS 239334, at *11 (M.D. Fla. Sept. 16, 2019).

## V.     The Secretary Did Not Waive the Attorney-Client or Legislative Privilege.

Plaintiffs also claim that the Secretary "has waived the privilege by failing to timely produce a privilege log," "by selectively disclosing some documents and not others," and "because he did not object when Matthews testified at length about the Department's involvement in crafting SB 7050." Doc. 249 at 16. Not so. A "waiver of privilege is the most extreme sanction that a court can impose for failure to follow required procedure and courts should reserve it for cases of unjustifiable delay, inexcusable conduct, and baith faith in responding to discovery requests." *Augusta v. St. Paul Fire & Marine Ins. Co.*, 2007 U.S. Dist. LEXIS 115243, at *10 (S.D. Ga. Apr. 19, 2007) (citing *Jones v. Am. Gen. Life and Accident Ins. Co.*, 2002 U.S. Dist. LEXIS 29488, at *6 (S.D. Ga. Dec. 4, 2002) (internal quotation marks omitted)).

First, far from the "inexcusable conduct" and "bad faith" needed to find waiver, the record demonstrates that the Secretary worked diligently throughout discovery to address Plaintiffs' overbroad and burdensome requests. The Parties to the Consolidated Cases compromised throughout discovery to resolve issues without resorting to court intervention. The discovery burden was exponentially heavier on the Secretary, and yet he typically made weekly productions while providing Plaintiffs with an open invitation to discuss searches, custodians, and productions. The Secretary worked diligently to produce responsive documents, even when defending multiple depositions most days in December 2023 and early 2024. As a result, there was no inexcusable conduct or bad

18

faith. *See Wave Length Hair Salons of Florida, Inc. v. CBL & Assocs. Props.*, 2018 U.S. Dist. LEXIS 232513, at *4–5 (M.D. Fla. Dec. 7, 2018) ("deem[ing] it manifestly unjust under these circumstances to impose the extremely harsh sanction of waiver of the attorney-client privilege where Defendant has timely complied" with the court's order to re-review and revise its privilege logs and where "by all outward appearances [Defendant] conducted itself reasonably and in good faith during the parties' continued conferences regarding th[e] discovery dispute").

Second, the supposed untimeliness of the Secretary's privilege log can't serve as a basis for waiver. The Federal Rules do not "specify a time period for asserting the claim of privilege or for providing a description of the documents withheld," "[n]or has the Eleventh Circuit determined the time period for complying with Rule 26(b)(5)." *Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 2018 U.S. Dist. LEXIS 118625, at *6 (M.D. Fla. Mar. 14, 2018). Within the Eleventh Circuit, district courts conduct "a case-by-case determination, taking into account various factors" when evaluating the timeliness of privilege logs. *Foodonics Int'l v. Srochi*, 2020 U.S. Dist. LEXIS 255026, at *11 (M.D. Fla. Mar. 20, 2020). Those factors include "the timeliness of the objection and accompanying information about the withheld documents . . .; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 2015 U.S. Dist. LEXIS 45924, at *19 (S.D. Fla. Apr. 8, 2015). And, given harshness of the sanction, courts have been reluctant to

find waiver based solely on an untimely privilege log. *See Tyne v. Time Warner Entm't Co., L.P.*, 212 F.R.D. 596, 599–600 (M.D. Fla. 2002) (no waiver despite an untimely privilege log that did not comply with FED. R. CIV. P. 26(b)(5)); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 2009 U.S. Dist. LEXIS 14271, at *19–20 (M.D. Fla. Feb. 10, 2009) (same).

As discussed above, the circumstances don't establish untimeliness of the privilege log. The production of the log was consistent with the production by Plaintiffs. And, unlike Plaintiffs, the Secretary's production log had to be many more pages to address the overbroad discovery requests, which Plaintiffs never narrowed.

Third, selective disclosure isn't a basis for waiver either, as Plaintiffs claim. *See* Doc. 249 at 16. At the outset, Plaintiffs have not alleged that they were prejudiced by the alleged selective disclosure. *See Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1417–18 (11th Cir. 1994) ("Because the plaintiffs have failed to explain how they have been prejudiced by any of the actions taken by the Union's lawyers in the criminal case, we decline to find that the Union has impliedly waived its privilege.").

