## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

                  Plaintiffs,

           v.

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

                  Defendants.

Case Nos.: 4:23-cv-215-MW/MAF
             4:23-cv-216-MW-MAF
             4:23-cv-218-MW-MAF

## NAACP PLAINTIFFS' OPENING STATEMENT[1]

Third-party voter registration organizations ("3PVROs") serve Black and Hispanic Floridians. This is no secret to Florida's elected officials. And yet, on May 24, 2023, Florida enacted SB 7050—a bill that packs three forceful punches targeted at 3PVROs and a fourth targeted at their members—without any legitimate justification for heaping onerous new burdens on 3PVROs and the communities they serve.

---

[1] Plaintiffs have endeavored to make this statement as useful to this Court as possible by following the Court's directive in its Order, ECF No. 236, but not making it longer than necessary. Plaintiffs stand ready to provide additional briefing on any issue addressed herein should the Court request it.

SB 7050 bans 3PVROs from relying on noncitizen canvassers for voter registration—even though the State could not identify a single instance of noncitizen misconduct in handling voter registration applications. It further prohibits 3PVRO canvassers from retaining voters' personal information under threat of a felony conviction—even though mishandling personal information is *already* a criminal offense—cutting off information that is vital to 3PVRO's civic engagement efforts and deterring canvassers with its broad sweep and harsh penalties. SB 7050 also imposes devastating fines on 3PVROs for each noncitizen canvasser, each voter registration application submitted after the new, arbitrarily chosen deadline, and each application submitted to the wrong county. In the face of these fines, the State has knocked some 3PVROs out of voter registration altogether, which will result in fewer Black and Hispanic registered voters in Florida.

SB 7050 levies yet another burden on Florida's most vulnerable voters by preventing disabled and non-English speaking Floridians from using the assistor of their choosing in requesting a vote-by-mail ballot—even though federal law expressly grants them that right.

The latest blow in a litany of attacks on Florida 3PVROs, SB 7050 has the potential to be fatal to 3PVROs' very existence—to the detriment of marginalized voters across the state. NAACP Plaintiffs respectfully request the Court to declare the challenged provisions unlawful and enjoin their enforcement.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) ...............................................................25

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995)...........................................................................32

*Alabama v. U.S. Army Corps of Eng'rs*,
  424 F.3d 1117 (11th Cir. 2005) .........................................................45

*Am. Ass'n of People with Disabilities v. Herrera*,
  580 F. Supp. 2d 1195 (D.N.M. 2008) ................................................19

*Am. Ass'n of People with Disabilities v. Herrera*,
  690 F. Supp. 2d 1183 (D.N.M. 2010) ................................................17

*Ameritas Variable Life Ins. Co. v. Roach*,
  411 F.3d 1328 (11th Cir. 2005) .........................................................44

*Ammons v. Dade City*,
  783 F.2d 982 (11th Cir. 1986) ...........................................................35

*Ark. United v. Thurston*,
  626 F. Supp. 3d 1064 (W.D. Ark. 2022) ...........................................43

*Barrett v. Walker Cnty. Sch. Dist.*,
  872 F.3d 1209 (11th Cir. 2017) .........................................................45

*Bernal v. Fainter*,
  467 U.S. 216 (1984).........................................................24, 27, 28

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000).............................................................20, 21

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973)...........................................................................37

*Brooklyn Branch of the NAACP v. Kosinski*,
  657 F. Supp. 3d 504 (S.D.N.Y. 2023) ...............................................14

*Buckley v. Am. Const. L. Found., Inc.*,
   525 U.S. 182 (1999)................................................................14, 16, 17

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
   451 F.3d 1257 (11th Cir. 2006) ..............................................................7

*Chang v. Glynn Cnty. Sch. Dist.*,
   457 F. Supp. 2d 1378 (S.D. Ga. 2006) ................................................45

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010)..............................................................................24

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985)..............................................................................25

*City of S. Miami v. Governor*,
   65 F.4th 631 (11th Cir. 2023) ..............................................................22

*Clingman v. Beaver*,
   544 U.S. 581 (2005)..............................................................................19

*Coastal Conservation Ass'n v. Gutierrez*,
   417 F. Supp. 2d 1304 (M.D. Fla. 2006)...............................................47

*Columbus Bd. of Educ. v. Penick*,
   443 U.S. 449 (1979)..............................................................................34

*Democratic Exec. Comm. of Fla. v. Lee*,
   915 F.3d 1312 (11th Cir. 2019) ...........................................................46

*Disability Rts. N.C. v. N.C. State Bd. of Elections*,
   No. 5:21-CV-361-BO, 2022 WL 2678884 (E.D.N.C. July 11,
   2022) ......................................................................................40, 42, 43

*Dowdell v. City of Apopka*,
   698 F.2d 1181 (11th Cir. 1983) ...........................................................34

*Dream Defs. v. DeSantis*,
   559 F. Supp. 3d 1238 (N.D. Fla. 2021) .................................37, 38, 39

*Espinoza v. Mont. Dep't of Revenue*,
   140 S. Ct. 2246 (2020).........................................................................24

*Falls v. DeSantis*,
609 F. Supp. 3d 1273 (N.D. Fla. 2022) ................................................................8

*Fla. State Conf. of NAACP v. Lee*,
566 F. Supp. 3d 1262 (N.D. Fla. 2021) .......................................................15, 32

*Fla. State Conf. of NAACP v. Lee*,
576 F. Supp. 3d 974 (N.D. Fla. 2021) ..............................................................41

*Foley v. Connelie*,
435 U.S. 291 (1978).........................................................................................24

*Ga. Republican Party v. Sec. & Exch. Comm'n*,
888 F.3d 1198 (11th Cir. 2018) .......................................................................30

*In re Georgia Senate Bill 202*,
622 F. Supp. 3d 1312 (N.D. Ga. 2022)..............................................................46

*Greater Birmingham Ministries v. Sec'y of State of Ala.*,
992 F.3d 1299 (11th Cir. 2021) .....................................................8, 25, 26, 28

*Hadnott v. Amos*,
394 U.S. 358 (1969).........................................................................................19

*Hardware Mut. Cas. Co. v. Schantz*,
178 F.2d 779 (5th Cir. 1949) ..........................................................................44

*Harriet Tubman Freedom Fighters Corp. v. Lee*,
576 F. Supp. 3d 994 (N.D. Fla. 2021) ..............................................................14

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982).........................................................................................8

*Hunt v. Cromartie*,
526 U.S. 541 (1999).........................................................................................32

*June Med. Servs. LLC v. Russo*,
140 S. Ct. 2103 (2020).......................................................................................9

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
32 F.4th 1363 (11th Cir. 2022) ........................................................................47

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
66 F.4th 905 (11th Cir. 2023) ..................................................................31, 35

*League of Women Voters of Fla. v. Browning*,
863 F. Supp. 2d 1155 (N.D. Fla. 2012) ....................................................18, 21

*League of Women Voters v. Hargett*,
400 F. Supp. 3d 706 (M.D. Tenn. 2019) ........................................................17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).........................................................................................7

*Meyer v. Grant*,
486 U.S. 414 (1988).................................................................................13, 16

*Morse v. Republican Party of Va.*,
517 U.S. 186 (1996).......................................................................................41

*NAACP v. Alabama*,
357 U.S. 449 (1958).......................................................................................19

*NAACP v. Button*,
371 U.S. 415 (1963).................................................................................20, 37

*NetChoice, LLC v. Att'y Gen., Fla.*,
34 F.4th 1196 (11th Cir. 2022) ......................................................................13

*OCA-Greater Hous. v. Texas*,
867 F.3d 604 (5th Cir. 2017) .........................................................................43

*Pena v. Bd. of Educ. of City of Atlanta*,
620 F. Supp. 293 (N.D. Ga. 1985).............................................................26, 28

*Piercy v. Maketa*,
480 F.3d 1192 (10th Cir. 2007) .....................................................................22

*Pleasant v. Lovell*,
876 F.2d 787 (10th Cir. 1989) .......................................................................19

*Pryor v. NCAA*,
288 F.3d 548 (3d Cir. 2002) ..........................................................................35

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ........................................................................... 14

*Rine v. Imagitas, Inc.*,
   590 F.3d 1215 (11th Cir. 2009) ..................................................... 40, 41

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ........................................................................... 19

*Shen v. Simpson*,
   No. 4:23-CV-208-AW-MAF, 2023 WL 5517253 (N.D. Fla. Aug.
   17, 2023) ............................................................................................ 26

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) ..................................................... 12, 13

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ........................................................................... 11

*Sugarman v. Dougall*,
   413 U.S. 634 (1973) ........................................................................... 24

*Tedori v. United States*,
   211 F.3d 488 (9th Cir. 2000) ............................................................. 41

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ................................................................. 25, 31, 32

*Virginia v. Hicks*,
   539 U.S. 113 (2003) ........................................................................... 37

*VoteAmerica v. Schwab*,
   576 F. Supp. 3d 862 (D. Kan. 2021) ............................................... 13, 19

*VoteAmerica v. Schwab*,
   671 F. Supp. 3d 1230 (D. Kan. 2023) ............................................. 17, 21

*Weaver v. Bonner*,
   309 F.3d 1312 (11th Cir. 2002) ..................................................... 13, 14

*Wiersum v. U.S. Bank, N.A.*,
   785 F.3d 483 (11th Cir. 2015) ....................................................... 40, 42

*Wilding v. DNC Servs. Corp.*,
  941 F.3d 1116 (11th Cir. 2019) ............................................................9

*Wollschlaeger v. Governor, Fla.*,
  848 F.3d 1293 (11th Cir. 2017) ......................................................37, 38

*Worley v. Fla. Sec'y of State*,
  717 F.3d 1238 (11th Cir. 2013) ..........................................................14

**Statutes**

28 U.S.C. § 2201 ....................................................................................44

28 U.S.C. § 2202 ....................................................................................44

42 U.S.C. § 1988 ..............................................................................44, 47

42 U.S.C. § 15041 et seq..........................................................................3

42 U.S.C. § 15043(a)(2)(A)(i) ..................................................................3

52 U.S.C. § 10302 ..................................................................................41

52 U.S.C. § 10508 ..................................................................................40

Fla. Admin. Code R.1S-2.042(8)(c)........................................................11

