UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

        Plaintiffs,

v.

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

        Defendants.

Case No.: 4:23-cv-215-MW/MAF

## NAACP PLAINTIFFS' MOTION TO RECONSIDER

Plaintiffs Florida State Conference of Branches and Youth Units of the NAACP ("Florida NAACP"), Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress, Alianza Center, UnidosUS, Florida Alliance for Retired Americans, Santiago Mayer Artasanchez, Esperanza Sanchez, and Humberto Orjuela Prieto (collectively, the "NAACP Plaintiffs"), pursuant to Federal Rule of Civil Procedure 59(e), respectfully request that the Court reconsider and alter its judgment denying relief on their challenge to Fla. Stat. § 97.0575(5)(a) (the "Fines Provision"), declare the Fines Provision unconstitutional, and enjoin the enforcement of that provision against Florida NAACP, UnidosUS, and Alianza Center. In support of their motion, NAACP Plaintiffs state as follows:

1

## INTRODUCTION

In 2022, the Florida Legislature took direct aim at third-party voter registration organizations ("3PVROs") and enacted a range of restrictions on their First Amendment-protected voter registration work. After trial, this Court held that at least one of those restrictions—the provision restricting non-citizens' ability to handle voter registration applications—was unconstitutional. ECF No. 345 at 50.

In the same order, this Court held that at least one other provision withstands constitutional scrutiny: the Fines Provision. *Id.* at 19. This provision arbitrarily shortens the deadline for returning voter registration applications from fourteen to ten days from completion, and it also raises the potential fines for violating the rules up to fifty-fold. Fla. Stat. § 97.0575(5)(a). Even though this regulation by definition directly targets 3PVROs and has curtailed their voter registration work, the Court held both that the NAACP Plaintiffs lack standing to challenge the Fines Provision and that the Fines Provision withstands constitutional scrutiny.

Both holdings were based upon critical errors in application of the relevant legal standards, which were recently confirmed by the U.S. Supreme Court in *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. ----, 145 S. Ct. 2121, 2135 (2025), and in a persuasive decision from the Third Circuit Court of Appeals in *Eakin v. Adams Cnty. Bd. of Elections*, No. 25-1644, 2025 WL 2449056, at *12 (3d Cir. Aug. 26, 2025). As a result, the NAACP Plaintiffs respectfully request that the Court

reconsider its judgment, declare that Plaintiffs Florida NAACP, UnidosUS, and Alianza Center have standing to challenge the Fines Provision, declare the Fines Provision unconstitutional, and enjoin its enforcement.

First, the Court committed clear error in finding that the NAACP Plaintiffs that currently operate as 3PVROs—Florida NAACP, UnidosUS, and Alianza Center—lacked standing to challenge the Fines Provision. The Supreme Court recently confirmed that, for directly regulated entities, the standing inquiry is less demanding than it is for indirectly affected entities. *Diamond Alternative Energy, LLC*, 145 S. Ct. at 2135. Given that these three Plaintiff organizations are directly regulated by the Fines Provision, the Court's scrutiny of their ability to comply with the challenged provision was erroneous. The Court compounded that error by finding that these entities' ability and efforts to comply with the challenged provision disqualified them from challenging it.

Second, the Court committed clear error in finding that the Fines Provision withstands constitutional scrutiny. In conducting its analysis under the *Anderson-Burdick* framework, the Court erred in assessing both the burden on the NAACP Plaintiffs—by focusing exclusively on the burdens of compliance without consideration of the costs of violating the Fines Provision—and the state's proffered interest—by failing to require any justification from Defendants for making the challenged rules stricter and harsher. *See, e.g.*, *Eakin*, 2025 WL 2449056, at *12.

For each of these reasons, reconsideration is both necessary and appropriate.

