# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF FLORIDA, INC.; LEAGUE OF WOMEN VOTERS OF FLORIDA EDUCATION FUND,

    *Plaintiffs*,

v.

ASHLEY MOODY, in her official capacity as Attorney General of Florida; CORD BYRD, in his official capacity as Florida Secretary of State,

    *Defendants*.

Case No. 4:23-cv-00216
Consolidated Case No. 4:23-cv-00215

## **LWVFL PLAINTIFFS' MOTION TO RECONSIDER**

Plaintiffs League of Women Voters of Florida, Inc. and League of Women Voters of Florida Education Fund (together "the League" or "LWVFL") respectfully request, pursuant to Federal Rule of Civil Procedure 59(e), that the Court reconsider and alter its judgment denying relief on the League's challenge to Fla. Stat. § 97.0575(5)(a) (the "Fines Provision"), and instead declare the Fines Provision unconstitutional and enjoin enforcement of that provision against the

1

League. In so doing, the League adopts the legal merits arguments of NAACP Plaintiffs, 4:23-cv-00215, ECF No. 357 at 9–12.[1]

First, the League agrees with NAACP Plaintiffs that the Court committed clear error in its analysis under *Anderson-Burdick* by considering only the burdens of compliance with the Fines Provision and not the burdens of the fines themselves. "*Anderson-Burdick* . . . requires a court to look to a law's consequences and downstream impacts in assessing a law's burden," because "limiting . . . burden analysis to consider only the burden of complying with a law's requirements would lead [courts] to under-scrutinize laws that—while seemingly easy to adhere to—nevertheless severely burden constitutional rights because of their downstream effects." *Eakin v. Adams Cnty. Bd. of Elections*, No. 25-1644, 2025 WL 2449056, at *12 (3d Cir. Aug. 26, 2025); *see also id.* at *12 n.33 (noting that "[m]ultiple other circuits applying *Anderson-Burdick* have weighed the impacts of a voting law in assessing how a law burdens constitutionally protected rights").

---

[1] Because the Court has already recognized the League's injury from, and thus standing to challenge the Fines Provision, *see* ECF No. 345 at 13–15, Part I of NAACP Plaintiff's Motion to Reconsider, ECF No. 357 at 4–9, which seeks reconsideration of the Court's decision as to NAACP Plaintiffs' standing, is inapplicable to the League's motion.

2

Here, despite recognizing that the State has "drastically increased the cap on potential fines for late, unreturned, or erroneously returned applications," ECF No. 345 at 18, and that "the risk of incurring any increased fine *may reasonably chill voter registration activities*," *id.* at 19 (emphasis added), the Court nevertheless held that the Fines Provision poses only a modest burden on the League. The Court focused on the League "barely ever miss[ing]" the deadline for turning in applications. *Id.* at 18–19. But this discounts, erroneously, the substantial effect imposition of "drastically increased" fines for even infrequent violations will have on the League's operations. As established at trial, a $2,500 fine "could be half of a local league's annual budget." Trial Tr. vol. 4, 1267:21–1268:5; *see also* Trial Tr. vol. 4, 1362:21–23 (a $5,000 fine would have a "very significant impact" on the Broward County League's operations); *League of Women Voters of Florida v. Cobb*, 447 F. Supp. 2d 1314, 1325 (S.D. Fla. 2006) ("[T]he resulting $5,000 fine would eliminate the local Tallahassee League's entire yearly income."). A $20,000 fine, meanwhile, would very significantly impact the League's operations across Florida, whereas a $250,000 fine would "pretty much shut [the League's] business." Trial Tr. vol. 4, 1267:5–20. Accordingly, as the Court itself

3

agreed, "the risk of incurring any increased fine may reasonably chill voter registration activities," ECF No. 345 at 19—the very core of the League's protected speech and association.

