IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC.; LEAGUE OF WOMEN VOTERS OF FLORIDA EDUCATION FUND,<br><br>*Plaintiffs*,<br><br>v.<br><br>ASHLEY MOODY, in her official capacity as Attorney General of Florida; CORD BYRD, in his official capacity as Florida Secretary of State,<br><br>*Defendants*. | Case No. 4:23-cv-00216<br>Consolidated Case No. 4:23-cv-00215 |

### REPLY BRIEF IN SUPPORT OF LWVFL PLAINTIFFS' MOTION TO RECONSIDER

Plaintiffs League of Women Voters of Florida, Inc. and League of Women Voters of Florida Education Fund (together "the League" or "LWVFL") submit this reply brief in support of their Motion to Reconsider, ECF No. 153 [hereinafter "League Mot."],[1] respectfully

---

[1] *See also* ECF No. 358, 4:23-cv-00215 (the League's motion as filed in consolidated case).

1

requesting, pursuant to Federal Rule of Civil Procedure 59(e), that the Court reconsider and alter its judgment denying relief on the League's challenge to Fla. Stat. § 97.0575(5)(a) (the "Fines Provision"), and instead declare the Fines Provision unconstitutional and enjoin enforcement of that provision against the League.

The State is correct that the only grounds for granting a Rule 59(e) motion are "newly discovered evidence or manifest errors of law or fact." State's Opp. to the League Pls.' Mot. for Reconsideration, ECF No. 155 at 1 [hereinafter "State Opp."] (quoting *MacPhee v. MiMedx Group, Inc.*, 73 F.4th 1220, 1250 (11th Cir. 2023)). The State is wrong, however, that no such error occurred here.

A miscomprehension of the law constitutes manifest error. *See Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 621 (11th Cir. 2019) (citing *Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 746 (11th Cir. 2014)). Likewise, error occurs where a court "fails to apply the proper legal standard or to follow proper procedures in making the determination, or . . . [makes] findings of fact that are clearly erroneous." *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (quoting *In re*

*Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990)).

In this case, the *Anderson-Burdick* test requires weighing "the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019). As the League's Motion makes clear, however, the Court erred in its analysis both of the injury to the League from the Fines Provision and the state interests purportedly justifying that provision. *See generally* League Mot.

First, the Court erred in its evaluation under *Anderson-Burdick* of the injury to the League from the Fines Provision. *See* League Mot. at 2–5. "*Anderson-Burdick* . . . requires a court to look to a law's consequences and downstream impacts in assessing a law's burden," because "limiting . . . burden analysis to consider only the burden of complying with a law's requirements would lead [courts] to under-scrutinize laws that—while seemingly easy to adhere to—nevertheless severely burden

3

constitutional rights because of their downstream effects." *Eakin v. Adams Cnty. Bd. of Elections*, 149 F.4th 291, 311 (3d Cir. 2025).

The State insists that the Court "got the burdens right" here because it did in fact "consider[] the 'downstream effects' of the Fines provision, as well as the costs of compliance," and held simply that there are "minimal downstream effect[s]" because "Plaintiffs aren't likely to violate the Fines provision." State Opp. at 2. While the Court did point to the League "barely ever miss[ing]" the deadline for turning in applications, ECF No. 151 at 18–19, that does not, however, constitute fulsome analysis of the Fines Provision's downstream effects. "Barely ever missing" and never missing a deadline are not the same thing and, as the League's motion points out, the Court discounted entirely the substantial effect that imposition of "drastically increased" fines for even infrequent violations will have on the League's operations. *See* League Mot. at 3–4. Indeed, as the Court itself made clear, "the risk of incurring *any* increased fine may reasonably chill voter registration activity." ECF No. 151 at 19 (emphasis added).

At the same time, the State ignores entirely the injury to the League the Fines Provision's steep penalties will inflict in terms of fewer

volunteers associating with the League, meaning fewer interactions with voters and fewer registrations—thereby burdening the League's core speech and associational activities. *See* League Mot. at 2–5. As the State fails to acknowledge but the Court itself recognized in holding that the League had standing, the Fines Provision requires the League to re-train its volunteers, avoid registering out-of-county voters, and make more frequent trips to deliver applications in-person, which will, in turn, impose a "reasonable chill" on the League's paper voter registration drives and "eat away at members' time in the field registering voters, *resulting in registering fewer voters.*" ECF No. 151 at 14 (emphasis added). The burdens on the League thus extend far beyond its ability to comply with the Fines Provision but rather strike to the very heart of the League's protected voter registration activities.

Instead of engaging with the Court's actual analysis of burdens on the League, the State insists that the risk of violation is "further decreased, considering the law's safe-harbor: sending applications to the Division of Elections." State Opp. at 2 (citing Fla. Stat. § 97.0575(5)). The State further argues that "trial established that even under SB7050, Plaintiffs can easily meet new voters and help them register—outside of

5

technical 3PVRO activity," and expert witnesses had "found such means to be perfect substitutes of technical 3PVRO activity." *Id.* at 2–3 (citing testimony of Dr. Herron). But, whatever the State's position, these are not the reasons of the Court, which nowhere cited to, let alone weighed, the safe-harbor provision or the existence of alleged "perfect substitutes" for technical 3PVRO activity in analyzing the burdens on the League from the Fines Provision. *See* ECF No. 151 at 18–19.

