UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CORD BYRD, in his official capacity as Florida Secretary of State, et al., <br><br> Defendants. | Case No.: 4:23-cv-215-MW/MAF |

## NAACP PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

Plaintiff's motion for reconsideration identified clear error in the Court's opinion regarding both its standing analysis and its *Anderson-Burdick* analysis with respect to SB 7050's 3PVRO Fines Provision. Defendants' opposition only magnifies that error.

**I.    The Court erred when it held that the NAACP Plaintiffs do not have standing to challenge the Fines Provision.**

The Florida State Conference of Branches and Youth Units of the NAACP ("Florida NAACP"), Alianza Center, and UnidosUS (collectively, "NAACP Plaintiffs") each have standing to challenge the Fines Provision, and Defendants offer nothing to establish otherwise.

1

First, Defendants' argument that UnidosUS, Alianza, and the Florida NAACP are no longer "active, registered, 3PVROs," is misplaced. ECF No. 362, Defs' Br. in Opp. to Mot. for Reconsideration ("Opp.") at 2. Defendants do not dispute that NAACP Plaintiffs were registered 3PVROs "when the suit was filed," which remains the "focus" of the standing inquiry. *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1336 (11th Cir. 2019) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). And Defendants do not contend that the case is somehow moot, in that it "no longer presents a live controversy with respect to which the court can give meaningful relief." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000) (quotation omitted). Indeed, it would be absurd to suggest that, for instance, an organization like UnidosUS that has registered over 400,00 voters since 2008 and operated as a 3PVRO since 2011[1] would not continue to do so simply because it did not immediately renew its registration. *See* Tr. 22:9–15, 62:22.[2] And as they testified at

---

[1] UnidosUS is successor to National Council of La Raza/Democracia USA, which first registered as a 3PVRO in 2010, as required by law to operate as a 3PVRO at that time, and had previously operated as a 3PVRO before such registration was required.

[2] Under Florida law, 3PVRO registrations now automatically expire at the end of each calendar year, which did not automatically happen before November 6, 2024. Fla. Stat. § 97.0575(2) (imposing automatic expiration). 3PVROs typically begin canvassing operations in the off year before a general election year, so it is natural that UnidosUS did not re-register until closer to the onset of the registration season. *See* TR 152:16–17 (former Unidos canvasser testifying that she worked for Unidos from April to November 2022); *id.* 139:12-15 (explaining that Unidos assembles its

2

trial, Florida NAACP and Alianza Center were working as active 3PVROs but abated their activity because of the threat posed by the Fines Provision and SB 7050 more broadly. *See, e.g.*, ECF No. 289, Tr. 1172:4–21; *id.* 641:13–15. Were Plaintiffs to "win[] this lawsuit," they would again robustly "pursue efforts to register voters as a 3PVRO." *Id.* at 642:13–15.

Second, Defendants are plain wrong on the law. It is beyond cavil that regulated entities have standing to challenge regulations that apply to them, as incurring the costs of compliance constitutes an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992) (when a plaintiff "is himself an object of the [government's] action . . . there is ordinarily little question that the action or inaction has caused him injury"); *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015) ("An increased regulatory burden typically satisfies the injury in fact requirement."); *Corbett v. Transp. Security Admin.*, 19 F.4th 478, 483 (D.C. Cir. 2021) ("As a directly regulated party, [Plaintiff] plainly has standing to pursue his claims."); *American Farm Bureau Fed. v. U.S. E.P.A.*, 792 F.3d 281, 293 (8th Cir. 2015) (compliance costs are "a classic injury-in-fact"). The Supreme Court

---

canvassing team at the beginning of a "cycle"). In any event, all three organizations have since reregistered as 3PVROs. *See Third Party Voter Registration Organizations (3PVROs)*, Fla. Dep't of State, https://perma.cc/QRK2-BRF7 (last visited Sept. 26, 2025).

3

reaffirmed that principle once again in *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2134–35 (2025).

Defendants do not actually engage with the fundamental principle that underlies *Diamond*'s analysis: "Importantly, if a plaintiff is 'an object of the action (or forgone action) at issue,' then 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 2134 (quoting *Lujan*, 504 U.S. at 561–62). This well-established holding squarely applies to Plaintiffs Florida NAACP, Alianza Center, and UnidosUS. There is no question that these Florida 3PVROs are the "object" of the 3PVRO Fines Provision, and Defendants have identified nothing that would exclude them from the "ordinar[y]" standing rules. *Id.*

Instead, Defendants skip over this rule articulated in *Diamond* and try to shift the Court's focus to the standard that applies "[w]hen the plaintiff is *not* the object of a government regulation," *id.*, as was the case for the fuel producers in *Diamond*. In *Diamond*, the fuel producers argued that they should be "considered an object of the California regulations" at issue, which would have established their standing "without the need for much additional analysis." *Id.* at 2135–36. The Supreme Court found "[t]hat argument is not without force," but ultimately concluded it "need not further consider that argument" because the fuel producers had "readily demonstrated their standing" as an industry "in the chain" downstream from the

4

actual regulated entity (automakers). *Id.* at 2136. Here, by contrast, there can be no dispute that the 3PVROs are directly regulated by the Fines Provision, and therefore more akin to the automakers in *Diamond*, whose standing was never in question.