Nor have Plaintiffs alleged that the Secretary "inject[ed] into the case an issue that in fairness requires an examination of otherwise protected communications." *Id.* at 1418–19 (citation omitted); *id.* at 1419 (quoting *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987) ("To waive the attorney-client privilege . . . a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case.")). Without such allegations, waiver is inappropriate.

Plaintiffs also confuse selective disclosure with inadvertent disclosure. Essentially, they claim that because a handful of produced documents have similar filenames to documents listed on the Secretary's privilege then the Secretary has waived privilege as to 168 documents. *See* Doc. 249 at 16–17. But this is not a case where Defendant purposefully disclosed materials that were helpful to his claims while shielding those that were harmful. *See* Doc. 249 at 17 ("The Secretary cannot disclose only those documents he likes and keep the rest."). Rather, the produced and withheld documents demonstrate the Secretary's diligent and good-faith attempts to conscientiously assert privilege.

For example, the Secretary did not claim that documents shared with third parties outside of Florida's executive branch were privileged, even though they had similar filenames. *See, e.g.*, Doc. 248-5 at 8–10. That email chain contained communications with the Florida Clerks, thus it was not redacted or withheld. In the same vein, the Secretary did not assert that publicly available legislative documents were privileged. *See, e.g.*, *id.* at 143 (strike-all amendment by Florida Senator Hutson). Additionally, the Secretary did not claim that every internal communication between Department of State employees about SB 7050 was privileged. *See, e.g.*, *id.* at 3–7 (not claiming legislative privilege protected communications between lower-level employees; instead, reserving privilege assertion for key Department leaders). Such determinations illustrate the Secretary's good-faith approach to privilege designations, and to the extent a higher-

level communication was disclosed, such disclosure was inadvertent. *See id.* at 1–2; Doc. 253-4. (production cover letter containing non-waiver provision).

Lastly, Plaintiffs claim that "because Matthews testified at length about the Department's role in crafting SB 7050, the Secretary cannot now claim privilege over documents showing the same." Doc. 249 at 17. Such a categorical claim is overbroad and unwarranted. Director Matthews testified "about the Department's role in crafting SB 7050," but at no point during her deposition did she reveal attorney-client communications. *See Preferred Care Partners Holding Corp.*, 258 F.R.D. 684, 694–95 (S.D. Fla. 2009) ("his general, non-committal statements regarding the nature of that communication -- even assuming that he is, in fact, referring to the [legal opinion] -- are not the purposeful, substantive disclosures that are present when a party voluntarily waives the attorney-client privilege"); *Burgos-Stefanelli*, 2009 U.S. Dist. LEXIS 136772, at *8 (rejecting waiver argument where "[t]o the extent that [deponent] answered the questions, she did not reveal any of the substance of her discussions with counsel").

In addition to conversations with Department of State employees, Director Matthews also had high-level discussions with third parties about SB 7050. *See, e.g.*, Doc. 248-5 at 8–10. It therefore was appropriate for Director Matthews to discuss SB 7050 at a similar level of specificity during her deposition. Plaintiffs' sweeping declaration that "[t]he Secretary cannot provide testimony regarding the Department's role in creating SB 7050 and then withhold documents showing the same" therefore is unfounded. *See* Doc. 249 at 18. *See Blake v. Batmasian*, 2017 U.S. Dist. LEXIS 166208,

at *26 (S.D. Fla. Oct. 5, 2017) ("Additionally, if deposition testimony does not actually reveal the substance of attorney-client communications, there is no waiver." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should deny NAACP Plaintiffs' Motion To Compel Production of Documents.

Dated: March 12, 2024

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

Respectfully submitted,

*/s/ John J. Cycon*
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Joshua E. Pratt (FB 119347)
jpratt@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

John J. Cycon (NYBN 5261912)*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
15405 John Marshall Hwy
Haymarket, VA 20169
Telephone: (212) 701-3402
jcycon@holtzmanvogel.com

*Counsel for Secretary Byrd*

*\*Admitted pro hac vice*

## Certificate of Compliance

I certify that this response is 5,749 words, which is under the 8,000-word limit in Local Rule 7.1. I also certify that this document complies with the typeface and formatting requirements in Local Rule 5.1.

*/s/ John J. Cycon*
John J. Cycon

## Certificate of Service

I certify that on March 12, 2024, this document was uploaded to CM/ECF, which sends the document to all counsel of record.

*/s/ John J. Cycon*
John J. Cycon