Fla. Stat. § 16.56(1)(c)(5) ......................................................................10

Fla. Stat. § 97.012 ............................................................................10, 11

Fla. Stat. § 97.022 ..................................................................................10

Fla. Stat. § 97.0575(1)(f)....................................................................1, 10

Fla. Stat. § 97.0575(5)(a) ........................................................................1

Fla. Stat. § 97.0575(7)........................................................................1, 10

Fla. Stat. § 97.0575(8)............................................................................10

Fla. Stat. § 101.62 ................................................................1, 10, 40, 46

**Other Authorities**

Fla. Const. art. V, § 21 ...............................................................................41

## TABLE OF CONTENTS

I.    The Challenged Provisions ........................................................1

    A.   3PVRO Restrictions ........................................................1

    B.   Mail-in Ballot Request Restriction ........................................1

II.   NAACP Plaintiffs  ........................................................2

    A.   Organizational Plaintiffs ........................................................2

        1.   Florida State Conference of Branches and Youth Units of the NAACP ("Florida NAACP") ........................................................2

        2.   Voters of Tomorrow Action, Inc. ("VOT") ........................2

        3.   Disability Rights Florida, Inc. ("DRF") ..............................3

        4.   Alianza for Progress and Alianza Center ("Alianza") ..........3

        5.   UnidosUS ........................................................4

        6.   Florida Alliance for Retired Americans ("FLARA") ...........4

    B.   Individual Plaintiffs ........................................................5

        1.   Santiago Mayer ........................................................5

        2.   Humberto Orjuela Prieto ........................................5

        3.   Esperanza Sánchez ........................................................5

III.  NAACP Plaintiffs' Live Claims  ........................................6

    A.   NAACP Plaintiffs' Standing Overview ........................7

        1.   Injury-in-fact ........................................................7

           a. Individual Standing ........................................7

           b. Organizational Standing ..............................8

           c. Associational Standing ..............................8

           d. Employer Standing ........................................8

           e. Third Party Standing ........................................8

        2.   Traceability ........................................................9

3. Redressability ...................................................................11

B. Count I: Infringement of Free Speech ........................................12

1. NAACP Plaintiffs have standing to assert this claim.........12

2. NAACP Plaintiffs should prevail on this claim. ..............13

   a. Legal Standards ..............................................13

      i. Strict Scrutiny...........................................13

      ii. In the alternative, the *Anderson-Burdick* test ...........14

   b. Facts to be shown at trial ...............................15

   c. Best authority .................................................16

C. Count II: Infringement of Associational Rights .........................18

1. NAACP Plaintiffs have standing to assert this claim.........18

2. NAACP Plaintiffs should prevail on this claim. ...............18

   a. Legal Standard ...............................................18

   b. Facts to be shown at trial ...............................20

3. Best authority...................................................................20

D. Count III: Equal Protection Clause (Alienage) .........................21

1. NAACP Plaintiffs have standing to assert this claim.........22

2. NAACP Plaintiffs should prevail on this claim. ...............23

   a. Legal Standards ..............................................23

      i. Facial discrimination .................................23

      ii. Plaintiffs' as-applied challenge..................23

      iii. Discriminatory intent and effect................25

   b. Facts to be shown at trial ...............................26

3. Best authority...................................................................27

E. Count V: Equal Protection Clause (Race) ...................................28

1. NAACP Plaintiffs have standing to assert this claim.........29

2. NAACP Plaintiffs should prevail on this claim. ...............31

          a.  Legal Standard .................................................................31

          b.  Facts to be shown at trial ...............................32

      3.    Best authority..................................................................34

   F.     Count VI: Vagueness and Overbreadth .....................................35

      1.    NAACP Plaintiffs have standing to assert this claim........36

      2.    NAACP Plaintiffs should prevail on this claim. ...............36

          a.  Legal Standards ...............................................36

            i.  Vagueness ...............................................36

            ii.  Overbreadth ............................................37

          b.  Facts to be shown at trial ...............................38

      3.    Best authority..................................................................38

   G.    Count VII: Section 208 of the Voting Rights Act.......................39

      1.    NAACP Plaintiffs have standing to assert this claim........39

      2.    NAACP Plaintiffs should prevail on this claim. ...............40

          a.  Legal Standards ...............................................40

          b.  Facts to be shown at trial ...............................42

      3.    Best authority..................................................................42

IV.  Plaintiffs' Requested Relief .......................................................43

   A.     Plaintiffs will show declaratory relief is appropriate here. .........44

   B.     Plaintiffs will show they satisfy the standard for permanent injunctive relief..........................................................................44

   C.     NAACP Plaintiffs are entitled to fees.........................................47

## I.    The Challenged Provisions

In their operative Third Amended Complaint, ECF No. 184, NAACP Plaintiffs

challenge four provisions of SB 7050, broken down into two subgroups.

### A.    3PVRO Restrictions

| | |
|---|---|
| Citizenship Requirement | Prohibits noncitizens from "collecting or handling" voter registration applications on behalf of a 3PVRO and makes 3PVROs liable for a $50,000 fine for each noncitizen who does so. Fla. Stat. § 97.0575(1)(f). |
| Information Retention Ban | Prohibits individuals "collecting voter registration applications" on behalf of 3PVROs from retaining voters' "personal information" "for any reason other than" providing it to the 3PVRO "in compliance with this section," subject to a felony conviction and punishable by up to 5 years in prison and up to $5,000 in fines. Fla. Stat. § 97.0575(7). |
| 3PVRO Fines Provision | Shortens the deadline for 3PVROs to return voter registration applications from 14 to 10 days; increases the penalty for any late applications from a $50 flat fine to a $50 fine for *each day* that an application is returned late; increases fines for applications received after book closing from a $100 flat fine to a $100 fine for *each day* that an application is returned after book closing; increases fines for applications returned to a county other than the county in which the applicant resides; and imposes a five-fold increase on the yearly aggregate fine allowable against 3PVROs from $50,000 to $250,000. Fla. Stat. § 97.0575(5)(a). |

### B.    Mail-in Ballot Request Restriction

| | |
|---|---|
| Mail-In Ballot Request Restriction | Provides that supervisors of elections may accept requests for vote-by-mail ballots "only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian." Fla. Stat. § 101.62(1)(a). |

1

## II.     NAACP Plaintiffs

### A.     Organizational Plaintiffs

#### 1.     Florida State Conference of Branches and Youth Units of the NAACP ("Florida NAACP")

Florida NAACP is a nonprofit, nonpartisan civil rights organization with local branches in all 67 counties in Florida. The Court will hear testimony from Florida NAACP's Chair of the Civic Engagement Committee, Cynthia Slater, regarding:

- Florida NAACP's mission to uplift and empower Black Floridians through the democratic process, including by educating the community about voting rights and important issues on the ballot, engaging in get-out-the-vote efforts, and registering voters.

- The ways in which the 3PVRO Restrictions frustrate Florida NAACP's mission by requiring it to divert resources from other mission-critical projects and infringe on Florida NAACP's members and constituents' rights.

- The extent to which the 3PVRO Restrictions have decimated Florida NAACP's voter registration efforts, hindering not only the organization and its members, but the community it serves.

#### 2.     Voters of Tomorrow Action, Inc. ("VOT")

Voters of Tomorrow Action, Inc. ("VOT") is a national, youth-led organization that focuses on engaging young voters to take an active part in democracy. Santiago Mayer, VOT's Founder and Executive Director, will testify to:

- VOT's partnerships with registered 3PVROs with similar missions;

- How SB 7050 halted VOT's plans to register as a 3PVRO.

2

### 3.    Disability Rights Florida, Inc. ("DRF")

Disability Rights Florida, Inc. ("DRF") is an independent nonprofit corporation designated as a Protection and Advocacy system under the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15041 et seq., and is thus authorized to take legal action to protect the rights of individuals with disabilities. *Id*. § 15043(a)(2)(A)(i). DRF's Senior Public Policy Analyst Olivia Babis Keller will testify to the following:

- DRF's mission is to help disabled people vote and to advocate against the barriers imposed against voters with disabilities.

- The ways in which SB 7050 has prevented DRF from launching both a robust voter registration effort as a 3PVRO and a unique get-out-the-vote effort with the information retained from registration applications.

- The way that the Mail-In Ballot Request Restriction impacts DRF's constituents from engaging in their federally protected right to rely on the assister of their choosing in requesting a vote-by-mail ballot.

### 4.    Alianza for Progress and Alianza Center ("Alianza")

Alianza for Progress and Alianza Center ("Alianza") are community-centered organizations dedicated to educating and increasing political engagement within the Hispanic, and in particular Puerto Rican, communities in Florida. The Court will hear from Alianza's Founder, Marcos Vilar, who will describe:

- How the Citizenship Requirement eviscerates Alianza's voter registration program which relies heavily on noncitizen canvassers.

- How, as a result of SB 7050, Alianza is no longer registering voters for fear of crippling fines and penalties.

- How Alianza has had to divert resources away from other projects in response to SB 7050, impacting not only the organizations but the communities they serve.

### 5.    UnidosUS

UnidosUS is a registered 3PVRO in Florida that engages in extensive voter registration efforts, public education, and advocacy to encourage political participation among Florida's Hispanic communities. Jared Nordlund, State Advocacy Director for UnidosUS in Florida, will explain:

- How UnidosUS conducts voter registration by community canvassing and direct engagement with voters.

- Its relationships with affiliated non-profit members on voter registration and the pro-voting message it communicates in the process of registering voters.

- UndiosUS's reliance on noncitizen canvassers in their voter registration efforts.

### 6.    Florida Alliance for Retired Americans ("FLARA")

Florida Alliance for Retired Americans ("FLARA") is a 501(c)(4) nonprofit, social welfare organization. The Court will hear from William Sauers, the President of FLARA, who will testify that:

- FLARA's mission to ensure social and economic justice and full civil rights that retirees have earned after a lifetime of work.