## LEGAL STANDARD

The decision of whether to grant or deny a Rule 59(e) motion is discretionary. *Wendy's Int'l, Inc. v. Nu-Cape Const., Inc.*, 169 F.R.D. 680, 684–85 (M.D. Fla. 1996). In resolving such a motion, courts may reconsider a prior decision "if there has been an intervening change in law, if new evidence has become available, or if there is a need to correct clear error or manifest injustice." *Buffkin v. Reliance Standard Life Ins. Co.*, No. 3:16CV21/MCR/CJK, 2017 WL 3000031, at *1 (N.D. Fla. May 30, 2017). Challenging the "legal correctness of the district court's judgment by arguing that the district court misapplied the law" is properly raised by motion under Federal Rule 59(e). *Van Skiver v. United States*, 952 F.2d 1241, 1244 (10th Cir. 1991).

## ARGUMENT

**I.  The Court should reconsider its holding that Florida NAACP, UnidosUS, and Alianza Center lack standing to challenge the Fines Provision.**

In its final judgment, the Court held that none of the NAACP Plaintiffs had standing to challenge the Fines Provision. The NAACP Plaintiffs seek reconsideration of that holding with respect to Florida NAACP, UnidosUS, and Alianza Center based on two errors in the Court's standing analysis. First, because these three entities are directly regulated by and subject to the Fines Provision, their threshold for establishing standing is lower than it would be for indirectly regulated entities and is more than satisfied here. Second, the Court's holding that regulated

entities lack standing to challenge government action merely because they are capable of complying with it finds no support in case law or the principles of Article III standing.

First, the Court applied the wrong standard to evaluate the standing of Plaintiffs Florida NAACP, UnidosUS, and Alianza Center. As the Supreme Court recently clarified, "[w]hen a plaintiff is the 'object' of a government regulation, there should 'ordinarily' be 'little question' that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries." *Diamond Alternative Energy, LLC*, 145 S. Ct. at 2135 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). By contrast, "[w]hen the plaintiff is not the object of a government regulation," courts "must distinguish the 'predictable' from the 'speculative' effects of government action." *Id.* at 2134; *see also Lujan*, 504 U.S. at 562 ("[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish.").

Here, there is no question that Florida NAACP, UnidosUS, and Alianza Center are the "object[s]" of the challenged Florida statute. It is undisputed that all three organizations are registered 3PVROs, *see* ECF No. 305 ¶¶ 15, 34, 41, and are therefore directly regulated by the Fines Provision, *see* ECF No. 311 at 35 (Defendant explaining that the Fines Provision "applies to 3PVROs"). And it is

5

beyond dispute that, on its face, the challenged statute expressly regulates "Third-party voter registration organizations" such as Florida NAACP, UnidosUS, and Alianza Center, prescribes the manner in which these 3PVROs may collect and deliver voter registration applications, and subjects them to a series of fines for noncompliance. Fla. Stat. § 97.0575(5)(a); *see also* ECF No. 305 ¶ 2 ("Admitt[ing] that SB 7050 … imposes new requirements on 3PVROs."). Far from "unaffected bystanders" to the Fines Provision, these entities are the direct "targets of its regulation." *Diamond Alternative Energy, LLC*, 145 S. Ct. at 2141–42.

In its Final Judgment, however, this Court erroneously scrutinized the standing of *all* the NAACP Plaintiffs under the more demanding standard for indirectly affected parties—even though some were directly regulated and others were not. For Plaintiffs like Voters of Tomorrow and Disability Rights Florida, it was appropriate for the Court to scrutinize whether their potential for injury from the Fines Provision was "speculative," ECF No. 345 at 28, because those organizations were not operating as 3PVROs. But there is nothing "speculative" or "hypothetical" about whether Florida NAACP, UnidosUS, or Alianza Center are affected by the Fines Provision because they are all directly regulated by it.

Second, the Court's erroneous standing analysis was compounded by its finding that Florida NAACP, Unidos US, and Alianza Center lack standing to challenge the Fines Provision *because* they are capable of complying with it. ECF