Still, the Court concluded the Fines Provision imposes a modest burden because it requires only a "temporary pause" in the League's registration activity and "the costs associated with retooling [the League's] operation" to comply with the shortened return deadline. ECF No. 345 at 19. Here too, the Court erroneously narrowed its burden inquiry to focus only on the costs of compliance with the Fines Provision. But the League established at trial that the Fines Provision's steep penalties will mean fewer volunteers associating with the League, meaning fewer interactions with voters and fewer registrations. *See* Trial Tr. vol. 4, 1266:22–1267:4. As the Court itself recognized in upholding the League's standing, the Fines Provision will require the League to re-train its volunteers, avoid registering out-of-county voters, and make more frequent trips to deliver applications in-person, which will, in turn, impose a "reasonable chill" on the League's paper voter registration drives and "eat away at members' time in the field registering voters, *resulting in registering fewer voters.*" ECF No. 345 at 14 (emphasis

4

added). The burdens on the League thus extend far beyond its mere ability to comply with the Fines Provision and any temporary costs from "retooling" operations, but rather strike to the core of the League's voter registration activities. The Court's failure to account for these non-ephemeral burdens on the League's core voter registration activities constitutes clear error.

Second, the League agrees with NAACP Plaintiffs that the Court independently erred in evaluating the state interest side of the *Anderson-Burdick* balancing test. *See* ECF No. 357 at 11–12. The Supreme Court has made clear that a court evaluating a constitutional challenge to an election regulation must "weigh the asserted injury . . . against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 190 (2008) (affirming) (internal quotation marks and citation omitted). Accordingly, even if a state interest is "legitimate in the abstract," the State must put forward "concrete evidence" providing that "such an interest" justifies the "burden [on] voters' rights" *Fish v. Schwab*, 957 F.3d 1105, 1132–33 (10th Cir. 2020).

5

Here, however, the Court's explication and analysis of the state interests advanced by the Fines Provision is limited to concluding that the "modest burden on the League's First Amendment rights is justified by the State's weighty interests in ensuring voter registration applications are turned in on time, either directly to the Division of Elections or to the correct Supervisor of Elections office." ECF No. 345 at 19. The Court made no mention of, and Defendants did not establish any interest served by the *changes* made in the Fines Provision, failing utterly to establish that increasing the fines for non-compliance up to fifty-fold was necessary to serve any state interest.

In sum, the Court erred in failing to engage in fulsome and comprehensive analysis of both the burdens caused by and the state interests supporting the Fines Provision. Accordingly, for the reasons stated above, the League agrees with and adopts the legal arguments of NAACP Plaintiffs and respectfully requests that the Court reconsider and alter its judgment denying the League relief against the Fines Provision.

Dated: September 5, 2025          Respectfully submitted,

/s/ Brent Ferguson

| | |
|---|---|
| Chad W. Dunn | Brent Ferguson (D.C. Bar No. 1782289)* |
| Florida Bar No. 0119137 | Alexandra Copper (Cal. Bar No. 335528)* |
| 1200 Brickell Avenue, | Ellen Boettcher (D.C. Bar No. 90005525)* |
| Suite 1950 | 1101 14th Street NW, Ste. 400 |
| Miami, FL 33131 | Washington, DC 20005 |
| Telephone: (305) 783-2190 | (202) 736-2200 |
| Facsimile: (305) 783-2268 | bferguson@campaignlegal.org |
| chad@brazilanddunn.com | acopper@campaignlegal.org |
| | eboettcher@campaignlegal.org |

*Counsel for Consolidated Plaintiffs League of Women Voters of Florida, Inc. and League of Women Voters of Florida Education Fund*

\* Admitted *Pro Hac Vice*

7

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the typeface and formatting requirements in Local Rule 5.1.

/s/ Brent Ferguson
Brent Ferguson

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned counsel certifies, pursuant to N.D. Fla. Loc. R. 7.1(F), that this Motion and Memorandum contain 1,070 words, excluding the case style, signature block, and Local Rule 7.1 Certificate.

/s/ Brent Ferguson
Brent Ferguson

## CERTIFICATE OF SERVICE

I certify that on September 5, 2025, I electronically filed the foregoing document using the Court's CM/ECF system, which will serve all counsel of record.

/s/ Brent Ferguson
Brent Ferguson