Even if the Court's burden analysis had considered the evidence the State now points to—which it did not—it would still be unpersuasive. While the State's "safe-harbor" provision may prevent the application of wrong-county fines, it would not prevent the League from assessing late-delivery fines due to mail delays. *See* Trial Tr. vol. 4, 1264:23–1265:12 (testifying that the removal of a Bay County sorting center "has resulted in an increase on the average mail time of five to ten days."); *id.* at 1360:25–1362:8 (testifying that the removal of the Broward County sorting center has reduced the likelihood that the League would mail voter registration applications due to mail delays). Likewise, no expert in this case found online voter registration or giving a blank voter registration form "to be perfect substitutes of technical 3PVRO activity."

6

State Opp. at 2–3. Dr. Herron—whose testimony the State points to, State Opp. at 2–3—was not asked about online voter registration *at all* in the testimony the State cites, *see* Trial Tr. vol. 7, 2007:2–2011:9. And Dr. Herron's testimony regarding blank voter registration forms stopped far short of any broad assertion, as the State now makes, of a "perfect substitute" for traditional voter registration activities. *See* Trial Tr. vol. 7, 2007:20–24 ("I think the activity you just asked me about was . . . handing a voter registration form to a prospective registrant. I would call that an activity, yes.").

Second, as the League's motion makes clear, the Court independently erred in evaluating the state interest side of the *Anderson-Burdick* balancing test. *See* League Mot. at 5–6. In considering the State's proffered interests, the Court "must take into consideration not only the 'legitimacy and strength' of the state's asserted interest, but also 'the extent to which those interests make it *necessary* to burden' voting rights." *Democratic Exec. Comm.*, 915 F.3d at 1322 (citation omitted) (emphasis in original).

The State insists that the Court "got the state interests right" here because, "[a]s the state argued in its post-trial brief, the Fines provision

7

prevents fraud and promotes voter confidence in the electoral process," and those "are compelling and weighty interests." State Opp. at 3. The State further points to "evidence of relevant bad acting" including "the Office of Election Crime and Security's review of over 3,000 untimely voter-registration applications," and "additional instances of plaintiffs (and their aligned groups) failing to timely submit applications, even after book closing," arguing that "[t]ighter requirements were therefore necessary, given the frequent violations." *Id*.

Fatally however, the State ignores entirely the Court's actual opinion, which did not fulsomely explicate and consider the state interests underlying the Fines Provision, and tailoring of that provision thereto. The Court did not point to prevention of fraud and promotion of voter confidence in the electoral process as state interests underlying the Fines Provision. *See* ECF No. 151 at 19. The Court likewise did not rely on the untimely submission of voter registration applications as evidence of a legitimate state interest underlying the Fines Provision. *See id*.

Instead, the Court's explication of the state interests advanced by the Fines Provision is limited to a single sentence concluding—without pointing to any evidentiary support—that the "modest burden on the

8

League's First Amendment rights is justified by the State's weighty interests in ensuring voter registration applications are turned in on time, either directly to the Division of Elections or to the correct Supervisor of Elections office." *Id.* But, as the League's motion points out and the State refuses to acknowledge, the Court made no mention of, and Defendants did not establish any interest served by the *changes* made in the Fines Provision, failing to establish that increasing the fines for non-compliance up to fifty-fold was necessary to serve any state interest. *See* League Mot. at 6. The Court's failure to consider "not only the legitimacy and strength of the state's asserted interest, but also the extent to which those interests make it *necessary* to burden voting rights," *Democratic Exec. Comm.*, 915 F.3d at 1322 (citation modified), constitutes a manifest error of law.

Moreover, despite the State invoking the specter of "fraud" and "voter confidence" to justify the Fines Provision, State Opp. at 3, evidence in the record does not bear that out. Despite alluding to "instances of plaintiffs (and their aligned groups) failing to timely submit applications, even after book closing," State Opp. at 3, the State has—throughout the entirety of this case—identified only *one* 3PVRO that submitted voter

9

registration applications past book closing, *see id.* (citing ECF No. 139 at 11). Defendants have likewise proffered no evidence that *any* of those registrants whose applications were submitted after book closing were actually disenfranchised as a result. Such general, unproven interests are insufficient to justify the burden on the League's First Amendment rights and on Floridians' fundamental right to vote. *See Fish v. Schwab*, 957 F.3d 1105, 1133 (10th Cir. 2020); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 433–34 (6th Cir. 2012).

\* \* \*

For the reasons set forth in its Motion to Reconsider and this reply brief, the League respectfully requests that the Court reconsider and alter its judgment denying the League relief against the Fines Provision.

Dated: September 26, 2025     Respectfully submitted,

*/s/ Brent Ferguson*

| | |
|---|---|
| Chad W. Dunn | Brent Ferguson (D.C. Bar No. 1782289)* |
| Florida Bar No. 0119137 | Alexandra Copper (Cal. Bar No. 335528)* |
| 1200 Brickell Avenue, | Ellen Boettcher (D.C. Bar No. 90005525)* |
| Suite 1950 | 1101 14th Street NW, Ste. 400 |
| Miami, FL 33131 | Washington, DC 20005 |
| Telephone: (305) 783-2190 | (202) 736-2200 |
| Facsimile: (305) 783-2268 | bferguson@campaignlegalcenter.org |

10

chad@brazilanddunn.com

acopper@campaignlegalcenter.org
eboettcher@campaignlegalcenter.org

*Counsel for Consolidated Plaintiffs League of Women Voters of Florida, Inc. and League of Women Voters of Florida Education Fund*

\* Admitted *Pro Hac Vice*

11

## **CERTIFICATE OF SERVICE**

I certify that on September 26, 2025, I electronically filed the foregoing document using the Court's CM/ECF system, which will serve all counsel of record.

>					*/s/ Brent Ferguson*
>					Brent Ferguson