Additionally, Defendants offer no argument whatsoever in response to the string of cases Plaintiffs cite for the position that the ability to comply with a government regulation does not deprive a plaintiff of standing to challenge it. *See* ECF No. 357, Mot. for Reconsideration at 6–8. For good reason: There is no Article III requirement that a plaintiff be incapable of complying with a regulation in order to satisfy the standing inquiry. If that were so, there could be no challenges to campaign finance regulations, as the major parties and candidates are sophisticated actors who could surely avoid running afoul of such regulations. *But see, e.g.*, *Federal Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022) (finding standing to challenge campaign finance statute where Senate candidate is "subject" to the challenged provisions "and will face genuine legal penalties if they do not comply"). And states themselves would rarely be able to show standing, for the same reason. *But see West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (holding states have standing to challenge EPA regulation that requires "that they more stringently regulate power plant emissions within their borders" because they are "'the object of' its requirement"). But of course, sophisticated actors have routinely, successfully challenged statutes and regulations that would impose penalties on them for

5

noncompliance. *See, e.g.*, *Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967) ("[T]here is no question" that drug companies had standing to challenge a regulation that "is directed at them in particular," "requires them to make significant changes in their everyday business practices," and "if they fail to observe the . . . rule they are quite clearly exposed to the imposition of strong sanctions."); *State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (Kavanaugh, J.) (holding that bank had standing where it "must incur costs to ensure they are properly complying with the terms" of regulations to avoid disclosure requirements); *Grand River Enterprises Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 121 (2d Cir. 2021) (holding that tobacco company was a "regulated entity" who had adequately pled injury-in-fact "by plausibly alleging compliance costs associated with an increased regulatory burden").

Defendants' "red light" example is of no moment, and their reliance on *Worthy v. City of Phenix City*, 930 F.3d 1206 (11th Cir. 2019), only confirms Plaintiffs' standing here. In *Worthy*, the court identified a series of fortuitous events that would have to take place before the appellants would "potentially receive another red-light citation pursuant to the [challenged] ordinance" including driving to the city, crossing paths with a red-light camera, running the red light, and being subject to the discretionary issuance of a citation. *Id.* at 1216 ("This is too much."). The court distinguished this unlikely string of events from a situation where the threatened

6

harm is baked into government regulation itself, holding, "[a] future injury is significantly more likely 'when the threatened acts that will cause injury are authorized or part of a policy.'" *Id.* at 1215 (quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003)). That is precisely the case here. The imposition of fines on Florida 3PVROs is not an incidental or accidental byproduct of the Fines Provision; it is the entire *purpose* and *design* of the law. And because Plaintiffs are Florida 3PVROs directly targeted by the Fines Provision, they are "significantly . . . likely" to incur fines just by operating as 3PVROs, as fines are the "foreseeable" result of "human error" in falling short of the law's requirements. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1163 (11th Cir. 2008).

Defendants also fail to rebut Plaintiffs' argument that the costs of compliance alone demonstrate the requisite harm to establish standing. There is little doubt that Plaintiffs have paid a price both to satisfy fines and to avoid incurring them. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an injury."). As the Court found, Florida NAACP halted all in-person voter registration assistance and transitioned to online voter registration, ECF No. 345, Final Order at 29, which is less effective and thus has resulted in fewer confirmed registrations of voters, *see* ECF No. 289, Tr. 1172:8–21; Tr. 1173:18–1174:9. UnidosUS testified that it had paid $1,000 in fines in 2023, which is "equivalent to 20 voters not . . . registering to vote," a number that

7

would only increase as a result of the Fines Provision. ECF No. 286, Tr. 107:16–25. And, as Defendants recognize, "Alianza Center has decided to simply stop registering voters rather than risk increased fines," ECF No. 362, Opp. at 3 (quoting ECF No. 345, Final Order at 31), because of the catastrophic effect that would be wrought by the Fines Provision in the event of an inadvertent mistake. ECF No. 287, Tr. 641:18–642:2 ("We couldn't afford to continue risking the financial standing of the organization."). As Florida NAACP, UnidosUS, and Alianza Center have demonstrated, the 3PVRO Fines Provision has already imposed significant costs on the organizations and their ability to register Florida voters.