- There are ways in which the Mail-In Ballot Request Restriction directly harms FLARA's members, many of whom are living with disabilities and who, as a result of the Restriction, can no longer utilize the assistance of friends, neighbors, and caregivers in requesting their vote-by-mail ballots.

## B.    Individual Plaintiffs

### 1.    Santiago Mayer

Plaintiff Santiago Mayer is the founder and Executive Director of VOT. As established by NAACP Plaintiffs' Exhibit (PX) 738 already in evidence, Mr. Mayer is a legal permanent resident of the United States. Mr. Mayer will describe the impact the Citizenship Requirement and Information Retention Ban have had on his ability to help register voters in Florida and his ability to effectively serve in a leadership role within his organization.

### 2.    Humberto Orjuela Prieto

Plaintiff Humberto Orjuela Prieto oversaw canvassing teams with UnidosUS during the 2022 election and is currently employed as a canvasser at Poder Latinx. As established by PX 745 already in evidence, Mr. Orjuela Prieto is a legal permanent resident of the United States. Mr. Orjuela Prieto will testify that he plans to continue to engage in voter registration canvassing for the 2024 election cycle, so long as the Secretary remains enjoined from enforcing the Citizenship Requirement.

### 3.    Esperanza Sánchez

Plaintiff Esperanza Sánchez is a new citizen of the United States working for UnidosUS as an organizer. Ms. Sánchez will testify to her experience as a noncitizen canvasser and the ways in which the Citizenship Requirement frustrates her ability to associate with her noncitizen colleagues and build canvasser teams based on the experience and qualifications that lead to success in the field.

### III.   NAACP Plaintiffs' Live Claims

NAACP Plaintiffs' remaining claims are:

Count I   The 3PVRO Restrictions severely infringe on NAACP Plaintiffs' free speech rights under the First and Fourteenth Amendments.

Count II   The 3PVRO Restrictions severely infringe upon NAACP Plaintiffs' associational rights under the First and Fourteenth Amendments.

Count III   The Citizenship Requirement violates the Equal Protection Clause because it is discriminatory on its face and as applied to Plaintiffs and because it was passed with the intent and effect of discriminating on the basis of alienage.[2]

Count V   The 3PVRO Restrictions violate the Equal Protection Clause because they were passed with the intent and effect of discriminating on the basis of race.

Count VI   The Citizenship Requirement and Information Retention Ban are vague and overbroad under the First and Fourteenth Amendments; and

Count VII   The Mail-In Ballot Request Restriction is preempted by Section 208 of the Voting Rights Act.

Each count includes a facial and as-applied challenge. For the Court's reference, Plaintiffs have attached a chart outlining this and other key information, including witnesses anticipated to have relevant testimony to each claim at trial, as Addendum A.

For each live claim, NAACP Plaintiffs outline below: (1)  which NAACP Plaintiffs bring the claim; (2) against which Defendants; (3) NAACP Plaintiffs'

---

[2] While NAACP Plaintiffs prevailed on their motion for summary judgment as to their Count III facial challenge, ECF No. 251, their as-applied and discriminatory intent and effect challenge to the law remains and provides this Court with an alternative basis to find in their favor.

standing to assert that claim; (4) the legal standard this Court should apply to the claim (including any alternative standards); (5) the general facts Plaintiffs plan to present at trial to satisfy the relevant legal standards; and (6) the best controlling and persuasive authority in support of NAACP Plaintiffs' claims. First, however, NAACP Plaintiffs provide an overview of their theories of standing.

### A.    NAACP Plaintiffs' Standing Overview

NAACP Plaintiffs expect to demonstrate four different types of standing, depending on the plaintiff and claim: (1) individual standing; (2) organizational standing; (3) associational standing; and/or (4) employer standing. To establish standing, NAACP Plaintiffs must show, as to that claim, (1) they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006).

### 1.    Injury-in-fact

### a.  Individual Standing

Individual Plaintiffs Mr. Orjuela Prieto and Mr. Mayer will show that they face concrete, particularized, actual, and imminent injuries should the Citizenship Requirement be enforced against them, and we expect Mr. Mayer to show the same for any future enforcement of the Information Retention Ban.

### b.  Organizational Standing

Organizational Plaintiffs Florida NAACP, VOT, DRF, Alianza, and UnidosUS will suffer direct injury to their organizations' work and missions as a result of the 3PVRO Restrictions. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). These Plaintiffs also have already diverted or will need to divert resources from other core projects because of the 3PVRO Restrictions.

### c.  Associational Standing

Organizational Plaintiffs Alianza, UnidosUS, Florida NAACP, and VOT have associational standing to challenge the 3PVRO Restrictions on behalf of their members. *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021). Organizational Plaintiffs DRF, FLARA, UnidosUS, and Alianza, moreover, have associational standing to challenge the Mail-In Ballot Request Restriction on behalf of their members with disabilities and/or members who cannot understand or communicate proficiently in English.

### d.  Employer Standing

Plaintiffs UnidosUS and Alianza also have employer standing on behalf of their noncitizen paid canvassers. *See Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1285 (N.D. Fla. 2022).

### e.  Third Party Standing

Plaintiffs Florida NAACP, Alianza, and UnidosUS have standing to sue on behalf of the potential voters whom these 3PVROs will not register and whose

registrations these 3PVROs will be unable to update because of the 3PVRO Restrictions.[3] Testimony from these Plaintiffs' representatives will discuss the many Black and Hispanic voters that they help register and the ways in which they will be less able to reach these communities because of the 3PVRO Restrictions. Additionally, Dr. Michael Herron will provide expert testimony explaining that the increased costs of registering to vote imposed by the 3PVRO Restrictions will result in some Black and Hispanic voters who would otherwise be registered through 3PVROs not being registered at all.

### 2.    Traceability

NAACP Plaintiffs will establish causation by showing that "their injuries are connected with" Defendants' conduct under the challenged provisions. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (cleaned up).

Plaintiffs' injuries are traceable to Defendant Secretary of State Cord Byrd because:

---

[3] The Court permits "plaintiffs to assert third-party rights in cases where the 'enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights.'" *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2118–19 (2020), abrogated on other grounds by *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). If "'[t]he threatened imposition of government sanctions' for noncompliance eliminates any risk that [plaintiffs'] claims are abstract or hypothetical," and plaintiffs are "'the least awkward' and most 'obvious' claimants" for the claim, the plaintiffs can bring the claim on behalf of a third party. *Id.* at 2119.

- The Secretary is Florida's chief elections officer and is responsible for the administration and enforcement of state laws affecting voting, including those governing 3PVROs. Fla. Stat. § 97.012.

- The Secretary oversees the Office of Election Crimes and Security, which is tasked with assisting the Department in investigating allegations of election law violations, referring findings to the Attorney General or state attorneys for prosecution, and imposing fines on 3PVROs for violations of Florida's Election Code, including the challenged provisions. Fla. Stat. § 97.022.

Plaintiffs' injuries are further traceable to Defendant Florida Attorney General

Ashley Moody because:

- The Attorney General oversees the Office of the Florida Statewide Prosecutor, which has responsibility to "[i]nvestigate and prosecute any crime involving" "voter registration." Fla. Stat. § 16.56(1)(c)(5).

- The Attorney General is specifically tasked with enforcing SB 7050's new civil and criminal penalties against 3PVROs, *see* Fla. Stat. § 97.0575(8), including for violations of the Citizenship Requirement and Information Retention Ban, *id.* §§ 97.0575(1)(f), (7).

- The Attorney General interprets SB 7050 to provide her the ability to enforce the challenged provisions upon referral from the Secretary, thereby making her a link in the chain of enforcement of SB 7050's civil penalties.

Finally, Plaintiffs' injuries are also traceable to Defendants Supervisors of

Elections in each of Florida's 67 counties because:

- The Mail-In Ballot Request Restriction explicitly tasks Defendant Supervisors with "accept[ing] a request for a vote-by-mail ballot only from a voter or, if directly instructed by the voter, a member of the voter's immediate family or the voter's legal guardian." Fla. Stat. 101.62(1)(a).

- As to the 3PVRO Fines Provision, the Supervisors have an exclusive, specific obligation to "report any untimely filed voter registration application submitted [to them] by a 3PVRO" to the Office of Election Crimes and Security. PX 149,

Fla. Admin. Code R.1S-2.042(8)(c), leading to imposition of penalties under the 3PVRO Fines Provision.

### 3.    Redressability

Plaintiffs' injuries are "likely to be redressed" by the requested injunction. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269, 287 (2008). Plaintiffs' injuries are redressable as to the 3PVRO Restrictions because:

- An injunction prohibiting the Secretary and Attorney General from enforcing the 3PVRO Restrictions will ensure they will not levy those penalties against Plaintiffs; and

- An injunction prohibiting the Supervisors from enforcing the 3PVRO Fines Provision would alleviate Plaintiffs' harms arising from the increased fines. *See* PX 149.

As to the Mail-In Ballot Request Restriction, the Court can redress Plaintiffs' injuries by:

- Enjoining the Supervisors from enforcing the Restriction's requirement that they accept vote-by-mail requests *only* from the voter or their legal guardian or immediate family member; and

- Enjoining the Secretary from enforcing the Mail-In Ballot Request Restriction through Fla. Stat. § 97.012(14).[4]

*            *            *

---

[4] Under Fla. Stat. § 97.012(14), the Secretary has the ability to "[b]ring and maintain such actions at law or in equity by mandamus or injunction to enforce the performance of any duties of a county supervisor of elections or any official performing duties with respect to chapters 97 through 102[.]" As such, even if the Court enjoins the Supervisors from enforcing the Mail-In Ballot Request Restriction, Plaintiffs' federal rights still hang in the balance because the Secretary could bring an action to compel Supervisors to enforce the Mail-In Ballot Request Restriction.

NAACP Plaintiffs will now overview each of their six live claims.

**B.      Count I: Infringement of Free Speech**

In Count I, NAACP Plaintiffs assert that the 3PVRO Restrictions violate their First Amendment right to free speech. Plaintiffs bring this claim against all Defendants.