6

No. 345 at 27–32. A plaintiff's ability to comply with government regulation does not deprive that plaintiff of standing to challenge that regulation. *See, e.g.*, *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) ("For purposes of standing, a denial of equal treatment is an actual injury even when the complainant is able to overcome the challenged barrier."); *Sullivan v. City of Augusta*, 511 F.3d 16, 31 (1st Cir. 2007) ("Notwithstanding their apparent ability to comply, we believe the plaintiffs have standing."); *BCG Fed. Corp. v. United States*, 172 Fed. Cl. 543, 554 (2024) (holding plaintiffs' "ability to comply with the allegedly unlawful requirements of the [regulation] does not make the requirements lawful, or otherwise mitigate their effects" on the plaintiff); *New Jersey v. Env't Prot. Agency*, 989 F.3d 1038, 1046 (D.C. Cir. 2021) (explaining that "a state's ability to change its laws to evade injury" does not "preclud[e] standing to challenge EPA's actions"). And the implication that these 3PVROs must risk violating the Fines Provision in order to challenge its legality is contradicted by decades of precedent. *See, e.g.*, *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("It is not necessary that the plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights.") (cleaned up). The fact that a plaintiff *must* comply with government regulation generally entitles that plaintiff to challenge the legality of that regulation. *See Hays v. City of Urbana, Ill.*, 104 F.3d 102, 103 (7th Cir. 1997) ("A person who must

7

comply with a law or face sanctions has standing to challenge its application to him.").

Here, moreover, the costs of compliance alone demonstrate the requisite harm to challenge the law. In order to ensure compliance with the Fines Provision, Florida NAACP and Alianza Center substantially curtailed their programming. Florida NAACP halted all in-person voter registration assistance. Tr. 1172:8-21. Instead, Florida NAACP primarily relies upon online voter registration, which is much less effective. *Id.* That transition—from more effective programming to less effective programming—constitutes an injury-in-fact on its own. Tr. 1161:16-1163:3; *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) ("[L]itigants who are being chilled from engaging in constitutional activity suffer a discrete harm independent of enforcement, and that harm creates the basis for . . . jurisdiction.") (cleaned up). Similarly, Alianza Center completely stopped its voter registration work, Tr. 641:13-15. Circuit courts are "nearly uniform" in holding that these costs of compliance amount to an injury sufficient to challenge the legality of the law that drove these organizations to change their programming. *See Grand River Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 121 (2d Cir. 2021) (collecting cases). The Court's holding otherwise constituted clear error.

In sum, the Supreme Court has cautioned that courts "should not make standing law more complicated than it needs to be." *Diamond Alternative Energy,*

8

*LLC*, 145 S. Ct. at 2142. By scrutinizing whether and how Florida NAACP, UnidosUS, and Alianza Center will be able to avoid penalties under the Fines Provision, the Court ignored the direct injury they suffer as objects of the challenged law.

II.  **The Court should reconsider its holding that the Fines Provision withstands scrutiny under *Anderson-Burdick*.**

The Court held that the Fines Provision survives scrutiny under the *Anderson-Burdick* balancing test. ECF No. 345 at 19. That test requires "this Court to weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule while taking into consideration the extent to which those justifications require the burden to plaintiffs' rights." *Fla. State Conf. of NAACP v. Lee*, 566 F. Supp. 3d 1262, 1285 (N.D. Fla. 2021) (quotations omitted). In conducting its analysis, the Court made manifest errors on both sides of the equation.

On burden, the Court committed clear error in considering only the burdens of compliance with the Fines Provision and not the burdens of the fines themselves. The Court held that the Fines Provision "poses only a modest burden" on 3PVROs. ECF No. 345 at 18. In support of that finding, the Court appears to have concluded that the risk of incurring a fine is minimal once a 3PVRO has "update[d] internal procedures to comply with the new deadline." *Id.* at 19. In essence, the Court concluded that because it is easy enough to comply with the Fines Provision, it does

9

not matter whether a potential fine would be burdensome. Such reasoning, however, is not consistent with the *Anderson-Burdick* framework.

As the Third Circuit recently explained, applying the *Anderson-Burdick* framework necessarily includes not just the "burden of compliance" but also the "law's consequences and downstream impacts." *Eakin*, 2025 WL 2449056, at *12. Otherwise, courts would "under-scrutinize laws that—while seemingly easy to adhere to—nevertheless severely burden constitutional rights because of their downstream effects." *Id.* Here, this Court under-scrutinized the burdens imposed by the Fines Provision by focusing exclusively on risk of being fined without consideration to the magnitude of the potential fine.