## II. The Court erred when it held that the Fines Provision withstands scrutiny under *Anderson-Burdick*.

Defendants likewise offer little in defense of the Court's erroneous application of the *Anderson-Burdick* balancing test. As to burden, Defendants suggest that the Court properly "considered the 'downstream effects'" of the Fines Provision but then proceed to echo the Court's reasoning that those downstream effects "are minimal, if non-existent" because "Plaintiffs aren't likely to violate" the provision. ECF No. 362, Opp. at 5. In other words, both Defendants and the Court collapse the burden analysis under *Anderson-Burdick* with the standing analysis addressed above, reasoning that because Plaintiffs are sophisticated actors who will endeavor to avoid fines, the magnitude of the fines themselves is of no consequence. As the Third Circuit recently cautioned, this leads courts to "under-scrutinize [a] law[] that—

8

while seemingly easy to adhere to—nevertheless severely burden[s] constitutional rights because of their downstream effects." *Eakin v. Adams*, 149 F.4th 291, 311 (3d Cir. 2025). Here, the Court's analysis focused exclusively on the *risk* that the 3PVROs are fined, as opposed to the magnitude of the fines themselves. ECF No. 345 at 19. In so doing, it failed to consider the downstream effects of these heavy fines for organizations subject to the regulation, which could be ruinous to 3PVROs with limited budgets, *see* ECF No. 287, Tr. 641:23–642:2, and would significantly harm their ability to register other voters, *see* ECF No. 286, Tr. 107:8–25.

And even if the Court determines, after consideration of these downstream effects, that the Fines Provision imposes only a modest burden that does not "warrant[] *heightened* scrutiny," ECF No. 345 at 19, the state interest analysis under *Anderson-Burdick* requires far more than what the State has offered here. *See Eakin*, 149 F.4th at 312–313. Defendants once again assert that the state interests in "prevent[ing] fraud and promot[ing] voter confidence in the electoral process" are "compelling and weighty." ECF No. 362, Opp. at 5. But Defendants can only point to scant evidence of one singular bad actor, Hard Knocks, to suggest any threat to those interests. *Id.* At no point have Defendants offered—or has the Court analyzed—how these interests are served by a blanket, unwarranted increase in fines on *all* 3PVROs in Florida. *See Eakin*, 149 F.4th at 312–318 (thoroughly analyzing each proffered state interest to determine whether it justifies the "minimal" burden

9

imposed by the specific regulation at issue); *see also Pisano v. Strach*, 743 F.3d 927, 937 (4th Cir. 2014) (examining whether state interests justified the "modest" burden of the specific filing deadline imposed by the state).

The Court also failed to consider whether the State demonstrated an interest in shortening the deadline for returning voter registration applications, and the weight of such an interest. At trial, Defendants failed to establish that the state has *any* interest in shortening the deadline, let alone a "sufficiently weighty" one. *Cf. Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008). Notably, the State did not attempt to claim such an interest in its response, because it cannot.

\*   \*   \*

Ultimately, Defendants' response only underscores the illogic of the Court's analysis. According to Defendants, the existence of a singular bad actor justifies a provision that threatens massive, sweeping fines for even inadvertent mistakes on the part of *all* 3PVROs, including those who, like Plaintiffs, act diligently and in good faith. But because Plaintiffs are good-faith actors who make efforts to avoid those fines and comply with the statute, they cannot actually challenge the unwarranted ratcheting up of fines that looms over them and threatens to shut down their operations if they slip up. This would leave Florida free to continue to multiply fines with impunity, while good-faith actors will have no recourse but to curtail their voter registration operations as the penalties for mistakes grow indefinitely.

## CONCLUSION

For the reasons stated above, the NAACP Plaintiffs respectfully request that the Court reconsider and alter its judgment denying the NAACP Plaintiffs relief against the Fines Provision.

| | |
|---|---|
| Dated: September 26, 2025 | Respectfully submitted, |
| Abha Khanna* | /s/ *Frederick S. Wermuth* |
| **ELIAS LAW GROUP, LLP** | Frederick S. Wermuth |
| 1700 Seventh Ave., Suite 2100 | Florida Bar No. 0184111 |
| Seattle, Washington 98101 | **KING, BLACKWELL, ZEHNDER &** |
| Telephone: (206) 656-0177 | **WERMUTH, P.A.** |
| akhanna@elias.law | P.O. Box 1631 |
| | Orlando, FL 32802-1631 |
| * *Admitted pro hac vice* | Telephone: (407) 422-2472 |
| | Facsimile: (407) 648-0161 |
| *Counsel for Plaintiffs Florida State Conference of Branches of Youth Units of the NAACP, Voters of Tomorrow Action, Inc., Disability Rights Florida, Alianza for Progress, Alianza Center, UnidosUS, Florida Alliance for Retired Americans, Santiago Mayer Artasanchez, Humberto Orjuela Prieto, and Esperanza Sánchez* | fwermuth@kbzwlaw.com |

## **LOCAL RULE 7.1(F) CERTIFICATION**

Undersigned counsel, Frederick Wermuth, certifies that this reply contains 2,477 words, excluding the case style, signature block and certifications.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of September 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>/s/ *Frederick S. Wermuth*
>Frederick S. Wermuth
>Florida Bar No. 018411