**1.      NAACP Plaintiffs have standing to assert this claim.**

The evidence will also show that the 3PVRO Restrictions have caused Organizational Plaintiffs to self-censor, chill their protected speech, and severely reduce—and in some cases bring to a halt—their ability to engage in the voter registration work that is central to their missions. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) ("[L]itigants who are being chilled from engaging in constitutional activity suffer a discrete harm independent of enforcement, and that harm creates the basis for our jurisdiction." (cleaned up)). The evidence will further show that the Citizenship Requirement, if enforced, will immediately impact Individual Plaintiffs Mr. Orjuela Prieto's and Mr. Mayer's ability to engage in canvassing and associated conversations with voters, as well as Organizational Plaintiffs' ability to spread messages via these canvassers to voters. Some Organizational Plaintiffs have diverted significant resources to combat the harms imposed by the 3PVRO Restrictions.

### 2.   NAACP Plaintiffs should prevail on this claim.

The Court should apply strict scrutiny to determine whether the 3PVRO Restrictions violate the NAACP Plaintiffs' First Amendment right to speech, as incorporated by the Fourteenth Amendment. Defendants have provided no evidence that the 3PVRO Restrictions are narrowly tailored toward even a legitimate, let alone a compelling state interest.

### a.  Legal Standards

### i.   Strict Scrutiny

The 3PVRO Restrictions are subject to strict scrutiny for two independent reasons. *First*, the 3PVRO Restrictions regulate core political speech. Voter registration activities are "the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988); *see also VoteAmerica v. Schwab*, 576 F. Supp. 3d 862, 875 (D. Kan. 2021) (collecting cases). "The proper test to be applied to determine the constitutionality of restrictions on 'core political speech' is strict scrutiny." *Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002).

*Second*, the 3PVRO Restrictions reflect content-based discrimination based on the identity of the speaker. A law is "content-based," and thus subject to strict scrutiny, "if it suppresses, disadvantages, or imposes differential burdens on speech because of its content—*i.e.*, if it applies to particular speech because of the topic discussed or the idea or message expressed." *NetChoice, LLC v. Att'y Gen., Fla.*, 34

F.4th 1196, 1223 (11th Cir. 2022) (cleaned up); *see also Brooklyn Branch of the NAACP v. Kosinski*, 657 F. Supp. 3d 504, 526 (S.D.N.Y. 2023) (finding a line warming prohibition is content-based because it "prohibits only a certain category of expression").

Whether the Court finds the 3PVRO Restrictions to be content-based or related to core political speech, the restrictions "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (content-based discrimination) (internal quotations omitted); *see also Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring) (core political speech); *Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002) (same).[5]

### ii.     In the alternative, the *Anderson-Burdick* test

Because the 3PVRO Restrictions are "a regulation of pure speech," *Harriet Tubman Freedom Fighters Corp. v. Lee*, 576 F. Supp. 3d 994, 1003 (N.D. Fla. 2021) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995)), NAACP

---

[5] This Court has recognized that sometimes First Amendment cases use the word "exacting" scrutiny instead, and that "[t]hough possibly less rigorous than strict scrutiny, exacting scrutiny is more than a rubber stamp." *Worley v. Fla. Sec'y of State*, 717 F.3d 1238, 1249 (11th Cir. 2013). NAACP Plaintiffs maintain that strict scrutiny is the appropriate standard and that any difference between strict and exacting is negligible and will not be outcome-determinative on these facts.

Plaintiffs maintain that strict, or—at a minimum, exacting—scrutiny applies. Should the Court disagree, however, it should apply the "*Anderson–Burdick* test [] typically used to evaluate First Amendment challenges to election laws." *Id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 786–89 (1983)).

As this Court has previously articulated, the *Anderson-Burdick* test requires this Court to weigh First and Fourteenth Amendment challenges to election laws on a sliding scale, with laws that impose a severe burden on the right to vote receiving "greater" scrutiny and "reasonable, nondiscriminatory restrictions," receiving "a more forgiving review." *Fla. State Conf. of NAACP v. Lee*, 566 F. Supp. 3d 1262, 1285–86 (N.D. Fla. 2021) (quoting *Anderson*, 460 U.S. at 788). "But, no matter how slight the burden, it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Id.* (cleaned up).

### b.  Facts to be shown at trial

Many of NAACP Plaintiffs' witnesses—specifically Mr. Orjuela Prieto, Ms. Sanchez, Mr. Mayer, and representatives from VOT, UnidosUS, FL NAACP, Alianza, and DRF—will testify about (1) the significant messages noncitizen canvassers and/or their organizations spread when registering voters; (2) the importance of retaining the information of voters they register as part of their get-out-the-vote campaigns; and/or (3) the chilling effects of SB 7090's increased fines on their ability to engage in this type of core political speech.

This Court has already held that the Citizenship Requirement fails strict scrutiny, and NAACP Plaintiffs have no reason to believe the trial record will provide any basis to call into question the Court's sound analysis. ECF No. 251. Additionally, NAACP Plaintiffs will show that neither the Information Retention Ban nor the 3PRVO Fines Provision can survive strict scrutiny, or even a lower level of scrutiny, when this Court reviews the state interests purportedly underlying these provisions as a matter of first impression in this litigation. Nothing in the legislative transcripts that are now admitted as exhibits, PX 246–255, nor in discovery, nor even in materials prepared post-hoc for this litigation can justify these burdens imposed on Plaintiffs by the 3PVRO Restrictions.

### c. Best authority

The best controlling authority on NAACP Plaintiffs' Count I identified from the U.S. Supreme Court or Eleventh Circuit is:

- ***Meyer v. Grant*, 486 U.S. 414 (1988):** The Supreme Court recognized that conversations between petition canvassers and potential signatories are exactly "the type of interactive communication concerning political change that is appropriately described as 'core political speech,'" as the "circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Id.* at 421–22.

- ***Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999)**: The Supreme Court applied exacting scrutiny to a Colorado law requiring initiative petition circulators to be registered voters, mandating they wear name tags, and ordering that they submit their name and address and any salary to the state. *Id.* at 186. The Court found that all three requirements violated the plaintiffs' free speech rights because they "significantly inhibit communication with voters about

proposed political change, and are not warranted by the state interests (administrative efficiency, fraud detection, informing voters) alleged to justify those restrictions." *Id.* at 192. Justice Thomas wrote separately to clarify that strict scrutiny should be the test to evaluate the law under the Court's precedent. *See id.* at 206–215 (Thomas, J., concurring).

The best persuasive authority on NAACP Plaintiffs' Count I is:

- *League of Women Voters v. Hargett*, **400 F. Supp. 3d 706 (M.D. Tenn. 2019):** The district court enjoined enforcement of a law with provisions similar to the 3PVRO Restrictions, finding that "[e]ncouraging others to register to vote is pure speech, and, because that speech is political in nature, it is a core First Amendment activity." *Id.* at 720 (quoting *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1158 (N.D. Fla. 2012)); *see also id.* at 723 ("[T]he creation of a new voter is a political change—no less so than the inauguration of a new mayor or the swearing-in of a new Senator.").

- *VoteAmerica v. Schwab*, **671 F. Supp. 3d 1230 (D. Kan. 2023):** The district court applied strict scrutiny and enjoined enforcement of a statute prohibiting third parties from distributing personalized, pre-filled advance mail ballot applications, noting that "the First Amendment affords the broadest protection to political expression like plaintiff's conduct." *Id.* at 1251. The court emphasized that "even if the Court applied the *Anderson-Burdick* balancing framework to determine the appropriate level of scrutiny, strict scrutiny would apply." *Id.*

- *Am. Ass'n of People with Disabilities v. Herrera*, **690 F. Supp. 2d 1183 (D.N.M. 2010),** *on reconsideration in part*, **No. CIV 08-0702 JB/WDS, 2010 WL 3834049 (D.N.M. July 28, 2010):** The district court denied a motion to dismiss plaintiffs' First Amendment claims challenging voter registration regulations in New Mexico, writing that the "Plaintiffs' public endeavors to assist people with voter registration are intended to convey a message that voting is important, that the Plaintiffs believe in civic participation, and that the Plaintiffs are willing to expend the resources to broaden the electorate to include allegedly under-served communities." *Id.* at 1215–16. The court concluded that "the act of voter registration is expressive conduct worthy of First-Amendment protection." *Id.* at 1216.

### C.    Count II: Infringement of Associational Rights

In Count II, NAACP Plaintiffs assert that the 3PVRO Restrictions violate their First Amendment right to association. Plaintiffs bring this claim against all Defendants.

### 1.    NAACP Plaintiffs have standing to assert this claim.

Similar to Count I, the evidence will show that the 3PVRO Restrictions have caused Organizational Plaintiffs to self-censor, chill, and severely reduce—or in some cases bring to a halt—their ability to form associations via the voter registration work that is central to their missions. The Citizenship Requirement, if enforced, will also immediately impact Mr. Orjuela Prieto's and Mr. Mayer's ability to engage in canvassing and build relationships with voters, fellow canvassers, and their organizations. The same is true for Organizational Plaintiffs who routinely employ noncitizens to assist in their voter registration efforts. Further, some Organizational Plaintiffs have diverted significant resources as a direct result of the 3PVRO Restrictions.

### 2.    NAACP Plaintiffs should prevail on this claim.

#### a.  Legal Standard

When individuals or groups "wish to speak and act collectively with others," it "implicat[es] the First Amendment right of association." *League of Women Voters of Fla.*, 863 F. Supp. 2d at 1158. The "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by

the Due Process Clause of the Fourteenth Amendment, which embraces [First Amendment] freedom of speech." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958); *see also Hadnott v. Amos*, 394 U.S. 358, 364 (1969).

"Organized voter-registration activities necessarily involve political association, both within the voter-registration organizations and with the citizens they seek to register." *Am. Ass'n of People with Disabilities v. Herrera*, 580 F. Supp. 2d 1195, 1229 (D.N.M. 2008); *VoteAmerica*, 671 F. Supp. 3d at 1244–45 ("[P]ublic endeavors which expend resources 'to broaden the electorate to include allegedly under-served communities' qualify as expressive conduct which implicates the First Amendment freedom of association." (quoting *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 223 (M.D.N.C. 2020)). Non-voting related events—including membership meetings, fundraising, summits and conferences, and other community programming—are also squarely protected associations. *See, e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984) ("when the State interferes with [] selection of those with whom [organizations] wish to join in a common endeavor, freedom of association" is "implicated"); *Pleasant v. Lovell*, 876 F.2d 787, 795 (10th Cir. 1989) (noting that the First Amendment protects political advocacy by an association and its members).