The Court's failure to consider the potential downstream consequences of the Fines Provision is significant because, in the event that a 3PVRO is fined, the consequences can be severe. For example, for UnidosUS, a possible $50,000 fine would be the equivalent of registering 1,000 fewer voters. Tr. 107:8-25. For Alianza Center, even the prospect of suffering an increased fine would "risk[] the financial standing of the organization." Tr. 641:23-642:2. Similarly, the risk was so substantial that Florida NAACP ceased its in-person voter registration activity *entirely*. Tr. 1172:8-21. These dramatic shifts in the organizations' programming demonstrate precisely why the prospect of enormous consequences can dramatically burden First Amendment protected activities.

The Court also independently erred in evaluating the state interest side of the *Anderson-Burdick* balancing test. "[E]ven when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318–19 (11th Cir. 2019). But the full extent of the Court's findings concerning the state interest in support of the Fines Provision is a single conclusory sentence holding that "the evidence demonstrates that this modest burden on the League's First Amendment rights is justified by the State's weighty interests in ensuring voter registration applications are turned in on time, either directly to the Division of Elections or to the correct Supervisor of Elections office." ECF No. 345 at 19. But Defendants did not establish any interest served by the *changes* made in the Fines Provision, let alone any that are "sufficiently weighty." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008). Specifically, nowhere did the Court find or hold that shortening the deadline to return voter registration applications by four days serves any state interest. Nor did the Court find or hold that increasing the fines for non-compliance up to fifty-fold serves any state interest. *See* ECF No. 302 ¶¶ 75-77 (explaining fine increases). This failure to justify the Fines Provision based on the "precise interest put forward by the State as justifications" for the law amounts to clear error. *Crawford*, 553 U.S. at 190.

Even if a state interest is "legitimate in the abstract," Defendants must put forward "concrete evidence" providing that "such an interest" justifies the "burden [on] voters' rights." *Fish v. Schwab*, 957 F.3d 1105, 1132–33 (10th Cir. 2020). But here, the *only* evidence Defendants offered was based on the behavior of a singular bad actor—Hard Knocks. ECF No. 345 at 19 (citing ECF No. 311 at 46–47, 49). Neither Defendants' explanation nor the Court's order explains or justifies why a fifty-fold increase in fines for all 3PVROs is connected to the state's interest in dealing with a single, errant organization.

Ultimately, the implication of the Court's analysis is that the State can exponentially ratchet up fines for minor violations—by tens or hundreds of thousands of dollars—with no basis or justification for the dramatic increase, and as long as it is possible for 3PVROs to restructure their operations to avoid paying those fines—even to the detriment of their ability to advance their missions—the unjustified threat of fines is beyond reproach. The *Anderson-Burdick* test, however, demands a comprehensive analysis of both the burdens of and the bases for challenged laws, and does not allow states to act with such impunity.

## CONCLUSION

For the reasons stated above, NAACP Plaintiffs respectfully request that the Court reconsider and alter its judgment denying NAACP Plaintiffs relief against the Fines Provision.

Dated: September 5, 2025

/s/ *Abha Khanna*
Abha Khanna*
**ELIAS LAW GROUP, LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law


* *Admitted pro hac vice*

*Counsel for Plaintiffs Florida State Conference of Branches of Youth Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress, Alianza Center, UnidosUS, Florida Alliance for Retired Americans, Santiago Mayer Artasanchez, Humberto Orjuela Prieto, and Esperanza Sánchez*

Respectfully submitted,

Frederick S. Wermuth
Florida Bar No. 0184111
**KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

## LOCAL RULE 7.1(B) CERTIFICATION

Notwithstanding Local Rule 7.1(D)'s applicable exception to the conferral requirement, Plaintiffs' counsel conferred with counsel for the Secretary and Attorney General, who have confirmed that the Secretary and Attorney General oppose this motion.

## LOCAL RULE 7.1(F) CERTIFICATION

Undersigned counsel, Frederick Wermuth, certifies that this motion contains 2,734 words, excluding the case style, signature block and certifications.

/s/ *Frederick Wermuth*
Frederick S. Wermuth
Florida Bar No. 018411

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of September 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Frederick Wermuth*
Frederick S. Wermuth
Florida Bar No. 018411