Severe associational burdens are subject to strict scrutiny. *Clingman v. Beaver*, 544 U.S. 581, 586 (2005). If this Court determines that strict scrutiny should not

apply to Count II because the associational burdens are not severe, it should apply the same *Anderson-Burdick* test outlined in Count I, *supra* III.B.2.a.ii.

### b. Facts to be shown at trial

The same witnesses NAACP Plaintiffs expect to testify to Count I will further testify about (1) the significant relationships noncitizen canvassers build with their organizations and the prospective voters they help register; (2) the importance of retaining the information of voters they register to maintain those associations and grow their organizations; and/or (3) the chilling effects of fines on their ability to engage in this type of association.

And for the same reasons articulated in Count I *supra*, Defendants have failed to adduce sufficient evidence as to any state interests that would justify the burdens the 3PVRO Restrictions place on NAACP Plaintiffs' associational rights.

### 3. Best authority

The best controlling authority on NAACP Plaintiffs' Count II identified from the U.S. Supreme Court or Eleventh Circuit is:

- *NAACP v. Button*, **371 U.S. 415 (1963):** The Supreme Court struck down a state law that prevented NAACP from soliciting and representing clients in defense of their constitutional rights. The Court found that the law violated the NAACP's associational rights because civil rights litigation is a form of protected "political expression and association" that serves NAACP's target community. *Id.* at 431.

- *Boy Scouts of Am. v. Dale*, **530 U.S. 640 (2000):** The case concerned whether Boy Scouts needed to accept certain members. The Supreme Court wrote that, "As we give deference to an association's assertions regarding the nature of its

expression, we must also give deference to an association's view of what would impair its expression." *Id*. at 653.

The best persuasive authority on NAACP Plaintiffs' Count II is:

- ***League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155 (N.D. Fla. 2012):** The district court granted a motion for preliminary injunction in part on First Amendment association grounds to enjoin enforcement of a requirement that 3PVROs return voter registration applications within 48 hours and other recordkeeping and reporting requirements. *Id*. at 1157–58. Judge Hinkle found that voter registration is "core First Amendment activity" in part because "the plaintiffs wish to speak and act collectively with others, implicating the First Amendment," *id*. at 1158.

- ***VoteAmerica v. Schwab,* 671 F. Supp. 3d 1230 (D. Kan. 2023)**: The district court applied strict scrutiny and enjoined enforcement of a law prohibiting dissemination of personalized vote-by-mail applications in part on First Amendment association grounds. The court held that the plaintiff "relies on the perceived effectiveness of its personalized communications, and the ease with which voters can act on its persuasion, to build relationships and increase advance mail voting in Kansas." *Id*. at 1245–46.

### D.    Count III: Equal Protection Clause (Alienage)

In Count III, Organizational Plaintiffs Alianza, UnidosUS, VOT, and Florida NAACP, and Individual Plaintiffs Orjuela Prieto and Mayer allege that the Citizenship Requirement violates the Equal Protection Clause because it discriminates based on alienage—on its face and as applied to them and their members and canvassers—and because it was purposefully enacted, at least in part, with an intent to discriminate against noncitizens. Plaintiffs bring this claim against Defendants Byrd and Moody only.

**1.    NAACP Plaintiffs have standing to assert this claim.**

Individual Plaintiffs Orjuela Prieto and Mayer will explain how, as noncitizens, they are directly injured by the Citizenship Requirement. *See Piercy v. Maketa*, 480 F.3d 1192, 1204 (10th Cir. 2007) ("Once facial discrimination has been established . . . we review only to see . . . if the affected person is a member of the discriminated class for purposes of standing."). Because there is no dispute that the Citizenship Requirement facially discriminates on the basis of alienage, and there is no dispute that Individual Plaintiffs are noncitizen residents, there is also no dispute that Individual Plaintiffs suffer an injury-in-fact.

Organizational Plaintiffs Alianza, Unidos, VOT, and Florida NAACP assert organizational standing. The evidence will show that the Citizenship Requirement:

- reduces the number of canvassers who may register on their behalf, limiting or eliminating altogether their voter registration programs;

- denies them access to noncitizen canvassers who have built longstanding community connections and thus diminishing Plaintiffs' ability to accomplish their missions effectively; and

- forces them to divert resources away from voter registration, education, and outreach toward more stringent means of verifying and investigating canvassers' citizenship status as well as finding, hiring, and training new canvassers.

Organizational Plaintiffs Alianza, UnidosUS, VOT, and Florida NAACP also assert associational standing. *City of S. Miami v. Governor,* 65 F.4th 631, 637 (11th Cir. 2023) (associational standing is satisfied when its members would have standing

to sue in their own right). The Court will hear from Mr. Vilar about Alianza's noncitizen members who engage in voter registration work but will be unable to continue doing so if the Citizenship Requirement is enforced. He will further testify to the fear the Requirement has instilled among Alianza's noncitizen members along with the anti-immigrant sentiment it promotes. The Court will hear similar testimony from Mr. Nordlund, Mr. Mayer, and Ms. Slater.

Organizational Plaintiffs Alianza and UnidosUS also assert employee standing. The Court will hear from Mr. Vilar and Mr. Nordlund about how their organizations employ noncitizen canvassers who rely on that income and have expressed fear around continuing their work or participating in the lawsuit. Mr. Nordlund will also explain how UnidosUS often relies on the same noncitizen canvassers each election cycle, given the relationships they have formed and experience and skill level in the field.

### 2. NAACP Plaintiffs should prevail on this claim.

#### a. Legal Standards

##### i. Facial discrimination

This Court has already determined "Plaintiffs are entitled to summary judgment with respect to this claim in this case." ECF No. 251 at 17.

##### ii. Plaintiffs' as-applied challenge

Laws that restrict legal permanent residents such as Mr. Orjuela Prieto, Mr. Mayer, and Organizational Plaintiffs' members and canvassers are subject to strict

scrutiny. "A resident alien may reside lawfully in [Florida] for a long period of time. He must pay taxes. And he is subject to service in this country's Armed Forces." *Sugarman v. Dougall*, 413 U.S. 634, 645 (1973). As the Supreme Court has explained, strict scrutiny applies to any laws that "str[ike] at the noncitizens' ability to exist in the community, a position seemingly inconsistent with the congressional determination to admit the alien to permanent residence." *Foley v. Connelie*, 435 U.S. 291, 295 (1978).

"To satisfy [strict scrutiny], government action must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2260 (2020) (cleaned up). Defendants must show that the challenged provision furthers a compelling state interest "by the least restrictive means practically available." *Bernal*, 467 U.S. at 217.

Here, "[t]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Rather, "it goes to the breadth of the remedy employed by the Court." *Id.* Plaintiffs bring an as-applied challenge to the Citizenship Requirement on behalf of themselves (Individual Plaintiffs) and their members and canvassers (Organizational Plaintiffs) who span the spectrum from temporary protected status to permanent residents. As such, the Court must

apply the same analysis as it did with the facial challenge because "an alleged violation of one individual's constitutional rights under the Equal Protection Clause would necessarily constitute a violation of the Equal Protection Clause and the Constitution at large, regardless of the individually-applied remedy." *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 800 n.3 (11th Cir. 2022).

### iii.    Discriminatory intent and effect

A law that classifies on the basis of alienage is "so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

A plaintiff can prove an Equal Protection claim by establishing that a law has "both a discriminatory intent and effect." *Greater Birmingham Ministries*, 992 F.3d at 1321. The Court analyzes the *Arlington Heights* factors, which include but are not limited to: (1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading up to its passage; (4) procedural and substantive departures; and (5) the contemporary statements and actions of key legislators. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977). And, because these factors are not exhaustive, the list has been supplemented to include: (6) the foreseeability of the disparate impact; (7)

knowledge of that impact, and (8) the availability of less discriminatory alternatives. *See Greater Birmingham Ministries*, 992 F.3d at 1321–22. "As long as invidious discrimination is a motivating factor behind the action . . . , an equal protection violation has been proven." *Pena v. Bd. of Educ. of City of Atlanta*, 620 F. Supp. 293, 301 (N.D. Ga. 1985).[6]

### b. Facts to be shown at trial

Individual Plaintiff Orjuela Prieto will testify about his experience as a canvasser for UnidosUS and Poder Latinx and his reliance on a job that he enjoys, that pays significantly more than other jobs he has had, and which allows him to speak Spanish to the voters he helps register. Mr. Mayer will also share how he can longer volunteer with 3PVROs given the Citizenship Requirement. Organizational Plaintiffs will similarly explain how their members and canvassers include noncitizens who can no longer register voters due to the Citizenship Requirement.

---

[6] While this Court has previously proceeded with an *Arlington Heights* analysis on a facially explicit alienage-based classification, it indicated that the Supreme Court has suggested that *Arlington Heights* is applicable only to facially neutral laws. *Shen v. Simpson*, No. 4:23-CV-208-AW-MAF, 2023 WL 5517253, at *12 n.13 (N.D. Fla. Aug. 17, 2023) (citing caselaw which notes that facially explicit classifications present none of the "additional difficulties posed by laws that, although facially race neutral, result in racially disproportionate impact and are motivated by a racially discriminatory purpose"). Plaintiffs maintain, and no one disputes, that the law facially discriminates against noncitizens. However, to preserve any claims, Plaintiffs proceed to provide an *Arlington Heights* analysis, which gives the Court another basis to find in their favor.

The Court will also hear from Senator Torres and Representative Eskamani about how the Citizenship Requirement was introduced in the legislature, the state interests (or lack thereof) voiced during the sessions, statements from SB 7050's sponsor, knowledge of the Requirement's impact, and knowledge of the fact that the Requirement could have been narrowed to apply only to certain noncitizens such as undocumented individuals.

Plaintiffs' expert Dr. Herron will explain the Citizenship Requirement's discriminatory effect, while Dr. Lichtman will explain in detail the strong evidence under the *Arlington Heights* factors that the Citizenship Requirement was passed, in part, with the intent to discriminate against noncitizens.

Finally, the Court will hear that the only interest proffered by the state during the legislative process is that "there are certain rights that only citizens get to enjoy." PX 252 at 16; PX 250 at 112. The legislature rejected less discriminatory alternatives, deciding to discriminate against all noncitizens as a "policy call." PX 252 at 16, 18.

### 3.     Best authority

The best controlling authority on NAACP Plaintiffs' Count III from the U.S. Supreme Court or Eleventh Circuit is:

- ***Bernal v. Fainter*, 467 U.S. 216 (1984).** The Supreme Court applied strict scrutiny to strike down a statute limiting civil engineering licenses based on alienage as a violation of the Equal Protection Clause. *Id.* at 218–19. The Court held that the "narrow political-function exception" to strict scrutiny did not

27

apply to Texas notaries since they lacked policymaking responsibility, discretion, or authority over others. *Id.* at 221, 226. The Court held that the law failed strict scrutiny, noting that nothing in the record indicates that resident aliens, as a class, "are so incapable of familiarizing themselves with Texas law as to justify the State's absolute and classwide exclusion," *id.* at 227, and that the concern about notaries being unavailable was too speculative and wholly "[w]ithout a factual underpinning," *id.* at 227–28.

- *Greater Birmingham Ministries v. Sec'y of State for State of Alabama*, **992 F.3d 1299 (11th Cir. 2021).** Plaintiffs challenged a voter ID law, alleging it had a racially discriminatory impact and purpose. In finding against an intentional discrimination claim, the Eleventh Circuit noted that—unlike here—the plaintiffs "provide[d] no evidence that the Alabama legislators who supported the law intended the law to have a discriminatory impact or believed that the law would have such an effect," *id.* at 1326, and the Court "c[ould] not say that the legislature failed to consider voter ID alternatives that would lessen any potentially discriminatory impact," *id.* at 1327.

The best persuasive authority on NAACP Plaintiffs' Count III is:

- *Pena v. Bd. of Educ. of City of Atlanta*, **620 F. Supp. 293 (N.D. Ga. 1985):** *Pena* concerned a policy that required certain visa holders to pay tuition to attend Atlanta Public Schools. *Id.* at 295. The court found the policy to be discriminatory and subject to strict scrutiny under *Arlington Heights* where the rationale proffered was "to discourage one class of aliens from attending Atlanta Public Schools." *Id.* at 301. The court determined that "a motivating factor behind this program was to discriminate against aliens of Iranian citizenship, and, once having chosen to do that, the city decided to enforce its policy against all aliens." *Id.* The court held it was "obvious class-based animus." *Id.*

### E.    Count V: Equal Protection Clause (Race)

In Count V, Plaintiffs NAACP, Alianza, and UnidosUS allege that the 3PVRO Restrictions—the 3PVRO Fines Provision, Citizenship Requirement, and Information Retention Ban—violate the Equal Protection Clause because they were purposefully enacted, at least in part, with intent to discriminate against Black and

Hispanic voters and have the effect, individually and collectively, of denying, abridging, or suppressing the right to vote of otherwise eligible voters on account of race, ethnicity, or color. Plaintiffs bring this claim against all Defendants.[7]

### 1.  NAACP Plaintiffs have standing to assert this claim.

Plaintiffs Florida NAACP, Alianza, and UnidosUS assert Organizational Standing because the 3PVRO Restrictions frustrate their missions to register Black and Hispanic voters and have forced and will force these organizations to divert resources away from other activities to account for the 3PVRO Restrictions.

Each of the 3PVRO Restrictions frustrate NAACP's mission to register and civically activate Black voters and Alianza's and Unidos's missions to register and civically activate Hispanic voters.

- The Information Retention Ban makes it more difficult to recruit canvassers who will fear facing a felony, rendering Plaintiffs less successful in fulfilling their missions of registering minorities.

- The Citizenship Requirement deprives Alianza and UnidosUS of noncitizen canvassers, who comprise much of Alianza's and Unidos's canvasser base and retain a significant amount of institutional knowledge for the organizations. Without access to these canvassers, Alianza and UnidosUS will lose a great deal of manpower in the field registering voters and they will lose institutional knowledge that will take years to recover and replace. As such, they will be less successful in their mission of registering Hispanic voters in Florida.

---

[7] Plaintiffs bring this claim against Defendant Supervisors of Elections only insofar as it concerns the 3PVRO Fines Provision, pursuant to which the Supervisors have an "exclusive, specific reporting obligation." ECF No. 199 at 10 (denying Supervisors' motion to dismiss).

- The 3PVRO Fines Provision curbs—and in some instances halts—Plaintiffs' voter registration efforts in these communities based on the threat of fines that they cannot afford to pay.

The evidence will show that Plaintiffs NAACP, Alianza, and UnidosUS have diverted resources away from activities directly related to their missions of serving Florida's Black and Hispanic communities in order to comply with SB 7050.

- Ms. Slater will testify that the 3PVRO Restrictions have forced NAACP to divert time and resources away from other mission-related activities, such as the "Stay Woke Florida Rolling Votercade Bus Tour."

- Mr. Vilar will testify that Alianza has stopped voter registration altogether, a decision which not only consumed the organization's resources but also impacts the ability for Alianza to fundraise. *See Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1202 (11th Cir. 2018) (recognizing impairment to party's ability to fundraise is injury to party).

- Mr. Nordlund will testify that the Citizenship Requirement will force UnidosUS to divert resources away from paying temporary canvassers toward paying two full-time organizers dedicated to recruiting, interviewing, hiring, and training citizen canvassers and support staff. UnidosUS will divert thousands of dollars' worth of staff time away from issue advocacy projects towards developing and implementing new workflows to comply with the 3PVRO Restrictions.

These organizations also assert associational standing on behalf of their members, the majority of whom are Black (Florida NAACP) or Hispanic (Alianza and UnidosUS). The 3PVRO Restrictions impair Black and Hispanic members' ability to express their political views through canvassing and engage with community members around the importance of voting.

Finally, these organizations also assert third party standing on behalf of the voters and potential voters who will lose out on opportunities to have their

registration updated or in some instances be registered at all as a result of SB 7050. Representatives from NAACP, Alianza, and UnidosUS will testify to the ways in which they access difficult-to-reach Black and Hispanic communities and the ways in which the 3PVRO Restrictions will stymie this work. Dr. Herron's expert testimony will also discuss the costs of voting imposed by the 3PVRO Restrictions that may prevent Black and Hispanic voters from registering or updating their voter registration information at all.

### 2.   NAACP Plaintiffs should prevail on this claim.

#### a.  Legal Standard

To establish their prima facie case, plaintiffs need show only that racial discrimination was one factor at play in enacting legislation. Legislators do not make decisions "motivated solely by a single concern, or even" have one "particular purpose" that "was the 'dominant' or 'primary' one" in passing legislation. *Vill. of Arlington Heights*, 429 U.S. at 265. "But racial discrimination is not just another competing consideration." *Id.* It is an impermissible one. This impermissibility extends to "intentionally targeting a particular race's access to the franchise because its members vote for a particular party[.]" *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 924 (11th Cir. 2023) (quoting *N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204, 222 (4th Cir. 2016)). Because racial discrimination cannot animate legislative purpose, "[w]hen there is a proof that a

discriminatory purpose has been a motivating factor in the decision, [] judicial deference is no longer justified," and a court must examine the legislation with strict scrutiny. *Vill. of Arlington Heights*, 429 U.S. at 265–66.

Because "[o]utright admissions of impermissible racial motivation are infrequent," *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999), courts approximate discriminatory intent through a multi-factor, fact-intensive analysis that the Supreme Court provided in *Village of Arlington Heights*, 429 U.S. at 265–67. *See supra* III.D.2.iii. No one factor in this multi-factor analysis is dispositive. *Fla. State Conf. of NAACP*, 566 F. Supp. 3d at 1296. And courts do not consider each factor in a vacuum. Rather, "this Court can infer a discriminatory purpose given the totality of the circumstances." *Id.*

Once the plaintiff establishes discriminatory intent and effect, the Court assesses under strict scrutiny whether "the law's defenders [] demonstrate that the law would have been enacted without this racial discrimination factor." *Id.* at 1293 (alterations omitted).  In order to pass strict scrutiny, the law's classification must be justified by a compelling government interest and narrowly tailored to furthering that interest. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

### b.  Facts to be shown at trial

**Discriminatory impact**: The evidence will show that SB 7050 will prevent Black and Hispanic Floridians from voting because it will suppress the power of

3PVROs, and 3PVROs disproportionately register Black and Hispanic voters in Florida. As the Court will hear from Dr. Herron, 3PVROs register Black and Hispanic Floridians at a rate of 5-6 times higher than white Floridians.

**Foreseeability of discriminatory impact:** The evidence will show that witnesses and advocates informed legislators of the detrimental effects that SB 7050 would have, particularly for Black and Hispanic communities, and no legislator or witness came forward to rebut that contention.

**Recent history**: Dr. Lichtman will testify about three areas in which Florida has demonstrated racial discrimination in its recent history: (1) voting, (2) education, and (3) immigration. For instance, Dr. Lichtman will explain that Florida was the first state to establish an Office of Election Crimes Security that disproportionately targeted Black voters.

**Sequence of events:** Dr. Lichtman will discuss official actions that Governor DeSantis has taken with the legislature's support that evidence a "racial ideology" towards Black and Hispanic Floridians which has led them to take discriminatory actions, such as chartering private planes to deport Hispanic migrants to other states under false pretenses or enacting SB 1718 and arresting a disproportionate number of Black Floridians on suspicion of voting illegally.

**Substantive and procedural deviations**: Dr. Lichtman, Representative Eskamani, and Senator Torres will testify SB 7050's truncated lifespan in the

33

legislature and the limited time that legislators and witnesses had to review it and advocate against it. Dr. Lichtman will also explain that SB 7050 is more regressive than any other election law in the country in some regards.

**Contemporary statements by decisionmakers and rationales for SB 7050:** The evidence will show that legislative decisionmakers failed to provide credible rationales for the challenged provisions of SB 7050.

**Less discriminatory alternatives:** Dr. Lichtman's testimony will discuss the other legislation that the legislature could have enacted to meet its purported goals that would have avoided the discriminatory impact of SB 7050 or at least had less of a discriminatory impact.

### 3.    Best authority

The best controlling authority on NAACP Plaintiffs' Count V identified from the U.S. Supreme Court or Eleventh Circuit is:

- ***Columbus Bd. of Educ. v. Penick*, 443 U.S. 449 (1979):** The Supreme Court held that the Columbus School Board intentionally segregated Columbus schools based on an *Arlington Heights* analysis. *Id.* at 464–68.

- ***Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983):** The Eleventh Circuit held that "the ongoing relative deprivation of the black community in the provision of municipal services" constituted discriminatory intent in violation of the Fourteenth Amendment based on an *Arlington Heights* analysis. *Id.* at 1184–87. The Court noted that "[a]lthough none of" the *Arlington Heights* "factors is necessarily independently conclusive, 'the totality of the relevant facts' amply supports the finding that the City of Apopka has engaged in a systematic pattern of cognitive acts and omissions, selecting and reaffirming a particular course of municipal services expenditures that inescapably evidences discriminatory intent." *Id.* at 1186.

- ***Ammons v. Dade City*, 783 F.2d 982 (11th Cir. 1986):** The Eleventh Circuit held that Dade City and its public officials intentionally discriminated against Black residents in paving, resurfacing, and maintaining its streets and in maintaining its storm water drainage facilities, based on an *Arlington Heights* analysis. *Id.* at 985–88.

- ***League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 66 F.4th 905 (11th Cir. 2023):** The Eleventh Circuit held that twenty-first century history of racial discrimination is relevant to a finding of intentional discrimination under an *Arlington Heights* analysis. *Id.* at 923–24. It further held that "'intentionally targeting a particular race's access to the franchise because its members vote for a particular party' is impermissible." *Id.* at 924 (alterations omitted) (quoting *N.C. State Conf. of the NAACP*, 831 F.3d at 222).

The best persuasive authority on NAACP Plaintiffs' Count V is:

- ***Pryor v. NCAA*, 288 F.3d 548 (3d Cir. 2002):** The Third Circuit found that a facially neutral NCAA rule raising the minimum academic requirements to qualify for athletic scholarships applied to all incoming college athletes but had a disparate impact on Black athletes that NCAA was aware of and intended to promote. *Id.* at 562. As such, Third Circuit held that NCAA's actions constituted intentional discrimination under the *Arlington Heights* framework. *Id.*

## F.    Count VI: Vagueness and Overbreadth

In Count VI, Plaintiffs Mayer, UnidosUS, Alianza, VOT, Florida NAACP, and DRF allege that the Citizenship Provision and Information Retention Ban are impermissibly vague in violation of the Fourteenth Amendment and impermissibly overbroad in violation of the First Amendment.[8] Plaintiffs bring Count VI against Defendants Byrd and Moody only.

---

[8] DRF does not challenge the Citizenship Requirement because it does not have noncitizen volunteers and therefore only brings a vagueness claim with respect to the Information Retention Ban.

**1.  NAACP Plaintiffs have standing to assert this claim.**

The First Amendment injuries-in-fact already described for NAACP Plaintiffs' Counts I and II, as well as the harms resulting from alienage and racial discrimination outlined in Counts III and V, will also support Plaintiffs' standing to challenge the vagueness and overbreadth of the Citizenship Requirement and Information Retention Ban. Specifically, NAACP Plaintiffs will establish at trial that they have been chilled in their First Amendment activities by the ambiguous language in the Citizenship Requirement and Information Retention Ban, and the severe penalties—the $50,000 fine for violating the first and felony conviction for violating the second—only exacerbate the chilling.

**2.  NAACP Plaintiffs should prevail on this claim.**

**a.  Legal Standards**

**i.  Vagueness**

This Court has already thoroughly articulated the governing vagueness standards in its preliminary injunction order. *See* ECF No. 101 at 38–50. In short, a vague law either fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement.'" ECF No. 101 at 38 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality opinion) and citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Vague laws in the First Amendment context "force potential speakers to steer far wider of the unlawful zone than if the

36

boundaries of the forbidden areas were clearly marked." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1320 (11th Cir. 2017). In this way, vague laws have a wide-ranging chilling effect on disfavored speech without expressly banning it. Thus, "standards of permissible statutory vagueness are strict in the area of free expression." *Button*, 371 U.S. at 432.[9] The standards for certainty are also heightened when laws impose criminal penalties. ECF 101 at 48. This is especially true when the law lacks a scienter requirement. *Id*.

## ii.   Overbreadth

An overbroad law "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (quotations omitted). Overbroad laws "consume[] vast swaths of core First Amendment" associational activity in the name of a purported state interest. *See, e.g.*, *Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238, 1283 (N.D. Fla. 2021). This is an additional basis to find that a law violates the First Amendment. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

---

[9] The Court did not reach the question of whether the Citizenship Requirement and Information Retention Ban interfere with protected First Amendment rights at the preliminary injunction stage but acknowledged that "the Florida NAACP Plaintiffs have made a colorable argument that their get-out-the-vote activities are imbued with First Amendment protection and that this provision directly interferes with their corresponding free speech and association rights." ECF No. 101 at 49 n.16. NAACP Plaintiffs expect to develop the record on these points further at trial.

**b. Facts to be shown at trial**

The Court will hear testimony from trial witnesses—including 3PVRO representatives charged with training canvassers to comply with the law—showing that they do not understand the term "handling" in the Citizenship Requirement or the phrases "voter's personal information" and "in compliance with this section" in the Information Retention Ban. NAACP Plaintiffs also plan to present evidence of their First Amendment activities and how they have been chilled as a result of the ambiguous and confusing terms in the law.

**3. Best authority**

The best controlling authority on NAACP Plaintiffs' Count VI identified from the U.S. Supreme Court or Eleventh Circuit is:

- ***Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293 (11th Cir. 2017) (en banc) (Marcus, J.):** A majority of the 11th Circuit sitting en banc found Florida's Firearm Owners' Privacy Act void for vagueness. *Id.* at 1323. The Court reached its holding in part because the law "plainly target[ed] core First Amendment speech." *Id.* at 1319. After walking through the applicable vagueness standards, the Court wrote: "In this quintessential First Amendment area, the State may not hinge liability on a phrase so ambiguous in nature. And it most certainly may not do so when devastating consequences attach to potential violations." *Id.* at 1323. The Court held that because of the "provision's undeniable ambiguity, the risk of constitutional injury is simply too great. This vagueness is inconsistent with the command of the First Amendment." *Id.*

The best persuasive authority is:

- ***Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238 (N.D. Fla. 2021):** This Court found plaintiffs likely to succeed on vagueness and overbreadth challenges to Florida's anti-riot statute. *Id.* at 1282–84. On the vagueness claim, the Court

held that the law "both fails to put Floridians of ordinary intelligence on notice of what acts it criminalizes and encourages arbitrary and discriminatory enforcement, making this provision vague to the point of unconstitutionality." *Id.* at 1282 (internal quotations omitted). On the overbreadth claim, the Court noted that "the statute criminalizes a large amount of unprotected activity. But, in its ambiguity, it also consumes vast swaths of core First Amendment speech. Because it is unclear whether a person must" do, "[t]he statute can also be read to criminalize [] expressive activit[ies]." *Id*. at 1283.

### G.    Count VII: Section 208 of the Voting Rights Act

Finally, in Count VII, Plaintiffs DRF, FLARA, Alianza, and UnidosUS allege that the Mail-in Ballot provision violates Section 208 of the Voting Rights Act. Plaintiffs bring this claim against all Defendants.

#### 1.    NAACP Plaintiffs have standing to assert this claim.

Plaintiffs DRF, FLARA, Alianza, and UnidosUS have associational standing to litigate this claim on behalf of their members who are disabled or who do not speak English. *See* ECF No. 251 at 12 n.2 (holding that Section 208 extends to those who have limited English proficiency). Representatives of these Organizational Plaintiffs will testify that the Mail-In Ballot Request Restriction injures Plaintiffs' members by depriving them of access to the assistance of their choosing in requesting a vote-by-mail ballot.[10]

---

[10] In its summary judgment decision, this Court noted that because NAACP Plaintiffs did not demonstrate where affected members reside, "Plaintiffs' evidence fails to demonstrate which Supervisors of Elections their asserted injuries are arguably traceable to because the affected members must request their ballots from and return them to the Supervisor of Elections elected for their county of residence." ECF No.

### 2.   NAACP Plaintiffs should prevail on this claim.

#### a.  Legal Standards

Section 208 of the Voting Rights Act provides that any voter "who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice." 52 U.S.C. § 10508. The Mail-In Ballot Request Restriction's blanket requirement that voters rely only on an immediate family member or legal guardian for assistance in requesting a vote-by-mail ballot directly conflicts with this federal law. Fla. Stat. § 101.62(1)(a). Under the Constitution's "Supremacy Clause, any state law that conflicts with federal law is preempted." *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1224 (11th Cir. 2009) (citing *Gibbons v. Ogden*, 22 U.S. 1 (1824)); *see also Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 486 (11th Cir. 2015) (providing overview of conflict preemption). Conflict preemption applies where compliance with both federal and state law is not possible, or "where state law stands as an obstacle to the accomplishment and execution of

---

251 at 14. While Plaintiffs expect to elicit this testimony at trial, they further request that, should this Court find that Plaintiffs prevail on their challenge to the Restriction, the Court enjoin enforcement of the Restriction against *all* voters that Section 208 encompasses, not just those in the county where one impacted member resides. *See Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-CV-361-BO, 2022 WL 2678884, at *7 (E.D.N.C. July 11, 2022) ("[The challenged law] as applied to voters with disabilities who need assistance with voting, conflict with federal law and are preempted by the Voting Rights Act. Defendants are enjoined from enforcing such provisions against voters with disabilities in North Carolina.").

the full purposes and objectives of Congress." *Rine*, 590 F.3d at 1224 (quoting *Gade v. Nat'l. Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (cleaned up)).

The Voting Rights Act confers a private right of action to enforce its provisions, including Section 208. The plain text of the Act provides that "the Attorney General or an aggrieved person" may institute a proceeding "under any statute to enforce the voting guarantees of" the Fourteenth or Fifteenth Amendments. 52 U.S.C. § 10302 (emphasis added); *see also Morse v. Republican Party of Va.*, 517 U.S. 186, 233–34 (1996) (citation omitted); *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 990 (N.D. Fla. 2021) (hereinafter *NAACP I*). As this Court recently noted, each court to consider the issue has held that Section 208 allows for private enforcement. *NAACP I*, 576 F. Supp. 3d at 990–91 (granting in part and denying in part defendants' motion for summary judgment) (collecting cases).

Courts have further recognized preemption cannot be cured through the issuance of administrative rules, much less through proposed rulemakings. *Cf. Tedori v. United States*, 211 F.3d 488, 492 n.13 (9th Cir. 2000) ("[P]roposed regulations are entitled to no deference until final."). Florida law prohibits courts from "deferr[ing] to an administrative agency's interpretation of [a] statute"; they "must instead interpret such statute or rule de novo." Fla. Const. art. V, § 21. This Court has already, and correctly, rejected the proposition that the Secretary can cure

an otherwise unlawful statute through rulemaking because "[r]ewriting the laws it enforces is not within the purview of the executive branch." ECF 101 at 41.

### b. Facts to be shown at trial

At trial, Plaintiffs will show that they have affected members who are either disabled or not English proficient. Consistent with Plaintiffs' arguments in their motion for summary judgment, Plaintiffs believe the merits present a purely legal question. Plaintiffs will present evidence relevant to their standing, including testimony from representatives of DRF, FLARA, Alianza, and UnidosUS that the Mail-in Ballot Request Restriction impacts their members, who have a federal right to rely on the assistor of their choosing.

### 3. Best authority

The best controlling authority on NAACP Plaintiffs' Count VII identified from the U.S. Supreme Court or Eleventh Circuit is:

- *Wiersum v. U.S. Bank, N.A.*, **785 F.3d 483 (11th Cir. 2015):** Because the National Bank Act's plain language made clear Congress's intent to make bank officers at-will employees, the Eleventh Circuit concluded that a state law prohibiting employers from taking retaliatory action against employees was "in irreconcilable conflict with state law" and affirmed the lower court's decision to enjoin the state law's enforcement. *Id.* at 490–91.

The best persuasive authority on NAACP Plaintiffs' Count VII is:

- *Disability Rts. N.C. v. N.C. State Bd. of Elections*, **No. 5:21-CV-361-BO, 2022 WL 2678884 (E.D.N.C. July 11, 2022):** The plaintiff challenged a law that prohibited voters from relying on anyone but a legal guardian or "near relative" for assistance with the steps required to vote absentee, including requesting a ballot. The district court held that the law's limitation "impermissibly narrows a Section 208 voter's choice of assistant" in requesting a ballot "from the

42

federally authorized right to 'a person of the voter's choice' to 'the voter's near relative or verifiable legal guardian.'" *Id.* at *5. Because the provision conflicted with Section 208 of the Voting Rights Act, the court granted the plaintiff's motion for summary judgment on preemption grounds and enjoined the provision. *Id.* at *6.

- *OCA-Greater Hous. v. Texas*, **867 F.3d 604 (5th Cir. 2017):** A nonprofit organization challenged a law that prevented English-limited voters from using an interpreter to cast their vote if the interpreter was not a registered voter of the same county. 867 F.3d at 608. After finding that the organization had standing to challenge the law, the Fifth Circuit concluded "that the limitation on voter choice . . . impermissibly narrows the right guaranteed by Section 208 of the VRA." *Id.* at 615.

- *Ark. United v. Thurston*, **626 F. Supp. 3d 1064 (W.D. Ark. 2022):** A district court struck down a law restricting the number of voters any one person can assist in casting a ballot, holding that the provision is "more restrictive than § 208 and makes 'compliance with both . . . impossible.'" *Id.* at 1085 (quoting *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 780 (8th Cir. 2009)).

## IV.    Plaintiffs' Requested Relief

Plaintiffs request a declaration that the 3PVRO Fines Provision, Citizenship Requirement, and Information Retention Ban independently and collectively violate the First and Fourteenth Amendments of the U.S. Constitution, both facially and as applied to NAACP Plaintiffs, and were enacted with discriminatory intent in violation of the Fourteenth Amendment. Plaintiffs further request a permanent injunction enjoining Defendants and anyone acting on their behalf from enforcing the 3PVRO Fines Provision, Citizenship Requirement, or Information Retention Ban.

43

Plaintiffs also request a declaration that the Mail-In Ballot Request Restriction violates Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, and a permanent injunction enjoining Defendants an anyone acting on their behalf from enforcing the Mail-In Ballot Request Restriction.

Plaintiffs also request an award of Plaintiffs' costs, expenses, and reasonable attorneys' fees pursuant to, inter alia, 42 U.S.C. § 1988 and other applicable laws for all claims.

### A.     Plaintiffs will show declaratory relief is appropriate here.

Plaintiffs are entitled to a declaration under 28 U.S.C. §§ 2201 and 2202. The Declaratory Judgment Act "gives the federal courts competence to make a declaration of rights." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). The Act's purpose is "to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty." *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949). Here, Plaintiffs will show that declaratory relief is appropriate to articulate the serious federal and constitutional law issues presented in this case.

### B.     Plaintiffs will show they satisfy the standard for permanent injunctive relief.

"[T]o obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm

will result if the court does not order injunctive relief." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005). In line with these factors, a plaintiff must show that a permanent injunction would not disserve the public interest and that the balance of hardships weighs in his favor. *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).

The evidence will show that Plaintiffs meet this standard because they will prevail in establishing violations of their First and Fourteenth Amendment rights, and rights under Section 208 of the Voting Rights Act. Plaintiffs will show they are irreparably harmed for the same reasons they have suffered injury-in-fact. *See, e.g., Chang v. Glynn Cnty. Sch. Dist.*, 457 F. Supp. 2d 1378, 1382 (S.D. Ga. 2006) (finding that the plaintiffs—lawful residents who "will not be able to continue to work in their chosen professions, for a reason that is at odds with their federally-protected constitutional rights"—demonstrated irreparable harm from a law prohibiting noncitizens from being teachers). Because Plaintiffs will suffer irreparable harm, any remedies at law are inadequate. *See Barrett*, 872 F.3d at 1229.

Plaintiffs will also demonstrate that the balance of hardships weighs decidedly in their favor. The Citizenship Requirement and Information Retention Ban have been enjoined since they went into effect; extending the preliminary injunction into a permanent injunction would require no additional expenditure of resources or change in procedures on behalf of Defendants. And there will be no hardship to the

State if the 3PVRO Fines Provision is enjoined as there are already other laws regulating 3PVROs and problems with 3PVROs are rare. Finally, the Mail-In Ballot Request Restriction will be in effect for the first time in the 2024 elections; enjoining its enforcement before the time period for issuing vote-by-mail ballots would mean that Supervisors and Defendants can issue such ballots the same way and under the same rules they have for decades. *See* Fla. Stat. § 101.62(3). In short, where the State has enacted a solution in search of a problem, it is not harmed by an injunction returning to the status quo.

And the evidence will show that an injunction is in the public interest. "[T]he public interest is served when constitutional rights are protected." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019). And as a practical matter, facially discriminatory laws and blatant restrictions on federal voting rights only undermine the public interest and confidence in our elections system. A permanent injunction against the 3PVRO Fines Provision, Citizenship Requirement, and Mail-In Ballot Request Restriction would serve and preserve the public interest in fair and lawful election laws.

Finally, *Purcell v. Gonzalez* does not bar the relief Plaintiffs seek. 549 U.S. 1 (2006). "[I]t would be 'the unusual case' in which a court would not act to prevent a constitutional violation." *In re Georgia Senate Bill 202*, 622 F. Supp. 3d 1312, 1341 (N.D. Ga. 2022) (quoting *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)). Plaintiffs

will show that an injunction preserves the status quo—subjecting 3PVROs to pre-SB 7050 regulations—so there is no fear of voter confusion or administrability and implementation burdens. *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022). And the evidence will demonstrate that implementation of the injunction will not fundamentally alter the nature of the upcoming elections and in fact only enhances enfranchisement.

### C.    NAACP Plaintiffs are entitled to fees.

NAACP Plaintiffs intend to file a motion seeking an award of attorneys' fees pursuant to 42 U.S.C. § 1988. NAACP Plaintiffs are already a prevailing party based on the Court's summary judgment ruling as to the Citizenship Requirement. ECF No. 251; *see also Coastal Conservation Ass'n v. Gutierrez*, 417 F. Supp. 2d 1304, 1307 (M.D. Fla. 2006) (plaintiffs considered prevailing party for purposes of attorneys' fees and costs even they prevailed on one of four counts because success was on a "significant issue" and achieved "some of the benefit the parties sought in bringing suit") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Should NAACP Plaintiffs prevail on additional claims, they will incorporate those claims in their fee petition.

Dated: March 27, 2024

Respectfully submitted,

Abha Khanna*
Makeba Rutahindurwa*
**ELIAS LAW GROUP, LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law
mrutahindurwa@elias.law

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111
**KING, BLACKWELL, ZEHNDER &**
 **WERMUTH, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Lalitha D. Madduri*
Melinda Johnson*
Renata O'Donnell*
**ELIAS LAW GROUP, LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
mjohnson@elias.law
rodonnell@elias.law

*Admitted pro hac vice*

*Counsel for Plaintiffs Florida State
Conference of Branches of Youth Units
of the NAACP, Voters of Tomorrow
Action, Inc., Disability Rights Florida,
Alianza for Progress, Alianza Center,
UnidosUS, Florida Alliance for Retired
Americans, Santiago Mayer
Artasanchez, Humberto Orjuela Prieto,
and Esperanza Sánchez*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of March 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 018411